## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

U.S. SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.                                    Case No: 19-cv-448-T-33CPT

SPARTAN SECURITIES GROUP, LTD.
ISLAND CAPITAL MANAGEMENT,
CARL E. DILLEY, MICAH J. ELDRED and
DAVID D. LOPEZ,

      Defendants.

### DEFENDANT MICAH J. ELDRED'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Alan M. Wolper
Heidi E. VonderHeide (admitted *pro hac vice*)
**ULMER & BERNE LLP**
500 W. Madison, Suite 3600
Chicago, Illinois 60661
awolper@ulmer.com
hvonderheide@ulmer.com
Tel: (312) 658-6500
Fax: (312) 658-6501


Anna Patricia Morales Christiansen (FL Bar. No. 27634)
SPARTAN SECURITIES GROUP, LTD.,
15500 Roosevelt Blvd, Suite 303
Clearwater, FL 33760
Tel: 727-502-0508
Fax: 727-502-0858
pmorales@spartansecurities.com

**Counsel for Defendant**

# TABLE OF CONTENTS

Table of Authorities ............................................................................................ iii

I.   Summary of Argument ............................................................................. 1

II.  Argument ................................................................................................. 3

    A.  All Claims Against Mr. Eldred Should Be Dismissed Because Plaintiff Has Failed To Comply With Federal Rules Of Civil Procedure 8(a) and 9(b). .............. 3

       1.  Plaintiff's Conclusory Allegations Compel Dismissal under Rule 8(a). ............... 3

       2.  Plaintiff's Fraud-Based Claims Should Be Dismissed For Failure to Plead Fraud With Particularity Under Rule 9(b) ................................................................. 3

    B.  The Complaint Is An Improper "Shotgun Pleading" Under Rule 9(b) ........................... 5

    C.  In the Alternative, Plaintiff's claims should be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6) for Failing to State a Claim. .................................... 5

       1.  The claims under Section 10(b) and Rule 10b-5(b) of the Exchange Act (Count 6) and the aiding and abetting claim based thereon (Count 12) must be dismissed. . 6

          a.  Mr. Eldred did not "make" a statement. ......................................... 6

          b.  Any statements attributable to Mr. Eldred are not material. ............................ 7

          c.  None of the identified statements was made to the investing public. ............. 11

          d.  No evidence of scienter ................................................................. 11

    D.  The Complaint Does Not Allege That Mr. Eldred Acted With The Requisite Scienter (Counts 3, 5-7). ................................................................................. 11

       1.  Communications Identified In The Complaint Do Not Amount To Scienter ....... 12

          a.  No facts to support "knowledge" that companies were "shells." .................. 13

          b.  Lack of facts supporting Daniels as a control person. ..................................... 16

          c.  Lack of facts showing intended merger. ........................................................ 17

       2.  The Remaining "Red Flags" In The Complaint Regarding Interactions With Daniels And Harrison Do Not Plead Scienter ............................................. 18

       3.  The Allegations Purporting To Show "Misrepresentations" In The Form 211 Cover Letter Do Not Show "Severe Recklessness." ........................................... 19

    E.  The Complaint Does Not Satisfy the "In Connection With" Requirement. ................. 23

    F.  Failure to State A Claim For Aiding And Abetting (Counts 2, 8-13) ........................... 23

       1.  The Complaint Fails to Allege "Recklessness." ............................................... 23

       2.  The Complaint fails to allege "substantial assistance." ...................................... 24

G.    No Scheme Liability (Counts 3- 5 and 7). ...................................................................... 26

H.    The Majority of Claims against Mr. Eldred are Time-Barred. ..................................... 27

III.    Conclusion .................................................................................................................... 30

# TABLE OF AUTHORITIES

## CASES

*Aaron v. SEC*, 446 U.S. 680 (1980) ........................................................................... 11

*Alstom*, 406 F. Supp. 2d 433 (S.D.N.Y. 2005) ........................................................... 26

*American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010 ............................. 3, 7, 15

*Apuzzo*, 689 F.3d 204 (2nd Cir. 2012) ....................................................................... 25

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ............................................................... 3, 15

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988) ................................................................. 8

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ...................................................... 5

*Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 (11th Cir. 1999) ..................................... 17

*Butterworth v. Quick & Reilly, Inc.*, 998 F.Supp. 1404 (M.D. Fla. 1998) ..................... 10

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*,
   632 F.3d 751 (1st Cir. 2011) ................................................................................. 20

*Cutsforth v. Renschler*, 235 F.Supp. 2d 1216 (M.D. Fla. 2002) ................................... 10

*Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955 (11th Cir. 2008) ....................... 3

*Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553 (2009) ..................... 15

*First Alliance* Mortg. Co., 471 F.3d 977 (9th Cir. 2006) ............................................. 25

*Flannery v. SEC,* 810 F.3d 1, 9 (1st Cir. 2015) ........................................................... 20

*Gabelli v. SEC*, 568 U.S. 442 (2013) ......................................................................... 27

*Greenberg v. Bear, Stearns & Co.,* 220 F.3d 22 (2d Cir. 2000) ................................... 25

*Harris v. Ivax Corp.,* 182 F.3d 799 (11th Cir. 1999) ................................................... 17

*Investors Research Corp. v. SEC,* 628 F.2d 168 (D.C. Cir. 1980). ............................. 23

*Janus Capital Grp., Inc. v. First Derivative Traders,* 564 U.S. 135 (2011) ............... 6, 7

*KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d 1269 (S.D. Fla. 2017) ....................................... 8

*Kokesh v. SEC,* 137 S. Ct. 1635 (June 5, 2017) ............................................... 27, 28, 29

*La Grasta v. First Union Secs. Inc.,* 358 F.3d 840 (11th Cir. 2004) ........................... 17

*Lawrence v. Bank of America, N.A.*, 2010 WL 3467501 (M.D. FL Aug. 30, 2010) ............. 24, 25

*Miyahira v. Vitacost.com, Inc.*, 2012 WL 12895513  (S.D. Fla. June 28, 2012) .................. 10

*Mizzaro* v. *Home Depot, Inc.,* 544 F.3d 1230 (11th Cir. 2008) ............................... 12, 18

*Mogensen v. Body  Corp.*, 15 F.Supp. 3d 1191 (M.D. Fla. 2014) ............................. 10

*Nelson v. Hodowal,* 512 F.3d 347 (7th Cir. 2008) ....................................................... 10

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ............................................................................ 11

*Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1 (1st Cir. 2011) ...................................................... 6

*Perlman v. Bank of Am., N.A.*, 2011 WL 13108060 (S.D. Fla. Dec. 22, 2011) ........................... 16

*Ply Gem Holdings, Inc. Sec. Litig.*, 135 F. Supp. 3d 145 (S.D.N.Y. 2015) ................................... 8

*Saad v.SEC,* 873 F.3d 297 (D.C. Cir. 2017) ................................................................................ 29

*SEC v. Bankatlantic Bancorp, Inc.*, 2012 WL 1936112 (S.D. Fla. May 29, 2012) ....................... 4

*SEC v. Berry,* 580 F.Supp.2d 911 (N.D.Cal. 2008) ..................................................................... 26

*SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786 (11th Cir. 2015) ...................................... 23

*SEC v. Brennan*, 2013 WL 12091655 (S.D. Fla. Dec. 10, 2013) ................................................ 26

*SEC v. Cohen*, 332 F. Supp. 3d 575 (E.D.N.Y. 2018) .................................................................. 29

*SEC v. Collyard*, 861 F.3d 760 (8th Cir. 2017) ............................................................................ 29

*SEC v. Conrad,* 2017 WL 3485766 (N.D. Ga. Feb. 22, 2017) .................................................... 24

*SEC v. Converge Glob., Inc.*, 2006 WL 907567 (S.D. Fla. Mar. 10, 2006) ................................. 29

*SEC v. Coplan,* 2014 WL 695393 (S.D. Fla. Feb. 24, 2014) ....................................................... 29

*SEC v. Fraser*, 2010 WL 5776401 (D. Ariz. Jan. 28, 2010) ........................................................ 26

*SEC v. Gane,* 2005 WL 90154 (S.D. Fla. Jan. 4, 2005) ............................................................... 28

*SEC v. Goble*, 682 F.3d 934 (11th Cir. 2012) ........................................................................ 22, 23

*SEC v. Graham*, 823 F.3d 1357 (11th Cir. 2016) .................................................................. 28, 29

*SEC v. Levin*, 2013 WL 5588224 (S.D. FL. Oct. 10, 2013) ......................................................... 24

*SEC v. Lucent Techs., Inc.*, 363 F. Supp. 2d 708 (D.N.J. 2005) .................................................. 24

*SEC v. Merch. Capital, LLC,* 483 F.3d 747 (11th Cir. 2007) ......................................................... 6

*SEC v. Parnes*, 2001 WL 1658275 (S.D.N.Y. Dec. 26, 2001) ....................................................... 4

*SEC v. Power*, 525 F.Supp. 2d 415 (S.D.N.Y. 2007) ..................................................................... 4

*SEC v. Radius Capital Corp.*, 2013 WL 3716394 (M.D. Fla. July 15, 2013) .............................. 27

*SEC* v. *Rio Tinto plc,* 2019 WL 1244933 (S.D.N.Y. Mar. 18, 2019) ........................................... 24

*SEC v. Roanoke Tech. Corp.*, 2006 WL 2470329 (M.D. Fla. Aug. 24, 2006) ............................. 10

*SEC v. Roanoke Tech. Corp.*, 6 2006 WL 2470329 (M.D. Fla. Aug. 24, 2006) ......................... 19

*SEC v. Solow*, 2007 WL 917269 (S.D. Fla. Mar. 23, 2007) ...................................................... 4, 5

*SEC v. Teo,* 746 F.3d 90 (3rd Cir. 2014) ..................................................................................... 28

*SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833 (2d Cir. 1968) ..................................................... 11

*SEC v. Surgilight,* 2002 WL 31619081 (M.D. FL Oct. 15, 2002) ................................................ *25*

*SEC v. Weintraub*, 2012 WL 13012751 (S.D. Fla. Jan. 10, 2012) .............................................. 29

*SEC v. Wey*, 246 F. Supp. 3d 894 (S.D.N.Y. 2017)................................................................ 24, 25

*Semerenko v. Cendent Corp.,* 223 F.3d 165 (3rd Cir. 2000) ............................................... 11

*Simpson v. AOL Time Warner, Inc.,* 452 F.3d 1040 (9th Cir. 2006) ................................... 26

*Stoneridge Investment Partners, LLC v. Scientific Atlanta, Inc.,* 552 U.S. 148 (2008) ............... 26

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002)........................................................... 6

*Thompson v. RelationServe Media, Inc.,* 610 F.3d 628 (11th Cir. 2010) ................................. 9, 17

*Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273 (11th Cir. 2006)................................. 4, 5

*Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238 (M.D. Fla. 2013) ............................... 15

*Woods v. Barnett Bank of Fort Lauderdale,* 765 F.2d 1004 (11th Cir. 1985)....................... 15, 23

*Woodward v. Metro Bank of Dallas*, 522 F.2d 84 (5th Cir. 1975) ........................................ 15, 24

*Ziemba v. Caascade*, 256 F.3d 1194, 1202 (11th Cir. 2001).............................................. 4

## STATUTES

15 U.S.C. § 78j ("Section 10(b)")................................................................................ 26

15 U.S.C. §77q(a) ("Section 17(a) of the Securities Act") ................................................... 11, 26

28 U.S.C. § 2462................................................................................................ 27, 29

## RULES AND REGULATIONS

§ 240.15c2–11 ("Rule 211") ...................................... 1, 2, 8, 9, 7, 19, 20, 21, 22, 23, 24

17 C.F.R. § 230.156(b) ........................................................................................ 8

17 C.F.R. §230.405 ............................................................................................ 13

17 C.F.R. §240.10b-5(a) ("Rule 10b-5(a) of the Exchange Act") .................................. 6 ,11, 26

17 C.F.R. §240.10b-5(b) ("Rule 10b-5(b) of the Exchange Act") .................................. 6, 11

17 C.F.R. §240.10b-5(c) ("Rule 10b-5(c) of the Exchange Act") .................................. 6, 11, 26

Fed. R. Civ. P. Rule 8(a)..................................................................................... 1, 3

Fed. R. Civ. P. Rule 9(b)..................................................................................... 3, 4, 5, 12

Fed. R. Civ.  P Rule 12(b)(6) ............................................................................... 1, 5, 9

FINRA Rule 6432 ............................................................................................. 2

NASD Rule 5250 .............................................................................................25

**OTHER AUTHORITIES**

NASD Notice to Members 92-50, Procedures Regarding Securities and Exchange Commission
    Rule 15c2-11 and Schedule H, Section 4 of the NASD By-Laws
    ............................................................................................................ 2, 19, 21

U.S. Securities and Exhange Commission Edgar Company Filings:
    https://www.sec.gov/edgar/searchedgar/companysearch.html .......................................... 10, 17

SEC Release No. 33-8587, Use of Form S-8, Form 8-K, and Form 20-F by Shell Companies
    (July 2005).................................................................................................. 14, 15

SEC Investor Bulletin: Reverse Mergers (June 2011)
    https://www.sec.gov/investor/alerts/reversemergers.pdf .......................................... 14

FINRA Form 211
    https://www.finra.org/sites/default/files/AppSupportDoc/p126234.pdf .................................... 8

Pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Micah Eldred hereby moves this Court to dismiss each claims against him (Counts 2-13) and respectfully submits the following memorandum of law in support thereof:

## I.      SUMMARY OF ARGUMENT

Mr. Eldred is the signatory on four Form 211 applications filed between 2011 and 2013. Form 211 is a seven-page application filed by a market maker broker-dealer that wishes to initiate a public quotation for a security.  Governed by SEC Rule 15c2-11, Form 211 requires a broker-dealer to collect certain information regarding the issuer of the securities prior to making a quotation.  The Form 211 is submitted to FINRA for review.  In response to almost every (if not every) application, FINRA sends follow-up inquiries to the broker-dealer asking for additional information or clarification.  Once FINRA is satisfied with the information received, it will "clear" the application, allowing the shares to be publicly quoted and traded.  Clearance by FINRA allows the securities to be quoted on a public secondary market (opposed to a national exchange like the Nasdaq or NYSE).  Spartan Securities is a market maker firm that has submitted thousands of Forms 211 over the years.

SEC Rule 15c2-11 specifically sets forth what the broker-dealer must do prior to initiating the quotation.  The broker-dealer must: (1) gather and maintain certain information regarding the issuer, and (2) have a "reasonable basis" for believing that the information is accurate in all "material" respects.[1]   A broker-dealer satisfies its first obligation (to gather and maintain information) if it "has, in its possession, a prospectus that has been filed with the Commission[.]"

---

[1] § 240.15c2–11(a):  "As a means reasonably designed to prevent fraudulent, deceptive, or manipulative acts or practices, it shall be unlawful for a broker or dealer to publish any quotation for a security … unless such broker or dealer has in its records the documents and information required by this paragraph … and, based upon a review of the paragraph (a) information together with any other documents and information required by paragraph (b) of this section, has a reasonable basis under the circumstances for believing that the paragraph (a) information is accurate in all material respects, and that the sources of the paragraph (a) information are reliable."

NASD Notice to Members 92-50.[2]  A broker-dealer satisfies the second requirement under Rule 211 (a "reasonable basis" for believing that information to be materially accurate) when it obtains that information from the issuer, an agent of the issuer, or from a document publicly filed with the Commission[3] and where no "material deficiencies" in the information have been detected.[4] "Material deficiencies" generally relate to the financial condition of the issuer. *Id.*  Assuming that the broker-dealer has compiled the requisite information about the issuer and no material deficiencies are detected, the broker-dealer has satisfied its obligations under Rule 211. To ensure that quotations are based solely on the qualities of the issuer – and not on some other motivation – FINRA Rule 6432 expressly prohibits broker-dealers from receiving any compensation for filing a Form 211.[5]

Here, Mr. Eldred signed and submitted a Form 211 for four companies associated with Diane Harrison and Michael Daniels, who have since been accused of making false representations and fabricating documents in order to register securities with the SEC.  The SEC alleges that Mr. Eldred, based on a disjointed collection of "red flags," should have known that the representations these companies made in their public securities filings and in the Form 211 were false. Specifically, the Complaint alleges that Mr. Eldred should have known that the companies' stated objective – to continue normal business operations – was false and that the companies instead sought public registration only so they would be more attractive merger candidates.  For the

---

[2] http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=1675 (last visited Apr. 18, 2019).

[3] *Id.* ("Generally, a broker/dealer can be satisfied that information is obtained from a reliable source if it is received from the issuer or its agents, or was obtained from an independent information service such as the Commission's public reference room.").

[4] Id. ("Ordinarily the broker/dealer need not do any further review unless a potential material deficiency has been detected. Examples of potential material deficiencies are material inconsistencies in the information or between the information and other information in the broker/dealer's possession, a qualified auditor's report, a recently acquired asset that materially enhances the financial condition of the issuer, or a material asset listed on the balance sheet that is unrelated to the issuer's business.").

[5] FINRA Rule 6432.

reasons stated herein, the facts in the Complaint are insufficient to plead the causes of action asserted against Mr. Eldred.

## II.     ARGUMENT[6]

### A.     All Claims Against Mr. Eldred Should Be Dismissed Because Plaintiff Has Failed To Comply With Federal Rules Of Civil Procedure 8(a) and 9(b).

#### 1.     Plaintiff's Conclusory Allegations Compel Dismissal under Rule 8(a).

The Complaint is required to comply with Rule 8(a), which mandates dismissal when it fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (factual allegations must rise to a right to relief above the speculative level; they must plausibly suggest a violation of law). A complaint should be dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." In making that determination, courts may "infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

As set forth, below, when stripped of its legal conclusions and formulaic recitation of the elements, it becomes clear that the Complaint contains insufficient facts that would allow a fact-finder to conclude that Mr. Eldred knew or should have known of the secret, fraudulent intent inside the minds of the underlying fraudsters, or that he substantially assisted in a scheme.

#### 2.     Plaintiff's Fraud-Based Claims Should Be Dismissed For Failure to Plead Fraud With Particularity Under Rule 9(b).

---

[6] All paragraph citations in this Motion correspond to the paragraphs of the Complaint filed February 20, 2019.

Each Count against Mr. Eldred either sounds directly in fraud or is a non-fraud claim based on alleged fraudulent conduct.   Accordingly, each Count is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b) and, thus, must be stated with particularity. *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006); *SEC v. Power*, 525 F.Supp. 2d 415, 423 (S.D.N.Y. 2007).   The purpose of this requirement is to "alert [ ] defendants to the precise misconduct with which they are charged and protect [ ] defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Caascade*, 256 F.3d 1194, 1202 (11th Cir. 2001).[7]

In a case like this one, where the SEC conducted a lengthy investigation, courts apply Rule 9(b) rigorously. *SEC v. Parnes*, 2001 WL 1658275, at *5 (S.D.N.Y. Dec. 26, 2001).   The Eleventh Circuit has explained that Rule 9(b) requires the Complaint set forth (1) "precisely what statements or omissions were made"; (2) the time and place of each statement; (3) the manner in which they misled the investor; and (4) what the defendant obtained as a result of the fraud.  *SEC v. Bankatlantic Bancorp, Inc.*, 2012 WL 1936112, at *8 (S.D. Fla. May 29, 2012) (emphasis in original) (*quoting Find What Inv. Grp. v. Findwhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011)).

Here, the facts as pled fail to set forth any of the above information required by Rule 9(b). Instead, the Complaint is filled with broad and conclusory allegations as to what Mr. Eldred "knew or should have known" about what other individuals were doing, thinking, or intending.

The Complaint alleges Mr. Eldred "should have known" this intent at the time the Form 211 was submitted (or the price quoted) because of (1) prior interactions with Harrison and Daniels and/or (2) a scattered collection of communications they exchanged over the years.   While the SEC cobbles these events together in an effort to suggest something untoward, the actual *facts* set forth in the Complaint merely show that Mr. Eldred was retained to do a relatively simple, mostly

---

[7] Rule 9(b)'s heightened pleading standards apply to securities-related fraud cases brought by the SEC. *SEC v. Solow*, 2007 WL 917269, at *2 (S.D. Fla. Mar. 23, 2007).

mechanical job – submitting a Form 211 for a publicly registered company, based on information received from the SEC (Edgar.gov), the veracity of which he had no reason to doubt.

Accordingly, for the reasons set forth below in Section C, because the SEC fails to set forth specific allegations showing, with particularity, how Mr. Eldred either committed or aided and abetted the underlying (alleged) fraud, Counts 2-13 should be dismissed.

**B.      The Complaint Is An Improper "Shotgun Pleading" Under Rule 9(b).**

"Shotgun pleadings are those that incorporate every antecedent by reference into each subsequent claim for relief." *Wagner*, 464 F.3d at 1279.   The Eleventh Circuit has held that shotgun pleadings do not satisfy Rule 9(b)'s pleading standards.   *Id.* at 1280.   This includes instances where the SEC's complaint re-alleges all factual paragraphs in the pleading into each count, with no effort to state with particularity which specific factual allegations apply to which claim for relief, leaving Defendants unable to discern the exact nature of the charges. *Solow*, 2007 WL 917269, at *3.

Here, each of the 14 counts repeats and incorporates paragraphs one through 122, which contain *all* factual allegations, irrespective of to which defendant, issuer, time period, or "scheme" they relate.   Mr. Eldred is unable to determine, and is therefore left to speculate, as to which of the factual allegations are directed toward which count.

For this reason alone, the Complaint should be dismissed in its entirety.

**C.      In the Alternative, Plaintiff's claims should be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6) for Failing to State a Claim.**

Pursuant to Rule 12(b)(6), dismissal of a claim for relief is appropriate where the plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6). A plaintiff has an obligation to state the factual basis for its claim for relief and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555-56 (citations omitted).  Pleadings may not contain a statement of facts that merely

creates a suspicion of a legally cognizable right of action assuming that all the allegations in the complaint are true. *See, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1 (2002).

Thus, in resolving a motion to dismiss, a court should employ a two-pronged approach, first "identifying and disregarding statements" that are merely "'legal conclusion[s] couched as ... fact[ ]'" or "[t]hreadbare recitals of the elements of a cause of action." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (citations omitted). Next, the remaining, non-conclusory, factual allegations in the complaint are analyzed as though they are true. *Id.*

### 1.   The claims under Section 10(b) and Rule 10b-5(b) of the Exchange Act (Count 6) and the aiding and abetting claim based thereon (Count 12) must be dismissed.

Count 6 alleges that Mr. Eldred is liable for violations under Section 10(b) and Rule 10b-5(b) of the Exchange Act.  To plead a primary violation of Section 10(b) and Rule 10b-5, the SEC must prove that he: "(1) made a material representation or a material omission as to which [he] had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." *SEC v. Merch. Capital, LLC,* 483 F.3d 747, 766 (11th Cir. 2007).

### a.   Mr. Eldred did not "make" a statement.

The first element of this claim requires that the defendant have "made" some material misrepresentation or omission. *Id.*  Here, the Complaint fails to allege any material misstatements made by Mr. Eldred.  In *Janus*, the Supreme Court explained what it means to "make" a statement within the meaning of that prohibition:

> For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not "make" a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker.

*Janus Capital Grp., Inc. v. First Derivative Traders,* 564 U.S. 135, 142 (2011).  In *Janus,* the Rule 10b-5(b) elements were not established because the investment advisor merely "participate[d] in the drafting of the false statement" which another, independent entity decided to make.   *Id.*

Here, there is no allegation of any material misstatement "made" by Mr. Eldred.  At most, the Complaint alleges that Mr. Eldred passed along statements made by another, including the underlying issuer, an independent entity.[8]   For example, with regard to the allegation that Mr. Eldred "misrepresented" that each issuer was "pursuing its local business operations" and "had no plans for any actual or potential merger or acquisition,"[9] this information came directly from the issuer's public securities filings and/or the issuer itself, upon which Rule 15c2-11 expressly permits the broker-dealer to rely. Under *Janus,* these statements from the issuer are insufficient to form the basis for a 10b-5 claim against Mr. Eldred, who had no involvement in their "making."

Beyond that, as set forth in Section III.D., below, the facts included in the Complaint do not support the ultimate inference the government asks this Court to draw – that Mr. Eldred should have known the representations in the securities filings were false.  *American Dental Ass'n*, 605 F.3d at 1290 (courts may "infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.").

Because none of the identified statements was "made" by Mr. Eldred, they cannot be used to satisfy the first element of a 10b-5 claim.

### b.  Any statements attributable to Mr. Eldred are not material.

To the extent the Complaint does identify a statement attributable to Mr. Eldred, it is not material.  "[T]o fulfill the materiality requirement 'there must be a *substantial likelihood* that the

---

[8] ¶ 106, 115, 116, 120.
[9] ¶ 115-116.

disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.'"  *Basic Inc. v. Levinson*, 485 U.S. 224, 239 (1988), *quoting TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). In determining whether a fact is "material," it must be examined in the "context in which it is made." 17 C.F.R. § 230.156(b).   A complaint may be dismissed for failure to plead materiality where the fact is so "obviously unimportant" to a reasonable investor that reasonable minds could not differ on the questions of its importance.  *In re Ply Gem Holdings, Inc. Sec. Litig.*, 135 F. Supp. 3d 145, 150–51 (S.D.N.Y. 2015); *In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d 1269, 1275–76 (S.D. Fla. 2017) ("Courts routinely examine the materiality of alleged misstatements and omissions at the pleading stage.").

The Complaint identifies only two sets of statements attributed directly to Mr. Eldred and alleged to be false because they omit certain information.[10]   Both statements are found in the cover letter that accompanied the Form 211 applications[11] that Spartan filed, and simply communicated that Spartan had been contacted by the issuer (which was true), and that Spartan did not have any "relationship" with the issuer or its representatives, outside of the particular Form 211 (alleged to be false).  Putting aside, for purposes of this motion, the truth or falsity of the allegation that these statements were false, it remains that they are not material.  *First* and foremost, the statements in the cover letter respond to the requests posed in Part 3 of Form 211[12]:

---

[10] ¶ 116 and 117.

[11] https://www.finra.org/sites/default/files/AppSupportDoc/p126234.pdf (last visited Apr. 18, 2019).

[12] *See also* 17 C.F.R §240.15c2-11 (b)(1), (version effective at the time period in question):

(b) With respect to any security the quotation of which is within the provisions of this section, the broker or dealer submitting or publishing such quotation shall have in its records the following documents and information:

(1) A record of the circumstances involved in the submission of publication of such quotation, including the identity of the person or persons for whom the quotation is being submitted or published and any information regarding the transactions provided to the broker or dealer by such person or persons;

Please review paragraphs (b)(1)-(3) of Rule 15c2-11 and provide the information requested below.

(b)(1) Describe the circumstances surrounding the submission of this application, include the identity of any person(s) for whom the quotation is being submitted and any information provided to your firm by such person(s).

The Complaint suggests that this question required the disclosure of the information appearing in ¶ 116 and 117 of the Complaint relating to Daniels, including that he (1) had a personal brokerage account with Spartan, and (2) "assisted" Mr. Eldred in other, unspecified, unrelated transactions. Disclosure could arguably be required, however, only if Daniels was the "person" responsive to (b)(1) of Rule 15c2-11.

The Complaint, dedicates numerous paragraphs to Daniels, but conspicuously fails to state who requested the quotation, if anyone, on behalf of AF/Ocean. As a result, the Complaint fails to plead that the information about Daniels, contained in ¶ 116-117, was a required disclosure on Form 211 or otherwise could be considered material information. Since disclosure of the information identified in the paragraphs 116 and 117 is not required under Rule 211, regardless of its truth or falsity, it is not "material" to the ultimate investor deciding whether or not to invest in the underlying company.[13] *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 681 (11th Cir. 2010) (A duty of disclosure only arises when an "omitted fact was necessary to render a preexisting statement not misleading, or because securities law otherwise required its disclosure.")

*Second,* there is no "substantial likelihood" that one of these "statements" would have "significantly altered" the "total mix" of information available to a "reasonable investor" looking to purchase the underlying company (or a share in the underlying company). Reasonable investors

---

[13] In ¶ 117 of the Complaint, the SEC takes the liberty of defining the term "representative" to include "Daniels." The term "representative," however, is not defined in Form 211 or 17 CFR 240.15c2-11. Accordingly, for purposes of this motion, the Court should view that "allegation" as a legal conclusion or argument, not as a fact which much be presumed true under Rule 12(b)(6).

do not base their investment decisions on, for example, who first contacted the broker-dealer to assist with Form 211.  Indeed, the Form 211 application process, unlike the registration process,[14] is private.  No investors are ever made aware of either the questions FINRA asks or the information the issuer returns, and they certainly do not – and cannot – see the cover letter that accompanies the form.  Thus, it is legally and factually impossible for these statements to have had any impact at all on a potential investor, let alone a "significant" impact.  *Cutsforth v. Renschler*, 235 F.Supp. 2d 1216, 1245 (M.D. Fla. 2002) ("[I]t hardly seems to suggest fraud that the defendants did not disclose that some sales representatives somewhere (maybe in Texas) were taking handwritten orders without entering them into the computer system."); *SEC v. Roanoke Tech. Corp.*, 2006 WL 2470329, at *4 (M.D. Fla. Aug. 24, 2006) (SEC cannot merely declare information material but instead must explain why a reasonable investor would have wanted to know the information.); *Mogensen v. Body  Corp.*, 15 F.Supp. 3d 1191, 1211 (M.D. Fla. 2014); *Butterworth v. Quick & Reilly, Inc.*, 998 F.Supp. 1404, 1411 (M.D. Fla. 1998) ("Plaintiff has failed to establish that the Defendant's failure to file a change of address form…is a material misrepresentation or omission. In fact, it is very unlikely that the disclosure of this fact would have been viewed by the "reasonable investor" as significantly altering the "total mix" of information made available to them."); *Miyahira v. Vitacost.com, Inc.*, 2012 WL 12895513, at *7 (S.D. Fla. June 28, 2012), *aff'd,* 715 F.3d 1257 (11th Cir. 2013); *Nelson v. Hodowal*, 512 F.3d 347, 350 (7th Cir. 2008) ("information that, when revealed, has no effect on the stock's price is not 'material' to investors' decisions").

---

[14] Communications exchanged between issuers and the SEC as they attempt to get their public registration declared effective are publicly available alongside all filings at www.sec.gov/edgar.

c.      **None of the identified statements was made to the investing public.**

To meet the "in connection with" requirement, the SEC must set forth facts showing that "the misrepresentations in question were disseminated to the public in a medium upon which a reasonable investor would rely, and that they were material when disseminated." *Semerenko v. Cendent Corp.,* 223 F.3d 165,175–76 (3rd Cir. 2000); *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 860–62 (2d Cir. 1968) (misrepresentations are made "in connection with" the purchase of sale of securities when the statements are made "in a manner reasonably calculated to influence the investing public").

As stated above, the statements identified in the Complaint were made to FINRA in connection with its review of the respective Form 211 applications.  Those communications are not public at the time they are made, or at any time thereafter.  Accordingly, the statements were not "disseminated" to the public or otherwise capable of "influencing" the public's investment decisions.  Thus, Counts 3 and 6 must be dismissed.

d.      **No evidence of scienter.**

*See* Section III.D., immediately below.

**D.      The Complaint Does Not Allege That Mr. Eldred Acted With The Requisite Scienter (Counts 3, 5-7).**

The claims brought under Section 17(a)(1)(Count 3) or  under any subpart of Rule 10(b)-5 (Counts 5 – 7) each require the SEC to plead and prove that Mr. Eldred acted with *scienter* or a "strong inference of fraudulent intent."  *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (internal punctuation omitted); *Aaron v. SEC*, 446 U.S. 680, 697 (1980).  Fraudulent intent may be established either by alleging facts (a) to show that defendants had both motive and opportunity to commit fraud, or (b) that constitute strong circumstantial evidence of conscious misbehavior or recklessness.  *Novak,* 216 F. 3d at 307.  With regard to "recklessness," the Eleventh Circuit requires

that the SEC establish "severe recklessness," which it defines as more than "merely simple or inexcusable negligence," instead requiring "an extreme departure from the standards of ordinary care" that "present[s] a danger of misleading buyers or sellers" and which is "either known to the defendant or so obvious that he must have been aware of it." *Mizzaro* v. *Home Depot, Inc.,* 544 F.3d 1230, 1238 (11th Cir. 2008).

The Complaint does not plead facts alleging scienter that meet the "particularity" standard of Rule 9(b) (or even the more general standard under Rule 8(a). Instead, viewing all facts in the light most favorable towards the government, the SEC merely alleges that Mr. Eldred (1) made unspecific, general statements in the cover letter to FINRA introducing the 211 application, and (2) had contemporaneous communications with alleged fraudsters Harrison and Daniels that had no relation to the particular company for which Spartan was submitting the Form 211.

### 1.    Communications Identified In The Complaint Do Not Amount To Scienter.

The Complaint alleges that Harrison and Daniels took real, local businesses and made them public companies by filing a Form S-1, which the SEC made effective. Unlike the Mirman/Rose companies,[15] there is no allegation that these were "shell" companies. Instead, in Harrison and Daniels' case, the companies were real, operating businesses which disclosed in public, signed, federal filings with the SEC that they had current and future business plans, for example, to run a pizzeria[16] or build space-saving wall-beds. Further, each company's public, signed, federal securities filings represented that the company had no plans to enter into a merger or major share transfer. (¶ 106). Past this point, however, the allegations in the Complaint become almost

---

[15] The companies underlying the Mirman/Rose companies are addressed in the (contemporaneous) Motion to Dismiss filed by Spartan, Island, Mr. Dilley and Mr. Lopez.

[16] ¶ 106.

indecipherable, as the SEC meanders backwards and forwards in time and through a series of unconnected "red flags." (¶ 111-115).

Essentially, there appear to be three types of red flags. First, there are the purported red flags indicating the companies were "shell" companies. Second, there are the "Daniels" red flags, where the SEC insinuates that because Daniels was communicating with Spartan (although the context is frequently omitted), Mr. Eldred should have divined that Daniels was a secret, undisclosed control person of one of the companies. (¶ 104, 105, 107, 108, 109). Third, there are the Andy Fan red flags where the SEC alleges that Mr. Eldred should have known that four companies were only seeking public status so they could be purchased by Fan.

As shown below, taken either individually or together, these facts fail to amount to anything more than a general, conclusory allegation as to what Mr. Eldred "should have known," and such an allegation cannot withstand dismissal.

### a.    No facts to support "knowledge" that companies were "shells."

At or around the time the Forms 211 were filed, Mr. Eldred and Harrison/Daniels exchanged emails using words like "vehicle" and "shell." (¶ 103, 104, 107-108). That, the SEC concludes, leads to the *reasonable* inference that Mr. Eldred should have known that the first company at issue, AF Ocean, was a shell. (¶ 108). There are two problems with this reasoning.

*First*, the public filings show the company was not a "shell." A "shell company" is expressly defined under 17 CFR §230.405 to refer to a registrant (i.e., the issuer of the securities for which the registration statement is filed) that has: (1) no or nominal operations, and (2) no or nominal assets. This definition poses an immediate pleading issue for the SEC because three of the four companies underlying the charges against Mr. Eldred (Dinello/AF Ocean, Court/Chin America, Wallbeds/Sichuan, Purple Real) do not meet this definition. The Complaint fails to allege *any* facts to support the assertion that these companies were, or appeared to, meet the

statutory definition of a "shell."   Instead, as the SEC itself admits, each of these companies was very real, and had both operations and assets.   (¶ 100).   For the fourth company, TTB/Ibex, it was a disclosed, blank check company long before Form 211 process began.[17]   Notwithstanding this disclosure, ¶ 100 alleges that this company was an "undisclosed blank check company."   The Complaint does not include any facts sufficient to explain this obvious inconsistency.

*Second,* regarding the communications cited in the Complaint that use the term "shell," contrary to the SEC's position here, there is nothing inherently nefarious or illegal about a shell company or a blank check company.[18]   Both are common. The same is true for "reverse mergers" referenced throughout the Complaint.   Reverse-mergers occur when a private company merges with a publicly traded company.   Once the transaction closes, the merged entity is then publicly traded.[19]   None of this is illegal or violative of the securities laws, or even suggestive of such.

---

[17] Top To Bottom Pressure Washing, Inc. Form S-1A, page ii,  filed July 23, 2013) ("We believe that since we have included information in our prospectus that we will consider a merger, acquisition or business combination that we should identify ourselves as a "blank check" company").   The Form 211 for this company was filed two months after this public disclosure.  (¶ 102).  The SEC alleges, in ¶ 100.

[18] *See* SEC Investor Bulletin: Reverse Mergers (June 2011) https://www.sec.gov/investor/alerts/reversemergers.pdf. *See also* SEC Release No. 33-8587, Use of Form S-8, Form 8-K, and Form 20-F by Shell Companies,  (July 2005):

> The rules and rule amendments we are adopting today do not address the relative merits of shell companies. We recognize that companies and their professional advisors often use shell companies for many legitimate corporate structuring purposes. Similarly, our definition and use of the term ''shell company'' is not intended to imply that shell companies are inherently fraudulent. Rather, these rules target regulatory problems that we have identified where shell companies have been used as vehicles to commit fraud and abuse our regulatory processes.

[19]  SEC Release No. 33-8587, Use of Form S-8, Form 8-K, and Form 20-F by Shell Companies,  (July 2005):

> The provisions we adopt today also address the use of Form 8–K to report ''reverse merger'' and other transactions in which a reporting shell company ceases being a shell company, generally by combining with a formerly private operating business. Through such a transaction, the private operating business, in effect, becomes a reporting company. These transactions generally take one of two forms:
>
> • In the most common type of transaction, a ''reverse merger,'' the private business merges into the shell company, with the shell company surviving and the former shareholders of the private business controlling the surviving entity.
>
> • In another common type of transaction, a ''back door registration,'' the shell company merges into the formerly private company, with the formerly private company surviving and the shareholders of the shell company becoming shareholders of the surviving entity.

Nevertheless, the SEC appears to propose that any email using the word "shell" is a red flag because where someone uses the term "shell," expresses the desire to purchase a "shell," or ponders the value of a "shell," the only reasonable inference is that some fraud is occurring. (¶ 103, 104, 107, 108, 111, 112, 114, 115). This suggestion, however, ignores the (at least) equally reasonable inference of a legitimate business purpose and, further, contradicts the SEC's own guidance stating that" the term "'shell company'' is not "inherently fraudulent."[20] *American Dental Ass'n*, 605 F.3d at 1290 ( courts may "infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.").

As a result, these paragraphs of the complaint, which do nothing more than identify communications using these terms do not support the allegation that Mr. Eldred "should have known" that the companies' public statements regarding their operational intent were false. *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559–61 (2009) (allegations, coupled with surrounding circumstances, but without any "firm factual pleadings" showing knowledge, do not give rise to reasonable inference that defendant committed fraud or aided and abetted fraudulent activities); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief); *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1243 (M.D. Fla. 2013); *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 97 (5th Cir. 1975) ("If the evidence shows no more than transactions constituting the daily grist of the mill, we would be loathe to find 10b-5 liability without clear proof of intent to violate the securities laws.

---

[20] SEC Release No. 33-8587, Use of Form S-8, Form 8-K, and Form 20-F by Shell Companies  (July 2005).  Many of the communications identified also lack any connection to a particular Form 211 application, and are merely context-free emails, sent in the general time period of the Form 211, discussing the general interest in a shell.  None of these allegations amount to a true red flag of fraudulent activity.

Conversely, if the method or transaction is atypical or lacks business justification, it may be possible to infer the knowledge necessary for aiding and abetting liability.") *relied upon by 11th Circuit in Woods v. Barnett Bank of Ft. Lauderdale,* 765 F.2d 1004, 1010 (11th Cir. 1985); *Perlman v. Bank of Am., N.A.*, 11-80331-CV, 2011 WL 13108060, at *6 (S.D. Fla. Dec. 22, 2011) ("Although atypical transactions can show knowledge, mere suspicions of impropriety do not.").

### b.     Lack of facts supporting Daniels as a control person.

With regard to the SEC's allegation that Mr. Eldred should have known that Daniels was an "undisclosed principal" of Dinello/AF Ocean (¶ 105, 109, 110), the Complaint sets forth little more than a series of legal conclusions.  The sole facts contained in those paragraphs are:

- Daniels asked Mr. Eldred to prepare an Island Stock Transfer agent agreement for Dinello/AF Ocean; ( ¶ 105)

- Spartan sold shares of Dinello/AF Ocean "on Daniels' behalf." ( ¶ 110)

These two facts do not show (or permit a reasonable inference) that Daniels was a secret, undisclosed principal who controlled all aspects of the company and its shares to such an extent that he rose to "affiliate" status.  To start, the request for the stock transfer agreement (¶ 105) was sent in April 2011, before the Form S-1 that issued the shares (that Daniels wanted Island's assistance with) was made effective and before the Form 211 had been submitted

Furthermore, and equally telling, are the facts that the Complaint *omits*.  The Complaint does not allege that Daniels signed the agreement on behalf of the company, or even that Daniels purported to have the authority to sign the agreement on behalf of the company.  It merely alleges that Daniels sent an email asking that the agreement be prepared.  This request is hardly indicative of his control over the entity.

As for the allegation in ¶ 110 that "Eldred was copied on an email that Spartan Securities was putting in an order to sell Dinello/AF Ocean shares on Daniels's behalf," this allegation merely

demonstrates that Daniels had control over his own shares, not the entire company.[21]

### c.    Lack of facts showing intended merger.

Finally, the Complaint identifies facts to support the allegation that Mr. Eldred "knew" at the time the Form 211 was pending that each company was "created from scratch" merely to be public shells to be sold to Andy Fan. (¶ 100).  This, the SEC alleges, conflicted with the company's public representation that it had no such intention.  (¶ 108, 111).  Beyond repeating the general legal standard, however, the Complaint is devoid of facts sufficient to support the accusation.  For example, while the Complaint alleges that as early as October 2011, Eldred "knew or was reckless in not knowing" that AF Ocean had been sold to Fan.  It fails, however, to state any facts supportive of this "knowledge date".  Instead, in the very next sentence the paragraph identifies events in June and  July 2012 – which was more than a year after the Form 211 was cleared by FINRA.

Moreover, if the Court were to look to the October 2011 date, it should (and is permitted to) take judicial notice[22] of the fact that (1) on September 15, 2011, AF Ocean (then called Dinnello) filed a Form 8K announcing that Andy Fan had joined the company as a Director and the Chairman of the Board of directors);[23] and (2) on October 1, 2011, the Company filed a Form 8K[24] announcing that it was changing its business direction away from operating a pizzeria:

> The Board of Directors approved changing the direction and mission of the Company…. The proposed new direction of the Company will be promoting business relations and exchanges between Chinese and U.S. companies, facilitating

---

[21] Also emblematic of the SEC's disjointed and misleading pleading, the Complaint spends several paragraphs discussing interactions between Mr. Eldred and Harrison or Daniels during the time period leading up to the Form 211 application for AF Ocean. Compl. ¶ 103-111.  As the Complaint is forced to admit, however, Mr. Eldred was not the Spartan employee responsible for submission of that form; instead, Mr. Dilley signed that application. ¶ 102.  The Complaint fails to connect the conduct it identifies with the Form 211 at issue.  As a result, the SEC seeks to create an inference of some impropriety without sufficient facts to support it.

[22] Courts may take judicial notice of relevant documents publicly filed with the SEC. *Harris v. Ivax Corp.,* 182 F.3d 799, 802 n .2 (11th Cir. 1999); *Bryant,* 187 F.3d at 1278; *Thompson v. RelationServe Media, Inc.,* 610 F.3d 628, 631 n. 5 (11th Cir. 2010) (citing *Bryant, supra* ); *La Grasta v. First Union Secs. Inc.,* 358 F.3d 840, 842 (11th Cir. 2004).

[23] Dinello Restaurant Ventures Form 8K filed September 15, 2011. https://www.sec.gov/edgar/searchedgar/companysearch.html.

[24] Dinello Restaurant Ventures Form 8K filed October 1, 2011. https://www.sec.gov/edgar/searchedgar/companysearch.html.

international mergers and acquisitions, increasing co-operations between Chinese companies and the Wall Street financial institutions…

In short, the Complaint fails to allege facts explaining why Mr. Eldred should have been troubled with Fan's involvement in the company or the company's interest in potential mergers from that point onward based simply on his knowledge that Fan was the Chairman of the company as of September 2011, or that the company had *publicly disclosed* that its express operational purpose was to facilitate mergers.  (¶¶ 114, 115).

The inference of scienter, if any, created by these allegations is beyond speculative; accordingly, the Section 10(b) and 17(a)(1) claims cannot survive a motion to dismiss.

### 2. The Remaining "Red Flags" In The Complaint Regarding Interactions With Daniels And Harrison Do Not Plead Scienter.

Nor do the remaining red flags (not addressed above) properly plead "extreme recklessness" as opposed to "simple or inexcusable negligence."  *Mizzaro*, 544 F.3d at 1238.

With regard to the SEC's contention that Mr. Eldred "knew or should have known" that the companies had lied in their public securities filings and/or that Daniels and Harrison were "manufacturing" companies solely to sell them as "shells,"[25] the sole facts set forth in support of that conclusory statement are as follows:

- Daniels, Harrison and Mr. Eldred have been friends for ten years; (¶ 103)
- Once (at an unspecified date and time), Harrison and Mr. Eldred's wife had been the sole officers of an (unspecified) issuer that had been acquired by reverse merger; (¶ 103); Harrison (an attorney) had assisted with the registration of that company. *Id.*
- Mr. Eldred had once offered the company to a buyer who was looking for a "shell"; ( ¶ 103);
- Daniels once referred to that company as a "vehicle"; (¶ 103)

---

[25] The allegation is dubious on its face inasmuch as the companies had both assets and operations and did not fit the definition of a "shell," as noted above.

- Mr. Eldred once asked Harrison if regulators would be concerned if his wife formed a second company, to which Harrison replied in the negative, commenting that she had been involved with two public companies without issue (¶ 104).[26]

None of these allegations, individually or taken together, recites facts sufficient to support the conclusion that Mr. Eldred "should have known" that these four companies were anything other than operational entities as disclosed.  None of these "red flags" gives rise to a *reasonable* inference that a fraud was being perpetrated; nor do any of these facts give rise to a *reasonable* inference that the representations made in the companies' public filings may have been false. Notably, in fact, these facts do not give rise to any inferences whatsoever, which is important because this Court has rejected prior attempts by the SEC to plead scienter through the "inference of conscious misbehavior."  *SEC v. Roanoke Tech. Corp.*, 6 2006 WL 2470329, at *5 (M.D. Fla. Aug. 24, 2006) ("[T]he SEC presents a series of allegations from the Amended Complaint that it contends give rise to a 'strong inference' of 'conscious misbehavior.' The initial problem is that 'conscious misbehavior' is not part of this circuit's scienter standard.").

### 3.   The Allegations Purporting To Show "Misrepresentations" In The Form 211 Cover Letter Do Not Show "Severe Recklessness."

The final genre of red flags identified in the Complaint with regard to the alleged fraud by Harrison and Daniels relates to purported errors in the cover letters provided to FINRA in connection with the Form 211 applications.  (¶ 106, 116, 117, 118, 119, 120).[27]

Rule 211 requires that a broker-dealer (1) gather and maintain certain information regarding a company for which it submits a published quotation, and (2) have a "reasonable basis" for believing that the information is accurate in all "material" respects.[28]  A broker-dealer satisfies

---

[26] Harrison's role, at the prior company, is disclosed in the effective Form S-1 for Dinello, filed with the Commission on May 6, 2011 p. 17 (entity is Coastline Corporate Services, Inc.).

[27] Paragraphs 116-119 only contain allegations against Spartan; not Mr. Eldred. But, because they appear in the section of the Complaint relating to Mr. Eldred, they are addressed here.

[28] § 240.15c2–11(a).

its first obligation (to gather and maintain information) if it "has, in its possession, a prospectus as defined by Section 10(a) of the Securities Act[] that has been filed with the Commission [.]" NASD Notice to Members 92-50.[29]   A broker-dealer satisfies the second requirement and has a "reasonable basis" for believing that information to be materially accurate where it obtains the requisite information from the issuer, an agent of the issuer, or from a document publicly filed with the Commission.   The NASD (now FINRA) has provided the following guidance[30]:

> **Question #4:** What steps should a broker/dealer take to have a reasonable basis to believe that the information is obtained from a reliable source?
>
> **Answer**: Generally, a broker/dealer can be satisfied that information is obtained from a reliable source *if it is received from the issuer or its agents, or was obtained from an independent information service such as the Commission's public reference room*[.]
>
> **Question #5:** Under what circumstances would a broker/dealer be required to take further steps to have a reasonable basis to believe that the information is accurate in all material respects and the sources of the information are reliable?
>
> **Answer**: *Ordinarily the broker/dealer need not do any further review unless a potential material deficiency has been detected.* Examples of potential material deficiencies are material *inconsistencies* in the information or between the information and other information in the broker/dealer's possession, a qualified auditor's report, a recently acquired asset that materially enhances the financial condition of the issuer, or a material asset listed on the balance sheet that is unrelated to the issuer's business.

The SEC apparently intends to suggest (because it cannot specifically plead) that Mr. Eldred so grossly failed to comply with this rule (and guidance) that his conduct amounts to "severe recklessness."   There are several issues with this allegation.   *First,* Rule 211 imposes an obligation on a broker-dealer only to act "reasonably."   To the extent that Mr. Eldred is found to have violated this rule, his conduct – at most – amounts to negligence, which does not constitute scienter.

---

[29] http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=1675.

[30] *Id.* (Emphasis supplied).

*Second*, Rule 211 only requires the broker-dealer to believe the information is accurate in all "material" respects.[31]   FINRA's guidance makes clear that in reviewing the information received, the broker-dealer only is obligated to investigate *material* deficiencies or *material* adverse information.[32]   The vast majority of the information the SEC alleges Spartan "omitted" from the Form 211 or "failed to investigate," even if true, is not material, including:

- The fact that Spartan was contacted by Harrison on behalf of Dinello but the cover letter to the Form indicated it had been the other shareholder (who signed each and every securities filing) (¶ 106);

- The allegation that Daniels "assisted" Mr. Eldred's wife with the sale of a prior, unidentified company (a company that is not alleged to have done anything improper);

- The allegation that *after* the Form 211 was effective, Daniels asked Mr. Eldred whether there were any "vehicles" available for a "reverse merger" (¶ 107);

- The allegation that Spartan "misrepresented" the manner in which it was solicited to file the Form 211 (¶ 117); and

- The similarities in the shareholder lists (¶¶ 118. 119).

None of these allegations amounts to material information requiring disclosure under Rule 211. They do not identify a material "deficiency" or "inaccuracy" in the application, do not contradict the "accuracy" of the information received, and are not otherwise suspicious, or inherently suggestive of fraud.

*Third,* and specifically regarding the alleged failure to "investigate," the Complaint alleges that (1) FINRA identified and inquired about the similarities in the shareholders ( ¶ 118 and 119), and (2) the firm responded to those inquiries using information received from the issuer.  But,

---

[31]"Questions of materiality and scienter are connected." *Flannery v. SEC,* 810 F.3d 1, 9 (1st Cir. 2015) ("This thin materiality showing cannot support a finding of scienter here") *citing City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp*., 632 F.3d 751, 757 (1st Cir. 2011). ("If it is questionable whether a fact is material or its materiality is marginal, that tends to undercut the argument that defendants acted with the requisite intent or extreme recklessness in not disclosing the fact."). The immateriality of these facts identified by the SEC undercuts its argument that Mr. Eldred acted with *scienter* in omitting them from the Form 211 cover letter.

[32] None of the information alleged to be omitted in this case is "material."  *See* discussion on materiality, above.

Rule 211 and Notice to Members 92-50 expressly allow broker-dealers to rely on information received from the "issuer or its agent" or documents filed with the Commission.[33] Spartan received the shareholder lists and the affirmation that those shareholders, in fact, controlled their shares *from the issuer* through its agent (one of its officers, board members, and primary shareholders). Similarly, with regard to the responses that were "cut-and-pasted" (¶¶ 118, 120) from the issuer, even if the similarity between the shareholder lists was considered a "deficiency" requiring "investigation," as the Complaint alleges, Spartan fulfilled its obligation to "investigate" under Rule 211 when it asked the issuer for explanation and accepted that response.[34]

In alleging that Spartan "simply" relied on the information received from the issuer, the Complaint actually establishes that Spartan and Mr. Eldred complied with – not violated – Rule 211. Accordingly, the Complaint fails to include allegations sufficient to support even a finding that Mr. Eldred negligently violated Rule 211, let alone that his conduct constitutes "severe recklessness" capable of sustaining an allegation of fraud or aiding and abetting fraud.

*Fourth*, and finally, the Complaint specifically alleges that FINRA was satisfied with the responses Spartan provided. Accordingly, even if FINRA's questions were a "red flag" as alleged, they were properly addressed, pursuant to Rule 211 and the published guidance thereon, and resolved to FINRA's satisfaction.[35]

Accordingly, Mr. Eldred respectfully requests that Counts 3 and 5-7 be dismissed for failure to plead facts sufficient to establish the elements of those claims.

---

[33] § 240.15c2–11(a); NASD Notice to Members 92-50
http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=1675 (last visited Apr. 18, 2019).

[34] *Id.* ("[T]he broker/dealer may be satisfied that the information is correct after questioning the issuer.")

[35] FINRA's acceptance of the issuer's answer merely shows the normal steps of the Rule 211 application process where FINRA poses questions expecting the Firm to "question" the issuer and "satisfy" itself with the issuer's response. The fact that FINRA was satisfied cuts off the inference the SEC seeks to make with the allegations in paragraph 118 and 119 that Spartan or Mr. Eldred somehow failed to conduct the "investigation" required by Rule 211. To the contrary, the allegations in those paragraphs affirm the investigation was resolved as contemplated by the Rule.

### E.     The Complaint Does Not Satisfy the "In Connection With" Requirement.

Each Count brought under 10(b) (Counts 5-7), as well as those under Section 17(a) (Counts 3 and 4), requires that an identifiably fraudulent statement or act be made "in connection with" the purchase or sale of securities.  *SEC v. Goble*, 682 F.3d 934, 944 (11th Cir. 2012).  The Complaint does not identify the purchase or sale of any security with regard to the four Harrison companies (¶¶ 100-122).   The Counts should be dismissed for lack of this element alone.  Additionally, because there is no identified purchase or sale, the SEC cannot possibly establish the "in connection with" element, i.e., a connection between Mr. Eldred's alleged "deception" and an identifiable purchase or sale of a security.  *Goble*, 682 F.3d at 945.

### F.     Failure to State A Claim For Aiding And Abetting (Counts 2, 8-13).

#### 1.     The Complaint Fails to Allege "Recklessness."

Counts 8-13 each allege that Mr. Eldred aided and abetted Harrison and Daniels' alleged fraud.  Count 2 alleges Mr. Eldred "aided and abetted" Spartan's alleged violation of Rule 211.[36] An allegation of aiding and abetting, in either context, requires a showing that Mr. Eldred "knowingly rendered substantial assistance" to the fraud.  *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 800 (11th Cir. 2015).  More particularly, the Eleventh Circuit has determined that "a person may be held as an aider and abettor ... if the accused party has a ***general awareness that his role was a part of an overall activity that is improper,*** and if the accused aider-abettor ***knowingly and substantially assisted*** the violation."[2]  *Woods v. Barnett Bank of Fort Lauderdale,* 765 F.2d 1004, 1009 (11th Cir. 1985) (quoting *Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 94–95 (5th Cir. 1975).  The "awareness of wrong-doing requirement" in aiding and abetting cases was "designed to insure that innocent, incidental participants in

---

[36] If Count 1 (as to Spartan) is dismissed, Count 2 (aiding and abetting Count 1) must be dismissed, as well.

transactions later found to be illegal are not subjected to harsh...administrative penalties." *Investors Research Corp. v. SEC,* 628 F.2d 168, 177 (D.C. Cir. 1980).

For the reasons set forth in Section D, above, the Complaint fails to allege that Mr. Eldred acted recklessly and, for that reason, each aiding and abetting count must be dismissed.

### 2.     The Complaint fails to allege "substantial assistance."

The Complaint likewise fails to allege that Mr. Eldred "substantially assisted" Harrison and Daniel's alleged "scheme." To plead substantial assistance properly, the SEC must show that Mr. Eldred was a "causal factor in the perpetuation of the fraud." *SEC v. Levin*, 2013 WL 5588224 (S.D. FL. Oct. 10, 2013). Substantial assistance occurs when a defendant affirmatively assists, helps conceal, or fails to act when required to do so. *Lawrence v. Bank of America, N.A.*, 2010 WL 3467501 (M.D. FL Aug. 30, 2010). In determining whether the conduct amounts to "substantial assistance," courts must take into account whether the activity is considered an "ordinary course" transaction involving "daily grist of the mill," or an "atypical" transaction, lacking business justification. *Woodward,* 522 F.2d at 97; *SEC v. Conrad*, 2017 WL 3485766, at *15 (N.D. Ga. Feb. 22, 2017), on reconsideration in part, 2017 WL 3500364 (N.D. Ga. May 2, 2017) (finding SEC failed to plead "substantial assistance" where it failed to show defendant had ability to control underlying decisions relating to the fraud); *SEC* v. *Rio Tinto plc,* 2019 WL 1244933, at *16 (S.D.N.Y. Mar. 18, 2019) ("The SEC cites no authority for the proposition that the mere "failure to correct" a misleading statement, without more, is equivalent to the "substantial assistance" needed to plead an aiding and abetting violation."); *SEC v. Wey*, 246 F. Supp. 3d 894, 928 (S.D.N.Y. 2017) ("While the SEC urges that a defendant need not know every aspect of a fraudulent scheme to be liable for aiding and abetting it the complaint fails to allege that [defendant]  knew of any part of the scheme apart from his own actions."); *SEC v. Lucent Techs., Inc.*, 363 F. Supp. 2d 708, 726 (D.N.J. 2005).

There are no specific allegations that Mr. Eldred "associated" himself with Daniels' and Harrison's secret scheme.  While Mr. Eldred was the individual who handled the Form 211 application submitted by the four Harrison companies, his role under the highly formulaic requirements of Rule 15c2-11 was merely to collect specific information from the issuer and transmit it to FINRA.[37]  Simply assisting in the process that leads to public trading, without more, does not establish substantial assistance. *Wey*, 246 F. Supp. 3d at 927 ("Nor are there facts alleged that would support an inference that [defendant] knew or must have known of [the primary violator's] false and misleading statements to NASDAQ, the SEC and others.").

Beyond that, the "assistance" Mr. Eldred provided was to submit the Form 211, a form that can only be submitted by a market maker broker-dealer (like Spartan) and for which FINRA Rules expressly *prohibit* the broker-dealer from obtaining any compensation.[38]  Thus, the typical motivation for participating in a scheme – deriving some financial benefit – does not exist here. Instead, the motivation here was simply to assist the companies in achieving a public quotation of their securities based on the publicly available information that existed at the time.  There are no allegations that Mr. Eldred was attempting to "bring about" anything else.  *Apuzzo*, 689 F.3d 204, 212 (2nd Cir. 2012) (quoting *United States v. Peoni*, 100 F.2d 401, 401 (2d Cir. 1938) (Hand, J.) (SEC must plead that the defendant "in some sort associated himself with the [the fraudster's]

---

[37] *See also SEC v. Surgilight*, 2002 WL 31619081, at *3 (M.D. FL Oct. 15, 2002) (noting that orchestrating a reverse merger, assisting a company becoming publicly traded, and depositing shares in brokerage accounts to mislead investors does not show substantial assistance). *See Lawrence*, 2010 WL 3467501 (to create accounts, transfer funds among accounts, make withdrawals from accounts, was insufficient to established that a defendant had substantially assisted a client's fraud.) *Greenberg v. Bear, Stearns & Co.,* 220 F.3d 22, 29 (2d Cir. 2000) (a clearing broker does not provide "substantial assistance" to or "participate" in a fraud when it merely clears trades. *See In re First Alliance* Mortg. Co., 471 F.3d 977, 955 (9th Cir. 2006)(Ordinary business transactions a bank performs for a customer can satisfy the substantial assistance element of an aiding and abetting claim if the bank actually knew those transactions were assisting the customer in committing some other crime.).

[38] NASD Rule 5250: "(a) No member or person associated with a member shall accept any payment or other consideration, directly or indirectly, from an issuer of a security, or any affiliate or promoter thereof, for publishing a quotation, acting as market maker in a security, or submitting an application in connection therewith."

venture, that [he] participated in it as something that he wished to bring about, and that he sought by his action to make it succeed.")

Thus, even if the Court concludes the "red flags" alleged in the Complaint are sufficient to constitute an allegation of knowledge by Mr. Eldred of the scheme at the time the Forms 211 were processed (or the securities quoted), the claim nevertheless fails because the SEC cannot plead (or prove) substantial assistance.

### G.     No Scheme Liability (Counts 3- 5 and 7).[39]

The SEC has alleged that Mr. Eldred "schemed to defraud" unidentified persons "in connection with" an unidentified purchase or sale of securities.   ¶ 142-143.   It appears that the claims under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) are based on the same purported misstatements upon which the 10b-5(b) claims are based.

A claim under either 10b-5(a) or (c) requires that the SEC set forth facts showing (1) a deceptive or manipulative act by the defendant; (2) in connection with the purchase or sale of any security; (3) in furtherance of a scheme to defraud; and (4) done with scienter. *In re Alstom*, 406 F. Supp. 2d 433, 474 (S.D.N.Y. 2005) (citing *In re Global Crossing,* 322 F. Supp. 2d 319, 336 (S.D.N.Y. 2004)). *Stoneridge Investment Partners, LLC v. Scientific Atlanta, Inc.,* 552 U.S. 148, 160 (2008); 15 U.S.C. § 78j; *SEC v. Brennan*, 2013 WL 12091655, at *2 (S.D. Fla. Dec. 10, 2013).

The first element of this claim requires a showing that the defendant "engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." *Simpson v. AOL Time Warner, Inc.,* 452 F.3d 1040, 1048 (9th Cir. 2006), *vacated on other grounds by Simpson v. Homestore.com,* 519 F.3d 1041, 1041–42 (9th Cir. 2008). "It is not enough that a *transaction* in which a defendant was involved had a deceptive purpose and effect;

---

[39] To the extent the claims under 10(b)-5(a) and (c) are based upon an alleged misrepresentation or omission, those allegations have been addressed above.

the defendant's *own conduct* contributing to the transaction or overall scheme must have had a deceptive purpose and effect." *Id.* "For example, masterminding a misleading accounting scheme can suffice as conduct that furthers a fraudulent scheme." *SEC v. Berry,* 580 F.Supp.2d 911, 923 (N.D.Cal. 2008). *SEC v. Fraser*, 2010 WL 5776401, at *7 (D. Ariz. Jan. 28, 2010).

For the reasons already set forth above, the SEC has failed to plead facts sufficient to show Mr. Eldred (1) committed a deceptive act (Section III.C.1. and D.1.); (2) in furtherance of a scheme (Section III.F.2.); (3) with scienter (Section III.D.); (4) in connection with a purchase or sale of securities. (Section III.E.). For the reasons already set forth above, these claims should be dismissed.

### H. The Majority of Claims against Mr. Eldred are Time-Barred.

The majority of the SEC's claims against Mr. Eldred are time-barred because they are based on conduct that occurred as many as 8½ years ago, falling well outside the five-year limitation period set forth in 28 U.S.C. §2462, which applies in any "action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise." The Supreme Court made clear that the five-year statute of limitations in § 2462 applies to all forms of relief sought in the Complaint that constitute a "penalty" including civil fines, penalties, and disgorgement.[40] *Kokesh v. SEC,* 137 S. Ct. 1635, 1641- 1644 (June 5, 2017). In *Kokesh,* the Supreme Court made clear that statutes of limitation "se[t] a fixed date when exposure to the specified Government enforcement efforts en[d]," *Id.* at 1641*, (quoting Gabelli v. SEC*, 568 U.S. 442 (2013)). In enforcement actions, like this one, the cause of action accrues on the date the conduct occurred, regardless of when the government discovered it. *Id.* Further, where, as here, the causes of action asserted against Mr. Eldred are based on multiple transactions, the Court

---

[40] While the SEC's request for disgorgement is specifically limited to the applicable five-year limitation period, the other monetary penalties are not.

should dismiss the claims insofar as they rely on transactions outside the limitations period. *SEC v. Radius Capital Corp.*, 2013 WL 3716394, at \*2 (M.D. Fla. July 15, 2013).

The Supreme Court's reasoning in *Kokesh* similarly compels the conclusion that the penny stock bar and the injunctive relief requested here are likewise barred. Although the Eleventh Circuit has previously considered this issue, in part, and determined that an injunction is not a "penalty" under § 2462, that ruling and its reasoning predates *Kokesh*, where the Supreme Court set forth the analysis for determining whether a remedy constitutes a penalty under § 2642. *SEC v. Graham*, 823 F.3d 1357, 1361 (11th Cir. 2016). In 2016, the Eleventh Circuit reasoned that injunctions were not penalties because they were typically forward looking in nature. *Id.* at 1361-1362. Two years later, in *Kokesh,* the Supreme Court set forth a different analysis for determining whether a particular remedy is a penalty under § 2642. Specifically, the unanimous decision explained that penalties are "imposed as a consequence of violating a public law and it is intended to deter, not to compensate." *Id.* at 1644. Penalties are remedies that "'go beyond compensation, are intended to punish, and label defendants wrongdoers' as a consequence of violating public laws." *Id*. Further, while recognizing that disgorgement may serve a partly remedial purpose in some cases, the Supreme Court held it was nevertheless subject to § 2642, because a "civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment." *Id*. (emphasis original)).

Under the *Kokesh* reasoning, both the injunctive relief and the penny stock bar are sought for their punitive and deterrent purpose of punishing and labeling defendants as wrongdoers. *Id.* The SEC routinely seeks, and is awarded, these remedies because of their "retributive or deterrent purposes." *Kokesh v. SEC*, 137 S. Ct. 1635, 1643 (2017) (penalties are sought "'in the public interest, to remedy harm to the public at large, rather than standing in the shoes of particular injured

parties.'") (quoting from the SEC's brief); *SEC v. Teo,* 746 F.3d 90, 102 (C.A.3 2014) *(*The SEC

pursues its claims "independent of the claims of individual investors" in order to "promot[e]

economic and social policies") (relied upon in *Kokesh*); *SEC v. Gane,* 2005 WL 90154, at *20

(S.D. Fla. Jan. 4, 2005) ("[C]ivil penalties, like a permanent injunction, are imposed in part to deter

the wrongdoer from similar conduct in the future."); *SEC v. Coplan*,  2014 WL 695393, at *9 (S.D.

Fla. Feb. 24, 2014); *SEC v. Weintraub*, 012 WL 13012751, at *2 (S.D. Fla. Jan. 10, 2012) ("[G]iven

these circumstances, the Court shall issue an injunction to deter future violations."); *SEC v.

Converge Glob., Inc.*, 2006 WL 907567, at *6 (S.D. Fla. Mar. 10, 2006)("The Court has also taken

into account the deterrent effect of the permanent injunction and penny stock bar issued today.").

Courts that have considered the *Kokesh* analysis, in the context of injunctions and conduct

bars, and have applied the two-pronged analysis set forth by the Supreme Court, have concluded

that injunctions and bars operate as a penalty. *SEC v. Cohen*, 332 F. Supp. 3d 575, 595 (E.D.N.Y.

2018) (Because the SEC's requested obey-the-law injunction cannot be understood as "solely"

remedial, it is a penalty for purposes of § 2462).[41]  Likewise, *Kokesh* called into question the long

line of cases holding a bar or suspension to be "remedial" in nature.[42]

Here, as in *Cohen,* the Court should employ the *Kokesh* analysis to the instant case and

conclude that the injunction and the bar sought by the SEC (1) are not "solely" remedial; (2) would

seek to remedy wrongs committed against the United States, rather than an individual[43] (3) would

---

[41] *But see SEC v. Collyard*, 861 F.3d 760 (8th Cir. 2017) (finding under the facts of the case the injunction was not a penalty).  *Cohen* expressly disagreed with the "forward-looking" analysis employed in *Graham,* in light of the analysis set forth in *Kokesh. Id.* at 594-595. ("Thus, a remedy might have a solely forward-looking purpose—namely, to deter future violations of the securities laws—and nevertheless be a penalty under *Kokesh*.")

[42] *Saad v. SEC*, 873 F.3d 297, 304 (D.C. Cir. 2017) (remanded with instructions for Commission to consider impact of *Kokesh* on sanction authority).  As Justice Kavanaugh states in his concurring opinion: "[W]e ordinarily must stick with our precedents. But here, the Supreme Court's recent decision in *Kokesh* means that we can no longer characterize an expulsion or suspension as remedial. After the Supreme Court's decision in *Kokesh*, in other words, our precedents characterizing expulsions or suspensions as remedial are no longer good law."

[43] Indeed, the Complaint does state that any individuals were damaged or harmed by the conduct at issue.

function primarily or even in part to "stigmatize" Mr. Eldred in the eyes of the public. *Cohen,* 332 F. Supp. 3d at 594.

As to Mr. Eldred, the majority of the SEC's claims are time-barred as more than five years have elapsed.  The conduct at issue occurred in connection with the Form 211 applications submitted on behalf of the five Harrison/Fan/Daniels companies.  Taking those allegations to be true, for purposes of this motion, the allegedly violative conduct occurred, at the latest, on the date that each Form 211 was cleared by FINRA.  (¶ 102).  The applicable time period for each company is summarized in the following chart:[44]



Because more than five years have passed since that date as to all companies other than TTB/Ibex and Purple Real, the allegations with regard to those companies must be dismissed.

## III.   CONCLUSION

For the foregoing reasons, Mr. Eldred respectfully requests that the Court dismiss the Complaint with prejudice and grant any other such relief as it deems proper.

---

[44] The claims were tolled from September 4, 2018 – December 31, 2018.  Tolling periods are indicated in black.

Respectfully submitted this 22nd day of April, 2019.

                              */s/Alan M. Wolper*
                              Alan M. Wolper (FL Bar No. 61524)
                              Heidi E. VonderHeide (admitted *pro hac vice*)
                              **ULMER & BERNE LLP**
                              500 W. Madison, Suite 3600
                              Chicago, Illinois 60661
                              awolper@ulmer.com
                              Tel: (312) 658-6500
                              Fax: (312) 658-6501

                              Anna Patricia Morales Christiansen (FL Bar.
                              No. 27634)
                              **SPARTAN SECURITIES GROUP, LTD.,**
                              15500 Roosevelt Blvd, Suite 303
                              Clearwater, FL 33760
                              Tel: 727-502-0508
                              Fax: 727-502-0858
                              pmorales@spartansecurities.com

                              ***Counsel for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing **DEFENDANT MICAH J. ELDRED'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW** on April 22, 2019, via the Court's electronic filing system, on all counsel of record.


*/s/ Alan M. Wolper*

CHI2009:1977373v9
35856.00008