# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

U.S. SECURITIES AND EXCHANGE
COMMISSION,

     Plaintiff,

v.                                                                    Case No: 19-cv-448-T-33CPT

SPARTAN SECURITIES GROUP, LTD.
ISLAND CAPITAL MANAGEMENT,
CARL E. DILLEY, MICAH J. ELDRED and
DAVID D. LOPEZ,

     Defendants.

**DEFENDANTS SPARTAN SECURITIES GROUP, LTD., ISLAND CAPITAL
MANAGEMENT, CARL E. DILLEY, AND DAVID D. LOPEZ'S MOTION TO DISMISS
<u>PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW</u>**

Alan M. Wolper
Heidi E. VonderHeide (admitted *pro hac vice*)
**ULMER & BERNE LLP**
500 W. Madison, Suite 3600
Chicago, Illinois 60661
awolper@ulmer.com
hvonderheide@ulmer.com
Tel: (312) 658-6500
Fax: (312) 658-6501

Anna Patricia Morales Christiansen (FL Bar. No. 27634)
SPARTAN SECURITIES GROUP, LTD.,
15500 Roosevelt Blvd, Suite 303
Clearwater, FL 33760
Tel: 727-502-0508
Fax: 727-502-0858
pmorales@spartansecurities.com

**Counsel for Defendants.**

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................. iii

I.   Summary of Argument ................................................................................................. 1

   A.   A Brief Overview of the Form 211 and DTC Processes ............................................. 1

   B.   The Role of a Transfer Agent ...................................................................................... 4

   C.   Related Prosecution of the Actual Fraudsters ............................................................. 5

   D.   Defendants' Connection................................................................................................ 5

II.  Argument ...................................................................................................................... 7

   A.   All Claims Against Spartan, Island, Mr. Lopez and Mr. Dilley Should Be Dismissed
      Because Plaintiff Has Failed To Comply With Federal Rules Of Procedure 8(a) and
      9(b)................................................................................................................................. 7

      1.   Plaintiff's Conclusory Allegations Compel Dismissal Under Rule 8(a) ............... 7

      2.   Plaintiff's Fraud-Based Claims Should Be Dismissed For Failure to Plead Fraud
          with Particularity under Rule 9(b) ........................................................................ 8

   B.   The Complaint is an Improper "shotgun pleading" ..................................................... 9

   C.   Plaintiff's Claims Should be Dismissed Pursuant to Federal Rule of Civil Procedure
      12(b)(6) for Failing to State a Claim........................................................................ 10

      1.   The Sections 17(a) and 10b-5(b) claims should be dismissed because the SEC has
          failed to allege Defendants "made" a "material" misrepresentation to the investing
          public.  (Counts 3 and 6).................................................................................... 10

          a.   Neither Spartan, Island, nor Mr. Dilley "made" a statement."..................... 11

          b.   Any statements attributable to Spartan or Mr. Dilley are not material. ........ 12

          c.   None of the identified statements was made to the investing public. ........... 15

          d.   No evidence of scienter. ................................................................................ 16

   D.   The Complaint does not allege that Defendants acted with the requisite scienter.
      (Counts 3 and 5-7) ..................................................................................................... 16

      1.   Insufficiency of "Red Flags" Identified in the Complaint ................................... 17

          a.   Red Flags arising out of the public filings with the SEC. ............................ 18

              i.   "Red Flags" arising out of communications with Mirman or Rose....... 21

   E.   Failure to State a Claim For Aiding and Abetting (Counts 2 and 8-13) .................... 23

      1.   The Complaint Fails to Allege "Recklessness" .................................................... 23

      2.   The Complaint fails to allege "substantial assistance" ........................................ 24

   F.   No Scheme Liability (Counts 3- 5 and 7) ................................................................. 26

   G.   The Complaint Fails To Allege A Section 5 Violation............................................. 27

1.  According to the Complaint, Registration Statements had been filed for all Companies................................................................................................. 27

2.  No Facts Supporting Indirect Seller liability under Section 5 ............................. 28

H.  The Majority of the Conduct at Issue is Time Barred ................................................. 31

III.  Conclusion ...................................................................................................................... 35

# TABLE OF AUTHORITIES

## CASES

*Aaron v. SEC*, 446 U.S. 680 (1980) ................................................................ 16

*American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010) .................................... 7

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ....................................................... 7, 8

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988) ................................................................ 12

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ................................................. 10

*Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 (11th Cir. 1999) .................................... 20

*Butterworth v. Quick & Reilly, Inc.*, 998 F.Supp. 1404 (M.D. Fla. 1998) ................................. 14

*Cutsforth v. Renschler*, 235 F.Supp. 2d 1216 (M.D. Fla. 2002) .................................... 14

*Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955 (11th Cir. 2008) .................................... 7

*Gabelli v. SEC,* 133 S. Ct. 1216 (2013) ................................................................ 31

*Greenberg v. Bear, Stearns & Co.,* 220 F.3d 22 (2d Cir. 2000) .................................... 25

*Harris v. Ivax Corp.,* 182 F.3d 799  (11th Cir. 1999) .................................... 20

*Investors Research Corp. v. SEC,* 628 F.2d 168 (D.C. Cir. 1980) ................................. 24

*Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) ................................. 11

*KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d 1269 (S.D. Fla. 2017) .................................... 12

*Kokesh v. SEC*, 137 S. Ct. 1635 (2017) ................................................ 31, 32, 33

*La Grasta v. First Union Secs. Inc.,* 358 F.3d 840 (11th Cir. 2004) .................................... 20

*Lawrence v. Bank of America, N.A.,* 2010 WL 3467501 (M.D. FL Aug. 30, 2010) ............. 24, 25

*Miyahira v. Vitacost.com, Inc.*, 2012 WL 12895513 (S.D. Fla. June 28, 2012), ........................ 14

*Mizzaro* v. *Home Depot, Inc.,* 544 F.3d 1230 (11th Cir. 2008) ................................ 17, 19

*Mogensen v. Body  Corp.*, 15 F.Supp. 3d 1191, 1211 (M.D. Fla. 2014) .................................... 14

*Nelson v. Hodowal*, 512 F.3d 347, 350 (7th Cir. 2008) ................................................. 14

*Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) .................................... 16

*Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ........................................ 10

*Ply Gem Holdings, Inc. Sec. Litig.*, 135 F. Supp. 3d 145, 150–51 (S.D.N.Y. 2015) .................... 12

*Saad v. SEC*, 873 F.3d 297 (D.C. Cir. 2017) ............................................................ 33

*SEC v. Apuzzo*, 689 F.3d 204 (2d Cir. 2012) ....................................................... 25

*SEC v. Bankatlantic Bancorp, Inc.*, 2012 WL 1936112 (S.D. Fla. May 29, 2012)) ...................... 8

*SEC v. Berry,* 580 F.Supp. 2d 911 (N.D. Cal. 2008) ...................................... 26

*SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786 (11th Cir. 2015).......................................23

*SEC v. Calvo,* 378 F.3d 1211 (11th Cir. 2004) ....................................................................... 27, 28

*SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248 (9th Cir. 2013) ......................................27, 29, 30

*SEC v. Cohen*, 332 F. Supp. 3d 575 (E.D.N.Y. 2018) ..............................................................32, 33

*SEC v. Collyard*, 861 F.3d 760 (8th Cir. 2017) .............................................................................33

*SEC v. Conrad*, 2017 WL 3485766  (N.D. Ga. Feb. 22, 2017) .....................................................24

*SEC v. Converge Glob., Inc.*, 2006 WL 907567 (S.D. Fla. Mar. 10, 2006) ..............................32

*SEC v. Coplan,*  2014 WL 695393 (S.D. Fla. Feb. 24, 2014) .......................................................32

*SEC v. Fraser*, 2010 WL 5776401 (D. Ariz. Jan. 28, 2010)........................................................26

*SEC v. Gane,* 2005 WL 90154 (S.D. Fla. Jan. 4, 2005)................................................................32

*SEC v. Graham*, 823 F.3d 1357 (11th Cir. 2016) ...................................................................31, 33

*SEC v. Holschuh*, 694 F.2d 130 (7th Cir. 1982) ...........................................................................28

*SEC v. Levin*, 2013 WL 5588224 (S.D. Fla. Oct. 10, 2013) ........................................................24

*SEC v. Lucent Techs., Inc.*, 363 F. Supp. 2d 708 (D.N.J. 2005)..................................................24

*SEC v. Merch. Capital, LLC,* 483 F.3d 747 (11th Cir. 2007) ......................................................11

*SEC v. Murphy,* 626 F.2d 633  (9th Cir. 1980)...............................................................28, 29, 30

*SEC v. Parnes*, 2001 WL 1658275 (S.D.N.Y. Dec. 26, 2001) ......................................................8

*SEC v. Power,* 525 F. Supp. 2d 415 (S.D.N.Y. 2007) ...................................................................8

*SEC v. Radius Capital Corp*., 2013 WL 3716394 (M.D. Fla. July 15, 2013) ............................33

*SEC v*. Rio Tinto, 2019 WL 1244933 (S.D.N.Y. Mar. 18, 2019)..................................................24

*SEC v. Roanoke Tech. Corp.*, 2006 WL 2470329 (M.D. Fla. Aug. 24, 2006) ............................14

*SEC v. Solow*, 2007 WL 917269 (S.D. Fla. Mar. 23, 2007) ......................................................8, 9

*SEC v. Surgilight*, 2002 WL 3161908 (M.D. FL Oct. 15, 2002)..................................................25

*SEC v. Teo,* 746 F.3d 90, 102 (C.A.3 2014) .................................................................................32

*SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 860–62 (2d Cir. 1968)........................................16

*SEC v. Thompson,* 238 F.Supp. 3d 575, 591 (S.D.N.Y. 2017)......................................................18

*SEC v. Weintraub*, 012 WL 13012751, at *2 (S.D. Fla. Jan. 10, 2012) .......................................32

*SEC v. Wey,* 246 F.Supp. 3d 894, 911 (S.D.N.Y. 2017)...............................................18, 24, 25

*SEC v. RPM Int'l, Inc*., 282 F.Supp. 3d 1, 13 (D.D.C. 2017) .....................................................18

*Semerenko v. Cendent Corp.,* 223 F.3d 165 (3rd Cir. 2000) ........................................................16

*Simpson v. AOL Time Warner, Inc.,* 452 F.3d 1040  (9th Cir. 2006) ...........................................26

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506  (2002)....................................................................10

*Thompson v. RelationServe Media, Inc.,* 610 F.3d 628 (11th Cir. 2010) .............................. 13, 20

*Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273 (11th Cir. 2006) .................................. 8, 9

*Woods v. Barnett Bank of Fort Lauderdale,* 765 F.2d 1004 (11th Cir. 1985) ............................ 23

*Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 94–95 (5th Cir. 1975*)* ............................ 24, 26

## STATUTES

15 U.S.C. §77e ("Section 5") ...................................................................... 27, 28, 29, 30

15 U.S.C. §77q(a) ("Section 17(a) of the Securities Act") ............................................... 11, 16, 18

28 U.S.C. § 2462 ........................................................................................................ 31

## RULES AND REGULATIONS

§ 240.15c2–11 ("Rule 211") ........................................................... 1, 2, 3, 6, 13, 21, 25

17 C.F.R. §231.144 ("Rule 144") ............................................................................ 29

17 C.F.R. § 230.156(b) ......................................................................................... 12

17 C.F.R. §230.405 .............................................................................................. 18

17 C.F.R. §230.419 .............................................................................................. 18

17 C.F.R. §240.3a51-1 .......................................................................................... 18

17 C.F.R. §240.10b-5(a) ("Rule 10b-5(a) of the Exchange Act") ............................. 10, 16, 18, 26

17 C.F.R. §240.10b-5(b) ("Rule 10b-5(b) of the Exchange Act") ................................ 10, 16, 18

17 C.F.R. §240.10b-5(c) ("Rule 10b-5(c) of the Exchange Act") ............................ 10, 16, 18, 26

Fed. R. Civ. P. Rule 8(a) ................................................................................. 7, 17

Fed. R. Civ. P. Rule 9(b) ..................................................................... 1, 3, 6, 8, 13, 15, 21, 25

Fed. R. Civ. P Rule 12(b)(6) ............................................................................. 10, 15

FINRA Rule 6432 ............................................................................................... 3

NASD Rule 5250 ................................................................................................ 25

## OTHER AUTHORITIES

NASD Notice to Members 92-50, Procedures Regarding Securities and Exchange Commission
Rule 15c2-11 and Schedule H, Section 4 of the NASD By-Laws
http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=1675 ... 2, 13

U.S. Securities and Exhange Commission Edgar Company Filings:
https://www.sec.gov/edgar/searchedgar/companysearch.html ..................................... 14, 20, 22

Pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Island, Spartan, Mr. Dilley and Mr. Lopez ("Defendants")[1] hereby move to dismiss each claim alleged in the Complaint and respectfully submit the following memorandum of law in support.

## I.       SUMMARY OF ARGUMENT

Plaintiff alleges that each Defendant knowingly or recklessly failed to detect certain "red flags" purportedly indicative of a secret fraud being perpetrated by certain third parties. Despite its length, the Complaint lacks the necessary substantive and organizational specificity under the Federal Rules, making it impossible to determine which "red flags" support which Count.

Instead of making sufficient factual allegations, Plaintiff instead merely insinuates that Spartan, in filing a Form 211 application for each of the underlying issuers, and Island, by following share transfer directives from issuers has, through their respective principals, violated or aided and abetted a violation of the federal securities laws. Insinuation aside (as is required for Rule 12(b) motions), the Complaint fails to set forth facts sufficient to support its allegations.

### A.       A Brief Overview of the Form 211 and DTC Processes.

A brief overview of the landscape is a good starting point, given that this case arises in a niche area of the securities world. Spartan is a broker-dealer, registered with FINRA, and an active "market maker." One of its lines of business is to file Rule 211 applications with FINRA in order to publish quotations for reporting public companies.

A Form 211 application is a mere seven pages in length. Pursuant to SEC Rule 15c2-11, market maker broker-dealers submit the Form to FINRA asking for "clearance" to initiate a public quotation of an issuer's securities on a registered, public secondary market (as opposed to a

---

[1] Mr. Eldred has filed a separate Motion to Dismiss and is excluded from the definition of "Defendants" in the limited context of this motion.

national exchange like the Nasdaq or NYSE).  This is true even in the case of a public reporting company (meaning a registration statement is on file with and has already been made effective by the SEC).  FINRA, in response to the application, almost always responds with additional questions and/or requests for information about the issuer.  Once FINRA is satisfied with the information received, it will "clear" the application, allowing the shares to be publicly quoted and traded.

SEC Rule 15c2-11 specifically sets forth what the broker-dealer must do prior to initiating the quotation.   The broker-dealer must: (1) gather and maintain certain information regarding the issuer, and (2) have a "reasonable basis" for believing that the information is accurate in all "material" respects.[2]   A broker-dealer satisfies its first obligation (to gather and maintain information) if it "has, in its possession, a prospectus as defined by Section 10(a) of the Securities Act[] that has been filed with the Commission and which has been in effect less than 90 calendar days."  NASD Notice to Members 92-50.[3]  A broker-dealer satisfies the second requirement under Rule 211 (a "reasonable basis" for believing that information to be materially accurate) when it obtains that information from the issuer, an agent of the issuer, or from a document publicly filed with the Commission[4] and where no "material deficiencies" in the information have been

---

[2] § 240.15c2–11(a):  "As a means reasonably designed to prevent fraudulent, deceptive, or manipulative acts or practices, it shall be unlawful for a broker or dealer to publish any quotation for a security … unless such broker or dealer has in its records the documents and information required by this paragraph … and, based upon a review of the paragraph (a) information together with any other documents and information required by paragraph (b) of this section, has a reasonable basis under the circumstances for believing that the paragraph (a) information is accurate in all material respects, and that the sources of the paragraph (a) information are reliable.

[3]   http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=1675   (last   visited 4/18/19).

[4] *Id.* ("Generally, a broker/dealer can be satisfied that information is obtained from a reliable source if it is received from the issuer or its agents, or was obtained from an independent information service such as the Commission's public reference room."

detected.[5]  "Material deficiencies" generally relate to the financial condition of the issuer.[6]  Assuming that the broker-dealer has compiled the requisite information about the issuer and no material deficiencies are detected, the broker-dealer has satisfied its obligations under Rule 211.

Because SEC Rule 15c2-11 allows broker-dealers to initiate price quotations based on an issuer's public filings, there is no requirement that the broker-dealer have any contact with the issuer itself.  If the information required by the Rule or requested by FINRA in the process can be obtained through public filings, the broker-dealer is specifically permitted to rely upon the accuracy of that information and base its price quotation on the same.  Thus, while the broker-dealer is allowed to seek (and rely on) information obtained from the issuer, Rule 15c2-11 does not obligate them to do so.

To ensure that quotations are based solely on the qualities of the issuer – and not on some other motivation – FINRA Rule 6432 prohibits broker-dealers from receiving **any** compensation for filing a Form 211.[7]  This means that Spartan filed the Form 211 applications at issue in this case, potentially subjecting itself to the sweeping liability the SEC seeks to impose, for free.

Once FINRA clears a Form 211, which allows market makers to quote the issuer's shares in the public secondary market, a DTC Participant Clearing Firm submits an application to DTC[8] requesting that the shares be made DTC eligible.  DTC eligibility allows the (now publicly quoted)

---

[5] *Id.* ("Ordinarily the broker/dealer need not do any further review unless a potential material deficiency has been detected. Examples of potential material deficiencies are material inconsistencies in the information or between the information and other information in the broker/dealer's possession, a qualified auditor's report, a recently acquired asset that materially enhances the financial condition of the issuer, or a material asset listed on the balance sheet that is unrelated to the issuer's business.")

[6] *Id.* ("Examples of potential material deficiencies are material inconsistencies in the information or between the information and other information in the broker/dealer's possession, a qualified auditor's report, a recently acquired asset that materially enhances the financial condition of the issuer, or a material asset listed on the balance sheet that is unrelated to the issuer's business.")

[7] FINRA Rule 6432.

[8] Depository Trust Corporation.

shares to be held at DTC electronically as a custodian for broker-dealers depositing those shares on their own behalf or on behalf of their clients. DTC eligibility also allows for transactions in the public secondary market to be efficiently settled between brokerage firms (DTC guarantees settlement of DTC eligible securities). Nearly all publicly traded securities in the United States are DTC eligible. None of the Defendants here had any role in the DTC process. Spartan does not and cannot submit information to DTC; rather, Spartan merely transmits certain information to the DTC Participant Clearing Firm, upon request.

Unlike the limited obligations placed on a broker-dealer which submits a Form 211 application to review the information supplied by or on behalf of an issuer, a DTC Participant Clearing Firm is required to conduct broad due diligence of the information it receives (from any source) before submitting the application to DTC for approval and is required to represent and warrant that (1) the issuer complies with all securities rules and regulations, (2) the securities being made eligible are either registered or exempt from registration, and (3) all information provided on or with the application is true, accurate and correct. The DTC application for almost all of underlying companies was approved. None of the DTC Participant Clearing Firms has been charged for due diligence failures in connection with these frauds.

B.     The Role of a Transfer Agent.

Transfer agents, like Island, are agents of the issuer, not the individual shareholders of the issuer. They are regulated, primarily, by the state Uniform Commercial code ("UCC"), which governs the (very tight) timeline by which a transfer agent must comply with a share transfer directive received from the shareholder. Essentially, they are professional record keepers who perform the ministerial function of recording share ownership, at the direction of the issuer, to assist in the facilitation of settlement of securities. Transfer agents do not "carry" accounts, as broker-dealers sometimes do, nor do they play a similar role in the sales transaction, such as

recommending or soliciting purchases/sales or making suitability determinations.  Instead, only after a purchase decision has been made, and an agreement reached between buyer and seller, does the transfer agent become involved at all.

## C.    Related Prosecution of the Actual Fraudsters.

The Complaint alleges two separate fraudulent "schemes."  In the first fraudulent scheme, Alvin Mirman and Sheldon Rose assisted companies to prepare and file registration statements with the SEC representing that the companies were legitimate start-up businesses (i.e., not shell companies), looking to raise money to fund their operations and business objectives.  Years later, the SEC found Mirman and Rose guilty of fraud, finding that the representations in those filings were false, and that the companies which *looked like* start-ups lied in their securities filings with regard to their true business intentions.  Specifically, contrary to the representation that each company intended to continue operations (and had no merger intentions), each company secretly intended to sell itself once it attained public status to a buyer who wanted the entity *not* for its claimed operational value or business objectives, but, rather, for its value merely as a publicly traded entity.

In the second fraudulent scheme, Harrison and Daniels are alleged to have had the same intention (selling public companies), but implemented it in a different manner.  The Harrison companies were primarily operational businesses with existing operations and revenues.  Harrison is accused of fabricating the underlying information necessary to take those companies public so that they could then be sold, not for their operational value but for their value as public entities.

## D.    Defendants' Connection.

None of the Defendants in this proceeding worked for any of the issuers as an employee, officer, director, attorney, auditor or accountant, i.e., in a role that provided access to what the entity was intending or doing.  All Spartan did was file the Form 211, a process that, as noted

above, predominantly involves the collection of material to support the ultimate public quotation, and which is done for no remuneration.  Mr. Dilley was the primary contact at Spartan for the Mirman and Rose Companies.[9]   The Complaint alleges that, as a result of a handful of communications and alleged "red flags," Mr. Dilley (and, therefore, Spartan) should have known the underlying entities were not what they represented themselves to be in their public filings.

As to Island, the SEC alleges that these same red flags should have caused Island to impose a restrictive legend on the securities, thereby blocking the contemplated transfer from buyer to seller.  The SEC's problem is twofold.  *First*, there is no law obligating or authorizing a transfer agent to *sua sponte* impose a restrictive legend on securities contrary to the direction of the issuer which has represented those securities were free trading.  Imposing this obligation upon a transfer agent is a truly breathtaking expanse of prosecutorial power, unsupported by statute, regulation, or case law. *Second*, the SEC has failed to plead facts sufficient to establish this novel theory.

Finally, there is one more defendant, David Lopez, Spartan's Chief Compliance Officer.  Mr. Lopez is accused of aiding and abetting Spartan in violating Rule 15c2-11.  The SEC alleges generally that Mr. Lopez was a "substantial factor" in Spartan's "failure to have a "reasonable basis" for believing the information received from the companies was accurate because Mr. Lopez (1) was the CCO and (2) "personally undertook responsibility for much of the Form 211 process" for the Mirman/Rose companies.  (¶ 9).[10] The Complaint fails to articulate any facts, however, to support this general allegation, i.e., to state when or how Mr. Lopez "personally undertook responsibility" or how his (unspecified) conduct supports the elements of the sole allegation levied against him.

---

[9] Because Mr. Eldred was the primary contact at Spartan for the Harrison companies, the facts and allegations relating to those charges are addressed in the contemporaneous motion filed by Mr. Eldred.

[10] All paragraphs cited in this Motion refer to the Complaint filed February 20, 2019.

Indeed, with respect to all the charges set forth in the Complaint, when the legal conclusions are stripped away, and only the actual facts are reviewed in the context of the specific Counts they purport to support, the glaring cracks in the Complaint emerge and the inferences the SEC seeks to draw are obviously untenable.

Accordingly, for the reasons set forth below, the Complaint should be dismissed.

## II.    ARGUMENT[11]

### A.    All Claims Against Spartan, Island, Mr. Lopez and Mr. Dilley Should Be Dismissed Because Plaintiff Has Failed To Comply With Federal Rules Of Procedure 8(a) and 9(b).

#### 1.    Plaintiff's Conclusory Allegations Compel Dismissal Under Rule 8(a).

The Complaint is required to comply with Rule 8(a), which mandates dismissal when it fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (factual allegations must rise to a right to relief above the speculative level; they must plausibly suggest a violation of law).  A complaint should be dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  In making that determination, courts may "infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

---

[11] Mr. Eldred has filed a motion to dismiss Counts 2-13 alleged against him.  To the extent the Complaint fails to state a claim against Mr. Eldred, it likewise fails to state a claim against Spartan by virtue of Mr. Eldred's conduct. Accordingly, to the extent Mr. Eldred's Motion to Dismiss is granted in whole or in part, the same claims should be dismissed as to Spartan.

As set forth, below, when the Complaint is stripped of its legal conclusions and formulaic recitation of the elements, it becomes clear that the SEC has offered no facts that would allow a reasonable fact-finder to conclude that Spartan, Island, Mr. Lopez or Mr. Dilley knew or should have known of the secret, fraudulent intent inside the minds of the underlying fraudsters, or that they substantially assisted in a scheme.[12]

## 2. Plaintiff's Fraud-Based Claims Should Be Dismissed For Failure to Plead Fraud with Particularity under Rule 9(b).

Because the SEC bases each claim for relief (both its fraud claims and non-fraud claims) on the allegation that Defendants engaged in fraudulent conduct, the SEC's allegations are subject to the heightened pleading standard of Fed. R. Civ. P 9(b) and must be stated with particularity. *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006).   In a case like this, where the SEC has conducted a lengthy investigation, courts apply Rule 9(b) rigorously.   *SEC v. Parnes*, 2001 WL 1658275, at *5 (S.D.N.Y. Dec. 26, 2001); *SEC v. Solow*, 2007 WL 917269, at *2 (S.D. Fla. Mar. 23, 2007) (Rule 9's heightened pleading standard also applies to securities-related fraud cases brought by the SEC).   This is true for the SEC's fraud claims (Counts 2-13) and its claims for rule violations which are premised on the same, alleged fraud (Counts 1 and 14). *SEC v. Power,* 525 F. Supp. 2d 415, 423 (S.D.N.Y. 2007).   In the securities context, courts have explained that Rule 9(b) requires the Complaint set forth (1) "precisely what statements or omissions were made"; (2) the time and place of each statement; (3) the manner in which they misled the investor; and (4) what the defendant obtained as a result of the fraud. *SEC v. Bankatlantic Bancorp, Inc.*, 2012 WL 1936112, at *8 (S.D. Fla. May 29, 2012) (emphasis in original) (*quoting Find What Inv. Grp. v. Findwhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011)).

---

[12] *Ashcroft*, 129 S. Ct. at 1949.

Here, the facts as pled fail to set forth any of the above information. Instead, the Complaint contains (1) repetitive legal conclusions alleging (but not pleading) that Defendants should have known something, and (2) a selection of "red flag" communications and interactions, spread across two different entities and processes (i.e., the Form 211 process handled by broker-dealers and the share transfer process done by transfer agents), 19 different issuers, a five-year period, and an unspecified number of share transfers.  The SEC fails to set forth facts sufficient for Defendants (much less the Court) to determine which red flags supposedly give rise to which purported violations.  Beyond that, the Complaint fails to set forth facts sufficient to show that these red flags, taken alone or viewed cumulatively, were sufficient to give rise to an inference that the Defendants "should have known" of the underlying fraud.

In light of these failures, the Complaint should be dismissed.

### B.       The Complaint is an Improper "shotgun pleading."

"Shotgun pleadings are those that incorporate every antecedent by reference into each subsequent claim for relief." *Wagner*, 464 F.3d at 1279.  The Eleventh Circuit has held that shotgun pleadings do not satisfy Rule 9(b)'s pleading standards.  *Id.* at 1280.  This includes instances where the SEC's complaint re-alleges all factual paragraphs in the pleading into each count, with no effort to state with particularity which specific factual allegations apply to which claim for relief, leaving Defendants unable to discern the exact nature of the charges. *Solow*, 2007 WL 917269, at *3.

Here, each of the 14 counts repeats and incorporates paragraphs one through 122, which contain ***all*** factual allegations, irrespective of which Defendant, issuer, time period, or "scheme" to which they relate.  Defendants are unable to determine, and are therefore left to speculate, as to which of the factual allegations are directed toward which count.  For this reason alone, the Complaint should be dismissed in its entirety.

**C.**   **Plaintiff's Claims Should be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6) for Failing to State a Claim.**

Pursuant to Rule 12(b)(6), dismissal of a claim for relief is appropriate where the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A plaintiff has an obligation to state the factual basis for its claim for relief and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555-56 (2007) (citations omitted). Pleadings may not contain a statement of facts that merely creates a suspicion of a legally cognizable right of action assuming that all the allegations in the complaint are true. *See, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1 (2002).

Thus, in resolving a motion to dismiss, a court should employ a two-pronged approach, first "identifying and disregarding statements" that are merely "'legal conclusion[s] couched as ... fact[ ]' " or "[t]hreadbare recitals of the elements of a cause of action." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (citations omitted). Next, the remaining, non-conclusory, factual allegations in the complaint are analyzed as though they are true. *Id.*

**1.**   **The Sections 17(a) and 10b-5(b) claims should be dismissed because the SEC has failed to allege Defendants "made" a "material" misrepresentation to the investing public.  (Counts 3 and 6).**

Count 6 alleges that Spartan, Island, and Dilley are liable for violations of Section 10(b) and Rule 10b-5(b) of the Exchange Act.  To state a cause of action for a primary violation of Section 10(b) and Rule 10b-5, the SEC must prove that Defendants: "(1) made a material representation or a material omission as to which [they] had a duty to speak, or used a fraudulent

device; (2) with scienter; (3) in connection with the purchase or sale of securities." *SEC v. Merch. Capital, LLC,* 483 F.3d 747, 766 (11th Cir. 2007).[13]

> a.      **Neither Spartan, Island, nor Mr. Dilley "made" a statement."**

The first element of this claim requires evidence that the defendant "made" some material misrepresentation or omission. *Id.* In *Janus*, the Supreme Court explained what it means to "make" a statement within the meaning of that prohibition:

> For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not "make" a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker.

*Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). In *Janus,* the Rule 10b-5(b) elements were not established because the investment advisor merely "participate[d] in the drafting of the false statement" which another, independent entity decided to make.

Here, there is no allegation of any material misstatement "made" by these Defendants. At most, the Complaint alleges that Spartan, through Mr. Dilley, passed along statements made by the issuer – an independent entity.[14] Because none of those statements was "made" by Spartan or Mr. Dilley, but were instead made by the issuer, they cannot be used to satisfy the first element of a 10b-5 claim. The claim should be dismissed.

Furthermore, because the Complaint does not identify a single statement made by Island, Counts 3, 4 and 6 should be dismissed as to Island.[15]

---

[13] This element is also required to state a claim under 17(a)(1) and (a)(3) to the extent those allegations in the Complaint rest on a purported statement or omission. *Merch. Capital, LLC*, 483 F.3d at 766.

[14] *See* ¶ 62, 63, 68, 69.

[15] ¶ 81-99.

### b.    Any statements attributable to Spartan or Mr. Dilley are not material.

To the extent the Complaint does identify a statement attributable to Spartan or Mr. Dilley, it is not material.  "[T]o fulfill the materiality requirement 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.'" *Basic Inc. v. Levinson*, 485 U.S. 224, 239 (1988) *quoting TSC Industries, Inc. v. Northway, Inc*., 426 U.S. 438, 449 (1976).  In determining whether a fact is "material," it must be examined in the "context in which it is made." 17 C.F.R. § 230.156(b).  A complaint may be dismissed for failure to plead materiality where the fact is so "obviously unimportant" to a reasonable investor that reasonable minds could not differ on the questions of its importance. *In re Ply Gem Holdings, Inc. Sec. Litig*., 135 F. Supp. 3d 145, 150–51 (S.D.N.Y. 2015); *In re KLX, Inc. Sec. Litig*., 232 F. Supp. 3d 1269, 1275–76 (S.D. Fla. 2017) ("Courts routinely examine the materiality of alleged misstatements and omissions at the pleading stage").

Out of the 191 paragraphs in the Complaint, the only "statements" that are arguably attributed to Spartan or Mr. Dilley are those made in the cover letter that accompanied the Form 211 the application, and they are:[16]

- Spartan had been contacted by the owner of the company;

- The issuer was "not working with any consultants."

- Spartan had no other relationships with the issuer or its representatives; and

- The officers and directors of the issuer have not requested a quotation on any other listing.

- The issuer was not "in negotiations for any actual or potential merger or acquisition" despite Dilley being aware that <u>one </u>of the companies (Kids Germ) "had been available for sale."

---

[16]¶ ¶ 58, 60, 61, 62, 79, 80.

Putting aside, for purposes of this motion, the truth or falsity of the SEC's allegations, these statements are not material.  Rule 15c2-11 requires that broker-dealers gather and maintain certain information regarding a company for which it submits a published quotation.[17]  The information required is listed in subpart (a) of the Rule.  § 240.15c2–11(a)(1).  In gathering and reviewing the information required by the Rule, it is merely necessary to have a "reasonable basis" for believing that the information is accurate in all "material" respects.  § 240.15c2–11(a).  A broker-dealer "satisfies the Rule if it has, in its possession, a prospectus as defined by Section 10(a) of the Securities Act[] that has been filed with the Commission and which has been in effect less than 90 calendar days."  NASD Notice to Members 92-50, Procedures Regarding Securities and Exchange Commission Rule 15c2-11 and Schedule H, Section 4 of the NASD By-Laws. [18]

Nothing in Rule 15c2-11 requires that the broker-dealer disclose the information identified in the Complaint.  Since disclosure of that information is not required under Rule 211, it is not "material" to the ultimate investor deciding whether or not to invest in the underlying company. *Thompson v. RelationServe Media, Inc*., 610 F.3d 628, 681 (11th Cir. 2010) (A duty of disclosure only arises when an "omitted fact was necessary to render a preexisting statement not misleading, or because securities law otherwise required its disclosure.")

*Second,* there is no "substantial likelihood" that one of these "statements" would have "significantly altered" the "total mix" of information available to a "reasonable investor" looking to purchase the underlying company (or a share in the underlying company).  Reasonable investors do not base their investment decisions on, for example, who first contacted the broker-dealer to

---

[17] § 240.15c2–11(a).
[18] http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=1675 (last visited Apr. 18, 2019).

assist with Form 211.  Indeed, the Form 211 application process, unlike the registration process,[19] is private.  No investors are ever made aware of either the questions FINRA asks or the information the issuer returns.  Thus, it is impossible for these statements to have had any impact at all on a potential investor, let alone a "significant" impact.  *Cutsforth v. Renschler*, 235 F.Supp. 2d 1216, 1245 (M.D. Fla. 2002) ("[I]t hardly seems to suggest fraud that the defendants did not disclose that some sales representatives somewhere (maybe in Texas) were taking handwritten orders without entering them into the computer system.");  *SEC v. Roanoke Tech. Corp.*, 2006 WL 2470329, at *4 (M.D. Fla. Aug. 24, 2006) (SEC cannot merely declare information material but instead must explain why a reasonable investor would have wanted to know the information.); *Mogensen v. Body Corp.*, 15 F.Supp. 3d 1191, 1211 (M.D. Fla. 2014); *Butterworth v. Quick & Reilly, Inc.*, 998 F.Supp. 1404, 1411 (M.D. Fla. 1998) ("Plaintiff has failed to establish that the Defendant's failure to file a change of address form…is a material misrepresentation or omission. In fact, it is very unlikely that the disclosure of this fact would have been viewed by the "reasonable investor" as significantly altering the "total mix" of information made available to them.") *Miyahira v. Vitacost.com, Inc.*, 2012 WL 12895513, at *7 (S.D. Fla. June 28, 2012), *aff'd,* 715 F.3d 1257 (11th Cir. 2013); *Nelson v. Hodowal*, 512 F.3d 347, 350 (7th Cir. 2008) ("information that, when revealed, has no effect on the stock's price is not 'material' to investors' decisions").

*Third,* and specifically with regard to the allegation that *each* Form 211 cover letter misrepresented that the issuer was not "in negotiations for any actual or potential merger or acquisition,"[20] the Complaint is entirely devoid of facts supporting the conclusory allegation that this representation is misleading.  In fact, the Complaint pleads the opposite.  Contrary to the

---

[19] Communications exchanged between issuers and the SEC as they attempt to get their public registration declared effective are publicly available alongside all filings at www.sec.gov/edgar.

[20] ¶¶ 37, 40, 42, 50, and 62.

conclusory representation in ¶ 62, (alleging that Spartan or Mr. Dilley made misrepresentations in the cover letter submitting the Form 211 application),   paragraphs 37, 40, 41, 47, 48, 50 (which contain the supporting factual allegations) each specifically allege Spartan "learned" of the issuers' merger intent *after* the Form 211 application had been cleared.  None of the allegations in the complaint contain facts sufficient to show that, *at the time the statement in the application was transmitted to FINRA*, Mr. Dilley or Spartan knew or should have known it was untrue.

Moreover, the Complaint alleges generally that *each* of the Form 211 cover letters made this same misrepresentation, but only identifies *one* instance where Mr. Dilley purportedly had knowledge of a "negotiations for [an] actual or potential merger" at the time the application was pending. ¶ 62.[21]  Even with regard to the one identified instance, the conclusory allegation contained in ¶ 62 is insufficient to raise a "strong inference" of Mr. Dilley or Spartan's knowledge, as required under Rule 9(b).  As noted above, the moment of "knowledge" identified by the SEC comes long after the Form 211 application was submitted.  Additionally, and putting Kids Germ aside, there are no facts in the complaint to support the general, conclusory allegation in ¶ 62 as to the 13 other companies at issue.  These vague allegations fail to satisfy both Rule 9(b)'s particularity requirement and Rule 12(b)(6)'s requirement that then legal conclusions in the Complaint are supported by statements of fact that support them.

### c.       None of the identified statements was made to the investing public.

To meet the "in connection with" requirement, the SEC must set forth facts showing that "the misrepresentations in question were disseminated to the public in a medium upon which a reasonable investor would rely, and that they were material when disseminated." *Semerenko v.*

---

[21] That one instance, alleged generally in ¶ 62 is discussed in ¶ 37, where the SEC alleges that Spartan was aware that Kids Germ was "available for sale" at the time the Form 211 was cleared.  Being "available for sale," of course, is not tantamount to being "in negotiations for an actual….merger."

*Cendent Corp.,* 223 F.3d 165,175–76 (3rd Cir. 2000); *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 860–62 (2d Cir. 1968) (misrepresentations are made "in connection with" the purchase of sale of securities when the statements are made "in a manner reasonably calculated to influence the investing public").

As stated above, the statements identified in the Complaint were made to FINRA in connection with its review of the respective Form 211 applications.  Those communications are not public at the time they are made, or at any time thereafter.  Accordingly, the statements were not "disseminated" to the public or otherwise capable of "influencing" the public's investment decisions.  Thus, Counts 3 and 6 must be dismissed.

### d.    No evidence of scienter.

*See* Section III. B. immediately below. Because there are no factual allegations sufficient to show that that Spartan, Mr. Dilley or Island acted with scienter, Count 6 should be dismissed.

### D.    The Complaint does not allege that Defendants acted with the requisite scienter.  (Counts 3 and 5-7).

The claims brought under Section 17(a)(1) (Count 3) or any subpart of Rule 10(b)-5 (Counts 5 – 7) each require that the SEC establish that Defendants acted with *scienter* or a "strong inference of fraudulent intent." *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (internal punctuation omitted); *Aaron v. SEC*, 446 U.S. 680, 697 (1980).  Fraudulent intent may be established either (a) by alleging facts to show that defendants had both motive[22] and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Novak,* 216 F. 3d at 307.  With regard to "recklessness," the Eleventh Circuit requires the SEC to establish "severe recklessness," which it defines as more than "merely

---

[22] As set forth above, Spartan was prohibited by law from accepting payment for its assistance in the Form 211 process.  Thus, the most common motive – financial gain – is conspicuously absent here.

simple or inexcusable negligence" and instead requiring "an extreme departure from the standards of ordinary care" that "present[s] a danger of misleading buyers or sellers" and which is "either known to the defendant or so obvious that he must have been aware of it."  *Mizzaro* v. *Home Depot, Inc.,* 544 F.3d 1230, 1238 (11th Cir. 2008).

The Complaint does not plead facts alleging scienter under the "particularity" standard of Rule 9(b) or the more general standard under Rule 8(a).  None of the red flags identified gives rise to the inference of unlawful conduct or recklessness.

### 1.    Insufficiency of "Red Flags" Identified in the Complaint.

The Complaint contains several purported "red flags" from which Plaintiff asks the Court to draw a *reasonable* inference of fraud, recklessness, or knowledge with regard to the 14 Mirman/Rose Companies.[23]   The timing of those supposed red flags, and which of the processes described above (and therefore which Defendant) is at issue, is of central importance.  The red flags during or relating to the Form 211 process fall into two categories: (1) purported red flags arising out of the statements contained in (or omitted from) the companies' public securities filings, and (2) purported red flags arising out of communications with  Mirman and Rose.

While the Complaint lists the 14 companies at issue and some relevant dates, it contains only sporadic, specific factual allegations as to the "who, what, when" of the respective fraud supposedly committed by each.  For companies where no specific facts are alleged, claims arising from those transactions should be dismissed under Rule 9(b) due to the total failure to comply with that Rule.  For the companies where such facts are pled, they are addressed herein.

---

[23] Defendants believe this term to be misleading.  At the time of these events, the companies were independent public entities.  Later, the SEC concluded they were "controlled" by Mirman or Rose and it coined this moniker.  For continuity and clarity, this motion adopts the Complaint's terminology that appears in ¶ 30 of the Complaint.

### a.      Red Flags arising out of the public filings with the SEC.

The Complaint makes several general allegations that although the companies' securities filings stated that they were operational entities with specific business plans, operations, and employees (¶ 31), Defendants "should have known" those representations were false and that the true intention of seeking a public quotation of the stock was to sell the company for its value as a "shell" (as opposed to its value as an operating business).[24]

Plaintiff's fraud claims are subject to Rule 9(b).  Accordingly, as to the Section 17(a) and Section 10(b) claims (Counts 3, 4,[25] 5, 6 and 7), the element of intent (knowledge or recklessness) must be pled with particularity.  With regard to the aiding and abetting allegations (Counts 2, 8, 9, 10, 11, 12, and 13), the element of intent (knowledge or recklessness) and the element of "substantial assistance" are subject to the Rule's heightened pleading requirement.

The Complaint alleges that Spartan and Mr. Dilley knew or should have known that the information contained in the companies' Forms S-1 regarding their stated business purpose and operations was false or fabricated, and that the actual, undisclosed intent of those companies was

---

[24] "Shell Company" in this context is defined, under 17 CFR §230.405 means a registrant (i.e. the issuer of the securities for which the registration statement is filed) that has: (1) no or nominal operations and (2) no or nominal assets.   A "Blank Check Company" is defined, under 17 CFR §230.419 to be a company that (i) is a development stage company that has **no specific business plan or purpose** or **has indicated that its business plan is to engage in a merger or acquisition with an unidentified company or companies**, or other entity or person; **and**  (ii) is issuing "penny stock," as defined in Rule 3a51-1 (17 CFR 240.3a51-1) under the Securities Exchange Act of 1934 ("Exchange Act") (emphasis supplied). The SEC's Complaint defines "shell company" and "blank check company" to be synonymous.  (¶ 6).  As discussed herein, this impacts the sufficiency of the pleading.

[25] With regard to claims under the provisions of Section 17(a) of the Securities Act which only requires allegations of negligence, courts have required a plaintiff, including the SEC, to meet Rule 9(b)'s heightened pleading standard. *See, e.g., SEC v. Wey,* 246 F.Supp. 3d 894, 911 (S.D.N.Y. 2017) (dismissing the misrepresentation claim under Section 17(a)(2) because it did not meet Rule 9(b)'s requirements); *SEC v. Thompson,* 238 F.Supp. 3d 575, 591 (S.D.N.Y. 2017) (concluding that Section 17(a) claims "all sound in fraud," so they must be pled with particularity). *Sec. & Exch. Comm'n v. RPM Int'l, Inc*., 282 F.Supp. 3d 1, 13 (D.D.C. 2017).

to be sold as a "shell."   The Complaint alleges Spartan and Mr. Dilley should have known this

undisclosed true intention based on the following "red flags":

- The 14 companies had similarities, including (1) each filed an S-1 describing itself as a start-up company; (2) each was run exclusively by a sole officer; (3) each had similar annual budgets (although with "vastly different business plans"); (3) each had a similar initial small offering size (although the dates of the different offerings span years); and (4) the companies' assets were all cash, in "substantially the same amount" (¶ 66);

- "many" of the companies had filed periodic public reports with the SEC reflecting no assets or revenues. (¶ 67); and

- During the 211 process for one of the entities (First Independence), FINRA questioned whether the public filings were correct in stating the company was not a blank check company and that it was, indeed, taking efforts to further the business plan.  (¶ 74).

None of these allegations pleads facts even suggesting that Defendants acted with "severe

recklessness" beyond "merely simple or inexcusable negligence" in failing to detect that these

representations made by the companies were untrue.  *Mizzaro*, 544 F.3d 1230 at 1238.

Despite pointing out the similarities in these entities, and insinuating some impropriety, the

Complaint fails to articulate why these corporate similarities are indicative of fraud, rather than

simply being common characteristics of any start-up company.  Start-up companies tend to have

very limited or no assets or revenues and few assets besides cash on hand.  As the Complaint

admits, however, these start-ups had "vastly different business plans" (¶ 66), registered with the

SEC at different times over a five-year span (¶  35), and had effective S-1s on file with the SEC,

including audited financial statements.  (¶  30).   Merely identifying certain similarities among the

issuers here fails to plead any reasonable inference of impropriety sufficient to state a claim

sounding in fraud.

Equally problematic is the allegation (third bullet above) regarding First Independence

(¶ 74).  In this instance, the "red flag" was a question from FINRA asking whether the company

was a shell, despite being designated as a non-shell in its securities filings.  The SEC alleges that

Mr. Lopez, the Firm's CCO, failed to launch an investigation in response to FINRA's questions. (¶ 74-75).

Assuming for purposes of this motion that a routine FINRA inquiry is appropriately considered a "red flag," the facts in paragraph 74 do not establish that Mr. Lopez acted recklessly in failing to investigate – or that an investigation was even warranted.[26]  Here, the company's public filings show that immediately after FINRA posed this inquiry and *prior* to its approval of the Form 211,[27] First Independence filed an amended Form 10-Q *expressly disclosing* that "the registrant is a shell company:"[28]

> The purpose of this Amendment No. 1 to the Registrant's Quarterly Report on Form 10-Q for the quarterly period ended November 30, 2012 ("Form 10-Q") is to correct a clerical error on the Form 10-Q cover page, where we incorrectly identified the Registrant as a non-shell company (as defined in Rule 12b-2 of the Exchange Act). **We have corrected the error and have identified the Registrant as a shell company**.

Notwithstanding this correction and re-designation of the company as a shell, FINRA went on to approve the Form 211.  (¶ 35).[29]

In light of these public facts, the allegations in the Complaint do not sustain the sole, conclusory allegation made against Mr. Lopez, in ¶ 130, that he "recklessly" provided "substantial

---

[26] Nor does this allegation give rise to the inference Mr. Lopez failed to act at all.  To the contrary, the most reasonable inference is that, upon receiving FINRA's inquiry, Mr. Lopez or someone at Spartan passed the question along to the issuer, who made the correction.

[27] FINRA's inquiry, referenced in ¶ 74 was sent on February 27, 2013.  The Amended Form 10-Q was filed March 6, 2013.  FINRA approved the Form 211 on March 25, 2013.

[28] Emphasis supplied.  First Independence Form 10-Q dated March 6, 2013.   Publicly available at https://www.sec.gov/edgar/searchedgar/companysearch.html  Courts may take judicial notice of relevant documents publicly filed with the SEC. *Harris v. Ivax Corp.,* 182 F.3d 799, 802 n .2 (11th Cir. 1999); *Bryant v. Avado Brands, Inc*8., 187 F.3d 1271, 1278 (11th Cir. 1999); *Thompson v. RelationServe Media, Inc.,* 610 F.3d 628, 631 n. 5 (11th Cir. 2010) (citing *Bryant, supra* ); *La Grasta v. First Union Secs. Inc.,* 358 F.3d 840, 842 (11th Cir. 2004).

[29] FINRA's inquiry regarding First Independence was made on February 27, 2013.  The Amended Form 10-6 was filed on March 6, 2013.  Spartan's response to FINRA's inquiry (which the Complaint does not alleges contained misrepresentation) was submitted on March 12, 2013.

assistance" to Spartan's "violations" of Rule 15c2-11. Nor does the Complaint support the general allegation that Mr. Lopez "substantially assisted" in a "scheme" to mislead either FINRA or a potential buyer as to the company's shell status.

The public disclosure of the company's shell status likewise undercuts the general, conclusory allegation in the Complaint that "had the truth [about the company's shell status] been known to the public the securities would have been restricted and such sales would have had little value." First Independence was sold via "bulk transfer" in May 2013 (¶ 35) notwithstanding that it had publicly disclosed its shell status two months earlier.[30]

### i. "Red Flags" arising out of communications with Mirman or Rose.

The Complaint also alleges that certain communications between Mirman or Rose and Spartan should have caused Spartan, Mr. Dilley, and, in some instances, Mr. Lopez, to doubt the publicly disclosed business intentions of each company. As above, the specific factual allegations in the Complaint relate to only a small handful of the 14 companies at issue. Those factual allegations are:

- Mr. Dilley received an email *after* the Form 211 had been submitted and approved, that indicated a buyer was interested in Kids Germ (¶ 37, 40, 41, 50);

- Mr. Dilley was advised via email, *after* the Form 211 had been approved for Obscene Jeans, that a clearing firm (retained to handle the DTC application process a particular company) had previously declined to process the application. The clearing firm later reconsidered and went ahead with the submission (¶ 39); and

- On one occasion, Mirman and Rose each called Spartan on the same day looking to start the Form 211 process for two different companies. (¶ 78)

---

[30] Interestingly, the majority of the "red flags" above speak primarily to the buyer's motivation – i.e., that the *buyer* wanted to purchase the entity solely because its securities were publicly traded (rather than for its operational value). The buyer's motivation for buying the company does not give rise to the inference suggested by the SEC: that the *seller's* business or business objectives at the time the S-1 registration statements were made effective or at the time the Form 211 was filed were untrue or entirely falsified.

The first two "red flags" are insufficient as a matter of law as they arose *after* the Form 211 process was already complete and FINRA had approved the applications; therefore, neither Spartan nor Mr. Dilley could have recklessly or knowingly failed to detect them prior to their existence.

With regard to Obscene Jeans, the Complaint alleges only that there was post-211 interest in buying the firm for shell value (¶ 41). As stated above, however, this does not lead to the conclusion suggested in the Complaint (¶ 43) that the company was, in fact, a shell or that it was pursuing the public quotation for the sole, undisclosed, purpose of selling itself as a shell. (*Id*)

To the contrary, long after its Form 211 was approved, Obscene Jeans continued operating as a jeans company.  The "bulk transfer" identified in the Complaint occurred in December 2010 (¶ 35) when all shares of the company were transferred to the new CEO (¶ 44).[31]  The original CEO, sole officer, and individual responsible for effectuating the business plan, however, remained with the company for another year, until November 2011, and the company's securities filings throughout this period reflect its continued intention to manufacture jeans and clothing.[32]

The facts pled in the Complaint fail to support the general, conclusory statements that Mr. Dilley, Spartan or Mr. Lopez should have known or were reckless in not suspecting that these companies had made misrepresentations in their securities filings or otherwise misrepresented the reason that they were seeking a public market for their securities.  This is especially the case for Obscene Jeans (and other companies like it that are not specifically addressed in the Complaint).

---

[31] Obscene Jeans Form 8-K Dated January 10, 2011, publicly available at https://www.sec.gov/edgar/searchedgar/companysearch.html. *See* footnote 28 regarding Judicial Notice of securities filings.

[32] Obscene Jeans Form 10Q July 2012, publicly available at https://www.sec.gov/edgar/searchedgar/companysearch.html.

There are simply no facts that can be alleged to show the company was, in fact, was a "shell" or that it was acquired for its shell value.  (¶ 4)[33]

Accordingly, the Complaint fails to state a claim for relief arising out of the purported "red flags" identified therein, or that Mr. Dilley and Spartan acted recklessly or knowingly in failing to detect the same.[34]

### E.      Failure to State a Claim for Aiding and Abetting (Counts 2 and 8-13).

#### 1.      The Complaint Fails to Allege "Recklessness."[35]

The aiding and abetting allegations (Counts 2 and 8-13) require a showing that the alleged aider and abettor "knowingly rendered substantial assistance."  *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 800 (11th Cir. 2015).  More particularly, the Eleventh Circuit has determined that "a person may be held as an aider and abettor ... if the accused party has a general awareness that his role was a part of an overall activity that is improper, and if the accused aider-abettor knowingly and substantially assisted the violation."[2]  *Woods v. Barnett Bank of Fort Lauderdale,* 765 F.2d 1004, 1009 (11th Cir. 1985) (quoting *Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 94–95 (5th Cir. 1975)). The "awareness of wrong-doing requirement" in aiding and abetting cases was "designed to insure that innocent, incidental participants in

---

[33] In fact, there are no facts pled to support the general allegation in ¶ 4 that the "essential value of the securities . . . was their designation as 'free trading,'" that the "bulk sale" of each company "realized proceeds of hundreds of thousands of dollars," or that public disclosure of the "shell" status would have caused them to have "little value."

[34] The Complaint contains no specific allegations regarding the purported red flags arising in the Form 211 application of On the Move. Nonetheless, the public securities filings of this company shows that long after the "bulk transfer" identified by the Plaintiff, it continued operating in pursuit of the same business purpose set forth in the effective S-1, upon which the Form 211 filed by Spartan relied.  Form 10K filed by On the Move Systems, Corp. dated June 2012.

[35] Prior to the enactment of the Dodd Frank Act, effective July 22, 2010, claims for aiding and abetting liability under the securities laws required proof of actual knowledge by the defendant. Here, the SEC must plead actual knowledge with regard to the Kids Germ allegations (FINRA Clearance obtained January 2010) and all conduct prior to that date.  Because the Complaint fails to plead actual knowledge as to this transaction, it must be dismissed.

transactions later found to be illegal are not subjected to harsh...administrative penalties." *Investors Research Corp. v. SEC,* 628 F.2d 168, 177 (D.C. Cir. 1980).

For the reasons set forth in Section D, above, the Complaint fails to allege that Defendants acted recklessly and, for that reason, each aiding and abetting count must be dismissed.

### 2.     The Complaint fails to allege "substantial assistance."

The Complaint likewise fails to allege that Defendants "substantially assisted" the Mirman/Rose Companies in their alleged "scheme." To plead substantial assistance properly, the SEC must show that Defendants were a "causal factor in the perpetuation of the fraud." *SEC v. Levin*, 2013 WL 5588224 (S.D. Fla. Oct. 10, 2013). Substantial assistance occurs when a defendant affirmatively assists, helps conceal, or fails to act when required to do so. *Lawrence v. Bank of America, N.A.,* 2010 WL 3467501 (M.D. FL Aug. 30, 2010). In determining whether the conduct amounts to "substantial assistance," courts must take into account whether the activity is considered an "ordinary course" transaction involving "daily grist of the mill" or whether is an "atypical" transaction, lacking business justification. *Woodward,* 522 F.2d at 97; *SEC v. Conrad*, 2017 WL 3485766, at *15 (N.D. Ga. Feb. 22, 2017), rev. on reconsideration in part, 2017 WL 3500364 (N.D. Ga. May 2, 2017) (finding SEC failed to plead "substantial assistance" where it failed to show defendant had ability to control underlying decisions relating to the fraud). *SEC v. Rio Tinto,* 2019 WL 1244933, at *16 (S.D.N.Y. Mar. 18, 2019) ("The SEC cites no authority for the proposition that the mere "failure to correct" a misleading statement, without more, is equivalent to the "substantial assistance" needed to plead an aiding and abetting violation."); *Wey*, 246 F. Supp. 3d at 928 ("While the SEC urges that a defendant need not know every aspect of a fraudulent scheme to be liable for aiding and abetting it the complaint fails to allege that [defendant] knew of any part of the scheme apart from his own actions."). *SEC v. Lucent Techs., Inc.*, 363 F. Supp. 2d 708, 726 (D.N.J. 2005).

There are no specific allegations showing that Defendants "associated" themselves with the Mirman/Rose companies' secret schemes. To the contrary, with regard to Mr. Dilley, he was the individual who handled the Form 211 applications. His role, under the highly formulaic requirements of Rule 15c2-11, was merely to collect specific information about the issuer and transmit it to FINRA.[36] Simply assisting in the process that leads to public trading, without more, does not establish substantial assistance. *Wey*, 246 F. Supp. 3d at 927 ("Nor are there facts alleged that would support an inference that [defendant] knew or must have known of [the primary violator's] false and misleading statements to Nasdaq, the SEC and others.").

Beyond that, the "assistance" Spartan and Mr. Dilley provided was to submit the Form 211, a form that can only be submitted by a market-maker broker-dealer (like Spartan) and for which FINRA rules expressly *prohibit* the broker-dealer from obtaining any compensation.[37] Thus, the typical motivation for participating in a scheme – deriving some financial benefit – does not exist here. Instead, the motivation here was simply to request the public quotation of certain securities based on the publicly available information that existed at the time. There are no allegations that Defendants were attempting to "bring about" anything else. *SEC v. Apuzzo*, 689 F.3d 204, 212 (2d Cir. 2012) (SEC must plead that the defendant "in some sort associated himself with the [the fraudster's] venture, that [he] participated in it as something that he wished to bring about, and that he sought by his action to make it succeed.")

---

[36] *See also SEC v. Surgilight*, 2002 WL 31619081, at *3 (M.D. FL Oct. 15, 2002) (noting that orchestrating a reverse merger, assisting a company becoming publicly traded, and depositing shares in brokerage accounts to mislead investors does not show substantial assistance). *See Lawrence*, 2010 WL 3467501 (to create accounts, transfer funds among accounts, make withdrawals from accounts, was insufficient to established that a defendant had substantially assisted a client's fraud.) *Greenberg v. Bear, Stearns & Co.,* 220 F.3d 22, 29 (2d Cir. 2000) (a clearing broker does not provide "substantial assistance" to or "participate" in a fraud when it merely clears trades).

[37] NASD Rule 5250: "(a) No member or person associated with a member shall accept any payment or other consideration, directly or indirectly, from an issuer of a security… for publishing a quotation, acting as market maker in a security, or submitting an application in connection therewith."

With regard to Mr. Lopez, the Complaint is even more lacking. His conduct is limited to acting in a supervisory capacity, reviewing and approving the correspondence to FINRA (addressed above).[38] His actions was nothing more than "daily grist of the mill" and nothing in the Complaint articulates any facts sufficient to suggest that he had any awareness that his actions were part of an improper or wrongful activity. *Woodward,* 522 F.2d at 97.

Thus, even if the Court were to determine the "red flags" in the Complaint sufficient to constitute knowledge of the scheme at the time the Forms 211 were processed (or the securities quoted), the claim still fails because the SEC cannot establish substantial assistance.

### F.  No Scheme Liability (Counts 3- 5 and 7).[39]

The SEC has alleged that Defendants "schemed to defraud" unidentified persons "in connection with" an unidentified purchase or sale of securities. (¶¶ 142-143). The first element of this claim requires a showing that the defendant "engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." *Simpson v. AOL Time Warner, Inc.,* 452 F.3d 1040, 1048 (9th Cir. 2006), *vacated on other grounds).* "It is not enough that a *transaction* in which a defendant was involved had a deceptive purpose and effect; the defendant's *own conduct* contributing to the transaction or overall scheme must have had a deceptive purpose and effect." *Id.* "For example, masterminding a misleading accounting scheme can suffice as conduct that furthers a fraudulent scheme." *SEC v. Berry,* 580 F.Supp. 2d 911, 923 (N.D. Cal. 2008); *SEC v. Fraser*, 2010 WL 5776401, at *7 (D. Ariz. Jan. 28, 2010).

For the reasons set forth above, the SEC has failed to plead facts sufficient to show that Spartan, Island or Mr. Dilley committed a deceptive act in furtherance of a scheme, with scienter,[40]

---

[38] ¶¶ 75-77.
[39] To the extent the claims under 10(b)-5(a) and (c) is based upon an alleged misrepresentation or omission, those allegations have been addressed above.
[40] Section III. D.

in connection with a purchase or sale of securities.[41]   Moreover, as stated herein, because the factual allegations set forth in the Complaint are never connected to any particular legal Count, it is impossible to determine which acts by which defendant, alone or taken together, is the "conduct" upon which these allegations are based and, in turn, it is impossible to determine whether that conduct was taken "in furtherance of a scheme" or for a "deceptive purpose."   Because the Complaint lacks sufficient facts to plead these counts, they should be dismissed.

### G.      The Complaint Fails To Allege a Section 5 Violation.

Count 14 alleges that Spartan, Mr. Dilley, and Island violated Section 5 by participating "directly or indirectly" in the sale of securities when (1) no registration statement had been filed with the Commission and (2) no exemption existed.   *SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1255 (9th Cir. 2013).   To establish a prima facie case for violation of Section 5, the SEC must show that (1) no registration statement was in effect as to the securities; (2) the defendant directly or indirectly sold or offered to sell securities; and (3) the sale or offer was made through interstate commerce.   *SEC v. Calvo,* 378 F.3d 1211, 1214 (11th Cir. 2004) (per curiam).

### 1.      According to the Complaint, Registration Statements had been filed for all Companies.

The very first element of a Section 5 requires the absence of a registration statement.   The Complaint, however, alleges that each company properly filed (and the SEC made effective) a registration statement *prior* to the transactions at issue.   (¶ 27, 28, 30, 31, 33, 66, 67, 68, 100). Accordingly, the Complaint not only fails to state a *prima facia* Section 5 claim, it affirmatively pleads the contrary.   Thus, the Section 5 Count should be dismissed.

---

[41] Section III. C. 1.

## 2.  No Facts Supporting Indirect Seller liability under Section 5.

Because there is no allegation showing Spartan, Island or Mr. Dilley to be a "direct"[42]

seller, the Complaint must allege that they "indirectly" participated in a sale; meaning that each

defendant was a "necessary participant" or a "substantial factor" in an unregistered sale.  *SEC v.*

*Calvo*, 378 F.3d 1211, 1215 (11th Cir. 2004); *see also SEC v. Holschuh,* 694 F.2d 130, 139-40

(7th Cir. 1982); *SEC v. Murphy,* 626 F.2d 633, 649-52 (9th Cir. 1980).  Although, "conceivably,

this broad[] standard could encompass a party whose acts in furtherance of the distribution were

*de minimis* and who should not be held liable for registration violations," in practice, "no court

using the 'necessary participant' test has found liable a defendant whose acts were not a substantial

factor in the sales transaction."  *Id.* at 651-52.

In order to determine whether one is an indirect participant in an unregistered transaction

or a *de minimis* participant, courts look beyond "but for" causation[43] because "numerous persons

perform mechanical acts without which there could be no sale" but "these acts nonetheless do not

render the defendants sellers."

The SEC's Section 5 argument against Spartan, Island, and Mr. Dilley is as follows:

- Spartan, in connection with the Form 211 application, primarily went through Rose when communicating with the issuer.  The SEC contends this was a "red flag" relationship;

- Rose transmitted the signed shareholder directives from the shareholders to Island;

- Because Rose was the primary point of contact, Island should have inferred that Rose was not merely the working for the officers or shareholders, but that he actually held complete dominion and control over those individuals (and, therefore, their shares);

---

[42] The SEC does not allege that these defendants negotiated any sale, executed documents on behalf of any seller (*SEC v. Calvo*, 378 F.3d 1211, 1215 (11th Cir. 2004)), or was actively involved in promoting the company or preparing advertisements for the issuance (*SEC v. Holschuh*, 694 F.2d 130, 139 (7th Cir. 1982)).

[43] *Murphy*, 626 F.2d 633 at 650 ("For example, a printer may prepare key documents or a bank may advance cash to a customer upon the customer's presentation of an instrument and then pass the instrument to another person" yet these acts do not make those persons "sellers.").

- In response to this supposed indicia of control, Island should have marked the shares "restricted"; and

- Had the shares been marked "restricted," the "unregistered" sales would not have occurred.

Thus, the SEC concludes that Spartan, Island, and Mr. Dilley are "necessary participants" or were a "substantial factor" in the fraud, not *de minimis* participants.

The *Murphy* decision provides, perhaps, the best examples of a necessary participant in an unregistered sale. *Murphy* distinguished a mechanical act in the sales process (like printing the sales documents or processing the payments) from a meaningful role in effectuating the sale. Similarly, and perhaps even more factually analogous, in one of the only (partially) litigated Section 5 cases involving a transfer agent, the Ninth Circuit considered the conditions in which a transfer agent acts as a "necessary participant" versus a mechanical participant:[44]

> We reject the SEC's contention that [defendants] are necessarily liable under Section 5 by virtue of their position as CMKM's transfer agent.
>
> ***
>
> Here, the undisputed facts do not establish that [defendants] were substantial participants in the CMKM distribution as a matter of law. [Defendants] read opinion letters from Dvorak, instructing them to remove the restrictive legends from CMKM stock, and then issued large quantities of those shares without the restrictive legend. [Defendants] then requested a second opinion letter from Angell. After reading the Angell opinion letters, [defendants] continued to issue large quantities of shares without the restrictive legend. This conduct is in stark contrast to the actions taken by the defendants in Murphy, Phan, and Calvo. The defendants in those cases were integrally involved in the securities-distribution schemes, from devising the scheme to finding investors and buyers to structuring the sales. That [defendants] issued large quantities of shares without a restrictive legend after receiving two attorney opinion letters is insufficient, in and of itself, to establish that [defendants] were substantial factors as a matter of law.

While the facts of *CMKM Diamonds* were in "stark contrast" to those in *Murphy* et al., the facts here "contrast" even further. In *CMKM,* the transfer agent was *removing* restrictive legends – something that a transfer agent can do only where the specific requirements of the Rule 144 safe

---

[44] *CMKM Diamonds, Inc.*, 729 F.3d at 1257–59.

harbor are met.[45]  In that instance, the shareholder asks that a restriction be removed and submits documents and information establishing the rule has been satisfied and the safe harbor met.  The transfer agent reviews that information and, if proper, removes the legend.

There is no mirror for this process.  That is, transfer agents are not obligated or empowered by any law to *impose* a restrictive legend on shares.  Nor is it required, when transferring *un*restricted securities, to perform any sort of analysis as to whether a restriction *should* be applied.

Thus, *CMKM* is useful guidance in two respects.  *First,* in applying the reasoning in *Murphy* to the specific case of a transfer agent, *CKMK* holds that merely acting as a transfer agent – while a required part of the share-transfer process – is insufficient to fulfil the "necessary participant" or "substantial factor" test under Section 5.  *Second, CMKM* shows that a transfer agent is not automatically a "necessary participant" even in a scenario where it is asked by the issuer to review the propriety of a restrictive legend.  Here, Island's role as transfer agent was even smaller than that of the defendant in *CMKM*.  Island was merely directed to transfer unrestricted shares, a process that does *not* require the Rule 144 analysis mandated in removing a legend, or *any* analysis whatsoever.

The above authority highlights the deficiency in the Complaint as to the Section 5 allegations.  The Complaint fails to identify: (1) the legal obligation (or even authority) of a transfer agent to impose a restrictive legend *sua sponte*; (2) facts sufficient to create a *reasonable* inference that the shares at issue were not controlled by the shareholders whose signature appear on the transfer directive; or (3) facts sufficient to show that Island or Mr. Dilley "participated" in the transaction beyond the normal, mechanic role transfer agents occupy.

Without facts sufficient to plead indirect liability, Count 14 must be dismissed.

---

[45] 17 C.F.R. §231.144.

### H.    The Majority of the Conduct at Issue is Time Barred.

A majority of the SEC's claims against Spartan, Island, and Dilley are time-barred because they are based on conduct that occurred nearly a decade ago – well outside of the five-year statute of limitations period set forth in 28 U.S.C. § 2462.  The Supreme Court made clear that the five-year statute of limitations in § 2462 applies to all forms of relief sought in the Complaint that constitute a "penalty" including civil fines, penalties, and disgorgement.[46]  *See* 28 U.S.C. § 2462; *Kokesh v. SEC,* 137 S. Ct. 1635, 1641- 1644*; Gabelli v. SEC,* 133 S. Ct. 1216 (2013) (it would be "'utterly repugnant to the genius of our laws' if an action for penalties could 'be brought at any distance of time").  The SEC's cause of action accrues on the date the conduct occurred, regardless of when the government discovered it. *Id.*

The Supreme Court's reasoning in *Kokesh* similarly compels the conclusion that the penny stock bar and the injunctive relief requested here are likewise barred.  Although the Eleventh Circuit has previously considered this issue, in part, and determined that an injunction is not a "penalty" under § 2462, that ruling and its reasoning predates *Kokesh*, where the Supreme Court set forth the analysis for determining whether a remedy constitutes a penalty under § 2642.  *SEC v. Graham*, 823 F.3d 1357, 1361 (11th Cir. 2016).  In 2016, the Eleventh Circuit reasoned that injunctions were not penalties because they were typically forward looking in nature.  *Id.* at 1361-1362.  Two years later, in *Kokesh,* the Supreme Court set forth a different analysis for determining whether a particular remedy is a penalty under § 2642.  Specifically, the unanimous decision explained that penalties (in that instance, disgorgement) are "imposed as a consequence of violating a public law and it is intended to deter, not to compensate." *Id.* at 1644. Penalties are remedies that "'go beyond compensation, are intended to punish, and label defendants wrongdoers'

---

[46] While the SEC's request for disgorgement is specifically limited to the applicable five-year limitation period, the other monetary penalties are not.

as a consequence of violating public laws." *Id.* Further, while recognizing that disgorgement may serve a partly remedial purpose in some cases, the Supreme Court held it was nevertheless subject to § 2642, because a "civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment." *Id.* (emphasis in the original)).

Under the *Kokesh* reasoning, both the injunctive relief and the penny stock bar are sought for their punitive and deterrent purpose of punishing and labeling defendants as wrongdoers. *Id.* The SEC routinely seeks, and is awarded, these remedies because of their "retributive or deterrent purposes." *Kokesh v. SEC*, 137 S. Ct. 1635, 1643 (2017) (penalties are sought "'in the public interest, to remedy harm to the public at large, rather than standing in the shoes of particular injured parties.'") (quoting from the SEC's brief); *SEC v. Teo,* 746 F.3d 90, 102 (C.A.3 2014) *(*The SEC pursues its claims "independent of the claims of individual investors" in order to "promot[e] economic and social policies") (relied upon in *Kokesh*); *SEC v. Gane,* 2005 WL 90154, at *20 (S.D. Fla. Jan. 4, 2005) ("[C]ivil penalties, like a permanent injunction, are imposed in part to deter the wrongdoer from similar conduct in the future."); *SEC v. Coplan*,  2014 WL 695393, at *9 (S.D. Fla. Feb. 24, 2014); *SEC v. Weintraub*, 012 WL 13012751, at *2 (S.D. Fla. Jan. 10, 2012) ("[G]iven these circumstances, the Court shall issue an injunction to deter future violations."); *SEC v. Converge Glob., Inc.*, 2006 WL 907567, at *6 (S.D. Fla. Mar. 10, 2006) ("The Court has also taken into account the deterrent effect of the permanent injunction and penny stock bar issued today.").

Courts that have considered the *Kokesh* analysis, in the context of injunctions and conduct bars, and have applied the two-pronged analysis set forth by the Supreme Court, have concluded that injunctions and bars operate as a penalty. *SEC v. Cohen*, 332 F. Supp. 3d 575, 595 (E.D.N.Y. 2018) (Because the SEC's requested obey-the-law injunction cannot be understood as "<u>solely</u>"

remedial, it is a penalty for purposes of § 2462).[47]  Likewise, *Kokesh* called into question the long line of cases holding a bar or suspension to be "remedial" in nature.[48]

Here, as in *Cohen,* the Court should employ the *Kokesh* analysis to the instant case and conclude that the injunction and the bar sought by the SEC (1) are not "solely" remedial; (2) would seek to remedy wrongs committed against the United States, rather than an individual[49] (3) would function primarily or even in part to "stigmatize" defendants in the eyes of the public.[50] Accordingly, the SEC's claims, including those seeking an injunction and penny stock bar, are time barred to the extent the claims are based on conduct that occurred more than 5 years prior to the filing of the Complaint is barred in their entity.

Where, as here, the causes of action asserted against Defendants are based on multiple transactions, the Court should dismiss the claims insofar as they rely on transactions outside the limitations period.  *SEC v. Radius Capital Corp*., 2013 WL 3716394, at *2 (M.D. Fla. July 15, 2013).  As to the Harrison/Daniels companies, Spartan and its employees'[51]  involvement with the companies ended, at the latest, when the Form 211 for each company was cleared.  The following charts summarize the limitation relating to the Harrison/Daniels companies:

---

[47] *But see SEC v. Collyard*, 861 F.3d 760 (8th Cir. 2017) (finding under the facts of the case the injunction was not a penalty).  *Cohen* expressly disagreed with the "forward-looking" analysis employed in *Graham,* in light of the analysis set forth in *Kokesh. Id.* at 594-595. ("Thus, a remedy might have a solely forward-looking purpose—namely, to deter future violations of the securities laws—and nevertheless be a penalty under *Kokesh*.")

[48] *Saad v. Sec. & Exch. Comm'n*, 873 F.3d 297, 304 (D.C. Cir. 2017) (remanded with instructions for Commission to consider impact of *Kokesh* on sanction authority).  As Justice Kavanaugh points out in his concurring opinion: "[W]e ordinarily must stick with our precedents. But here, the Supreme Court's recent decision in *Kokesh* means that we can no longer characterize an expulsion or suspension as remedial. After the Supreme Court's decision in *Kokesh*, in other words, our precedents characterizing expulsions or suspensions as remedial are no longer good law."

[49] Indeed, the Complaint does state that any individuals were damaged or harmed by the conduct at issue.

[50] *Cohen,* 332 F. Supp. 3d at 594.

[51] The Complaint does not allege any involvement by Island with regard to the Harrison/Daniels companies.



The first three transactions are untimely and should be dismissed.

With respect to the 14 companies relating to Mirman/Rose, the *last* identified conduct with regard to Spartan or Mr. Dilley is their alleged assistance in the companies' DTC filings.[52]  (¶ 35). As summarized in the following chart, all but three of the transactions are time barred:



---

[52] While no defendant was responsible for the DTC applications, drawing all inferences in the SEC's favor, that is the last identifiable date of conduct upon which the claims in the Complaint could be based. The one exception is Envoy Group, which did not file with DTC.  For that company, the date of FINRA Form 211 clearance was used. (¶ 35).

With regard to Island's role with the Mirman Rose companies, ten of the 12 transactions are barred.[53]



Accordingly, all claims arising out of transactions *other than* Envoy Group, Changing Technologies, First Xeris,  TTB/Ibex and PurpleReal are time barred and should be dismissed.

## III.   CONCLUSION

For the foregoing reasons, Defendants Spartan, Island and Mr. Dilley and Mr. Lopez respectfully request that the Court dismiss the Complaint with prejudice and grant any other such relief as it deems proper.

---

[53] Island's last involvement in the 14 Mirman/Rose companies was, allegedly, performing the "bulk transfer" of the securities to the buyer group pursuant to an agreement between the buyer and seller.

Respectfully submitted this 22nd day of April, 2019.

/s/Alan M. Wolper
Alan M. Wolper (FL Bar No. 61524)
Heidi E. VonderHeide (admitted *pro hac vice*)
**ULMER & BERNE LLP**
500 W. Madison, Suite 3600
Chicago, Illinois 60661
awolper@ulmer.com
Tel: (312) 658-6500
Fax: (312) 658-6501

Anna Patricia Morales Christiansen
(FL Bar. No. 27634)
**SPARTAN SECURITIES GROUP, LTD.,**
15500 Roosevelt Blvd, Suite 303
Clearwater, FL 33760
Tel: 727-502-0508
Fax: 727-502-0858
pmorales@spartansecurities.com

***Counsel for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing **DEFENDANTS SPARTAN SECURITIES GROUP, LTD., ISLAND CAPITAL MANAGEMENT, CARL E. DILLEY, AND DAVID D. LOPEZ'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW** on April 22, 2019, via the Court's electronic filing system, on all counsel of record.


*/s/ Alan M. Wolper*

CHI2009:1977128v9
35856.00008