**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**CASE NO. 19-CV-00448-VMC-CPT**

**SECURITIES AND EXCHANGE COMMISSION,**

    **Plaintiff,**

**v.**

**SPARTAN SECURITIES GROUP, LTD.,**
**ISLAND CAPITAL MANAGEMENT LLC,**
**CARL E. DILLEY,**
**MICAH J. ELDRED, and**
**DAVID D. LOPEZ,**

    **Defendants.**

_____/

**SECURITIES AND EXCHANGE COMMISSION'S RESPONSE IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS (DE 23)**

       Christine Nestor
       Senior Trial Counsel
       Fla. Bar No. 597211
       Telephone: (305) 982-6367
       Facsimile: (305) 536-4154
       E-mail:  nestorc@sec.gov

       Wilfredo Fernandez
       Senior Trial Counsel
       Fla. Bar No. 142859
       Telephone: (305) 982-6376
       Facsimile: (305) 536-4154
       E-mail:  fernandezw@sec.gov

       **ATTORNEYS FOR PLAINTIFF**
       **SECURITIES AND EXCHANGE COMMISSION**
       801 Brickell Avenue, Suite 1800
       Miami, Florida 33131
       Telephone: (305) 982-6300

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ....................................................................................1

II.   ARGUMENT ..........................................................................................3

    A.  The Defendants Improperly Go Outside the Four Corners
of the Complaint ........................................................................... 3

    B.  The Defendants Provide Improper and Unsupported Opinions
and Misconstrue Rule 15c2-11 of the Exchange Act
and their Role as a Transfer Agent .......................................................4
..............................................................................

    C.  Standard of Review....................................................................6

    D.  The Complaint is Not a Shotgun Pleading.............................................9

    E.  The Commission has Adequately Alleged the Defendants Violated
Section 17(a) of t4he Securities and Act and Section 10(b) of the
Exhcnage Act ......................................................................10

        1.  The Commission's Claims Under Securities Act Sections 17(a)(1)
and  (3) Do Not Require that the Defendants Be the "Maker"
of a False Statement ...................................................................11

        2.  Spartan, Island and Dilley made misrepresentations
or omitted facts ..............................................................11

        3.  The misrepresentations were material  .........................................13

        4.  In connection with requirement is met.........................................15

        5.  The Complaint adequately pleads scienter ...................................16

    F.  The Commission's Claims for Aiding and Abetting
are Sufficiently Pled.............................................................20

    G.  The Commission has adequately Alleged Scheme Liability ...............22

    H.  The Commission Adequately Pled a Section 5 Violation
Against Sparta, Island and Dilley .......................................................22

1.  The existence of registration statements for the initial offerings is of no moment .................................................. 23

2.  Spartan, Island and Dilley's participation ......................................... 24

I.   Defendants' Statute of Limiation Arguments Lack Merit ................... 26

1.  Section 2462 Does Not Apply to Injunctive Relief or Penny Stock Bars ........................................................................ 26

2.  The Court Should Not Dismiss any of the Commission's Claims .......................................................................................... 29

J.   If the Court Deems the Complaint Deficient, Leave to Amend is Warranted  ........................................................................ 30

K.  Conclusion ............................................................................................ 30

# TABLE OF AUTHORITIES

<u>CASES</u>

*American United Life Ins. Co. v. Martinez*,
    480 F.3d 1043 (11th Cir. 2007) ........................................................ 6

*Anderson v. Transglobe Energy Corp.*,
    35 F. Supp. 2d 1363 (M.D. Fla. 1999) ...................................................7

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988)............................................. 14

*Coghlan v. NTSB*,
    470 F.3d 1300 (11th Cir. 2006) .................................................. 26, 27

*Coquina Investments v. Rothstein*
    et al., 2012 WL 4479057 (S.D. Fla Sept. 28, 2012) ............................... 7

*Erickson v. Pardus, 551 U.S. 89 (2007)* .................................................7

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976) .................................................................. 17

*Foman v. Davis, 371 U.S. 178 (1962)*......................................................30

*Harris v. Ivax Corp.*, 182 F.3d 799 (11th Cir. 1999)....................................4

*Hecht Co. v. Bowles*,
    321 U.S. 321 (1944) .................................................................. 28

*Hekker v. Ideon Group, Inc., Case No. 95-681-Civ*,
    1996 WL 578335 (M.D. Fla. Aug. 19, 1996) ................................... 7, 8

*In the Matter of Southeast Banking Corp., 69 F.3d 1539 (11th Cir. 1995)*....................................7

*Inversiones y Procesadora Tropical Inprotsa, S.A. v. Del Monte International GMBH, 921
F.3d 1291, 1301 (11th Cir. 2019)*...........................................26, 27

*J.Y. ex rel. E.Y. v. Dothan City Board of Education*,
    2014 WL 1320187 (M.D. Ala. Mar. 312014) (M.D. Ala. Mar. 31, 2014) ............................29

*Jackson v. Birmingham Bd. of Ed., 309 F. 3d 1333 (11th Cir. 2002))*...........................................6

*Janus Capital Grp., Inc.*, *v. First Derivative Traders*,
    564 U.S. 135 (2011) ............................................................ 10, 11

*Kokesh v. SEC*, 137 S. Ct. 1635 (2017) ........................................... 26, 27

iv

*Lorenzo v. SEC*, 139 S. Ct. 1094 (2019) ........................................................................11

*Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706 (2d. Cir. 2011) ....................................13

*McMillian v. AMC Mortgage Servs, Inc.*, 560 F. Supp. 2d 1210
   (S.D. Ala. 2008) ......................................................................................................6, 7

*Meadows v. SEC*,
   119 F.3d 1219 (5th Cir. 1997) ................................................................................ 26

*Ross v. A.H. Robins Co.*,
   607 F.2d 545 (2nd Cir. 1979) ...................................................................................7

*Saad v. SEC*, 873 F.3d 297 (D.C. Cir. 2017) .............................................................. 27

*Sanders v. United States*, 415 F.2d 621 (5th Cir. 1969) .............................................. 29

*SEC v. Alliance Transcription Svcs., Inc.*,
   2009 WL 5128565 (D. Ariz. Dec. 182009) (D. Ariz. Dec. 18, 2009) ..................... 28

*SEC v. Alternative Green Technologies, Inc.*,
   2012 WL 4763094 (S.D.N.Y. Sept. 24, 2012) ....................................................... 24

*SEC v. Big Apple Consulting USA, Inc.*,
   783 F. 3d 786 (11th Cir. 2015) ...................................................................... 11, 20

*SEC v. C. Jones & Co.*,
   312 F. Supp. 2d 1375 (D. Colo. 2004) .................................................................. 16

*SEC v. C. Jones & Co.*, 2009 WL 321696 (D. Colo. Feb. 10, 2009) ...........................16

*SEC v. Calvo*,
   378 F.3d 1211 (11th Cir. 2004) ............................................................................. 23

*SEC v. Carriba Air, Inc.*,
   681 F.2d 1318 (11th Cir. 1982) ............................................................................. 17

*SEC v. Cavanagh*, 155 F.3d 129 (2d Cir. 1998) .................................................... 23, 24

*SEC v. China Ne. Petrol. Holdings*, 27 F. Supp. 3d 379 (S.D.N.Y. 2014)....................20

*SEC v. City of Miami*,
   988 F. Supp 2d 1343 (S.D. Fla. 2013) ..................................................................... 9

*SEC v. CKB168 Holdings, Ltd.*,
   2016 WL 6915859 (E.D.N.Y. Sept. 28, 2016) (E.D.N.Y. Sept. 28, 2016) ........... 14

*SEC v. CMKM Diamonds, Inc.*,
    729 F.3d 1248 (9th Cir. 2013) ........................................................... 25

*SEC v. Collyard*,
    861 F.3d 760 (8th Cir. 2017) ............................................................. 27

*SEC v. Czarnik*,
    2010 WL 4860678 (S.D.N.Y Nov. 29, 2010) .................................... 15, 16

*SEC v. E-Smart Techs., Inc.*,
    139 F. Supp. 3d 170 (D.D.C. 2015) ................................................... 28

*SEC v. Farmer*,
    2015 WL 5838867 (S.D. Tex. Oct. 72015) (S.D. Tex. Oct. 7, 2015) ...... 14, 15, 24

*SEC v. Fehn*,
    97 F.3d 1276 (9th Cir. 1996) ............................................................. 14

*SEC v. Ginsburg*,
    2000 WL 1299020 (S.D. Fla. Jan. 10, 2000) ....................................... 7

*SEC v. Goble*,
    682 F.3d 934 (11th Cir. 2012) ........................................................... 21

*SEC v. Graham*,
    823 F.3d 1357 (11th Cir. 2016) ......................................................... 26, 27

*SEC v. Greenstone Holdings, Inc.,* 2012 WL 1038570
    (S.D.N.Y. Mar. 28, 2012*)* .................................................................. 14

*SEC v. Hall*,
    759 F. App'x 877 (11th Cir. 2019) ..................................................... 28

*SEC v. Homa,* 2000 WL 1100783 (N.D. Ill. Aug. 4, 2000) ......................... 8

*SEC v. Husain*, 2017 WL 810269 (C.D. Cal. Mar. 1, 2017) ....................... 24

*SEC v. K.W. Brown & Co.*,
    555 F. Supp. 2d 1275 (S.D. Fla. 2007) ............................................... 12

*SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082 (2d Cir. 1972)* ............ 17

*SEC v. Mannion, 789 F. Supp. 2d 1321 (N.D. Ga. 2011)* ........................... 17

*SEC v . Merchant Capital, LLC, 483 F.3d 747 (11th Cir. 2007)* ................... 17

*SEC v. Monterosso*,

756 F.3d 1326 (11th Cir. 2014) ................................................................................ 11, 17

*SEC v. Morgan Keegan & Co.*,
678 F.3d 1233 (11th Cir. 2012) ................................................................................ 12, 15

*SEC v. Physicians Guardian Unit Inv. Trust*,
72 F. Supp. 2d 1342 (M.D. Fla. 1999) ........................................................................ 7

*SEC v. Platforms Wireless Int'l Corp.*,
559 F. Supp. 2d 1091 (S.D. Cal. 2008) .................................................................... 17

*SEC v. Radius Capital Corp.*,
653 Fed. Appx. 744 (11th Cir. 2016) ...................................................................... 15, 16

*SEC v. Radius Capital Corp.*, No. 2:11-cv-116-FtM-29DNF
2013 WL 3716394 (M.D. Fla. July 15, 2013) ........................................................ 29, 30

*SEC v. RPM International, Inc.*,
282 F.Supp.3d 1 (D.D.C. 2017), ................................................................................. 13

*SEC v. Scoppetoulo*,
2011 WL 294443 (S.D. Fla. Jan. 27, 2011) ............................................................. 13

*SEC v. Sierra Brokerage Servs.*,
608 F. Supp. 2d 923 (S.D. Ohio 2009) .................................................................... 23

*SEC v. Universal Express, Inc.*,
475 F. Supp. 2d 412 (S.D.N.Y. 2007) ..................................................................... 23

*Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*,
305 F.3d 1293 (11th Cir. 2002) .................................................................................. 9

*Terry v. Interim Healthcare Gulf Coast, Inc.*,
2018 WL 1992276 *2 (M.D. Fla. Apr. 27, 2018) (M.D. Fla. Apr. 27, 2018) ......... 9

*Transit Rail LLC v. Marsala*,
2007 WL 2089273 (W.D.N.Y. July 202007) (W.D.N.Y. July 20, 2007) ............. 14

*Tsc Indus. v. Northway*,
426 U.S. 438 (1976) ............................................................................................... 13, 14

*U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350 (11th Cir. 2006) ............................... 9

*United States v. Ashdown*,
509 F.2d 793 (5th Cir. 1975) .................................................................................... 29

United States *v. Cancelliere*,

69 F.3d 1116 (11th Cir. 1995) ............................................................................ 30

*United States v. Muscatell,*
  42 F.3d 627 (11th Cir. 1995) ......................................................................... 30

*United States v. Oregon State Medical Soc.,*
  343 U.S. 326 (1952) ....................................................................................... 28

*United States v. W.T. Grant Co.,*
  345 U.S. 629 (1953) ....................................................................................... 28

*Ventrassist Pty. Ltd. v. Heartware, Inc., 377 F.Supp.2d 1278*
  *(S.D. Fla. 2005)* ............................................................................................. 6

*Wagner v. First Horizon Pharm. Corp.,*
  464 F.3d 1273 (11th Cir. 2006) ....................................................................... 9

*Wassel v. Eglowsky,*
  399 F. Supp. 1330 (D. Md. 1975) .................................................................. 25

*Wassel v. Eglowsky,*
  542 F.2d 1235 (4th Cir. 1976) ....................................................................... 25

*Weiland v. Palm Beach County Sheriff's Office,*
  792 F.3d 1313 (11th Cir. 2015) ..................................................................... 10

*Witchard v. Allied Interstate, LLC, 2015 WL 6817163*
  *(M.D. Fla. Nov. 6, 2015)* ................................................................................. 4

*Zacharias v. SEC,*
  569 F.3d 458 (D.C. Cir. 2009) ....................................................................... 23

*Ziemba v. Cascade Int'l, Inc.,*
  256 F.3d 1194 (11th Cir. 2001) ....................................................................... 7

## STATUTES

28 U.S.C. § 2462 ......................................................................................... 26-28

Section 5 of the Securities Act of 1933 ....................................................... 22-26

Section 15(c)(2) of the Exchange Act ......................................................... 22, 23

Section 17(a) of the Securities Act of 1933 ................................................ 10, 22

Section 10(b) of the Exchange Act of 1934 ................................................ 10, 22

## RULES

Federal Rule of Civil Procedure 8(a) ...................................................................6, 8, 16

Federal Rule of Civil Procedure and 9(b) .......................................................... 6, 7, 16

Federal Rule of Civil Procedure 12(b)(6) .................................................................6

Federal Rule of Civil Procedure 15(a) ...................................................................30

Rule 10b-5(b) of the Exchange Act of 1934 ........................................................10, 11

Rule 15c2-11 of the Exchange Act of 1934 ...............................................3, 4, 22, 23

17 C.F.R. § 230.419 .......................................................................................... 1, 19

Rule 405 Securities Act of 1933 ............................................................................19

OTHER AUTHORITIES

Dodd-Frank Act ......................................................................................................20

Publication or Submission of Quotations Without Specified Information Exch. Act Rel. No. 41110, 64 FR 11124 (Mar. 8, 1999) ....................................................................4, 5

H.R. Rep. 101-617 (1990) .......................................................................................28

## I.   __INTRODUCTION__

Defendants Spartan Securities, Ltd. ("Spartan"), a registered broker-dealer, and Island Capital Management LLC d/b/a Island Stock Transfer ("Island"), a registered transfer agent, are commonly owned and touted their "one-stop shop" services provided in tandem to microcap issuers.  DE 1, Complaint at ¶¶ 1-10, 13-14 (hereinafter "Compl. ¶__").  Spartan and Island together played critical roles in two separate microcap fraud schemes: one operated by Alvin Mirman ("Mirman") and Sheldon Rose ("Rose") (collectively "Mirman/Rose fraud") and the other by Michael Daniels ("Daniels"), Andy Fan ("Fan") and Diane Harrison ("Harrison") (collectively "Daniels/Fan/Harrison fraud").  Compl. ¶¶ 1-10, 26-35, 100-102.  All five individuals are the subjects of Commission enforcement actions, and Mirman and Rose were criminally convicted for their roles in the fraudulent schemes to manufacture collectively at least 19 public companies for sale.  Compl. ¶¶ 18-22.  These 19 public companies were not operating businesses and did not have independent management or shareholders, rather they were undisclosed "blank check"[1] companies controlled by Mirman, Rose, Daniels, Fan, and/or Harrison.  Defendants Carl Dilley ("Dilley") and Micah Eldred[2] ("Eldred"), registered principals of both Spartan and Island, knew or were reckless in not knowing from the onset of the Mirman/Rose and Daniels/Fan/Harrison frauds, respectively. Compl. ¶¶ 1-10, 13-14, 36-50, 103-122.

The fraudulent schemes depended on the Defendants' misrepresentations and omissions to, among others, the Commission, the Financial Industry Regulatory Authority

---

[1] 17 C.F.R. § 230.419 defines "blank check company" as (i) a development stage company that has no specific business plan or purpose or has indicated that its business plan is to engage in a merger or acquisition with an unidentified company or companies, or other entity or person; and (ii) is issuing penny stock.

[2] Eldred submitted a motion to dismiss (DE 22) with arguments that significantly overlap those presented here.

("FINRA"), the Depository Trust Company ("DTC"), and securities purchasers, that the 19 public companies (hereinafter "blank check companies") were legitimate small businesses with independent management and shareholders.  Compl. ¶¶ 6-10, 35-39, 50-67, 77-81, 100-102.  In reality, unbeknownst to the public, the Commission, FINRA, or DTC (but known to Eldred and Dilley), the management and shareholders of the blank check companies were nothing more than nominees for Mirman, Rose, Daniels, Fan, and/or Harrison, (the undisclosed control persons) who always intended to sell all the securities of the blank check companies in bulk for their own benefit.  Compl. ¶¶ 1-10, 26-38, 43-44, 48-50, 69, 91-99.  Each bulk sale realized proceeds of hundreds of thousands of dollars.  Compl. ¶¶ 1, 35.  If the truth known to Eldred and Dilley had been disclosed to the public, the securities would have been restricted from such sales and would have had little value.  Compl. ¶¶ 26-44.

Each of the Defendants played a critical role in the fraudulent schemes.  Spartan filed and Dilley signed Form 211 applications with FINRA by which the securities became publicly quoted, a key component of both underlying frauds.  Compl. ¶¶ 1-10, 33-35, 39, 50-65, 78-80, 96, 100-102.  Spartan and Island also prepared (with Dilley's contribution) false applications with DTC by which the securities became eligible for electronic clearance, yet another important step in the frauds because DTC eligibility provided a means for the shares to be purchased and sold through broker-dealers using book entries of ownership, which is seen as a processing efficiency.  Compl. ¶ 1-10, 29, 35, 37-39, 77, 89-90, 100, 108.  Island also effectuated both the bulk issuance and transfer of the Mirman/Rose Company securities without restriction despite Dilley knowing (or recklessly not knowing) and Island employees ignoring the numerous red flags that the securities were in the hands of affiliates and therefore restricted. Compl. ¶¶ 38,

69, 82, 87, 90-91, 95-96, 99.  Eldred similarly schemed with Daniels, Fan and Harrison by filing false Forms 211 with FINRA, signing false securities deposit forms and executing trades in Spartan's proprietary account, all in support of the manufacture of the blank check companies – one of which Eldred expressly proposed to acquire himself while its Form 211 was pending. Compl. ¶¶ 1-10, 100-122.  Spartan, based on Dilley and Eldred's actions and awareness, had information that undermined any reasonable basis under the circumstances for believing that the information required by Rule 15c2-11 under the Securities Exchange Act of 1934 ("Exchange Act") was accurate in all material respects and from a reliable source.  After the initial filing of the Form 211 application, Defendant David Lopez ("Lopez"), Spartan's Chief Compliance Officer, was tasked to approve Spartan's responses to FINRA for at least four issuers with which he made no effort even to familiarize himself.  Compl. ¶¶ 52, 55, 72-80.

The Complaint's factual allegations include details about both fraud schemes, and the actions and participation of each Defendant, including the particular dates and methods of specific misstatements and other contributions to the fraud schemes.  Therefore, the allegations of the Complaint satisfy the applicable pleading standards, and the Commission's fulsome allegation of its causes of action requires denial of the Defendants' Motion.

## II. <u>ARGUMENT</u>

### A.  The Defendants Improperly Go Outside the Four Corners of the Complaint

The Defendants attempt to inject contested facts beyond the four corners of the Complaint.  Motion at pg. 1-6, 20-23 and footnotes 27-29, 31-32, 34.  This is inappropriate at the pleading stage and is better suited for a motion for summary judgment, or for presentation

before the jury.[3]   This Court has previously declined to consider such evidence in similar

circumstances, and should likewise do so here.  *Witchard v. Allied Interstate, LLC*, 2015 WL

6817163, at *2 (M.D. Fla. Nov. 6, 2015) (declining to consider extrinsic matters).

### B.  The Defendants Provide Improper and Unsupported Opinions and Misconstrue Rule 15c2-11 of the Exchange Act and their Role as a Transfer Agent

The first six pages of the Defendants' Motion offer unsupported opinions of what the

Defendants claim is an overview of the Form 211, DTC process, and the role of a transfer

agent, all of which the Court should disregard.  The Defendants cite to neither the Complaint

nor any case law authority in these six pages of argument.  The Commission disputes many of

the opinions and alleged facts.  For example, Defendants misconstrue Rule 15c2-11 in alleging

that it allows broker-dealers to initiate price quotations based simply on an issuer's filings.

Rather, the Rule expressly requires that broker-dealers seeking to initiate price quotations

obtain, review, and maintain certain information about the issuer required by Rule 15c2-11(a)

(*e.g.* public filings).   Considering that information, plus "any other material information

(including adverse information) regarding the issuer" in its possession, Rule 15c2-11(b)(3), the

broker-dealer must have a reasonable basis to believe that the information required by

subsection (a) is accurate in all material respects and its source is reliable.  In other words, Rule

15c2-11 prohibits blanket reliance on public filings.  Rather, the broker-dealer must review the

required information "in the context of all other information about the issuer in its knowledge

or possession."  Publication or Submission of Quotations Without Specified Information,

---

[3] Extrinsic evidence appended to a motion to dismiss and considered by the court when it is "*central to the complaint*" and "*provided that its contents are not in dispute*" (emphasis added).  *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).  Here, the Commission disputes not only the relevance of the extrinsic evidence the Defendants offer, but also the accuracy.

Exch. Act Rel. No. 41110, 64 FR 11124, 11149 (Mar. 8, 1999).  The broker-dealer must be alert to any "red flags," for example, material inconsistencies between that information and other information in the broker-dealer's knowledge or possession.  *Id.* at 11147 – 49.  If red flags appear at any stage of the review process, the broker-dealer "cannot" publish quotations unless and until those red flags are reasonably addressed.  *Id.* at 11149.  In fact, the Complaint specifically alleges the striking similarities in the public filings across the issuers which, combined with Spartan's awareness of Mirman and Rose's control, substantially cast doubt on the accuracy of the filings and should have raised red flags.  See Compl. ¶ 66-67 (including chart).  Therefore, Spartan was obligated to address red flags and other adverse information in its possession about the issuer before initiating price quotations.

Regarding what the Defendants explain as the "role of a transfer agent" (Motion pg. 4-5) they attempt to downplay Island's role in the fraudulent scheme by alleging that transfer agents do not recommend or solicit the purchase or sale of securities.  Defendants provide no citation to support this allegation beyond the four corners of the Complaint.  In fact, the Complaint specifically alleges the significant roles of Island in the Mirman/Rose fraud, including but not limited to: (1) the preparation of the necessary certified shareholder list for the Form 211s; (2) the issuance of stock certificates without restrictive legend; (3) the preparation and filing of DTC applications to make the blank check companies more valuable; (4) the transfer of stock certificates, again without restrictive legend.  Collectively, these roles were critical to the scheme.

The Defendants later allege that there is no obligation on transfer agents to impose restrictive legends on securities.  Motion at pg. 6.  However, as alleged in the Compl. ¶ 87,

Island constantly ignored *its own policies and procedures* requiring that shares without restrictive legend "can NOT be issued in the name of an insider" (emphasis in original), and its training materials that "Insiders ALWAYS have restricted stock" (emphasis in original). Moreover, Island argues beyond the four corners of the Complaint about issuers which have "represented those securities were free trading."  To the contrary, the Complaint specifically alleges that Island knew and otherwise ignored a host of red flags that the securities were restricted, yet issued certificates without restrictive legend.

### C.  Standard of Review

The Defendants move to dismiss the Complaint arguing the Commission has (1) failed to comply with Federal Rules of Civil Procedure 8(a) and 9(b); (2) improperly brought a "shotgun" pleading; and (3) failed to state a cause of action pursuant to Rule 12(b)(6). However, their motion engages in no discussion of the high burden they must meet to warrant dismissal under any of these theories.

The Court must accept as true all facts alleged in the Complaint in the light most favorable to the Commission.  *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).  All reasonable inferences in the Complaint must be drawn in the Commission's favor.  *Ventrassist Pty. Ltd. v. Heartware, Inc.*, 377 F. Supp. 2d 1278, 1285 (S.D. Fla. 2005) ("the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merit of the plaintiff's case") (citing *Jackson v. Birmingham Bd. of Educ.*, 309 F.3d 1333, 1335 (11th Cir. 2002)).  Moreover, to satisfy the liberal notice pleading standards of Rule 8(a), the Commission must do nothing more than set forth "a short and plain statement of the claim showing that the pleader is entailed to relief."  *McMillian v.*

*AMC Mortgage Servs, Inc.*, 560 F. Supp. 2d 1210, 1212 (S.D. Ala. 2008).  The Court's inquiry at the motion to dismiss stage still focuses on whether the challenged pleadings "give the defendant fair notice of what the…claim is and the grounds on which it rests." *Id.*, (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).[4]  The Commission has satisfied this pleading standard.

The Defendants further overstate the requirements for pleading fraud with particularity under Federal Rule of Civil Procedure 9(b).  Rule 9(b) does not abrogate the concept of notice pleading set forth in Rule 8(a).  *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *SEC v. Physicians Guardian Unit Inv. Trust*, 72 F. Supp. 2d 1342, 1352 (M.D. Fla. 1999) (denying motion to dismiss).  The purpose of Rule 9(b) is to ensure allegations of fraud are specific enough to provide sufficient notice of the acts complained of and eliminate those complaints filed as a pretext for discovery of unknown wrongs.  *SEC v. Ginsburg*, 2000 WL 1299020, at *2 (S.D. Fla. Jan. 10, 2000).  Pleading fraud with particularity does not require pleading "detailed evidentiary matter." *Coquina Invs. v. Rothstein*, 2012 WL 4479057, at *12 (S.D. Fla, Sept. 28, 2012).  *See also Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 n.20 (2d Cir. 1979) (reversing dismissal of a private Section 10(b) action).  The complaint need only provide a reasonable delineation of the underlying acts and transactions constituting the fraud. *Anderson v. Transglobe Energy Corp.*, 35 F. Supp. 2d 1363, 1369-70 (M.D. Fla. 1999) (denying motion to dismiss).  A complaint pleads fraud with particularity if it alleges the substance of the fraudulent acts, who engaged in the fraud, and when the fraud occurred.

---

[4] "The proper test is whether the complaint 'contains either direct or inferential allegations respecting all material elements necessary to sustain a recovery under some viable legal theory.'"  *McMillian*, 560 F. Supp. 2d at 1213 (citation omitted).  The threshold for withstanding a motion to dismiss based on a claim of inadequate pleading is "exceedingly low."  *In the Matter of Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995).

*Hekker v. Ideon Grp., Inc.*, 1996 WL 578335, at *4 (M.D. Fla. Aug. 19, 1996) (denying motion to dismiss).[5]   Under those standards, the Commission's detailed Complaint, which includes 122 paragraphs of underlying facts of who, what, when, where, and how satisfies the requirements for pleading fraud with particularity.

In addition to the detailed summary of the frauds at issue, the Defendants' respective roles, and other key players (Compl. ¶¶ 1-22) the Complaint clearly delineates the two shell factory frauds at issue here, "A. The Mirman/Rose Shell Factory (Compl. ¶¶ 26 – 99), and "B. The Daniels/Fan/Harrison Shell Factory" (Compl. ¶¶ 100 – 122).   The Commission further provides five charts (Compl. ¶¶ 30, 35, 66, 72, 102) which detail: (1) the name of the relevant Mirman/Rose companies; (2) the name of the control person(s) for each company; (3) the date the Form S-1 of each company became effective; (4) the date of change of control of each company; and (5) the time difference between the S-1 effective date and the date of change of control of each company.  Compl. ¶ 30.

A few paragraphs later, the Commission alleges that Defendants Spartan and Island's actions allowed Mirman and Rose to sell the companies generating at least $3.7 million in proceeds and details: (1) the name of each company; (2) the name of the Defendant/representative of Spartan who signed the Form 211 of each company; (3) the date Island issued the shares of each company; (4) the date FINRA cleared the Form 211 of each company; (5) the date of the DTC filing for each company; and (6) the date Island transferred the shares of each company to the buyer.  Compl. ¶ 35.  Equally detailed information is

---

[5] *See also SEC v. Homa*, 2000 WL 1100783, at *3-4 (N.D. Ill. Aug. 4, 2000) (Commission "pleaded the who, what, when, where, and how of the fraud in sufficient detail" by setting forth the role of the various defendants in the offerings, how the securities were marketed to investors nationwide, the time frames of the offerings, and the substance of the misrepresentations).

provided in each of the three additional charts included in the Complaint ¶¶ 66, 72, 102. Accordingly, the Defendants' argument that the Commission has failed to plead fraud with particularity or that it has failed to state a cause of action is meritless.

### D.  The Complaint is Not a Shotgun Pleading

The Defendants' argument that the Commission's Complaint is an improper "shotgun pleading" similarly fails.  "A shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).  Each count against the Defendants incorporates by reference the factual allegations in paragraph 1-122, but, each count subsequent to Count 1 does *not* incorporate the prior count. This is an acceptable method of pleading as confirmed by this Honorable Court. *See Terry v. Interim Healthcare Gulf Coast, Inc.*, 2018 WL 1992276, at *2 (M.D. Fla. Apr. 27, 2018) (complaint that re-alleges just the factual allegations and does not re-allege each count, is different from a typical shotgun pleading).  In *SEC v. City of Miami*, 988 F. Supp. 2d 1343, *1354 (S.D. Fla. 2013), the court distinguishes *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273 (11th Cir. 2006), a case cited by the Defendants, and rejected the defendants' shotgun pleading claim because each count incorporated only the general factual allegations.[6] The Commission has *not* incorporated any of the allegations of Counts I through XIV (Compl. ¶¶ 123-191) in any other Count of the Complaint.

---

[6] As noted by the *City of Miami* court, 988 F. Supp. 2d * 1355, the 11th Circuit in *U.S. ex rel. Atkins v. McInteer*, described a typical shotgun pleading as one where "Count Two incorporated Count One and adds six paragraphs." 470 F.3d 1350, 1354, n.6 (11th Cir. 2006).

Moreover, the incorporation of the 122 factual allegations in each count against the Defendants is wholly appropriate in view of the scope of the fraud counts and the multiple defendants who each played varying, yet key roles.  This is not a pleading in which factual allegations that are clearly irrelevant to the various counts have been incorporated by reference.  To the extent there may be instances of over-inclusion of factual allegations which have been incorporated by reference in particular counts, this would not be fatal to the pleading.  *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1325 (11th Cir. 2015).

### E.   The Commission has adequately alleged the Defendants Violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act

Spartan, Island and Dilley contend that the Commission has failed to allege they "made" material misrepresentations or omissions and if they did, none were made to the investing public, therefore Count III (violations of Section 17(a)(1) of the Securities Act of 1933 ("Securities Act")) and Count VI (violations of Section 10(b) and Rule 10b-5(b) of the Exchange Act) should be dismissed.  Additionally, Island contends that the Complaint does not identify any statement made by it, therefore Count IV (violations of Section 17(a)(3) of the Securities Act) should be dismissed.  Motion at p. 11-16.

1.   The Commission's Claims Under Securities Act Sections 17(a)(1) and (3) Do Not <u>Require that the Defendants Be the "Maker" of a False Statement</u>

The Defendants incorrectly lump together their arguments related to Counts III, IV and VI and misapply the Supreme Court's decision of *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011).  *Janus* turned on the interpretation of the word "make" in Rule 10b-5(b) of the Exchange Act.  Counts III and IV of the Commission's Complaint seek relief for violations of Sections 17(a)(1) and (3) of the Securities Act, respectively.  The word "make"

does not appear in any part of Section 17(a) of the Securities Act, therefore *Janus* does not apply to these violations.  *SEC v. Monterosso*, 756 F.3d 1326, 1334 (11th Cir. 2014); *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 795-98 (11th Cir. 2015); *see also Lorenzo v. SEC*, 139 S. Ct. 1094, 1101 (2019) (knowing dissemination of false statement made by another constitutes violation of Securities Act § 17(a)(1) and Exchange Act Rule 10b-5(a), (c)).  Thus, the Defendants' arguments that Counts III and IV of the Complaint fail because neither Spartan, Island, nor Dilley "made" a statement (Motion at pg. 11) should be summarily denied.

    2.  <u>Spartan, Island and Dilley made misrepresentations or omitted facts.</u>

While the *Janus* "maker" requirement does apply to Count VI (Rule 10b-5(b)), the Complaint sufficiently alleges false statements made by the Defendants.  In their Motion, the Defendants gloss over the numerous allegations which set forth their misrepresentations and omissions to, among others, the Commission, FINRA, DTC, and securities purchasers. Instead, the Defendants place blame on the blank check companies.[7]  Motion at pg. 11. The Defendants neglect to acknowledge that the Commission alleges among other things that:

- Island and Spartan misrepresented in connection with a DTC applications that at least two companies were not shells.  Compl. ¶¶ 38, 108.

- Dilley, on behalf of Island, signed two separate letters to buyers of two of the blank check companies which misrepresented the restricted nature of the companies' securities. Compl. ¶¶ 46-47.

- The Forms 211 and cover letters contained misrepresentations. Compl. ¶ 60-65.

---

[7] Yet the Defendants later identify at least five statements which are "arguable attributed to Spartan or Dilley". Motion at pg. 12.

- Dilley drafted the portion of the Form 211 misrepresenting to FINRA that Mirman had no relationship with Spartan. Compl. ¶ 79.

- Spartan misrepresented to FINRA stated Spartan had no relationship with any "representatives" of an issuer and that "Mirman has no relationship" with the issuer. Compl. ¶¶ 75, 76, 80.

- Island submitted at least 12 DTC transfer agent attestation forms (6 signed by Dilley) misrepresenting that it would comply with DTC's operational requirements, including exercising diligence in the related securities transactions and providing DTC with complete and accurate information about the securities, when Island knew or was reckless in not knowing that it failed to disclose material information about the restricted nature of the securities and performed no diligence.   Compl. ¶ 89.

- Island routinely processed the bulk transfers by, among other things, signing and transmitting stock certificates without restrictive legend for securities Island knew, or was reckless in not knowing, were in fact restricted.  Compl. ¶ 95.

- Regarding the Daniels/Fan/Harrison fraud, Spartan similarly filed Forms 211 misrepresenting to FINRA the current and future business plan of the issuers, among other things.  Compl. ¶ 106.

- Eldred[8], Spartan's registered principal and representative, signed securities deposit forms misrepresenting that Daniels was never an "affiliate" of the issuer. Compl. ¶ 109.

---

[8] While Eldred has inexplicably brought his own motion to dismiss, his role as registered principal and representative of Spartan and CEO of Island, make his actions relevant to the violations of Spartan and Island. *SEC v. Morgan Keegan & Co.*, 678 F.3d 1233, 1249 (11th Cir. 2012) ("[C]ommon law agency principles, including the doctrine of respondeat superior, remain viable in actions under the Exchange Act.") (citation and quotation omitted); *SEC v. K.W. Brown & Co.*, 555 F. Supp. 2d 1275, 1305 (S.D. Fla. 2007) ("A company's scienter may be imputed from that of the individuals controlling it.").

- Eldred signed three Forms 211 misrepresenting that each issuer was pursuing local business operations with no plans for mergers or changes in control, despite knowing this was false.  Compl. ¶ 115.  The Forms 211 submitted by Spartan also misrepresented how Spartan was solicited to file the Forms 211 and that it had no relationship with any officer or representative of the issuer.  Compl. ¶¶ 116, 117.

- Eldred approved Spartan's misrepresentation to FINRA which stated that shareholders had purchased their shares, while knowing that Daniels and Harrison had instead paid for all the shares. Compl. ¶ 122.

### 3.   The misrepresentations were material

Spartan and Dilley contend that *any* statements attributable to them are not material. Motion at pg. 12.  Plainly stated, Spartan and Dilley significantly downplay their roles in the fraudulent scheme.  Materiality is a "mixed question of law and fact" because it involves the application of a legal standard to a particular set of facts, and accordingly, depends on the relevant circumstances of the case.  *SEC v. Scoppetoulo*, 2011 WL 294443, at *2 (S.D. Fla. Jan. 27, 2011) (citing *TSC Indus., Inc.*, v. *Northway, Inc.*, 426 U.S. 438, 449-50 (1976)).  It is inappropriate to dismiss a securities fraud complaint at the pleading stage unless a reasonable person cannot identify the significance of the alleged misstatement or omission.  *TSC Indus.*, 426 U.S. at 450.[9]

As relevant to assessing the materiality of the misrepresentations presented in this case,

---

[9] *See also SEC v. RPM Int'l, Inc.*, 282 F. Supp. 3d 1, 23 (D.D.C. 2017), "[b]ecause materiality is a mixed question of law and fact, courts have cautioned against granting a motion to dismiss based on the failure to plead materiality 'unless [the information is] so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance'" quoting *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 717 (2d Cir. 2011).

numerous cases hold that representations regarding a company's management, ownership, business plans and control persons are material.  *See generally, TSC Indus.*, 426 U.S. at 452 n.15 ("[T]o the extent that the existence of control was, at the time of the proxy statement's issuance, a matter of doubt to those responsible for preparing the statement, we would be unwilling to resolve that doubt against disclosure of facts so obviously suggestive of control"); *SEC v. Farmer*, 2015 WL 5838867, at *12 (S.D. Tex. Oct. 7, 2015) (finding misstatements made "through the Form 211 application process" to be the basis, among other things, for Section 10(b) liability).[10]  Such misstatements as the business purpose and control of the issuers were material.  *See Transit Rail LLC v. Marsala*, 2007 WL 2089273, at *12-13 (W.D.N.Y. July 20, 2007) (allowing Section 10(b) claim based on material omissions in Form 211 about undisclosed control person).  The Complaint contains numerous specific allegations of these exact types of misrepresentations and omissions.  Compl. ¶¶ 27, 37, 64, 106 (business purpose of issuer); ¶¶ 60-61, 79-80 (express misrepresentation about Mirman and omissions about Mirman and Rose).

The Defendants also argue that their misstatements are not material because the Form 211 application process is "private."  Motion pg. 13-14.  However, case law dictates that the fact that a statement is made in *private* rather than to the public does not foreclose a statement's materiality.  *SEC v. Greenstone Holdings, Inc.*, 2012 WL 1038570, at *5 (S.D.N.Y. Mar. 28, 2012).  "A misstatement made in any phase of the selling transaction can be material if a

---

[10] *See also SEC v. Fehn*, 97 F.3d 1276, 1290 (9th Cir. 1996) (material statements regarding undisclosed promoter and control person); *SEC v. CKB168 Holdings, Ltd.*, 2016 WL 6915859, *14-15 (E.D.N.Y. Sept. 28, 2016) (finding "no doubt that [the] promoters' false claims of [the entities'] legitimacy…were material"); *Basic Inc. v. Levinson*, 485 U.S. 224, 231 & 238 (1988) (even preliminary discussions of merger can be material since a merger can be the most important event that can occur in a small corporation's life).

reasonable investor would have considered the defendant's alleged misrepresentations important, even if the statement is not made directly to the investor." *SEC v. Czarnik*, 2010 WL 4860678, at *5 (S.D.N.Y. Nov. 29, 2010). *See, e.g., Farmer*, 2015 WL 5838867 at *12 (finding misstatements made "through the Form 211 application process" to be the basis of Section 17(a) and 10(b) liability).[11]

The Defendants next argue that the Complaint does not allege that the representation in Spartan's cover letters to FINRA -- that the issuer is not "in negotiations for any actual or potential merger or acquisition" -- is misleading. However, the Complaint alleges throughout that Spartan (through Dilley) knew based on their involvement in Mirman and Rose's sale of the first blank check companies immediately upon Form 211 clearance that Mirman and Rose were manufacturing the blank check companies for sale in assembly-line fashion, and that the Form 211 was one step in that process. (Compl. ¶¶ 37, 62). Notably, the Complaint does not allege that this representation was false – rather, that it was misleading. It was misleading for Spartan to allege no knowledge of any "actual or potential merger or acquisition" when it was aware at the time of making the statement that Mirman and Rose were in the business of purely manufacturing the blank check companies for sale as public vehicles.

4. In connection with requirement is met

The Defendants contend that the Commission fails to meet the "in connection with" requirement because the false statements were not made to the investing public. This argument is contrary to established case law. *SEC v. Radius Capital Corp.*, 653 Fed. App'x. 744, 750

---

[11] The Commission is not required to prove that any investor actually relied on the misrepresentations or that the misrepresentations caused any investor to lose money. *SEC v. Morgan Keegan & Co.*, 678 F.3d 1233, 1244 (11th Cir. 2012).

(11th Cir. 2016) ("Misrepresentations themselves need not be explicitly directed at the investing public or occur during the transaction to be 'in connection with the purchase or sale of' or 'in the offer or sale of' any security", and rejecting argument that for liability to attach, the misrepresentations must be disseminated into the public arena).[12] This has been held specifically in the context of Form 211 misstatements to FINRA. *SEC v. C. Jones & Co.*, 312 F. Supp. 2d 1375, 1381-82 (D. Colo. 2004) (misstatements in Form 211 were made "in connection with" securities transaction by "enabling a stock to be publicly traded" and are "reasonably calculated to influence the investing public").[13]

> 5. The Complaint adequately pleads scienter

The Defendants seeks to dismiss Counts III and V-VII contending the Complaint (1) does not plead facts with particularity pursuant to Rule 9(b) or the more general standard under Rule 8(a) and (2) the red flags identified in the Complaint are insufficient to establish Defendants' scienter.[14]

First, the Commission pleads facts that make clear the Defendants acted fraudulently and with scienter, but also has pled facts establishing Defendants' severe recklessness if not knowing misconduct. See also Section E. 2 above. There can be no doubt that the Commission alleges Dilley *schemed* with Mirman and Rose and Eldred *schemed* with Daniels, Fan and

---

[12] *SEC v. Czarnik*, 2010 WL 4860678, *4 (S.D.N.Y Nov. 29, 2010) (attorney's misstatements "contained in documents disseminated only to the Issuers' transfer agent [but] not made directly to the investing public" were sufficiently linked to securities trading to be actionable under Section 17(a) and Section 10(b)).

[13] In a later opinion, the *C. Jones* court found against the SEC. 2009 WL 321696 (D. Colo. Feb. 10, 2009). That decision is distinguishable. In *C. Jones*, the Form 211 made misrepresentations, but the court found that a careful, reasonable investor had access to the misrepresentations. Here, the Forms 211 contained a number of material misrepresentations that were not disclosed elsewhere, including the control, purpose, business plan, and milestones of the issuers.

[14] Rule 9(b) allows malice, intent, knowledge and other conditions of mind to be averred generally, and the Commission has sufficiently pled facts indicating the Defendants acted with scienter.

Harrison to *defraud* the public – with detailed allegations of both the source and extent of Dilley and Eldred's awareness and also their specific contributions to the scheme. Compl. ¶¶ 6, 36-50, 63-64, 79, 109-115, 120-122.  Further, with Dilley and Eldred's knowing or reckless involvement, Spartan and Island made crucial contributions to the Mirman/Rose fraud and Daniels/Fan/Harrison fraud.[15]

Second, the Complaint alleges sufficient facts, including, but not limited to, those identified as red flags, to support that the Defendants acted with the requisite scienter.  Courts have defined scienter as a state of mind embracing intent to deceive, manipulate or defraud. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976).  The Eleventh Circuit has concluded scienter may be established by a showing of knowing misconduct or severe recklessness.  *SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1324 (11th Cir. 1982).[16]  Scienter involves an "assessment[] peculiarly within the province of the trier of fact . . . ."  *SEC v. Merch. Capital, LLC*, 483 F.3d 747, 766 (11th Cir. 2007).[17]  Thus, to survive a motion to dismiss, the Commission need only "allege[] plausible facts either directly showing or otherwise supporting the reasonable inference that Defendants acted with scienter."  *SEC v. Mannion*, 789 F. Supp. 2d 1321, 1334 (N.D. Ga. 2011).

The Complaint pleads facts showing the Defendants knowingly or recklessly made false statements and participated in the Mirman/Rose and Daniels/Fan/Harrison schemes to

---

[15] "The scienter of a corporation can be imputed from that of its officers." *SEC v. Platforms Wireless International Corp.*, 559 F. Supp. 2d 1091, 1096 (S.D. Cal. 2008) (*citing SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1089 n.3 (2d Cir. 1972)).

[16] Despite the Defendants' contention, absent from the requirements of establishing scienter is any obligation of the Commission to allege or show the Defendants' "motive".

[17] "Scienter can be established through circumstantial or direct evidence." *SEC v. Monterosso*, 756 F.3d 1326, 1335 (11th Cir. 2014).

defraud.  Specifically, in addition to the misrepresentations identified in Section E.2 above, the Complaint alleges:

- Dilley communicated exclusively with Mirman and Rose, and knew they directed the finances of the blank check companies.  Compl. ¶ 45.  Dilley schemed with Mirman and Rose to create additional blank check companies of a strikingly similar nature to sell. Compl. ¶¶ 35, 45, 66 (chart of similarities across all Mirman/Rose companies).

- Related to Kids Germ, Dilley knew or was reckless in not knowing of Mirman and Rose's undisclosed control of and intent to ultimately sell the blank check company.  Compl. ¶¶ 37-38.  Dilley emailed Rose that he knew "the route it [the issuer] is taking."  However, Dilley initiated the DTC application for Kids Germ misrepresenting that the company "is not a shell", despite knowing or being reckless in not knowing it was a shell because of, among other things, its lack of assets or revenues and knowing "the route it is taking." *Id.*

- One month later, Island transferred the Kids Germ shares from Rose's friends and family in bulk without a restrictive legend stamped on the certificate to indicate that the shares are restricted from transfer or sale.  Dilley knew or was reckless in not knowing that these shareholders were affiliates of Kids Germ because of Rose's control over all their shares and therefore, the shares should have been restricted from transfer or sale.  Compl. ¶ 38.

- Related to Obscene Jeans, the second blank check company at issue, the Complaint alleges details of various documents, emails, and events involving Dilley and his knowledge that Obscene Jeans was merely a blank check company being created and used with the intention of selling all its securities in a bulk sale.  Compl. ¶¶ 39-44.

- Related to E-Waste and Global, by this point, Dilley had participated in at least eight prior

transactions with Mirman and Rose which led to the sale of those prior blank check companies in the same assembly line fashion.  Compl. ¶ 35.  Nevertheless, Dilley made misrepresentations in two separate letters to buyers regarding the restricted nature of the companies' securities.   Compl. ¶¶ 46-47.

Defendants' miscellaneous arguments regarding scienter all lack merit.  For example, Defendants claim that the Complaint's allegations regarding one of the blank check companies, First Independence, is "problematic", but this argument misses the point and goes beyond the four corners of the Complaint by attaching a hyperlink to documents not alleged in the Commission's Complaint.   The Complaint alleges that Lopez understood that FINRA's questioning the "shell" status raises a red flag and warrants an investigation into whether the issuer is a "blank check company, that there's an ongoing effort to further the business plan." Compl. ¶ 74.  Both "shell" companies and "blank check" companies have little or no assets or revenues – the distinction is that "blank check" companies have no business purpose other than to be merged or acquired while "shell" companies are pursuing a particular business plan.  See Securities Act of 1933 Rule 419 (definition of "blank check company") and Rule 405 (definition of "shell company").  In other words, regardless of whether the issuer later discloses itself as a shell (an issue outside the four corners of the Complaint), FINRA's preceding challenge triggers an investigation into the true nature and purpose of the issuer.  The Complaint specifically alleges that Lopez made no such investigation.  If Lopez had inquired into First Independence's business plan, he would have soon learned that the issuer had no purpose other than to be sold as a public vehicle (i.e. not just a shell company, but a blank check company), which would have contradicted numerous other statements Spartan made to

FINRA about First Independence.  Moreover, the Complaint details how Lopez aided and abetted Spartan's violations not just in connection with First Independence, but also at least three other Mirman/Rose Companies.  Compl. ¶¶ 72-80.

The Defendants later argue in relation to one of the blank check companies, Obscene Jeans, that there are no facts alleged that the blank check companies were in fact "shells" being sold for their value as public companies.  In doing so, the Defendants again go outside the four corners of the Complaint and attach hyperlinks to documents not alleged in the Complaint. Accordingly, this argument should be disregarded.[18]  As discussed above, the Commission has amply pled that the Defendants acted with scienter and Counts III and V-VII should not be dismissed.[19]

## F.  The Commission's Claims for Aiding and Abetting are Sufficiently Pled

The Defendants contend that the Commission fails to state a claim for aiding and abetting in Counts II (Dilley, Eldred and Lopez aided and abetted Spartan's violations of Section 15(c)(2) and Rule 15c2-11 of the Exchange Act), and Counts VIII-XIII (Spartan, Island, Dilley and Eldred aided and abetted Mirman and Rose, or Daniels, Fan and Harrison's violations of the anti-fraud provisions of the federal securities laws).  In support, they claim the Complaint fails to allege "recklessness"[20] or that the Defendants provided "substantial

---

[18] Defendants also ignore ample allegations in the Complaint of Spartan and Dilley's awareness that Mirman and Rose sold the issuers purely for their status as public vehicles. Compl. ¶¶ 5-6, 8, 10, 37-50.

[19] To the extent there is any doubt that Commission has plead scienter as to the corporate defendants here, once the Commission has pled scienter as to the CEO, President, or other control person, it is clear that it has done so with regard to his or her corporate entity.  *See SEC v. China Ne. Petrol. Holdings Ltd.*, 27 F. Supp. 3d 379, 390 (S.D.N.Y. 2014) (knowledge of CEO, President, and largest individual shareholder could be imputed to corporation).

[20] The Defendants at ft nt. 35 misstate aiding and abetting law prior to the enactment of the Dodd Frank Act as requiring actual knowledge.  *See SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 800-01 (11th Cir. 2015) (disagreeing with defendants' argument that prior to the Dodd-Frank Act, "actual knowledge" was required.)

assistance" to Mirman and Rose.[21]  To establish aiding-and-abetting liability, the Commission

must show the Defendants knowingly or recklessly provide substantial assistance to another

person in violation of any provision.  *SEC v. Goble*, 682 F.3d 934, 947 (11th Cir. 2012).

First, as discussed in Section E above, the Commission has alleged an abundance of

facts which support that the Defendants acted at least recklessly, if not knowingly when

participating in the Mirman/Rose frauds.  Additionally, as it relates to Dilley and Lopez, who

aided and abetted Spartan in its violations of Section 15(c)(2) and Rule 15c2-11 of the

Exchange Act (Count II), the Complaint alleges that Spartan's review process fell short of its

Rule 15c2-11 obligations.  Dilley and Eldred, who were familiar and remained involved with

the issuers, signed the Form 211 but then largely ceded responsibility for the Form 211 process

(including investigation of red flags and other deficiencies raised by FINRA) to Lopez.  In

turn, Lopez was Spartan's Chief Compliance Officer and the principal responsible for

effectuating its extensive written policies and procedures applicable to Form 211 applications.

Lopez knowingly or recklessly ignored those procedures (including his own personal

obligations thereunder) and the other requirements inherent in Rule 15c2-11, including failing

to conduct any investigation or inquiry into red flags explicitly raised by FINRA in at least 7

deficiency letters and other adverse information in Spartan's possession, or even to familiarize

himself with the issuers.  As a result, Lopez was a substantial factor in Spartan's failure to have

a reasonable basis for believing that required information about those four Mirman/Rose

---

[21] Defendants' motion ignores that Counts VIII-XIII also allege Spartan aided and abetted Daniels, Fan, and Harrison.  Therefore, we assume that the Defendants do not seek to dismiss those claims.

Companies was accurate and from a reliable source despite a host of red flags to the contrary. E.g., Compl. ¶¶ 66-77, 80.

Second, Spartan, Island and Dilley substantially assisted Mirman and Rose's fraudulent manufacture of the 19 undisclosed blank companies which allowed Mirman and Rose to sell all shares under their control without registration.  Central to the fraud were the public quotation, DTC eligibility, and bulk transfer of the securities.  Dilley (and thus Spartan and Island) knew, or was reckless in not knowing, that Mirman and Rose were manufacturing the blank check companies in routine fashion for sale as public vehicles based, in part, on his own personal participation in several sales of the blank check companies. Accordingly, for the reasons set forth above, there is no basis to dismiss these counts of the Complaint.

## G.  The Commission has adequately alleged scheme liability

Defendants seek to dismiss scheme liability claims brought by the Commission under Securities Act Sections 17(a)(1), (3) and Exchange Act Section 10(b) and Exchange Act Rules 10b-5(a), (c) (Counts III-V and VII) claiming the Complaint does not sufficiently allege scienter and lacks specificity.  Motion at 26-27.  We incorporate here the allegations and argument made in Section C and E of this response and further reiterate that the Commission's Complaint pleads allegations sufficient to show Spartan, Island and Dilley schemed with Mirman and Rose to defraud the public, FINRA and DTC that the blank check companies were operating companies with independent management and shareholders, rather than undisclosed blank check companies which Mirman and Rose controlled and sold.

## H.  The Commission Adequately Pled a Section 5 Violation Against Spartan, Island and Dilley

Section 5(a) of the Securities Act provides that, unless a registration statement is in

effect as to a security, it is unlawful for any person, directly or indirectly, to engage in the offer

or sale thereof in interstate commerce.   Section 5(c) similarly prohibits offers to sell, or offers

to buy, unless a registration statement has been filed.   Scienter is not an element of a Section

5 violation.   *See SEC v. Calvo*, 378 F.3d 1211, 1215 (11th Cir. 2004).   A defendant does "not

have to be involved in the final step of the distribution to have participated in it."   *Zacharias

v. SEC*, 569 F.3d 458, 464 (D.C. Cir. 2009).[22]   A person can be liable if he/she was a "necessary

participant" and "substantial factor" in the transaction.   *Calvo*, 378 F.3d at 1215.

1.   The existence of registration statements for the initial offerings is of no moment

The Defendants misconstrue the registration requirements of Section 5 of the Securities

Act.   The Defendants present the completely unsupportable argument that merely because

initial registration statements were in effect, all transactions that subsequently occur are thus

registered for all time.   Motion at pg 27.   However, the registration requirements of Section 5

apply to *transactions,* not to individuals or securities as a whole.   The "registration of a security

is transaction-specific."   *SEC v. Cavanagh*, 155 F.3d 129, 133 (2d Cir. 1998).   Thus, even

though the initial purported sales to friends and family were registered pursuant to the Forms

S-1, any subsequent *transactions* would separately have to satisfy Section 5.[23]   When a

registration statement is filed, it is that *specific offering* of securities that is registered; the

securities themselves are not considered registered for all times and all purposes.   *See

Cavanagh*, 155 F.3d at 133 (registration statement covering issuance to management did not

cover reoffering of shares to other persons).   If a later offering occurs, the securities sold in

---

[22] *SEC v. Sierra Brokerage Servs.,* 608 F. Supp. 2d 923, 950 (S.D. Ohio 2009) (sale of shell company by reverse merger "could inevitably lead to a public distribution").

[23] *SEC v. Universal Express, Inc.*, 475 F. Supp. 2d 412, 422 (S.D.N.Y. 2007) (proper registration of a security at one stage does not necessarily suffice to register subsequent offers or sales of that security).

that offering must either be "registered, exempt, or illegal." Thus, it is of no moment whether the initial offering was covered by a registration statement because the control people (with the assistance of Spartan, Island and Dilley) resold the securities in offerings without the separate registration statements for that separate transactions. Compl. ¶ 4, 6, 10, 26, 29, 35, 38, 49, 91, 93-94, 96-99.[24]

2. Spartan, Island and Dilley's participation

Spartan, Island and Dilley were necessary participants and substantial factors in the offer or sale of purportedly unrestricted stock shortly after the bulk transfers without a valid registration or exemption. Spartan and Dilley prepared and filed at least 14 Forms 211 which were necessary for the securities to be publicly quoted. Compl. ¶ 32-35. *See SEC v. Farmer*, 2015 WL 5838867, *18 (S.D. Tex. Oct. 7, 2015) (defendant who, among other things, provided false information in Form 211 process was a "necessary participant" liable under Section 5).[25] Spartan, Island, and Dilley then initiated – and provided false information for – DTC applications by which these securities were cleared for electronic settlement. Compl. ¶ 29, 35, 37-39, 89-90. Island and Dilley effectuated the bulk issuance and transfer of the entire float of purportedly unrestricted securities and promptly assisted the shell buyers in public sales. Compl. ¶¶ 3 – 6, 10, 29 – 35.

---

[24] *See also SEC v. Husain*, 2017 WL 810269, at *5-6 (C.D. Cal. Mar. 1, 2017) (finding where Form S-1 registration statement was in place, subsequent sales to shell company purchasers were not exempt from registration and supported the Commission's complaint against attorney for violation of Section 5 of the Securities Act).

[25] *SEC v. Alternative Green Technologies, Inc.*, 2012 WL 4763094, *7 (S.D.N.Y. Sept. 24, 2012) ("Parties who misrepresent the relevant facts in order to facilitate the distributions of unregistered offerings may be liable as necessary participants and substantial factors for violations of Section 5 . . . .") (alteration, quotation, and footnote omitted).

The Defendants rely heavily on the inapposite case of *SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248 (9th Cir. 2013), in which the court held that the Commission was *not entitled to summary judgment* on a Section 5 claim against the defendant, finding the issue of whether the defendant was a substantial factor in the sales was a question for the jury. *Id*. at 1257-59. First, *CMKM* case is procedurally distinguishable because it addressed the Commission's summary judgment motion, not the defendant's motion to dismiss. Second, regardless of whether the Commission eventually will be entitled to summary judgment, the evidence will be more than sufficient for a jury to find that Island and Dilley were substantial participants in the offers or sales here in light of their specific awareness of the fraud and unlawful distributions. Compl. ¶¶ 45, 83, 86, 88-89, 92, 97.

Island and Dilley's actions went beyond arms-length stock processing given they were aware – and ignored red flags – that shell purchasers were acquiring securities in bulk from affiliates and publicly reselling those securities without satisfying all the conditions in Rule 144 (including the minimum one-year holding period under Rule 144(i) applicable to shell companies) or any other possible exemption. *See Wassel v. Eglowsky*, 399 F. Supp. 1330, 1367 (D. Md. 1975) (transfer agent has duty to forestall illegal distribution which it knows or has reason to know is occurring), *aff'd on opinion below*, 542 F.2d 1235 (4th Cir. 1976).

Island failed to respond to these red flags that the sales involved securities owned by affiliates that could not avail themselves of an exemption from registration, and despite its own policies and procedures prohibiting the preparation of unlegended stock certificates for sales by affiliates. These events, when considered collectively, created a reasonable expectation for Island to be aware of the unlawful distributions. By obtaining public quotations and rubber-

stamping these issuances and transfer requests, despite these red flags, Spartan, Island and Dilley repeatedly played a significant role in the unlawful distributions of Mirman/Rose Company shares in violation of Section 5.

**I.  Defendants' Statute of Limitations Arguments Lack Merit**

Defendants make two arguments relating to the statute of limitations:  (1) the five-year limitations period governing actions seeking a "fine, penalty, or forfeiture," 28 U.S.C. § 2462, applies to the Commission's claims for injunctions and penny stock bars, and (2) the Court should dismiss the Commission's claims "insofar as they rely on transactions outside the limitations period."  As shown below, both arguments fail.

1.      Section 2462 Does Not Apply to Injunctive Relief or Penny Stock Bars

Defendants' argument that § 2462 applies to injunctions and penny stock bars is contrary to binding precedent and would be wrong even if this Court were writing on a blank slate.  The Eleventh Circuit has squarely held § 2462 inapplicable to the permanent injunctive relief the Commission is seeking.  *SEC v. Graham*, 823 F.3d 1357, 1360-62 (11th Cir. 2016). Similarly, *Coghlan v. NTSB*, 470 F.3d 1300 (11th Cir. 2006), held that § 2462 did not apply to the government's revocation of a pilot's certificate.  *Id.* at 1305-07.[26]  *Graham* and *Coghlan* compel the conclusion that § 2462 is inapplicable to the permanent injunctions and penny stock bars sought by the Commission.

Defendants' argument that *Graham* is no longer binding in light of *Kokesh v. SEC*, 137 S. Ct. 1635 (2017), is unavailing.  *Graham* and *Coghlan* remain binding circuit law unless

---

[26] *Coghlan* cited with approval *Meadows v. SEC*, 119 F.3d 1219, 1228 n.50 (5th Cir. 1997), characterizing *Meadows* as "determining that temporary bar from the securities industry was remedial rather than punitive where the ALJ made specific findings as to the respondent's lack of fitness and the danger posed to the investing public." *Coghlan*, 470 F.3d at 1307.

"clearly overruled by the Supreme Court." *Inversiones y Procesadora Tropical Inprotsa, S.A. v. Del Monte International GMBH*, 921 F.3d 1291, 1301 (11th Cir. 2019). "To constitute an 'overruling' for the purposes of the prior panel precedent rule, the Supreme Court decision must be clearly on point. Moreover, the intervening Supreme Court case must actually abrogate or *directly* conflict with, as opposed to merely weaken, the holding of the prior panel." *Id.* (emphasis by the court; citation, quotation, and alterations omitted).

Here, *Kokesh* is neither clearly on point, nor does it abrogate or directly conflict with the holdings of *Graham* and *Coghlan* on injunctions and occupational limitations. "The *sole* question presented" in *Kokesh* is whether "*disgorgement . . .* is subject to § 2462's limitations period." 137 S. Ct. at 1642 n.3 (emphasis added). The Court did not opine on whether injunctions or penny stock bars are penalties within the meaning of § 2462. Thus, *Kokesh* does not overrule *Graham* or *Coghlan*, as shown by the fact that the only post-*Kokesh* court of appeals case to consider the issue held that an injunction in a Commission case was not a penalty – and thus not subject to the five-year limitations period – under § 2462. *SEC v. Collyard*, 861 F.3d 760, 763-65 (8th Cir. 2017). At most, the question of whether, post-*Koskesh*, injunctions and penny stock bars[27] are § 2462 "penalties" is debatable, and *Kokesh* is not a "clearly on point" decision that would constitute an "overruling" permitting this Court to depart from *Graham and Coghlan*. Moreover, even if this Court were writing on a blank slate, *Kokesh* does not impact the Supreme Court cases showing that an injunction is a remedial, forward looking remedy that is *not* a penalty:

---

[27] With respect to penny stock bars, see the concurring opinions of then Judge Kavanaugh and Judge Millet debating whether *Kokesh* affected circuit law on the issue of occupational sanctions. *Saad v. SEC*, 873 F.3d 297, 304, 307 (D.C. Cir. 2017).

> The sole function of an action for injunction is to forestall future violations.  It is so unrelated to punishment or reparations for those past that its pendency or decision does not prevent concurrent or later remedy for past violations by indictment or action for damages by those injured.

*United States v. Oregon State Medical Soc.*, 343 U.S. 326, 333 (1952); *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) ("The purpose of an injunction is to prevent future violations . . . ."); *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944) ("The historic injunctive process was designed to deter, not to punish.").  Thus, before it can issue an injunction, the court must find a reasonable likelihood that the wrong will be repeated.  *SEC v. Hall*, 759 F. App'x 877, 884 (11th Cir. 2019) (affirming district court's imposition of injunction because defendant was "very likely to encounter opportunities for future violations").

Similarly, penny stock bars—designed to protect investors in an area "'attractive to unscrupulous securities professionals' and 'fraught with repeat offenders.'" *SEC v. E-Smart Techs., Inc.*, 139 F. Supp. 3d 170, 182 (D.D.C. 2015) (quoting H.R. Rep. 101-617 at 1422-23 (1990))—are forward looking remedial measures imposed to prevent future misconduct. *Compare id.* (imposing bar based on finding that "future securities violations involving penny stock are reasonably likely") *with SEC v. Alliance Transcription Svcs., Inc.*, 2009 WL 5128565, *10-11 (D. Ariz. Dec. 18, 2009) (declining to impose penny stock bars against defendants absent a showing that "future violations are likely").  Thus, both as a matter of Eleventh Circuit binding precedent and Supreme Court case law holding that injunctions are not designed to punish, the Court should reject Defendants' argument that permanent injunctions and penny stock bars are penalties under § 2462.

2.      The Court Should Not Dismiss any of the Commission's Claims

Defendants' other statute of limitations argument is that "the Court should dismiss [the Commission's] claims insofar as they rely on transactions outside the limitations period."  It is unclear what Defendants are asking the Court to do at this point, and their arguments are better taken up in connection with motions in limine, jury instructions, and the verdict form.  The Commission does not dispute that it can only recover a penalty and disgorgement for violations occurring within the limitations period (as tolled by agreement).  However, with respect to the Commission's claims involving a scheme to defraud, practice, or course of business, the Complaint appropriately alleges a single course of conduct extending over a multi-year period. *See Sanders v. United States*, 415 F.2d 621, 624-25 (5th Cir. 1969) (sales of worthless securities over seven years by seven defendants constituted a single securities and mail fraud scheme).  To prove Defendants violated the law within the limitations period, the Commission may offer evidence of earlier conduct to show the scheme's existence and the Defendants' intent.  *United States v. Ashdown*, 509 F.2d 793, 798 (5th Cir. 1975); *see also J.Y. ex rel. E.Y. v. Dothan City Board of Education*, 2014 WL 1320187, *5 n.11 (M.D. Ala. Mar. 31, 2014) (collecting cases).  Similarly, with respect to those counts relating to false or misleading statements, evidence of similar false statements made outside the limitations period would be admissible both as intrinsic evidence of liability with respect to the statements made within the period,[28] and as extrinsic evidence probative of Defendants' intent and absence of mistake.[29]  Therefore, there is no basis to dismiss any of the Commission's claims or any portion thereof.

For the proposition that the Court should order a partial dismissal of the Commission's claims, Defendants cite only *SEC v. Radius Capital Corp.*, 2013 WL 3716394 (M.D. Fla. July

15, 2013), where the Court's entire discussion is as follows: "Plaintiff agrees that its request for civil penalties are time-barred as to the mortgage-backed securities issued prior to March 2006. Therefore, the Court will bar plaintiff from seeking civil penalties for the five mortgage-backed securities issued prior to March 2006." *Id.* at *2. Thus, contrary to Defendants' assertion, *Radius* did not "dismiss" anything—the Court merely acknowledged the Commission's concession (the same one we make here) that it could not collect a penalty for violations occurring before the limitations date. Therefore, there is no basis for the Court to dismiss any of the Commission's claims in whole or in part.

### J.  If the Court Deems the Complaint Deficient, Leave to Amend is Warranted

As shown above, the Commission's Complaint meets the federal pleading standards. If, however, the Court finds a deficiency in the Complaint, the Commission respectfully requests the Court grant leave to amend its pleading. At most, the motion relates to curable pleading deficiencies, not irreparable flaws that cannot be fixed with an amended pleading. *See* Fed. R. Civ. P. Rule 15(a) and *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### K.  Conclusion

For all the foregoing reasons, the Commission respectfully requests that the Court deny the Defendants' motion to dismiss.

---

[28] *United States v. Muscatell*, 42 F.3d 627, 630 (11th Cir. 1995) (evidence of fraudulent transactions similar to those charged in the indictment "was properly admissible as intrinsic evidence of the same series of transactions as the charged offenses").

[29] *United States v. Cancelliere*, 69 F.3d 1116, 1124 (11th Cir. 1995) (evidence that defendant in bank fraud case was making the same false representations to banks not charged in indictment "was properly admitted under Rule 404(b) as going to knowledge, intent or plan").

Dated: May 24, 2019        BY:     s/Christine Nestor
                                               Christine Nestor
                                               Senior Trial Counsel
                                               Fla. Bar No. 597211
                                               Telephone: (305) 982-6367
                                               Facsimile: (305) 536-4154
                                               E-mail:  nestorc@sec.gov

                                               Wilfredo Fernandez
                                               Senior Trial Counsel
                                               Fla. Bar No. 142859
                                               Telephone: (305) 982-6376
                                               Facsimile: (305) 536-4154
                                               E-mail:  fernandezw@sec.gov

                                               **ATTORNEYS FOR PLAINTIFF**
                                               **SECURITIES AND EXCHANGE COMMISSION**
                                               801 Brickell Avenue, Suite 1800
                                               Miami, Florida 33131
                                               Telephone: (305) 982-6300

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 24, 2019, I electronically filed the foregoing document via the Court's CM/ECF electronic filing system, which provides notice to all counsel of record.

                                               BY:  /s/Christine Nestor