UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES SECURITIES
& EXCHANGE COMMISSION,

    Plaintiff,

v.                                Case No. 8:19-cv-448-T-33CPT

SPARTAN SECURITIES GROUP, LTD,
ISLAND CAPITAL MANAGEMENT,
CARL DILLEY, MICAH ELDRED,
and DAVID LOPEZ,

    Defendants.
_____/

**ORDER**

Before this Court are Defendant Micah Eldred's Motion to Dismiss (Doc. # 22) and Defendants Spartan Securities Group, LTD, Island Capital Management, Carl Dilley, and David Lopez's Joint Motion to Dismiss (Doc. # 23), filed on April 22, 2019. The Securities and Exchange Commission responded in opposition on May 24, 2019, (Doc. ## 33, 34), and the Court held oral argument on May 31, 2019. For the reasons that follow, as well as the reasons stated at the hearing, the Motions are denied.

## I.  **Background**

The SEC brings this civil enforcement action against Spartan Securities, Island Capital Management, Dilley, Eldred, and Lopez for their alleged roles in creating nineteen

1

undisclosed blank check companies in violation of the Securities Act of 1933 (Securities Act) and the Securities Exchange Act of 1934 (Exchange Act). (Doc. # 1).

### A.   Defendants

Spartan Securities — a broker-dealer — and Island Capital Management — a transfer agent that does business as Island Stock Transfer — are owned by Connect X Capital Markets LLC. (Id. at ¶¶ 13-17). Connect X's "managing member is Eldred and [its] shareholders have included Dilley, Eldred and Lopez." (Id.). At all relevant times, Dilley, Eldred, and Lopez were principals of Spartan Securities. (Id.). Additionally, Island Stock Transfer's president was Dilley, its CEO was Eldred, and its chief compliance officer was Lopez. (Id.). Lopez also served as Spartan Securities' chief compliance officer. (Id.).

Spartan Securities and Island Stock Transfer are allegedly a one-stop shop to issuers of microcap securities. (Id. at ¶ 2). Microcap securities have low share prices, scarce analyst coverage, and are traded over the counter rather than on a national exchange. These securities are regulated by the Financial Industry Regulatory Authority (FINRA) and certain steps must be taken before they can be sold publicly. Specifically, before a broker-dealer can

publicly quote the price of and make a market for a microcap security, the broker-dealer must satisfy Rule 15c2-11 of the Exchange Act, which requires a Form 211 application be submitted to FINRA. (Id. at ¶ 7).

### B.   Defendants' Alleged Roles in Fraudulent Schemes

According to the Complaint, Defendants were involved "in one or two separate fraudulent schemes from approximately December 2009 through August 2014 to manufacture at least [nineteen]" undisclosed blank check companies. (Id. at ¶ 3). A blank check company is a company that either has no specific business plan or purpose or has indicated its business plan is to engage in a merger. 17 C.F.R. § 230.419(a)(2). Fourteen of these companies were created by Alvin Mirman — who was barred from association with any FINRA member in 2007 — and Sheldon Rose (Mirman/Rose companies). (Id.). Mirman and Rose pled guilty to conspiracy to commit securities fraud based on their involvement in the Mirman/Rose companies. (Id. at ¶¶ 18-19).

The other five companies were created by Michael Daniels, Diane Harrison, and Andy Fan (Daniels companies). (Id. at ¶ 3). The SEC issued a penny stock ban against Fan and ordered him to pay a penalty of $140,000 for his involvement in the Daniels companies. (Id. at ¶ 22). The SEC

brought a separate enforcement action against Daniels and Harrison for their involvement in the Daniels companies, which remains ongoing. (Id. at ¶¶ 20-21).

In the 62-page, 191-paragraph Complaint, the SEC alleges: (a) Spartan Securities violated Section 15(c)(2) and Rule 15c2-11 of the Exchange Act (Count 1), and Dilley, Eldred, and Lopez aided and abetted those violations (Count 2); (b) Spartan Securities, Island Stock Transfer, Dilley, and Eldred violated — and aided and abetted violations of — Section 17(a) of the Securities Act (Counts 3-4, 8-10); (c) Spartan Securities, Island Stock Transfer, Dilley, and Eldred violated — and aided and abetted violations of — Section 10(b) and Rule 10b-5 of the Exchange Act (Counts 5-7, 11-13); and (d) Spartan Securities, Island Stock Transfer, and Dilley violated Sections 5(a) and 5(c) of the Securities Act (Count 14).

## II.  **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the

complaint. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004).

## III. <u>Analysis</u>

Although Defendants filed two separate Motions to Dismiss, both Motions make similar arguments: (1) the Complaint fails to comply with Federal Rules of Civil Procedure 8(a) and 9(b); (2) the Complaint fails to state a claim for violations of the securities law's antifraud provisions under Federal Rule of Civil Procedure 12(b)(6); (3) the Complaint fails to state a claim for aiding and

abetting under Rule 12(b)(6); (4) the Complaint fails to state a claim for violations of Section 5 under Rule 12(b)(6); and (5) a majority of the SEC's claims are time-barred.

###  A.   Rule 8(a) and 9(b) Arguments

Rule 8(a) requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must allege "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. In addition, Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting the fraud," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

The heightened pleading standard of Rule 9(b) is satisfied if the claim sets forth: "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff, and; (4) what the defendant obtained as a consequence of the fraud." <u>In re Galectin Therapeutics, Inc. Sec. Litig.</u>, 843

F.3d 1257, 1269 (11th Cir. 2016). Nonetheless, "Rule 9(b) does not abrogate the concept of notice pleading." Id.

The SEC's 62-page, 191-paragraph Complaint contains more than enough detail to satisfy Rule 8(a)'s notice pleading requirements. Likewise, the Complaint contains a variety of fact-specific allegations of fraud. The Complaint provides specific details on Spartan Securities and Island Stock Transfer's alleged roles in serving as a one-stop shop for issuers of microcap securities that were later found to have violated federal securities laws. It alleges the date, substance, and persons responsible for numerous statements and omissions in FINRA and Depository Trust Company (DTC) related filings. Further, the Complaint identifies the relationship between the false statements and the particular company at issue. Therefore, the Court finds the Complaint's factual allegations satisfy the particularity pleading requirements of Rule 9(b).

Defendants also contend the Complaint is an improper shotgun pleading. (Doc. # 22 at 5-6; Doc. # 23 at 9). While each count incorporates by reference all the factual allegations, each count does not incorporate the prior count. See Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1324 (11th Cir. 2015) ("[The plaintiff's] re-alleging

of paragraphs 1 through 49 [from the fact section] at the beginning of each count looks, at first glance, like the most common type of shotgun pleading. But it is not."); Terry v. Interim Healthcare Gulf Coast, Inc., No. 8:18-cv-692-T-33JSS, 2018 WL 1992276, at *2 (M.D. Fla. Apr. 27, 2018) (explaining a complaint that re-alleges just the factual allegations and does not re-allege each count is not a shotgun pleading). Furthermore, the SEC's claims appear to be based on a continuous fraudulent scheme. Accordingly, it is appropriate for the SEC to incorporate all of its factual allegations into each count. See SEC v. Strebinger, 114 F. Supp. 3d 1321, 1327 n.4 (N.D. Ga. 2015) (holding the SEC's 182-paragraph complaint that incorporated each factual allegation into each count was not a shotgun complaint because the SEC's claims were based on one continuous act of fraud). Therefore, the Complaint is not a shotgun pleading.

### B.   **Violations of the Antifraud Provisions**

Counts 3 and 4 allege Spartan Securities, Island Stock Transfer, Dilley, and Eldred violated Sections 17(a)(1) and 17(a)(3) of the Securities Act. (Doc. # 1 at 46-48). Counts 5-7 allege Spartan Securities, Island Stock Transfer, Dilley, and Eldred violated Section 10(b) and Rule 10b-5 of the Exchange Act. (Id. at 48-50).

To state a claim for securities fraud under Rule 10b-5(b), the SEC must allege: "(1) material misrepresentations or materially misleading omissions, (2) in connection with the purchase or sale of securities, (3) made with scienter." SEC v. Merch. Capital, LLC, 483 F.3d 747, 766 (11th Cir. 2007). Additionally, "[a] defendant engages in a fraudulent scheme in violation of [Rule 10b-5(a)] when he (1) commits a deceptive or manipulative act; (2) in furtherance of a scheme to defraud; and (3) with scienter." SEC v. Greene, No. 13-CV-61762-ROSENBAUM/HUNT, 2014 WL 11706448, at *1 (S.D. Fla. Jan. 27, 2014). "The scope of liability under Section 10(b) and Rule 10b-5 is the same." Merch. Capital, 483 F.3d at 766 n.17.

Claims under Section 17(a) "require[] substantially similar proof" as claims under Rule 10b-5. SEC v. Monterosso, 756 F.3d 1326, 1334 (11th Cir. 2014). Specifically, to establish a violation of Section 17(a)(1), the SEC must allege: "(1) material misrepresentations or materially misleading omissions, (2) in the offer or sale of securities, (3) made with scienter." Merch. Capital, 483 F.3d at 766. Claims under Section 17(a)(3) do not require a showing of scienter. Instead, the SEC must allege: "(1) material misrepresentations or materially misleading omissions, (2) in

the offer or sale of securities, (3) made with negligence."
Id. Finally, "the 'in connection with the purchase or sale
of' and 'in the offer or sale of' elements of Rule 10b–5 and
§ 17(a) can be interchangeable." SEC v. Radius Capital Corp.,
653 F. App'x 744, 749 (11th Cir. 2016).

### 1.   Material Misstatements and Omissions

Defendants begin by arguing Counts 3, 4, and 6 fail to
state a claim because Defendants did not "make" a statement.
(Doc. # 22 at 6; Doc. # 23 at 11). As a preliminary matter,
Defendants' assertion that Counts 3 and 4 for violations of
Section 17(a) require they make a statement is misplaced.
"[T]he requirement that the defendant be the 'maker' of the
misrepresentations on a document only applies to Rule 10b-
5(b)." Radius Capital, 653 F. App'x at 751. As explained by
the Eleventh Circuit, "any attempts by the defendants to
import the [Supreme] Court's narrow holding [in Janus Capital
Corp. v. First Derivative Traders, 564 U.S. 135 (2011)] to
the entirety of § 17(a) is untenable on its face." SEC v. Big
Apple Consulting USA, Inc., 783 F.3d 786, 796 (11th Cir.
2015). Accordingly, Defendants need not be the maker of the
statements to be liable under Section 17(a). Even if Section
17(a) contained such a requirement, the Complaint alleges
sufficient facts to show Defendants made statements.

Island Stock Transfer contends "the Complaint does not identify a single statement made by Island, [so] Counts 3, 4 and 6 should be dismissed as to Island." (Doc. # 23 at 11). However, the Complaint alleges Island Stock Transfer made affirmative statements in DTC filings. (Doc. # 1 at ¶¶ 38, 46-47, 89). For example, Island Stock Transfer (through Dilley) stated the companies were not shells and it would provide accurate information about the companies' securities. (Id.). The SEC alleges both representations, among others, were false. (Id.). Such allegations are sufficient to show that Island Stock Transfer made statements for Rule 10b-5 purposes.

The Complaint alleges Defendants omitted certain information in Form 211 applications and in their responses to FINRA deficiency letters, including Defendants' relationships with the issuers, knowledge of potential mergers, and who exactly controlled the companies. This information could plausibly be material to an investor. See SEC v. Farmer, No. 4:14-CV-2345, 2015 WL 5838867, at *13 (S.D. Tex. Oct. 7, 2015) ("A reasonable investor in a microcap security would surely want to know about the existence of an undisclosed control person who not only encouraged close associates and relatives to invest in the company, but also

provided those associates and relatives with the cash with which they would then 'buy' the company's stock.").

In sum, the misstatements and omissions allegedly made by Defendants are at least arguably material. See SEC v. RPM Int'l, Inc., 282 F. Supp. 3d 1, 23 (D.D.C. 2017) ("Because materiality is a mixed question of law and fact, courts have cautioned against granting a motion to dismiss based on the failure to plead materiality 'unless [the information is] so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.'" (quoting Litwin v. Blackstone Grp., L.P., 634 F.3d 706, 717 (2d Cir. 2011))). Defendants' materiality arguments are better addressed at the summary judgment stage.

### 2.   Scheme Liability

Spartan Securities, Island Stock Transfer, and Dilley argue Counts 3, 5, and 7 should be dismissed because the SEC fails to allege scheme liability. (Doc. # 23 at 26-27). "[A] defendant commits deceptive or manipulative acts in furtherance of a fraudulent scheme if he has engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." Greene, 2014 WL 11706448, at *1 (quotations omitted).

The Complaint alleges Defendants knew the individuals that hired them were creating undisclosed blank check companies. It further alleges Defendants' filing of fraudulent Form 211 applications played a vital role in the scheme. These allegations are sufficient to state a claim for scheme liability. See SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1471 (2d Cir. 1996) (holding that scheme liability extends to those "who had knowledge of the fraud and assisted in its perpetration").

### 3.   In Connection With Requirement

Defendants also contend that Counts 3 and 6 fail to state a claim because none of the statements identified in the Complaint were made to the investing public. (Doc. # 22 at 11; Doc. # 23 at 15-16). "[T]he 'in connection with' requirement is satisfied where the fraud 'touch[es]' the transaction in some way, including situations where 'the purchase or sale of a security and the [preceding] proscribed conduct are part of the same fraudulent scheme.'" Radius Capital, 653 F. App'x at 751 (quoting Rudolph v. Arthur Andersen & Co., 800 F.2d 1040, 1046 (11th Cir. 1986)).

Although the information contained in the Form 211 applications and responses to deficiency letters was not filed with the public, that information led to the fraudulent

companies' abilities to be eligible for public quotation. Thus, the statements were made in connection with the offer and sale of securities. See SEC v. Jones & Co., 312 F. Supp. 2d 1375, 1382 (D. Colo. 2004) ("[F]alse allegations [in Form 211 applications] enabling a stock to be publicly traded are 'reasonably calculated to influence the investing public' and hence made 'in connection with' the purchase or sale of a security.").

### 4.  **Scienter**

Defendants argue that Counts 3-7 should be dismissed because the Complaint fails to allege Defendants acted with the requisite scienter. (Doc. # 22 at 11-23; Doc. # 23 at 16-23). Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." Aaron v. SEC, 446 U.S. 680, 686 n.5 (1980). The Eleventh Circuit "do[es] not require actual knowledge to establish scienter under § 17(a)(1) or Rule 10b-5." Radius Capital, 653 F. App'x at 753. Instead, "[s]cienter may be established by a showing of knowing misconduct or severe recklessness." Monterosso, 756 F.3d at 1335 (quoting SEC v. Carriba Air, Inc., 681 F.2d 1318, 1324 (11th Cir. 1982)). "When evaluating scienter, a court must consider the entirety of the allegations contained in the complaint and not whether any individual allegation, scrutinized in

14

isolation, meets that standard." Fried v. Stiefel Labs., Inc., No. 11-CV-20853, 2012 WL 4364300, at *5 (S.D. Fla. June 8, 2012).

The Complaint contains detailed allegations of the source and extent of Dilley, Eldred, and Lopez's awareness of the fraudulent scheme. There were multiple sources of information demonstrating the companies were being used for fraudulent purposes, including the companies' registration statements, FINRA deficiency letters, and copious communications with Mirman, Rose, and Daniels. Specifically, Dilley routinely communicated with Mirman and Rose regarding the companies, and Mirman and Rose were the primary sources of information during the Form 211 application process. (Doc. # 1 at ¶¶ 37-50).

Furthermore, the Complaint's numerous examples of FINRA deficiency letters regarding the Mirman/Rose companies plausibly allege Lopez – as Spartan Securities and Island Stock Transfer's chief compliance officer – was aware of suspicious events creating reasons to doubt the legitimacy of these companies. Likewise, the Complaint's numerous examples of Eldred's communications with Daniels – including Daniels asking Eldred if he knew of anyone looking for a shell company – plausibly allege Eldred knew or should have known the

Daniels companies were undisclosed black check companies. (<u>Id.</u> at ¶¶ 103-22).

In sum, taken as a whole, the Court concludes the allegations show that Dilley, Eldred, and Lopez were at least severely reckless during the Form 211 application and DTC application processes. Consequently, the Complaint sufficiently alleges all Defendants, including Spartan Securities and Island Stock Transfer, acted with the requisite scienter. <u>See</u> <u>Mizzaro v. Home Depot, Inc.</u>, 544 F.3d 1230, 1254 (11th Cir. 2008) ("Corporations, of course, have no state of mind of their own. Instead, the scienter of their agents must be imputed to them.").

## C.   <u>Aiding and Abetting Liability</u>

Count 2 alleges Dilley, Eldred, and Lopez aided and abetted Spartan Securities' violations of Section 15(c)(2) and Rule 15c2-11. (Doc. # 1 at 44-46). Counts 8-10 allege Spartan Securities, Island Stock Transfer, Eldred, and Dilley aided and abetted violations of Section 17(a). (<u>Id.</u> at 51-55). Counts 11-13 allege Spartan Securities, Island Stock Transfer, Eldred, and Dilley aided and abetted violations of Section 10(b) and Rule 10b-5. (<u>Id.</u> at 57-60).

To establish aiding and abetting liability, the SEC must show: (1) a primary violation by another party; (2) a general

awareness by the aider and abettor that his role was part of an overall activity that is improper; and (3) the aider and abettor provided "substantial assistance" to the violator. Big Apple Consulting, 783 F.3d at 800. Defendants argue Counts 2 and 8-13 should be dismissed because the Complaint fails to allege recklessness. (Doc. # 22 at 23-26; Doc. # 23 at 23-26). However, as explained above, the Complaint's allegations show that Defendants were at least severely reckless during the Form 211 application and DTC application processes.

Defendants next argue Counts 2 and 8-13 should be dismissed because the Complaint fails to allege that they provided substantial assistance. "'Substantial assistance' can be proved by demonstrating the accused aider and abetter associated himself with the venture, participated in the venture 'as something that he wished to bring about,' and sought to make the venture succeed." SEC v. Quiros, No. 16-cv-21301-GAYLES, 2016 WL 11578637, at *15 (S.D. Fla. Nov. 21, 2016) (quoting SEC v. Apuzzo, 689 F.3d 204, 214 (2d Cir. 2012)).

The Complaint alleges Spartan Securities and Island Stock Transfer served as a one-stop shop to publicly quote and sell securities of numerous undisclosed blank check companies. The SEC notes that "[c]entral to the fraud were

the public quotation, DTC eligibility, and bulk transfer of the securities." (Doc. # 33 at 31). According to the Complaint, Dilley and Eldred provided substantial assistance to this central role by serving as the principals and signatories for all the FINRA filings. Likewise, allegations that Lopez approved responses to FINRA deficiency letters without familiarizing himself with the companies despite numerous red flags are sufficient to establish Lopez's substantial assistance. (Doc. # 1 at ¶¶ 72-80). In sum, then, the Complaint sufficiently states a claim for aiding and abetting liability.

### D.   Violations of Section 5 of the Securities Act

Count 14 alleges Spartan Securities, Island Stock Transfer, and Dilley violated Section 5 of the Securities Act. (Id. at 60). Unless an exemption applies, Section 5 requires securities offered for sale be registered by filing a registration statement with the SEC. 15 U.S.C. § 77e. A prima facie case of a Section 5 violation requires the SEC demonstrate: "(1) the defendant directly or indirectly sold or offered to sell securities; (2) through the use of interstate transportation or communication and the mails; (3) when no registration statement was in effect." Big Apple Consulting, 783 F.3d at 806-07 (quoting SEC v. Calvo, 378

F.3d 1211, 1214 (11th Cir. 2004)). "Once participation in an unregistered sale has been shown, the [sellers] have the burden of proving an exemption to the registration requirements." Id. at 807 (quoting Zacharias v. SEC, 569 F.3d 458, 464 (D.C. Cir. 2009)).

Registration of a security is transaction-specific, meaning "once a security has been sold pursuant to a registration statement, subsequent sales are not themselves sales for which a registration statement is in effect." SEC v. Cavanagh, 155 F.3d 129, 133 (2d Cir. 1998). When the registration statements were in effect for the initial sale of the securities to the friends and family of Mirman, Rose, and Daniels, those registration statements had no effect on the subsequent resales of the securities.

A defendant is liable as a seller under Section 5 if he was a "necessary participant" or "substantial factor" in the illicit sale. Calvo, 378 F.3d at 1215. A defendant may liable for registration violations if he "has conceived of and planned the scheme by which the unregistered securities were offered or sold." SEC v. Friendly Power Co., 49 F. Supp. 2d 1363, 1371 (S.D. Fla. 1999). As explained above, the Complaint alleges Defendants were both necessary participants and substantial factors in the fraudulent schemes because they

assisted in the process to have the securities publicly quoted and eventually assisted in the securities' sales. See Farmer, 2015 WL 5838867, at *18 (holding defendant who provided false information during Form 211 process "was a necessary participant in the distribution of [the fraudulent company's] stock to the public"). Thus, the Complaint states a claim for violations of Section 5.

### E.   Statute of Limitations

Finally, Defendants argue a majority of the SEC's claims are time-barred because they are based on conduct that occurred as long as eight and half years ago, which is outside the five-year statute of limitations period set forth in 28 U.S.C. § 2462. (Doc. # 22 at 27–30; Doc. # 23 at 31–35).

Section 2462 provides that "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued." 28 U.S.C. § 2462. For SEC enforcement actions that seek civil penalties, this "five-year clock begins to tick [] when a defendant's allegedly fraudulent conduct occurs." Gabelli v. SEC, 568 U.S. 442, 448 (2013). Section 2462, however, only applies to claims for legal relief, not equitable remedies. Nat'l Parks & Conservation

Ass'n, Inc. v. Tenn. Valley Auth., 502 F.3d 1316, 1326 (11th Cir. 2007). "Disgorgement in the securities-enforcement context is a 'penalty' within the meaning of § 2462, and so disgorgement actions must be commenced within five years of the date the claim accrues." Kokesh v. SEC, 137 S. Ct. 1635, 1639 (2017).

The SEC requests the Court: (1) permanently enjoin Defendants from violating the federal securities laws; (2) direct Island Stock Transfer to pay disgorgement with prejudgment interest; (3) direct Defendants to pay civil money penalties; and (4) impose penny stock bars against Spartan Securities, Dilley, Eldred, and Lopez. (Doc. # 1 ¶ 14). The first and fourth requests seek equitable relief to enjoin future conduct, and therefore, Section 2462 does not apply to them. See SEC v. Graham, 823 F.3d 1357, 1361 (11th Cir. 2016); ("An injunction therefore is not a penalty within the meaning of § 2462."); United States v. Banks, 115 F.3d 916, 919 (11th Cir. 1997) (holding a government action to enjoin future conduct was a claim for equitable relief not subject to Section 2462).

The second and third requests, by contrast, are covered by Section 2462. Nonetheless, the SEC argues it is pursuing "a single course of conduct extending over a multi-year

period" for the scheme liability claims under Rule 10b-5 and Section 17(a). (Doc. # 33 at 29). "Under the continuing violations doctrine, the statute of limitations is tolled for a claim that otherwise would be time-barred where the violation giving rise to the claim continues to occur within the limitations period." Tenn. Valley Auth., 502 F.3d at 1322. Thus, because some of the SEC's claims are based on scheme liability extending into a period within the statute of limitations, the SEC's relief is not barred by Section 2462.

## IV.   Conclusion

As outlined above, the Complaint satisfies the pleading requirements of Federal Rules of Civil Procedure 8(a) and 9(b). The Complaint also plausibly states claims for numerous violations of securities laws, including aiding and abetting those violations. Finally, the SEC's claims are not barred by the statute of limitations period set forth in Section 2462. As a result, the Motions to Dismiss are denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**:

(1)   Defendant Micah Eldred's Motion to Dismiss (Doc. # 22) and Defendants Spartan Securities Group, LTD, Island Capital Management, Carl Dilley, and David Lopez's Joint Motion to Dismiss (Doc. # 23) are **DENIED**.

(2)   Defendants are directed to file their answers to the

Complaint by **June 14, 2019**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this

5th day of June, 2019.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE