IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

U.S. SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

SPARTAN SECURITIES GROUP, LTD., ISLAND CAPITAL MANAGEMENT, CARL E. DILLEY, MICAH J. ELDRED and DAVID D. LOPEZ

Defendants.

CASE NO.: 8:19-cv-448-VMC-CPT

**DEFENDANTS' MOTION TO DETERMINE THE SUFFICIENCY OF PLAINTIFF'S RESPONSE TO REQUESTS FOR ADMISSIONS AND TO COMPEL ADDITIONAL RESPONSES**

Defendants Spartan Securities Group, LTD., Island Capital Management LLC, Carl E. Dilley, Micah J. Eldred and David D. Lopez hereby move for review of the sufficiency of Plaintiff U.S. Securities and Exchange Commission's responses to Defendants' Requests for Admission and for an order compelling appropriate responses pursuant to Federal Rule of Civil Procedure 36(a)(6).

**PROCEDURAL HISTORY**

On February 21, 2020 Defendants served Plaintiff with 55 numbered Requests for Admission (RFAs). (Exhibit A.) On April 3, 2020, Plaintiff served Defendants with its response, which was, by agreement, timely. (Exhibit B.) In its response, Plaintiff objected to all but five of the RFAs. (*See* Exhibit B, Response Nos. 33, 48, 49, 50, 51.) Plaintiff further provided

substantive responses to only 10 of the 55 RFAs. (*See* Exhibit B, Response Nos. 14, 15, 16, 17, 33, 40, 48, 49, 50, 51.)

On April 17, 2020, the parties conferred telephonically in good faith concerning the inadequacy of Plaintiff's responses to Nos. 8, 26, 27, 28, 36, 37, 38, 39, 41, 42, 43, 44, 45, 46, 47, 52, 53, 54, and 55. In response, on April 29, 2020, Plaintiff provided Defendants with an amended set of responses. (Exhibit C.) Plaintiff's amended Response Numbers 36, 37, 38, 39, 41, 42, 43, 44, 45, 46, 47, 52, 53, 54, and 55. (Exhibit C.) Most of these amendments were to add additional objections. (*See* Exhibit C, Response Nos. 36, 37, 38, 39, 41, 42, 43, 44, 45, 46, 47.) Plaintiff provided substantive responses only to request number 52, 53, 54 and 55. (*See* Exhibit C.) The parties thereafter agreed that further attempts to resolve this dispute would not be fruitful.

Defendants now move for review of the sufficiency of Plaintiff's renewed objections and refusals to answer.

## ARGUMENT

The SEC must provide sufficient answers to Defendants' RFAs. Rather than meaningfully engage with the requests and provide appropriate responses to the good faith requests, the SEC has thrown every objection it can muster and refused to admit even the most basic facts. This has frustrated the purpose of RFAs—easing the burdens of proof for uncontested issues at trial. Instead, it has necessitated this motion. The Court should order the SEC to provide appropriate responses, or in the alternative, deem the insufficient replies as admitted.

### I. General Legal Principles

Federal Rule of Civil Procedure 36 governs requests for admissions; the Rule's purposes are "to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial." *Perez v. Miami-Dade County*, 297 F.3d 1255, 1268 (11th Cir. 2002) (quoting 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2252 (2d ed. 1994)).

Rule 36(a) permits a party to serve on another party "a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). Significantly, Rule 36(a) also affords the responding party specified options for answering a request for admission:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4). A matter admitted under Rule 36 is deemed "conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). A party must state its grounds for objecting, however, "[a] party must not object solely on the ground that the request presents a genuine issue for trial." Fed. R. Civ. P. 36(a)(5).

Additionally, Rule 36 expressly permits the requesting party to move a court to determine the sufficiency of an answer or objection to a request for admission. Fed. R. Civ. P. 36(a)(6). If the court finds that an answer does not comply with the Rule, it "may order either that the matter is admitted or that an amended answer be served." *Id*. Where the court finds that an objection is not justified, it "must order that an answer be served." *Id*.

## II. The SEC's Objections Should Be Overruled

Initially, the SEC's "preliminary statement" with "objections" should be rejected. (*See* Exhibit C, at 1.) Specifically, the SEC says it is not like an ordinary litigant, and suggests that it cannot be made to answer any request "to the extent it requires the Commission to rely on third-party representations to make binding admissions" because it derives all of its knowledge "from third parties." (Exhibit C, at 1.) It also says that it cannot be made to answer any request that "seek[s] admission of legal conclusions." (Exhibit C, at 2.) Notwithstanding these general statements, the SEC provided specific objections to each RFA discussed below.

This Court should simply disregard the SEC's "preliminary statement" in its entirety. "[A] responding party is given only two choices: to answer or to object. Objecting but answering subject to the objection is not one of the allowed choices." *Mann v. Island Resorts Development, Inc.*, No. 308297, 2009 WL 6409113, at *3 (N.D. Fla. Feb. 27, 2009). The Middle District of Florida has adopted the *Mann* standard in other cases. *See, e.g.*, *Sewell v. D'Alessandro & Woodyard, Inc.*, No. 207343, 2011 WL 1232347, at *1 (M.D. Fla. Mar. 30, 2011) ("If an objection to a discovery request is raised, and then the question is answered 'subject to' or 'without waiving' the objection, this court is reluctant to sustain the objection.").

Thus, this Court should only consider the specific objections raised by the SEC in resisting specific RFAs. These are discussed in turn.

**RFA No. 8. Admit that the Commission has estimated that it takes about three hours for a broker-dealer to adequately review, record, and retain the information pertaining to reporting issuers under the standard articulated in 17 C.F.R. § 240.15c2-11.**

The SEC has improperly objected to RFA Number 8 and must provide an answer. The SEC has raised three objections: "[1] The provisions of 17 C.F.R. § 240.15c2-11 speak for themselves[, and i]f this request is referring to a particular Commission release, that too speaks

for itself[; 2] This request is also not relevant to the issues in this case which include not only the initial 211 application but also the separate deficiency process[; and 3] The request is also outside the scope of Federal Rule of Civil Procedure 36(a)(1)." (Exhibit C, Response No. 8.) None of these objections is meritorious.

Rule 36(a)(1)(A) specifically permits RFAs that seek "opinions" about "facts" or "the application of law to facts." It is therefore appropriate to demand a litigant provide an "opinion" about "the interpretation of a document," and it is insufficient for a party to answer that a document "speaks for itself." *Booth Oil Site Admin. Grp. v. Safety-Kleen Corp.*, 194 F.R.D. 76, 80 (W.D. N.Y. 2000). A party may also ask for a litigant to confirm that a document contains a particular passage or that a statement was made. *See Miller v. Holzmann*, 240 F.R.D. 1, 4 (D. D.C. 2006) ("If, on the other hand, the request for admission paraphrases a document, the request should be admitted if the paraphrase is accurate and denied if it is not. Again, stating the obvious—one can read the document oneself to see if the paraphrase is accurate—is not a legitimate objection and an equally great waste of time."). Indeed, it is appropriate to demand a litigant provide a response to whether it thinks a particular course of conduct is permissible or impermissible under a specific statute or regulation. *See Xcel Energy, Inc. v. United States*, 237 F.R.D. 416, 422 (D. Minn. 2006) (Federal Government was required to answer whether it interpreted state law as approving particular conduct).

Rule 26(b) defines the scope of discovery as including "any matter, not privileged, that is relevant to the claim or defense of any party" or, upon a showing of good cause, "any matter relevant to the subject matter involved... ." "[I]t is well established that courts must employ a liberal discovery standard in keeping with the spirit and purpose of the discovery rules." *Treister v. PNC Bank*, No. 23207, 2007 WL 521935, at *1 (S.D. Fla. Feb. 15, 2007). "Accordingly,

discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought has no possible bearing on the claims and defenses of the parties or otherwise on the subject matter of the action." *Id*.

Here, Defendants have asked only for the SEC to admit or deny that it "has estimated that it takes about three hours for a broker-dealer to adequately review, record, and retain the information pertaining to reporting issuers under" Rule 211. (Exhibit A, Request No. 8.). Either the SEC has made this estimate or it has not. Defendants' requests do not call for an improper legal opinion, nor do they depend entirely on a statement of the law. It is not enough, therefore, the SEC to insist that any prior statement "speaks for itself." *See Booth Oil Site Admin. Grp.*, 194 F.R.D. at 80.

The SEC is also wrong about its relevance objection. The SEC's view of liability in this case hinges on what it views to be inadequate diligence on Defendants' part in compiling information under Rule 211. For instance, the SEC has rested its theory of liability on Defendant Lopez's allegedly "cursor[y]" review of answers to deficiency letters from FINRA during the 211 Application process. (Complaint, Doc. 1, at 26, ¶72.) More generally, the SEC repeatedly alleged that Defendants failed to conduct appropriate inquiry concerning potential red flags in Form 211 applications. (*See* Complaint, at 27, ¶ 75.) Even if it might argue at trial that the typical time it expects an entity to spend preparing a Rule 211 application is not determinative in this case, it clearly has some "possible bearing" on the claims and defenses in the case. The SEC must be ordered to respond to this RFA. *See Treister*, 2007 WL 521935, at *1.

**RFA No. 26. Admit that FINRA makes the exclusive determination whether to clear a member's Form 211 application to issue a quotation and the Commission does not[.]**

Next, the SEC's cannot avoid admitting who makes the decision to clear Form 211 applications as asked in RFA Number 26.

First, the SEC's vagueness objection should be overruled. "When passing on a motion to determine the sufficiency of answers or objections, the court obviously must consider the phraseology of the requests as carefully as that of the answers or objections." *Xcel Energy, Inc.*, 237 F.R.D. at 421 (citation and quotation marks omitted). "Though qualification may be required where a request contains assertions which are only partially correct … a reviewing court should not permit a responding party to undermine the efficacy of the rule by creating disingenuous, hair-splitting distinctions whose unarticulated goal is unfairly to burden an opposing party." *Id*. (citation and quotation marks omitted). The SEC claims that the RFA "is vague and ambiguous with its use of 'whether to clear'" (Exhibit C, Response No. 26), but that phrase is well understood by the parties and it is disingenuous for the SEC to pretend it cannot possibly provide an answer to the RFA. For instance, the SEC has repeatedly described the "clearance" process in its filings in this case. In its Complaint the SEC described how an applicant "file[s] a Form 211 application with FINRA", which then reviews the information "before clearing the application." (Complaint, Doc. 1, at 3, ¶ 7.) And in its Opposition to Defendants' Motion to Dismiss, the SEC wrote that "FINRA cleared the Form 211 of each company" associated with Mirman and Rose and discussed "Form 211 clearance." (*See* Doc. 33, at 8, 15.) If the SEC really thinks this terminology is so vague that it cannot possibly understand the RFA, perhaps it should have chosen its own words more carefully in prior filings. Of course, the SEC knows what this phrase means, and, as a result, its objection is not appropriate.

The SEC's other objections, that the "request [] does not fall within the permissible scope of Federal Rule of Civil Procedure 36(a)(1) and seeks the admission of a legal conclusion" and "because it requests the Commission interpret a FINRA Rule" (Exhibit C, Response No. 26), are not applicable to the RFA. This RFA does not ask for a legal conclusion at all—it simply asks

for confirmation concerning which entity reviews and clears Form 211 applications. That is a purely factual issue that must be determined as it relates *to whom* allegedly false or misleading statements were made. In any event, as discussed, it is appropriate for an RFA to seek a party's understanding of legal obligations relevant to the facts at issue. *See Xcel Energy, Inc.*, 237 F.R.D. at 422. Thus, even if the RFA called on the SEC to determine an opinion about some legal obligations, the RFA is appropriate because it asks for an admission about which party bears certain responsibilities. The SEC must answer this request.

**RFA No. 27. Admit that FINRA's determination that a Form 211 application either meets or fails to meet the requirements in FINRA Rule 6432 does not determine whether a broker-dealer has violated or complied with the requirements in 17 C.F.R. § 240.15c2-11.**

The SEC's objection to RFA Number 27 fails for precisely the same reason as its preceding objection. The SEC claims this request is impermissible because it "seeks the admission of a legal conclusion" and "because it requests the Commission interpret a FINRA Rule." (Exhibit C, Response No. 27.) However, as with the preceding RFA, this request merely asks whether, as a factual matter, FINRA also makes a determination of whether a broker-dealer has violated or complied with the requirements in SEC rule 17 C.F.R. § 240.15c2-11. FINRA does or does not make this determination, and the SEC must admit which is true to relieve the burden on the parties of proving this fact at trial. *See Xcel Energy, Inc.*, 237 F.R.D. at 422.

**RFA No. 28. Admit that the Commission relies on the accuracy of representations made in documents filed with the Commission and may seek enforcement actions for false statements or misrepresentations made in documents filed with the Commission.**

The SEC's objections to RFA Number 28 are also unavailing. First, the SEC's claim that the "request is vague and ambiguous as it does not define which 'documents' and by whom and what purpose they are provided to the Commission" (Exhibit C, Response No. 28), does not free it from its obligation to respond. In context, there is nothing so impermissibly vague or confusing

in the RFA that the SEC is incapable of providing a meaningful response. Various documents are filed with the Commission in different contexts, and 15 U.S.C. §78r(a) imposes liability for making false statement or misrepresentations in any "document filed" with the Commission. And the SEC has publicly said that this statute "imposes liability for false and misleading statements in documents filed with the SEC." *Existing Regulatory Protections Unchanged by Either H.R. 3606 or S. 1933*, at 1. Plainly the SEC understands what this language means. The SEC either does or does not "rel[y] on the accuracy of representations" made in such documents, and it must answer which is true.

      The SEC's other objection, that the request "seeks to invade the deliberative process privilege by asking about the Commission's decision making or criteria on whether to bring enforcement actions" is equally wrong. The Supreme Court has explained that the "deliberative process privilege" "covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated," in order to "protect[] open and frank discussion among those who make" "agency decisions." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (citations and quotation marks omitted) (discussing deliberative process privilege in the context of the Freedom of Information Act). Only opinions—not facts—are covered by the privilege. *See Kearney Partners Fund, LLC, by & through Lincoln Partners Fund, LLC v. USA*, No. 153, 2012 WL 8452543, at *3 (M.D. Fla. Dec. 13, 2012). "For the deliberative process privilege to apply… the material must be (1) pre-decisional, i.e., prepared to assist an agency decision maker in arriving at a decision, and (2) deliberative, i.e., 'a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters.'" *Id.* (citing

*Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1263 (11th Cir. 2008) (citations and quotation omitted)).

That privilege has no application here. The RFA asks simply whether the SEC "*may* seek enforcement actions for false statements or misrepresentations made in documents filed with the Commission" (Exhibit A, Number 28) (emphasis added), not whether it *will* in a particular case. The RFA seeks no information about the SEC's decision-making process—it simply inquires whether a particular decision is possible. As such the privilege has no application here.

Finally, the SEC's generic objection that the RFA "does not fall within the permissible scope of Federal Rule of Civil Procedure 36(a)(1)" must also be rejected. Presumably, this means the SEC believes the RFA calls for a legal determination. But the RFA asks for a factual admission related to whether the SEC relies on representations made to it. This is not a purely legal question, and thus is appropriate for an RFA. The SEC must therefore provide an appropriate answer.

**RFA No. 36. Admit that it is not unlawful to form, own, or sell a shell company provided that all required disclosures and registration requirements are met.**

The SEC must also answer RFA Number 36. First, the SEC's objection that the RFA is "vague and ambiguous as drafted, specifically as to which 'required disclosures and registration requirements are met' and does not provide any factual information necessary to either admit or deny the request" (Exhibit C, Response No. 36), yet again elevates a hyper-technical parsing of the RFA beyond reason. Specifically, the SEC claims that, "in order to respond, [it] must know which 'shell company' is being referred to[.]" (Exhibit C, Response No. 36.) The RFA requests an opinion on the application of the law concerning all shell companies that are properly registered with the relevant authorities and that have made all disclosures required by law. The

SEC is being asked whether it considers interaction with such companies to be "unlawful." The SEC must answer what its opinion is concerning the application of the law to those facts.

Next, the SEC's objection that the RFA "is not relevant to this matter and instead seeks to have the Commission make a broad and sweeping admission without any factual relevance here" (Exhibit C, Response No. 36), is improper. There are two ways to interpret this objection—either the RFA is "not relevant" or the SEC simply does not want to have to make "broad and sweeping admission[s]" about anything. Neither objection is valid. With respect to relevance, there is little doubt that the relative legality of forming shell companies is relevant to this case. The SEC repeatedly suggested in its Complaint that any discussion of "shells" is indicative of unlawful conduct. (*See, e.g.*, Complaint, Doc. 1, at 15, ¶¶ 37-38 (alleging Defendant Dilley knew or should have known of Mirman and Rose's undisclosed control because company "was a shell"), 27, ¶ 74 (alleging Defendant Lopez was alerted to inaccurate information concerning a "non-shell designation"); 36 (referring to the "Daniels/Fan/Harrison Shell Factory").) If the SEC thinks there is something particularly insidious about a "Shell Factory" as it has alleged in the Complaint, then it is relevant whether or not it is "unlawful to form, own, or sell a shell company."

With respect to the SEC's desire not to have to answer a broad RFA—that is not an appropriate objection. A party has an obligation to gather information to answer an RFA, and "a party cannot refuse to admit or deny a request for admission based on lack of personal knowledge if the information is reasonably available to the party." *Essex Builders Grp., Inc. v. Amerisure Ins. Co.*, 230 F.R.D. 682, 687 (M.D. Fla. 2005). Moreover, the Government must still respond to RFAs even when they deal with broad conclusions based on the application of facts to the law. *See Xcel Energy, Inc.*, 237 F.R.D. at 422. For example, a party must respond to an RFA

that asks whether a party has a legal obligation to perform a certain act, even if that might have a general significance outside the litigation. *See Treister*, 2007 WL 521935, at *3 (requiring a response to RFA that asked for an admission that bank "was not required to provide to you copies of any cancelled checks drawn and cleared on your Smith Barney account"). The SEC's objection is nothing more than its desire to not have to admit a particular application of the law to the facts, which is not an appropriate reason to refuse to answer the RFA.

Relatedly, the SEC's objection that this RFA "seeks the admission of a legal conclusion" (Exhibit C, Response No. 36), is invalid. To be sure, this RFA asks about the legality of forming, owning or selling shell companies in particular circumstances, but that asks for an application of the law to particular facts. This is an appropriate RFA and the SEC must answer. *See Treister*, 2007 WL 521935, at *3.

Finally, the SEC says, "To the extent the request applies to the companies identified in the Plaintiff's Complaint, we deny the request because the companies at issue here were controlled by undisclosed control people and were used for fraudulent purposes which they also failed to disclose." (Exhibit C, Response No. 36.) This statement is vague concerning whether the SEC is providing a substantive response to Request Number 36 or is simply "deny[ing] the request" for a response. (*See* Exhibit C, Response No. 36.) But in any event, it is nonresponsive. Request Number 36 asks about shell companies in general, not about whether the SEC believes unrelated unlawful conduct occurred in this case. Furthermore, this response is itself an argumentative legal assertion. The SEC will have an opportunity to prove its case at trial, but it is improper for it to provide a non-responsive assertion of liability rather than simply providing a substantive response to the request for admission.

**RFA No. 37. Admit that shell companies can be formed, owned, and sold for valid, non-fraudulent purposes.**

The SEC's objections to RFA Number 37 fail for essentially the same reasons at issue in the preceding RFA. The SEC's vagueness objection, that the SEC cannot discuss shell companies generally "because as alleged in the Plaintiff's Complaint the companies at issue here were used for fraudulent purposes" (Exhibit C, Response No. 37), is not even responsive to the request. Whatever the SEC thinks about the particular companies it discusses in its Complaint, the RFA clearly asks for an admission about "shell companies" in general. And, as discussed, the Complaint suggests that even using the term "shell company" was indicative of unlawful behavior. (*See, e.g.*, Complaint 38, Doc. 1, at 38, ¶ 107 (email discussing available "shell" was allegedly a red flag).) It is therefore relevant for the SEC to be asked to admit its view on this issue and answer the RFA.

The SEC's other objections, that the request it too "sweeping" and asks about a "legal conclusion" fail for the reasons discussed above. The RFA asks about the application of the law to the facts—whether shell companies can possibly have valid, non-fraudulent purposes. This is a proper request and the SEC must answer.

**RFA No. 38. Admit that shell companies may have legitimate business purposes.**

The SEC's objections to this RFA are functionally identical to those it raised for RFA Number 37. (*See* Exhibit C, Response Nos. 37, 38.) For the same reasons discussed above, these objections are invalid.

**RFA No. 39. Admit that the Commission does not assert that transactions involving shell companies are inherently unlawful.**

The SEC's objections to this RFA are functionally identical to those it raised for RFA Number 37 and 38. (*See* Exhibit C, Response Nos. 37, 38, 39.) For the same reasons discussed above, these objections are invalid.

**RFA No. 41. Admit that reverse mergers can take place for valid, non-fraudulent purposes.**

The SEC's first objection to RFA Number 41, that is "vague and ambiguous" "because as alleged in the Plaintiff's Complaint the companies at issue here were used for fraudulent purposes" (Exhibit C, Response No. 41), fails for the reasons discussed above. As with its objections about shell companies, the SEC is apparently taking the position that it need not answer any relevant RFAs as long as it can distinguish them from the precise allegations raised in the Complaint. That is not the law, and relevance is a much broader concept. *See* *Treister*, 2007 WL 521935, at *1. Moreover, there is nothing inscrutably vague about the request as it discusses the concept of reverse mergers, which is a term used by the SEC itself in its own Complaint. (*See* Complaint, Doc. 1, at 38, ¶ 107.). Indeed, the SEC previously issued an investor bulletin where it discussed these transactions in both specific and general terms. *See* SEC, *Investor Bulletin: Reverse Mergers* (June 2011).

The SEC's other objections, that the request it too "sweeping" and asks about a "legal conclusion" (Exhibit C, Response No. 41), fail for the reasons discussed above. The RFA asks about whether particular transactions—reverse mergers—can have valid, non-fraudulent purposes. This is a factual question that is either true or not. As a result, it is a proper request and the SEC must answer.

Finally, the SEC's equivocal statement that it "den[ies] the request" to the extent it "applies to the companies identified in the Plaintiff's Complaint" (Exhibit C, Response No. 41), is not responsive. Whatever the SEC thinks about the particular companies it discusses in its Complaint, the RFA clearly asks for an admission about "reverse mergers" in general.

**RFA No. 42. Admit that reverse mergers may have legitimate business purposes.**

The SEC's objections to RFA Number 42 are functionally identical to those it raised for RFA Number 41. (*See* Exhibit C, Response Nos. 41, 42.) For the same reasons discussed above, these objections are invalid.

**RFA No. 43. Admit that a private operating company may pursue a reverse merger in order to facilitate its access to the capital markets, including the liquidity that comes with having its stock quoted on a market or listed on an exchange.**

The SEC's objections to RFA Number 43 are functionally identical to those it raised for RFA Numbers 41 and 42 and for the same reasons discussed above, these objections are invalid. (*See* Exhibit C, Response Nos. 41, 42, 43.)

The SEC's suggestion that it cannot provide an answer to this request even though the "request is citing to an Investor Bulletin dated June 2011 and issued by the SEC Office of Investor Education and Advocacy" because it simply refuses to issue "a legal interpretation []or a statement of SEC policy." (Exhibit C, Response No. 43.) Indeed, the SEC admits that it has publicly issued a statement nearly identical to the request for admission, but steadfastly refuses to provide an admission because it does not want to be bound by its admission. *See* SEC, *Investor Bulletin: Reverse Mergers* at 1 ("A private operating company may pursue a reverse merger in order to facilitate its access to the capital markets, including the liquidity that comes with having its stock quoted on a market or listed on an exchange."). But that, of course, goes against the purposes of requests for admission. They are meant to be binding on the parties to alleviate the burden of proof at trial. And a party must provide a substantive answer even when it would prefer not to. *See* *Treister*, 2007 WL 521935, at *3 (requiring a response to RFA that asked for an admission that bank "was not required to provide to you copies of any cancelled checks drawn and cleared on your Smith Barney account"). The objection should be overruled.

**RFA No. 44. Admit that private operating companies generally have access only to private forms of equity, while public companies potentially have access to funding from a broader pool of public investors.**

The SEC's objections to RFA Number 44 are functionally identical to those it raised for RFA Numbers 41, 42, and 43 and for the same reasons discussed above, these objections are invalid. (*See* Exhibit C, Response Nos. 41, 42, 43, 44.)

The SEC's objection to this RFA is particularly improper because, as with RFA Number 43, the verbiage used is taken directly from the SEC's prior statements. In an investor bulletin, the SEC wrote, "Private operating companies generally have access only to private forms of equity, while public companies potentially have access to funding from a broader pool of public investors." SEC, *Investor Bulletin: Reverse Mergers* at 1. To object now to its own language as being so vague and ambiguous that it is not possible for the agency to understand it is obviously improper. And to the extent that the SEC simply does not wish to be bound by its own statements, that is not a proper reason to object to a request for admission.

**RFA No. 45. Admit that a reverse merger often is perceived to be a quicker and cheaper method of going public than an initial public offering (IPO).**

The SEC's objections to RFA Number 45 are functionally identical to those it raised for RFA Numbers 41, 42, 43, and 44 and for the same reasons discussed above, these objections are invalid. (*See* Exhibit C, Response Nos. 41, 42, 43, 44, 45.) As with the preceding RFA, moreover, the language used in the RFA is taken directly from an SEC investor bulletin. *See* SEC, *Investor Bulletin: Reverse Mergers* at 1 ("A reverse merger often is perceived to be a quicker and cheaper method of "going public" than an initial public offering (IPO).").

**RFA No. 46. Admit that the legal and accounting fees associated with a reverse merger tend to be lower than for an IPO.**

The SEC's objections to RFA Number 46 are functionally identical to those it raised for RFA Numbers 41, 42, 43, 44 and 45, and for the same reasons discussed above, these objections are invalid. (*See* Exhibit C, Response Nos. 41, 42, 43, 44, 45, 46.) As with the preceding RFA, moreover, the language used in the RFA is taken directly from an SEC investor bulletin. *See* SEC, *Investor Bulletin: Reverse Mergers* at 1 ("The legal and accounting fees associated with a reverse merger tend to be lower than for an IPO.").

**RFA No. 47. Admit that while the public shell company is required to report the reverse merger in a Form 8-K filing with the SEC, there are no registration requirements under the Securities Act of 1933 as there would be for an IPO for a reverse merger.**

The SEC's objections to RFA Number 47 are functionally identical to those it raised for RFA Numbers 41, 42, 43, 44, 45, and 46, and for the same reasons discussed above, these objections are invalid. (*See* Exhibit C, Response Nos. 41, 42, 43, 44, 45, 46, 47.) As with the preceding RFA, moreover, the language used in the RFA is taken directly from an SEC investor bulletin. *See* SEC, *Investor Bulletin: Reverse Mergers* at 1 ("And while the public shell company is required to report the reverse merger in a Form 8-K filing with the SEC, there are no registration requirements under the Securities Act of 1933 as there would be for an IPO.").

## CONCLUSION

This Court should order the SEC to provide appropriate responses to Defendants Requests for Admission Number 8, 26, 27, 28, 36, 37, 38, 39, 41, 42, 43, 44, 45, 46, and 47 within 30 days. Alternatively, this Court should deem those requests admitted.

May 19, 2020

Respectfully,

*/s/ Caleb Kruckenberg*
Caleb Kruckenberg
Litigation Counsel

Kara Rollins
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. N.W., Suite 450
Washington, D.C., 20036
caleb.kruckenberg@ncla.legal
(202) 869-5217
Counsel for Defendants
Appearing *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel of record.

    Respectfully,

    */s/ Caleb Kruckenberg*
    Caleb Kruckenberg
    Litigation Counsel
    New Civil Liberties Alliance
    1225 19th St. N.W., Suite 450
    Washington, D.C., 20036
    caleb.kruckenberg@ncla.legal
    (202) 869-5217
    Counsel for Defendants
    Appearing *Pro Hac Vice*

**CERTIFICATE OF COMPLAINCE WITH LOCAL RULE 3.01(G)**

I hereby certify that I have conferred with opposing counsel concerning the relief sought and opposing counsel is opposed to the motion.

Respectfully,

*/s/ Caleb Kruckenberg*
Caleb Kruckenberg
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. N.W., Suite 450
Washington, D.C., 20036
caleb.kruckenberg@ncla.legal
(202) 869-5217
Counsel for Defendants
Appearing *Pro Hac Vice*