UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
CASE NO. 19-CV-00448-VMC-CPT

SECURITIES AND EXCHANGE COMMISSION,

        **Plaintiff,**

v.

SPARTAN SECURITIES GROUP, LTD.,
ISLAND CAPITAL MANAGEMENT LLC,
CARL E. DILLEY,
MICAH J. ELDRED, and
DAVID D. LOPEZ,

        **Defendants.**

_____/

**PLAINTIFF'S *DAUBERT* MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANT ISLAND CAPITAL MANAGEMENT LLC'S PROPOSED EXPERT WITNESS MARK A. HARMON**

**I.  Introduction**

Plaintiff Securities and Exchange Commission moves the Court to exclude the testimony of Defendant Island Capital Management LLC's proposed expert witness, Mark A. Harmon, because his purported expert opinions do not comply with the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. Harmon's opinions are neither reliable nor relevant, and they will only serve to confuse, rather than assist the trier of fact in this case.

As discussed below, Mr. Harmon's opinions would only confuse the jury rather than educate them on any real issue in this case.  As such, Mr. Harmon's proposed expert testimony does not meet the threshold requirements of relevant and reliability required by *Daubert* and

its progeny. The Court should strike his report and bar him from testifying as an expert witness at trial.

## II. Standards For Admissibility Of Expert Opinions

Federal Rule of Evidence 702 controls the admission of expert testimony. It permits experts to offer their informed opinions on technical matters outside the scope of what is presumed to be a fact-finder's ordinary knowledge. F.R.E. 702; *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1250 (11th Cir. 2007). The expert must be qualified by "knowledge, skill, experience, training, or education" and may testify to an opinion if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." F.R.E. 702.

The District Court serves as a "gatekeeper" in determining whether proposed expert opinions and testimony are properly admissible, and in this role is "charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand." *Corwin,* 475 F.3d at 1250, *citing Daubert*, 509 U.S. at 590-93.

The Supreme Court in *Daubert* set forth the standards by which a District Court should evaluate proposed expert testimony:

> The proponent of the testimony must show that: (1) the expert is qualified to testify competently regarding matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Corwin*, 475 F.3d at 1250; *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001), both *citing Daubert*, 509 U.S. at 590-93. Although *Daubert* addressed admissibility of scientific evidence,

this standard has been extended to all testimony based on technical or other specialized knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

The party offering the expert testimony has the burden of demonstrating it is "relevant to the task at hand" and "logically advances a material aspect" of its case. *Boca Raton Community Hospital, Inc. v. Tenet Health Care Corp.*, Case No. 582 F.3d 1227, 1232 (11th Cir. 2009) (upholding district court decision to exclude proposed expert on damages because proposed testimony was speculative in that it approximated certain costs instead of showing the actual charges that were unlawful).

Although "the basic standard of relevance . . . is a liberal one," *Daubert,* 509 U.S at 587, a district court should exclude testimony if an expert opinion does not have a "valid scientific connection to the pertinent inquiry." *Id.* at 591-92. In assessing the relevance of the testimony, "[e]xpert testimony which does not relate to any issue in the case is not relevant and ergo, non-helpful." *Borsack v. Ford Motor Co.*, Case No. 04-Civ.-3255, 2007 WL 2142070, at *4 (S.D.N.Y. July 26, 2007). This helpfulness requirement is "akin to the relevance requirement of Rule 401, which is applicable to all proffered evidence" but "goes beyond mere relevance…because it also requires expert testimony to have a valid connection to the pertinent inquiry." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 540 (S.D.N.Y. 2004).

Furthermore, experience, standing alone, may not be the basis for an expert opinion. In *United States v. Frazier,* 387 F.3d 1244, 1261 (11th Cir. 2004), the Eleventh Circuit, in quoting notes to the 2000 amendments to Rule 702, explained: "[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that

experience is reliably applied to the facts." *Id.* (emphasis in original). The *Frazier* court went on to observe, "it remains a basic foundation for admissibility" that proposed expert testimony "must be supported by appropriate validation – i.e., good grounds, based on what is known." *Id.* (quoting *Daubert*, 509 U.S. at 590).

Even if admissible under Rule 702, expert testimony is subject to Federal Rule of Evidence 402, and may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Daubert*, 509 U.S. at 595. In summary, "[g]iven the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." *Allapattah Services, Inc. v. Exxon Corp.*, 61 F.Supp.2d 1335, 1340 (S.D. Fla. 1999).

### III.  Relevant Factual Background

On February 20, 2019, the Commission filed its 14-count Complaint against the Defendants. (DE 1). The Commission alleges that Defendants Spartan Securities, Ltd. ("Spartan"), a registered broker-dealer, and Island Capital Management LLC d/b/a Island Stock Transfer ("Island"), a registered transfer agent, are commonly owned and touted their "one-stop shop" services provided in tandem to microcap issuers. Spartan and Island together played critical roles in two separate microcap fraud schemes: one operated by Alvin Mirman ("Mirman") and Sheldon Rose ("Rose") (collectively "Mirman/Rose fraud") and the other by Michael Daniels ("Daniels"), Andy Fan ("Fan") and Diane Harrison ("Harrison") (collectively "Daniels/Fan/Harrison fraud"). All five individuals are the subjects of Commission enforcement actions, and Mirman and Rose were criminally convicted for their roles in the fraudulent schemes to manufacture collectively at least 19 public companies for sale. These companies were not

operating businesses and did not have independent management or shareholders; rather they were undisclosed "blank check"[1] companies controlled by Mirman, Rose, Daniels, Fan, and/or Harrison.  Defendants Carl Dilley ("Dilley") and Micah Eldred ("Eldred"), registered principals of both Spartan and Island, knew or were reckless in not knowing from the onset of the Mirman/Rose and Daniels/Fan/Harrison frauds, respectively.

The fraudulent schemes depended on the Defendants' misrepresentations and omissions to, among others, the Commission, the Financial Industry Regulatory Authority ("FINRA"), the Depository Trust Company ("DTC"), and securities purchasers, that the 19 public companies (hereinafter "blank check companies") were legitimate small businesses with independent management and shareholders.  In reality, unbeknownst to the public, the Commission, FINRA, or DTC (but known to Eldred and Dilley), the management and shareholders of the blank check companies were nothing more than nominees for Mirman, Rose, Daniels, Fan, and/or Harrison, (the undisclosed control persons) who always intended to sell all the securities of the blank check companies in bulk for their own benefit.  Each bulk sale realized proceeds of hundreds of thousands of dollars.  If the truth known to Eldred and Dilley had been disclosed, the securities would have been restricted from such sales and would have had little value.

Each of the Defendants played a critical role in the fraudulent schemes.  Spartan filed and Dilley and Eldred signed Form 211 applications with FINRA by which the securities

---

[1] 17 C.F.R. § 230.419 defines "blank check company" as (i) a development stage company that has no specific business plan or purpose or has indicated that its business plan is to engage in a merger or acquisition with an unidentified company or companies, or other entity or person; and (ii) is issuing penny stock.

became publicly quoted, a key component of both underlying frauds. Spartan and Island also prepared false applications with DTC by which the securities became eligible for electronic clearance, yet another important step in the frauds because DTC eligibility provided a means for the shares to be purchased and sold through broker-dealers using book entries of ownership, which is seen as a processing efficiency. Island also effectuated both the bulk issuance and transfer of the Mirman/Rose Company securities without restriction despite knowing (or recklessly not knowing in the presence of numerous red flags) that the securities were in the hands of affiliates and therefore restricted. There is not a single claim under the Uniform Commercial Code ("UCC") made anywhere in the 62-page Complaint.

### IV. Summary of Harmon's Opinions

Harmon makes the concluding opinion that "Island Stock Transfer acted in accordance with generally accepted practices and procedures of transfer agents and in fulfillment of its legal obligations, pursuant to UCC 8-401 and 17 C.F.R. § 240.17Ad-2, in connection with the issuance and transfer of securities in response to requests made in good order." Ex. 1, Harmon Report at p. 3 and 6.

In reaching this conclusion, Harmon makes several overarching opinions, including that:

(1) Transfer agents do not have investigatory powers nor do the laws and regulations governing their conduct provide the framework for transfer agents to perform non-ministerial functions. Ex. 1 at p. 4

(2) State laws and federal regulations restrict a transfer agent's ability to examine critically the facts and circumstances underlying facially acceptable supporting documentation.

*Id*.

(3) Island Stock Transfer did not have any basis for refusing to issue the shares which had been "approved" for issuance by the Commission and were accompanied by documents authorizing and substantiating the issuance. *Id*.

(4) Island Stock Transfer acted "reasonably" in issuing the shares as free-trading. *Id*.

(5) Each of the requests to transfer relevant to this case was made by "an appropriate person", whose indorsement or instruction was "genuine". *Id*. at 5.

**V. Harmon's opinions should be excluded because they improperly interpret the law and conclude that Island complied with the law which is in the sole province of the Court and jury**.

Harmon, a practicing attorney, is a business litigator who has spent his entire career at law firms. Ex. 2, Deposition Transcript of Mark A. Harmon, at 9 L.10-12; Ex. 1 at Ex. A *curriculum vitae*. He has never served as a regulator, examiner, auditor or industry executive. Harmon is surely accustomed to providing advice to clients and serving as their advocate, but that does not give him the license to opine on which laws are relevant to this case and whether Island acted reasonably and complied with those laws.

Harmon's opinions illustrate that he is opining on 1) which laws should govern Island's conduct and 2) whether Island complied with those laws. For example, Harmon concludes that Island "acted in accordance with generally accepted practices and procedures of transfer agents and *in fulfillment of its legal obligations, pursuant to UCC 8-401 and 17 C.F.R. § 240.17Ad-2*" and Island "*acted reasonably* in issuing the shares as free-trading" (emphasis added). Ex. 1 at 3, 4, 6. The Court should exclude Harmon as a witness because his opinions encompass ultimate, albeit irrelevant, legal conclusions. *United States v. Long*, 300 F. App'x 804, 814

(11th Cir. 2008) (citations omitted). Here, Harmon is invading the province of the Court by putting his experience before the Court's judgment by instructing the jury on the relevant law. He then invades the province of the jury by opining on whether Island complied with those laws, especially laws that are not charged in the instant case. This is improper.

Harmon should not be allowed to testify on which law is relevant and the legal implications of Island's conduct to those laws because the Court must be the jury's only source of law. *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). Ultimately, Harmon's opinions seek to justify the appropriateness of Island's conduct by opining that it complied with its legal obligations of UCC 8-401 and 17 C.F.R. §240.17Ad-2. The Court should exclude Harmon's opinions because a witness may not testify to the legal implications of conduct. *Jones v. Midland Funding, LLC*, 616 F. Supp. 2d 224, 227 (D. Conn. 2009) ("'[A]n expert should not be permitted to express an opinion that is merely an interpretation of federal statutes or regulations, as that is the sole province of the Court.'") (citations omitted); *McDermott Int'l v. Industrial Risk Insurers*, Case No. 01-3027, 2003 WL 25755910, *1 (E.D. La. Nov. 12, 2003) (determining the law "is fundamentally the province of the trial court."); *Montgomery*, 898 F.2d at 1541 (an expert "may not testify to the legal implications of conduct;" expert witness's testimony "was a legal conclusion, and therefore should not have been admitted."); *United States v. Gay*, 576 F.2d 1134, 1137 (5th Cir. 1978) (defendant's "legal obligations in the circumstances were a matter for instructions from the trial court and not properly a subject for testimony by an expert witness.").

As important, Harmon's opinions are based on his interpretation and application of UCC 8-401 and 17 C.F.R. § 240.17Ad-2, which are wholly irrelevant to this case. The

8

Commission has not charged Island with any violation of the Uniform Commercial Code or 17 C.F.R. § 240.17Ad-2. Instead, the Commission has charged Island with violations of the registration and anti-fraud provisions of the federal securities laws. More specifically, Island is charged with violating Sections 5(a), 5(c), 17(a)(1) and 17(a)(3) of the Securities Act of 1933 ("Securities Act") and Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act") and aiding and abetting violations of Section 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act. Harmon makes no mention of these charges in rendering an opinion.

Even if UCC 8-401 were relevant here, which it is not, Harmon misapplies it. Harmon opines that "[t]ransfer agents do not have investigatory powers nor do the laws and regulations governing their conduct provide the framework for transfer agents to perform non-ministerial functions" and "state laws and federal regulations restrict a transfer agent's ability to examine critically the facts and circumstances underlying facially acceptable supporting documentation." Ex. 1 at p. 4. Thus, Harmon implies that Island's hands were tied, it was prohibited from conducting due diligence, and instead Island was required by law to perform the tasks for which the Commission now complains. Harmon's deposition testimony and prevailing case law do not support his opinions.

At deposition, Harmon was asked about due diligence requirements placed on transfer agents. Despite Harmon's contrary opinions in his written report, he testified that "I will tell you exactly what I say publicly and privately to everybody in my - -in the transfer agent community when I'm addressed this question. Do the amount of diligence that you will feel comfortable explaining when you're sitting across the table from the SEC at an investigatory

9

deposition." Ex. 2: 89, L.3-10. Harmon's testimony, which contradicts his written opinions, makes clear that he concedes some level of due diligence is required and expected of transfer agents. Harmon also concedes that "the SEC believes that transfer agents have gatekeeper responsibilities, and it's been my experience with at least the transfer agents that I represent that they make reasonable efforts to ensure that they do not knowingly violate federal securities laws in the issuance and transfer of securities" *Id*., 34, L.2-7. In fact, he has represented transfer agent clients in defending claims that they violated Section 5 in the issuance and transfer of securities and "you don't want to facilitate 10(b)(5) violation or Section 5 violations. You certainly don't want to do that." *Id*., 35, L.9-11 and 36, L.11-13. This also further contradicts his opinion that transfer agents have no duty or right to investigate and instead only "perform ministerial functions". Ex. 1 at 3.

Case law also contradicts Harmon's opinion that compliance with the UCC controls here. Courts have routinely found that transfer agents were under no duty to register transfers where doing so would otherwise violate the federal securities laws and subject it to action by the Commission. *See Catizone v. Memry*, 897 F. Supp. 732, 736-37 (S.D.N.Y 1995) ("since the transfer violated the [Securities] act, it cannot be considered rightful", and defendants "were under no duty to register the transfer.") citing *Travis Inv. Co. v. Harwyn Publishing Corp.,* 288 F. Supp. 519, 526-27 (S.D.N.Y. 1968) (company was justified in refusing to transfer shares while it sought assurances that the transfer would not violate the Securities Act); *Melville v. Wantschek,* 403 F. Supp. 439, 445-46 (E.D.N.Y. 1975) (transfer agent was not liable for failing to transfer stock where transfer might subject it to action by SEC); *Charter Oak Bank & Trust Co. v. Registrar & Transfer Co.,* 141 N.J.Super. 425, 358 A.2d 505, 510 (Law

Div. 1976) (A transfer agent cannot be required by state law to transfer stock in violation of the Securities Act and "when a transfer agent has reasonable cause to believe that a transfer will be in violation of the Securities Act, it has a right to refuse to make the transfer until it has received an explanation or showing that the proposed transfer would not violate the Securities Act."). Moreover, another court specifically found that the Supremacy Clause governed and if the requested transfers would have run afoul of SEC Rule 144, the transfer request would not have been "rightful" under UCC 8-401, "i.e., that 'rightfulness' under state law should be determined independent of application federal statutes and regulations, would be inconsistent with the Supremacy Clause." *Campbell v. Liberty Transfer Co.*, Case No. CV-02-3084, 2006 WL 3751529 (E.D.N.Y. Dec. 19, 2006) (citations omitted).

Accordingly, Harmon's intended testimony to the jury that Island's actions were proper under UCC 8-401 and 17 C.F.R. 240.17Ad-2 is not relevant to whether Island violated the Federal Securities laws at issue in this case. Such erroneous opinions and testimony on the law would usurp the role of this Court which is charged with instructing the jury on the law. It will also confuse the issues and mislead the jury.

**VI. Harmon's opinions should be excluded because he did not consider relevant facts.**

Federal Rule Evidence 702(b)-(d) permits expert testimony only if "the testimony is based on sufficient facts or data;" "the testimony is the product of reliable principles and methods;" and "the expert has reliably applied the principles and methods to the facts of the case."); *U.S. v. Rushing,* 388 F.3d 1153, 1156-57 (8th Cir. 2004) (expert testimony excluded as unreliable because, among other things, the expert did not consider certain relevant facts); *United States v. Masferrer,* 367 F. Supp. 2d 1365, 1375-76 (S.D. Fla. 2005) (proffered expert

testimony unreliable because expert failed to consider relevant facts). Moreover, the testimony must be helpful or "fit" with the issues to be resolved in the case; that is, the district judge must also determine whether the expert's reasoning and methodology can be properly applied to the facts in issue. *Masferrer*, 376 F. Supp. 2d at 1373 and *Allapattah Serv., Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1335, 1339 (S.D. Fla. 1999) citing *Daubert,* 113 S.Ct. at 2796.

Harmon identifies in his report the documents he reviewed in connection with preparing his opinions. Ex. 1 at 2, Sect. III. Additionally, at his deposition, although not identified in his report, Harmon guessed that he might have read some transcripts, including Eldred's, Lopez's, and Dilley's. Ex. 2, p. 26 L.14-25. While Harmon admits that he reviewed the Complaint in this matter, which sets forth a road map of the Defendants' fraudulent scheme, Harmon did not review the evidence supporting the Complaint, and instead significantly limited his review of the relevant facts. Significantly, Harmon ignored any allegations of fraudulent conduct in this case, making his opinions useless, confusing, and unreliable.

Harmon admits that he "assumed that the documents that were produced to Island were authentic and examined the documents for their contents." Ex. 2, p. 23 L.9-11. Most critically, Harmon has no opinion on any actions taken by Spartan or their employees and did not take into account the knowledge that Island's officers learned during their dual role as broker-dealer with Defendant Spartan. Ex. 2, p. 10, L.19-22 and 23, L. 19-25. When asked at deposition whether he assumed that Island and its employees were unaware of any adverse information about the Issuer, Harmon explained that "I did not make any assumptions on that one way or the other. I issued an opinion based upon the documents presented and the actions that were asked to be taken based upon the documents presented." Ex. 2, p. 23 L.19-25.

When asked about Mirman and Rose, the undisclosed control persons that played a central role in this case, Harmon admitted that he had not read their testimony. Ex. 2, p. 36 L.22. Although he admitted that he was aware Mirman and Rose went to prison for their conduct in this case, Harmon response was "I don't know much about it". Id. p. 37 L.7-10.

Astonishingly, Harmon failed to review relevant evidence suggestive of the Defendants' fraud even while admitting that knowledge of fraud would require interference with the transfer of shares and requires the transfer agent to not take action in processing the request. Ex. 2, p 83 L.4-10 and p 84 L.24- 85 L.3.

Despite opining that "Island Stock Transfer acted reasonably in issuing the shares as free-trading", Harmon failed to review considerable evidence related to the Defendants' knowledge that undisclosed control people controlled the issuer and the free trading shares of the shareholders. Ex. 1, p. 4. Harmon also failed to review documents suggestive of Defendants' knowledge that, for example, Mirman and Rose controlled the issuers and controlled the free trading shares of the shareholders and therefore the shares should have been restricted. However, in his deposition, Harmon admits that this information is relevant because "Transfer agents need to know whether a shareholder is an affiliate or not, and a control person and an insider might be considered affiliates along with certain other classes of shareholders, because that may impact whether or not those shareholders are entitled to have legends removed or to receive free trading stock." Ex. 2, p. 80 L.15-21.

Harmon opines that Island *did not have any basis for refusing to issue the shares* which

13

had been "approved[2]" for issuance by the Commission and were accompanied by documents authorizing and substantiating the issuance. Ex. 1, p. 4. Likewise, he makes this assumption without reviewing any of the facts supporting the Commission's Complaint, without reviewing damning documents, including emails which were quoted extensively throughout the Complaint.

Likewise, Harmon opines that each of the requests to transfer relevant to this case was made by "an appropriate person", whose indorsement or instruction was "genuine", while ignoring the extensive record of documentation indicating the Defendants knew that the undisclosed control people were operating a fraud, which the Defendants facilitated in disregarding their roles as gatekeepers. Ex. 1, at 5. Harmon assumes that the request to transfer was made by "an appropriate person" despite the allegation in the Complaint indicating that in reality, the Defendants were well aware of significant red flags and participated in a fraudulent scheme. At his deposition, Harmon was asked about the implication of red flags in the actions taken by transfer agents.

> Q. What do you understand a red flag to mean?
>
> A. I think like a red flag when the Commission uses red flag. I think it means an indication that something may be amiss.
>
> Q. Okay. And how does a transfer agent respond to red flags?
>
> A. It depends what the red flag is, what the other available evidence is, and how many indications of amiss there are. Ex. 2, p. 85, L.23 – p. 86, L.7.

---

[2] Harmon's suggestion that the Commission "approves" shares for issuance is a fallacy as the Commission instead declares registration "effective."

Despite acknowledging that transfer agents should respond to red flags, Harmon did not review any facts supporting the Commission's allegations of numerous red flags when issuing his opinions.

It is clear from the foregoing testimony that Harmon's opinions ignore critical facts when they fail to support the opinions he was paid to render and as a result, they are simply not reliable under the *Daubert* standards.   The Court should not allow him to testify at trial.

### VII. Harmon's opinions should be excluded because they will unnecessarily confuse the jury.

Harmon's proposed expert opinions should be excluded because they are more likely to confuse the jurors than educate them.  Expert evidence, like all other evidence, may also be excluded under Federal Rule of Evidence 403 if it is confusing or misleading, or if its probative value would be substantially outweighed by the risk of unfair prejudice.  *United States v. Henderson*, 409 F.3d 1293, 1302 (11th Cir. 2005).  Misleading and confusing expert testimony is at odds with the very purpose of expert testimony contemplated by Rule 702.  Here, Harmon's opinions about Island's purported compliance with irrelevant laws (as more fully set for in section VI above) is more likely to confuse the jury than focus them on the true issues in this case.  The only real issue in this case is whether the Defendants, by their actions, violated the federal securities laws.  The needless detour provided by Harmon's proposed opinions would only serve to unnecessarily confuse the jury, and should not be allowed.

### VIII. Harmon's Qualifications

Harmon has not been qualified as an expert by a Court in any matter. Ex. 2, p. 13 L.15-17.  Harmon is a business attorney who "developed a counseling practice as an adjunct" to his litigation practice. Ex. 2, p. 9 L.8-12.  By his own admission, Harmon spends approximately

40% of his day on work for his transfer agent clients and 60% of his day representing accounting firms in defending audit malpractice actions and in various other areas without specialization. Ex. 2, p. 9, L.21- p. 10 L.1 and p. 16 L.12-21.

While understanding Harmon is a business litigator, his report does not identify any specialized training that affords him the knowledge necessary to assess the generally accepted practices and procedures of transfer agents to which he purports to opine. He admits he has never served as a regulator for the SEC, FINRA or in any sort of oversight role. Nor has he worked at a broker-dealer or transfer agent or in the financial or securities industry. He also has not published in any sort of academic journal, short of a few practitioner newsletters for transfer agents. Ex. 1 at Ex. A. Harmon may provide legal advice to transfer agent clients, but any such advice is irrelevant to this jury's assessment of the facts at hand.

Additionally, Harmon admits that he does not represent broker-dealers, whose conduct in this case is the gravamen of the offenses, and is not familiar with broker-dealer obligations. Ex. 2, p. 39, L.5-10. This case includes significant overlap of broker-dealer activities and transfer agent activities all by the same individual Defendants who share ownership of both the broker-dealer and transfer agent companies. Harmon's inability to assess the intertwined nature of the broker-dealer and transfer agent, further highlights his lack of qualifications to offer an opinion in this case. These issues, coupled with Harmon's overstepping into the province of this Court and the jury, as set forth in Section V above, his failure to assess relevant facts, as set forth in Section VI, the confusing nature of his opinions as set forth in Section VII, all illustrate why this Court should exclude his testimony.

## IX.  Conclusion

Harmon's expert report and proposed testimony does not meet any of the *Daubert* standards for admissibility.  Moreover, they will only serve to confuse the jury and will not assist the trier of fact on any issue relevant to this case.  The Court should therefore exclude Harmon's testimony at trial.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 3.01(g), undersigned counsel hereby certifies that on August 12, 2020, they conferred with counsel for Defendants in a good faith effort to resolve the issues presented in this motion by agreement, but were unable to reach an agreement.

 August 14, 2020

Respectfully submitted,

By:   *s/Wilfredo Fernandez*
Wilfredo Fernandez
Senior Trial Counsel
Fla. Bar No. 142859
Telephone: (305) 982-6376
Facsimile: (305) 536-4154
E-mail:  Fernandezw@sec.gov

Christine Nestor
Senior Trial Counsel
Fla. Bar No. 597211
Telephone: (305) 982-6367
Facsimile: (305) 536-4154
E-mail:  nestorc@sec.gov

Alise Johnson
Senior Trial Counsel
Fla. Bar No. 0003270
Telephone: (305) 982-6385
Facsimile: (305) 536-4154
E-mail: johnsonali@sec.gov

**ATTORNEYS FOR PLAINTIFF**
**SECURITIES AND EXCHANGE**
**COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone: (305) 982-6300

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served as indicated below on this 14th day of August 2020 upon the following:

Caleb Kruckenberg, Esq.
Kara Rollins, Esq.
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC. 20036
Email: caleb.kruckenberg@ncla.legal
*Counsel for Spartan Securities Group, LTD., Island Capital Management LLC., Carl E. Dilley, Micah J. Eldred and David D. Lopez*
Via CM/ECF

*s/Wilfredo Fernandez*
Wilfredo Fernandez
