**Mark A. Harmon**
Direct Dial: 646.218.7616
mharmon@hodgsonruss.com

June 16, 2020

**VIA EMAIL and FIRST CLASS MAIL**

Caleb Kruckenberg, Esq.
New Civil Liberties Alliance
1225 19th Street Northwest, Suite 450
Washington, DC 20036

        **Re:**   *Sec. and Exch. Comm'n v. Spartan Sec. Group, Ltd.,*
                *M.D.Fla.* **Case No.: 8:19-cv-00448-VMC-CPT**

Dear Mr. Kruckenberg:

      Pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, I hereby submit this report (the "Report") as a statement of opinions I intend to express in the above-entitled action and the bases and reasons for those opinions.

      The opinions stated in this Report are based on the information currently available to me and assume the authenticity of the documents I have reviewed. I reserve the right to expand or modify my opinions as my investigation and study continue, and to supplement my opinions in response to any additional information that becomes available to me, to any matters raised by the parties, and/or other opinions provided by the parties' expert(s).

      **I.**    **Statement of Assignment**

      I have been retained by counsel for Island Capital Management LLC, d/b/a Island Stock Transfer ("Island Stock Transfer") and asked to provide an opinion as to whether Island Stock Transfer acted reasonably and generally in accordance with accepted practices and procedures of transfer agents and in fulfillment of its legal obligations, pursuant to UCC 8-401 and 17 C.F.R. § 240.17Ad–2, in connection with its issuance of shares and registration of transfer of shares in response to requests made to it by or on behalf of the issuers and registered shareholders of those shares.

**EXHIBIT 1**

Caleb Kruckenberg, Esq.
June 16, 2020
Page 2

## II.   Qualifications, Publications, Prior Testimony, and Rates of Compensation

I am a partner at Hodgson Russ LLP and am admitted to practice in New York State, the U.S. District Courts for the Southern and Eastern Districts of New York, the Second, Third, and Fourth Circuit Courts of Appeal, and the U.S. Supreme Court.  For over thirty years, I have represented, advised and instructed transfer agents and issuers in connection with stock transfer transactions, Uniform Commercial Code Article 8 issues, and compliance with federal securities laws, rules and regulations.  I am a member of the Securities Transfer Association and its Legal Committee.  Attached as Exhibit A is a copy of my *curriculum vitae*, including a list of publications I have authored in the previous ten years.  I have not testified as an expert at trial or by deposition in the previous four years.

My consulting fee, which I am receiving for my work on this matter, is $650 per hour.  The fee for the other attorneys assisting in the preparation of this Report is $430 per hour.  No part of our compensation is dependent upon the outcome of this matter.

## III.   Documents Reviewed

The following is a list of the documents that I reviewed (in whole or in part) in connection with the preparation of this Report:

1) Complaint for Injunctive and Other Relief, dated February 20, 2019 ("Complaint");
2) Defendant Micah Eldred's Motion to Dismiss ("Eldred's MTD");
3) Defendants Spartan Securities Group, LTD, Island Stock Transfer, Carl Dilley, and David Lopez's Joint Motion to Dismiss ("Joint MTD");
4) Decision and Order concerning Eldred's MTD and Joint MTD;
5) Spartan Securities Group, Ltd.'s Response to Wells Notice, dated October 8, 2018;
6) Island Stock Transfer and Dilley's Response to Wells Notice, dated October 8, 2018;
7) Relevant issuance documents;
8) Relevant transfer request documents;
9) DTC attestation forms;
10) 17 C.F.R. § 240.17Ad–1;
11) 17 C.F.R. § 240.17Ad–2;
12) 17 C.F.R. § 240.17Ad–15;
13) U.C.C. § 8-401; and
14) 15 U.S.C. §§ 77e.

## IV.   Factual Background

Caleb Kruckenberg, Esq.
June 16, 2020
Page 3

For the purposes of this Report, my opinions are based on the following facts relevant to this action:

1) Issuance requests relevant to this action, other than for the issuance of shares bearing a restrictive investment legend, were based on the filing of a registration statement which had been approved and declared effective by the Securities and Exchange Commission.

2) Issuance requests for unlegended shares generally were accompanied by signed subscription agreements, evidence of payment, and identification information respecting the purchasing shareholders.

3) Shares not issued pursuant to an effective registration statement were issued as restricted shares and bore a legend restricting their transfer or sale.

4) Requests to transfer shares generally were made based on the presentment of original certificates, instructions to transfer and stock powers bearing medallion signature guarantees.

5) The signature guarantees respecting each group of certificates presented were not made by the same guarantor and were from recognized institutions.

6) Requests to transfer shares bearing a restrictive investment legend were presented in connection with private transactions and the shares continued to be subject to transfer and sale restrictions.

7) Island Stock Transfer, at all relevant times, had a policy and procedure, pursuant to 17 C.F.R. § 240.17Ad–15, which requires that Island Stock Transfer accept medallion signature guarantees as reasonable assurance that the indorsement or instruction provided is genuine and authorized.

V. **Opinions and the Basis and Reasons for Them**

In my professional assessment and opinion, based on the documents submitted to it for the issuance and transfer of securities which are the subject of this action, Island Stock Transfer acted in accordance with generally accepted practices and procedures of transfer agents and in fulfillment of its legal obligations, pursuant to UCC 8-401 and 17 C.F.R. § 240.17Ad–2, in connection with the issuance and transfer of securities in response to requests made in good order.

Transfer agents are agents for disclosed principals and, in that capacity, perform ministerial functions; namely, transfer agents maintain the shareholder books and records of public companies, issue shares on the basis of instructions from or on behalf of the issuers they represent and record changes in registered ownership when presented with the requisite supporting

Caleb Kruckenberg, Esq.
June 16, 2020
Page 4

documentation. Transfer agents do not have investigatory powers nor do the laws and regulations governing their conduct provide the framework for transfer agents to perform non-ministerial functions. To the contrary, state laws and federal regulations restrict a transfer agent's ability to examine critically the facts and circumstances underlying facially acceptable supporting documentation. Moreover, the issuance and transfer of unlegended Shares[1] was done pursuant to a registration statement which had been declared effective by the Commission and supporting documentation of the authenticity of the puchasers and transferors.

As a preliminary matter, issuance requests for unlegended Shares were based on the filing of a registration statement which had been approved and declared effective by the Commission. Moreover, the issuance requests for these Shares were accompanied by signed subscription agreements, evidence of payment, and identification information respecting the shareholders. Island Stock Transfer did not have any basis for refusing to issue these Shares which had been approved for issuance by the Commission and were accompanied by documents authorizing and substantiating the issuance. Thus, Island Stock Transfer acted reasonably in issuing the Shares as free-trading.

With respect to the Requests to Transfer[2] at issue in this action, Article 8 of the Uniform Commercial Code ("UCC") Section 8-401 sets forth the transfer agent's obligation to register the transfer of shares upon a proper presentment. Specifically, Section 8-401 provides that: "If a certificated security in registered form is presented to an issuer with a request to register transfer or an instruction is presented to an issuer with a request to register transfer of an uncertificated security, the issuer *shall* register the transfer as requested if" certain conditions are met, including the indorsement of a certificate or instruction by the appropriate person with a medallion signature guarantee. Section 8-407 makes this obligation an independent obligation of the transfer agent for which it can be held in the event of unreasonable delay in processing the request.

This state law obligation to register the transfer of shares – which is regularly enforced - is consistent with the Commission's federal regulations. For example, § 240.17Ad–2 of the Code of Federal Regulations requires that every registered transfer agent "turnaround within three business days of receipt at least 90 percent of all routine items received for transfer during a month." 17 C.F.R. § 240.17Ad–2. Requests to register the transfer of unrestricted securities, such as those at issue in this action, are "routine items," which fall within the purview of § 240.17Ad–2. *See* 17 C.F.R. § 240.17Ad–1(i). Thus, the Commission promotes and prioritizes the "safe, efficient, prompt, and accurate settlement [of] transactions." *See* Advance Notice of Proposed Rulemaking, Concept Release, and Request for Comment on Transfer Agent Regulations, p. 6.

---

1    As used herein, "Shares" refers to the unlegended shares which the Commission complains, if at all, were issued improperly as free-trading.

2    As used herein, "Requests to Transfer" refers to the shareholder requests to register the transfer of unlegended shares which were made to and processed by Island Stock Transfer and which are at issue in the Complaint.

Caleb Kruckenberg, Esq.
June 16, 2020
Page 5

Further, § 240.17Ad–15 of the Code of Federal Regulations requires that transfer agents "establish: written standards for the acceptance of guarantees of securities transfers from eligible guarantor institutions." 17 C.F.R. § 240.17Ad–15. This regulation underscores the transfer agent's obligations to accept medallion signature guarantees as reasonable assurance that the indorsement or instruction provided is genuine and authorized, as required by UCC Section 8-401. *See* UCC § 8-401.

Thus, transfer agents do not have the authority to deny or reject requests to register the transfer of shares when the requesting shareholder has made a proper presentment. Transfer agents are not empowered with the authority to inquire beyond the presentment of supporting documents which satisfy on their face the requisites of UCC Section 8-401. To the contrary, a transfer agent may be held liable for refusing to register timely a request to transfer shares which includes the documents required by UCC Section 8-401.

Significantly, the Requests to Transfer were based upon proper presentments, namely the presentment of original certificates, instructions to transfer, and stock powers bearing medallion signature guarantees. Each of the Requests to Transfer was made by an appropriate person, whose indorsement or instruction was genuine according to a medallion signature guarantee, which transfer agents are obligated to accept as reasonable assurance that the indorsement or instruction provided is genuine and authorized. Further, the medallion signature guarantees respecting each group of certificates presented were not all made by the same guarantor and were from recognized institutions. Island Stock Transfer also received evidence that the individual requesting shareholders received compensation for their shares, resided in geographically diverse locations, and had different guarantors. Thus, each Request to Transfer gave rise to Island Stock Transfer's obligation to register a transfer of shares pursuant to UCC § 8-401.

Moreover, the Requests to Transfer concerned unrestricted shares, which are routine items that gave rise to Island Stock Transfer's obligation to register timely the transfer of shares pursuant to Section 240.17Ad–2 of the Code of Federal Regulations. That some, even many, of the Requests to Transfer were sent to Island Stock Transfer in one batch would not justify Island Stock Transfer's failure to fulfill its obligation under UCC § 8-401. In fact, sending in one bulk request the compilation of multiple individual shareholder requests to register the transfer of shares is not uncommon in connection with the purchase and sale of a company.

With respect to requests to transfer shares bearing a restrictive investment legend, such shares were transferred in connection with private transactions, in accordance with lawful exemptions, and the reregistered shares continued to be subject to transfer and sale restrictions. These requests to transfer restricted shares were also accompanied by the documentation, sufficient on its face, to obligate a transfer agent to register the transfer of shares pursuant to UCC § 8-401.

Caleb Kruckenberg, Esq.
June 16, 2020
Page 6

### VI. Concluding Opinions

It is my opinion to a reasonable degree of certainty, on the basis of and consistent with my experience over the course of 30 years advising transfer agents and issuers in connection with stock transfer transactions, Uniform Commercial Code Article 8 issues, and compliance with federal securities laws, rules and regulations, that Island Stock Transfer acted in accordance with generally accepted practices and procedures of transfer agents and in fulfillment of its legal obligations, pursuant to UCC 8-401 and 17 C.F.R. § 240.17Ad–2, in connection with the issuance and transfer of securities in response to requests made in good order.

The opinions expressed in this Report are based on the information currently available to me. I reserve the right to expand or modify any of my opinions set forth herein as my investigation and study continue, and to supplement my opinions in response to any additional information that becomes available to me, to any matters raised by the parties, and/or other opinions provided by the parties' expert(s).

Very truly yours,

Mark A. Harmon

Encls.

# EXHIBIT A

**MARK A. HARMON**
1540 Broadway, 24th Floor
New York, New York 10036
(212) 751-4300
Direct Dial: (646) 218-7616
Email: mharmon@hodgsonruss.com

| | | |
|---|---|---|
| **WORK EXPERIENCE:**<br>August, 1978 – July, 2005 | Bondy & Schloss LLP<br>Partner | *New York, New York* |
| July, 2005 – Present | Hodgson Russ LLP<br>Partner | *New York, New York* |

Practice includes representation of financial institutions, stock transfer agents, real estate developers, accounting firms, health care facilities, and a range of employers in complex disputes, investigations, litigations, examinations, and administrative and enforcement proceedings. Advises transfer agents on issues relevant to their business, including the treatment of restricted securities; compliance with securities laws; defending contract, fraud, and 10b-5 claims in judicial proceedings; and appearing in regulatory and administrative proceedings before the Securities and Exchange Commission (SEC). Extensive experience handling matters related to Article 8 of the Uniform Commercial Code and the SEC rules regulating the business of transfer agents.

**EDUCATION:**   B.A., University of Buffalo,
State University of New York - 1975

J.D., Brooklyn Law School - 1978

**BAR ADMISSIONS:**   New York State ; U.S. Supreme Court; U.S. District Court for the Southern and Eastern District of New York and District of Colorado; U.S. Courts of Appeal for the Second, Third and Fourth Circuits; Pro Hac Vice Admissions in various state and federal courts

|  |  |
|---|---|
| **OTHER AFFILIATIONS:** | Securities Transfer Association |
|  | American Bar Association |
|  | Association of the Bar of the City of New York |
|  |  |
|  | Former President Congregation Knesses Tifereth Israel |
|  | Former Chair Zoning Board of Appeals Village of Rye Brook |
|  |  |
| **PUBLICATIONS:** | The Securities Transfer Association, Inc., Newsletter 2005 "Cancelled, Unrecorded And Improperly Recorded Certificates: What to do if presented with a request to transfer one of these items." |
|  |  |
|  | The Securities Transfer Association, Inc., Newsletter 2008 "Implementing Rule 144 of the Securities Act of 1933, as Amended." |
|  |  |
|  | The Securities Transfer Association, Inc., Newsletter 2012 "The Crowfunding Provisions of the Jumpstart Our Business Startups Act of 2012." |
|  |  |
|  | The Securities Transfer Association, Inc., Newsletter 2013 "A Message to Transfer Agents From the Ninth Circuit Court of Appeals: We're Not Saying You're Liable, But We're Not Saying You're Not." |
|  |  |
|  | The Securites Transfer Association, Inc., Newsletter 2016 "Irrevocable Instruction Letters Dos and Whys" |