IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

U.S. SECURITIES AND EXCHANGE     :
COMMISSION,     :
    :      CASE NO.: 8:19-cv-448-VMC-CPT
    :
                 Plaintiff,     :
    :
         v.     :
    :
    :
SPARTAN SECURITIES GROUP, LTD.,   :
ISLAND CAPITAL MANAGEMENT,     :
CARL E. DILLEY,     :
MICAH J. ELDRED and     :
DAVID D. LOPEZ     :
    :
             Defendants.     :

**DEFENDANTS' *DAUBERT* MOTION
AND MEMORANDUM OF LEGAL AUTHORITY IN SUPPORT
TO EXCLUDE OR LIMIT THE EXPERT TESTIMONY
OF JAMES M. CANGIANO**

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................i

TABLE OF AUTHORITIES ............................................................................................ii

DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE OR LIMIT THE EXPERT
TESTIMONY OF JAMES M. CANGIANO ...................................................................1

MEMORANDUM OF LEGAL AUTHORITY IN SUPPORT OF THE MOTION TO
EXCLUDE OR LIMIT THE EXPERT TESTIMONY OF JAMES M. CANGIANO ....1

SUMMARY OF THE ARGUMENT.................................................................................1

*DAUBERT* STANDARD .................................................................................................2

ARGUMENT.....................................................................................................................3

    I.    MR. CANGIANO IS NOT QUALIFIED TO TESTIFY IN THIS CASE....................................4

        A.    Mr. Cangiano Lacks the Experience Necessary to Testify About How Transfer Agents
Function, Their Role in Transactions, or Legal Requirements Governing those Transactions....6

        B.    Mr. Cangiano Lacks the Experience Necessary to Testify About Defendants' Processes
Related to Form 211 Applications and Compliance with Rule 15c2-11 ........................8

    II.    MR. CANGIANO'S TESTIMONY IS NOT RELIABLE ...................................................13

    III.    MR. CANGIANO'S TESTIMONY IS NOT HELPFUL TO THE TRIER OF FACT ...........................16

        A.    Mr. Cangiano's Testimony and Opinions Are Unhelpful Because the Trier of Fact Is
Capable of Determining Issues in the Case Without the Assistance of His Testimony or
Opinions........................................................................................................................16

        B.    Mr. Cangiano's Testimony and Opinions Will Not Help the Trier of Fact Because They
Offer Nothing More than What SEC's Lawyers Can Argue in Closing Argument....................17

        C.    Insofar as Mr. Cangiano's Testimony and Opinions Constitute Legal Opinions, His
Testimony and Opinions Are Not Helpful to the Trier of Fact........................................18

CONCLUSION................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Allison v. McGhan Med. Corp.*, 184 F.3d 1300 (11th Cir. 1999) ................................................1

*Bostick v. State Farm Mut. Auto. Ins. Co.*, 321 F.R.D. 414 (M.D. Fla. 2017)................................2

*Christensen v. Harris Cty.*, 529 U.S. 576 (2000) ...........................................................................11

*Chrysler Corp. v. Brown*, 441 U.S. 281 (1979) ..............................................................................7

*City of Tuscaloosa v. Harcors Chemicals, Inc.*, 158 F.3d 548 (11th Cir. 1998) .........................4, 17

*Commodores Entm't Corp. v. McClary*, 879 F.3d 1114 (11th Cir. 2018) .................................18, 19

*Cook ex rel. Estate of Tessier v. Sheriff of Monroe County,* 402 F.3d 1092 (11th Cir. 2005) ...................16, 17

*Cordoves v. Miami-Dade Cty.*, 104 F. Supp. 3d 1350 (S.D. Fla. 2015) .................................passim

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ...................................passim

*Davis on Behalf of J.D.D. v. Carroll*, 329 F.R.D. 435 (M.D. Fla. 2018).....................................5, 10

*FNB Bank v. Park Nat. Corp.*, 996 F. Supp. 2d 1187 (S.D. Ala. 2014)......................................19

*Gen. Elec. Co. v. EPA*, 290 F.3d 377 (D.C. Cir. 2002) .................................................................11

*General Elec. Co. v. Joiner*, 522 U.S. 136 (1997) .............................................................1, 14, 15

*Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568 (N.D. Fla. 2009) ..............................................passim

*Jackson v. United States*, 5:18-CV-53-OC-PRL, 2020 WL 1665960 (M.D. Fla. Apr. 3, 2020) .............4, 8

*Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384 (S.D. Fla. June 25, 2009) .......................3

*Kumho Tire Co. v Carmichael*, 526 U.S. 137 (1999) ..........................................................1, 2, 14

*McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253 (11th Cir. 2002) ........................................2

*Montgomery v. Aetna Casualty & Surety Co.*, 898 F.2d 1537 (11th Cir. 2014)......................18, 19

*Payne v. C.R. Bard, Inc.*, 606 F. App'x 940 (11th Cir. 2015)....................................................4, 8

*Perez v. Mortg. Bankers Ass'n,* 575 U.S. 92 (2015) .......................................................................7

*Pleasant Valley Biofuels, LLC v. Sanchez-Medina*, No. 13-23046-CIV, 2014 WL 2855062 (S.D. Fla. June 23, 2014) ......................................................................................................................5, 9, 13

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333 (11th Cir. 2003)......................................14

*Sanchez-Knutson v. Ford Motor Co.*, 181 F. Supp. 3d 988 (S.D. Fla. 2016) ....................................................5

*U.S. v. Frazier,* 387 F.3d 1244 (11th Cir. 2004) ...............................................................................passim

*United States v. Herring,* 955 F.2d 703 (11th Cir. 1992)...............................................................................19

## Rules and Regulations

17 C.F.R. § 240.15c2-11 (1984)....................................................................................................................10

Fed. R. Evid. 702 ...............................................................................................................................1, 2, 4, 13

*Initiation or Resumption of Quotations Without Specified Info.*, 56 Fed. Reg. 19148 (Apr. 25, 1991) .............10

*Promoting the Rule of Law Through Transparency and Fairness in Civil Administrative Enforcement and Adjudication*, Exec. Order No. 13892, 84 Fed. Reg. 55239 (Oct. 9, 2019)...........................................18

## Other Authorities

*Publ'n or Submission of Quotations Without Specified Info.*,
84 Fed. Reg. 58206 (proposed Oct. 30, 2019) ...........................................................................................12

*Publ'n or Submission of Quotations Without Specified Information*,
64 Fed. Reg. 11124 (proposed Mar. 8, 1999) ........................................................................................12, 14

*Transfer Agent Regulations*, SEC Release No. 34-7643 (proposed Dec. 22, 2015)......................................8

**DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE OR LIMIT THE EXPERT TESTIMONY OF JAMES M. CANGIANO**

Defendants Spartan Securities Group, Ltd. (Spartan), Island Capital Management LLC d/b/a Island Stock Transfer (Island), Carl E. Dilley, Micah J. Eldred and David D. Lopez, through undersigned counsel, move to exclude, in whole or in part, the June 19, 2020 expert report of James M. Cangiano ("Cangiano Report") and related testimony proffered by the Securities and Exchange Commission in this action, on the grounds that Mr. Cangiano' s testimony and opinions fail to meet the standards for admissible expert opinions set forth in Federal Rule of Evidence 702. *See generally Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *General Elec. Co. v. Joiner*, 522 U.S. 136 (1997); *Kumho Tire Co. v Carmichael*, 526 U.S. 137 (1999).[1]

**MEMORANDUM OF LEGAL AUTHORITY IN SUPPORT OF THE MOTION TO EXCLUDE OR LIMIT THE EXPERT TESTIMONY OF JAMES M. CANGIANO**

**SUMMARY OF THE ARGUMENT**

Mr. Cangiano's Report and testimony should be excluded, or substantially limited, because he is not qualified to offer the opinions asserted in his report.[2] *See* Cangiano Report 29–31. Mr. Cangiano lacks qualifying experience in the relevant fields on which he ultimately offers conclusions and

---

[1] While this motion requests exclusion of Mr. Cangiano's testimony under *Daubert* and Rule 702, the Defendants also intend to file an omnibus motion *in limine* before the November 6, 2020 deadline and reserve the right to request additional limitations on Mr. Cangiano's testimony and opinions. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1309 (11th Cir. 1999) (A court's "*Daubert* analysis does not operate in a vacuum" and a proffer of expert testimony is also subject to challenge under Rules 401, 402, and 403.).

[2] The condensed transcript of Mr. Cangiano's July 23, 2020 Deposition is attached as Exhibit 1 (Cangiano Dep.). The Expert Report of James M. Cangiano dated June 19, 2020 (Cangiano Report), Cangiano Dep. Ex. 225, is attached as Exhibit 2. Exhibit A to the Cangiano Report, Cangiano Dep. Ex. 226, listing documents Mr. Cangiano reviewed is attached as Exhibit 3.  Mr. Cangiano's curriculum vitae, Cangiano Dep. Ex. 227, is attached as Exhibit 4.

opinions. Despite lacking tangible experience about the industries and rules involved in this case, Mr. Cangiano's purported areas of expertise appear to be malleable to whatever is in SEC's complaint. While Mr. Cangiano certainly has extensive credentials as a regulator, this "jack of all trades" expertise has nothing to do with understanding the specific practices involved here. He is ultimately "a master of none," as evidenced by his heavy reliance on unpromulgated rules and unlawful agency guidance in forming his opinions. Mr. Cangiano's Report and testimony should be excluded, in whole or in part, under Rule 702 and *Daubert*.

## *DAUBERT* STANDARD

Under Federal Rule of Evidence 702, courts may consider expert testimony if

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Court serves a "gatekeeping duty to determine whether the expert testimony 'is not only relevant, but reliable.'" *Bostick v. State Farm Mut. Auto. Ins. Co.*, 321 F.R.D. 414, 416 (M.D. Fla. 2017) (quoting *Daubert*, 509 U.S. at 589); *see Daubert*, 509 U.S. at 597 (expert's testimony must be "relevant to the task at hand"). The gatekeeping function "'ensure[s] that speculative, unreliable expert testimony does not reach the jury' under the mantle of reliability that accompanies the appellation of 'expert testimony.'" *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002)).

Under *Daubert*, "the trial judge has broad discretion in how the review is conducted. *Bostick*, 321 F.R.D. at 416 (citing *Kumho Tire Co.*, 526 U.S. at 152). And,

[t]o fulfil their obligation under *Daubert,* district courts must engage in a rigorous inquiry to determine whether:  (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert

2

reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Rink*, 400 F.3d at 1291–92 (citation omitted). In this Circuit, "these three considerations are known as 'qualifications, reliability, and helpfulness,' and must not be conflated by the district court." *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *2 (S.D. Fla. June 25, 2009) (quoting *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004), *aff'd*, 613 F.3d 1329 (11th Cir. 2010). Each of these three considerations must be satisfied by a preponderance of the evidence and the party offering the expert bears the burden of persuasion. *Rink*, 400 F.3d at 1292; *Frazier*, 387 F.3d at 1259–60.

## ARGUMENT

Mr. Cangiano's Report indicates that he was asked to provide an expert opinion regarding:

[1] The characteristics of "shell factories" and how the companies that are sold are sometimes employed in schemes commonly referred to as "pump and dump" and other schemes;
[2] whether red flags were present and whether those red flags would be easily recognized by industry professionals as they relate to compliance with SEC Rule 15c2-11 and other rules;
[3] whether the defendants' activities carried out by Island Transfer were customary practice in the transfer agent space and comporting with industry standards;
[4] whether the defendants' actions were indicative of their essential participation in these activities, and;
[5] the effect of defendants' actions in the marketplace and on the investing public.

Cangiano Report 2. In response to these testimony requests, Mr. Cangiano provides some eight opinions in his report supporting his conclusion that

Spartan and Island were "links in a chain" that permitted the shells to be sold thereby putting the investing public at risk if the outcome of the sale resulted in a pump and dump or other manipulative scheme. Market professionals rely on the integrity of published quotations in the marketplace and the industry's clearance and settlement systems could be compromised by virtue of the misrepresentations of the defendants and others.

*Id.* at 29–31.

3

For the reasons set forth below, the Cangiano Report, Mr. Cangiano's opinions contained therein, and testimony related thereto should be excluded or, in the alternative, limited in accordance with *Daubert* and the Federal Rules of Evidence.

## I.   MR. CANGIANO IS NOT QUALIFIED TO TESTIFY IN THIS CASE

Under the first consideration—qualifications—an expert may be qualified in several ways, and where, as here, SEC appears to intend to qualify Mr. Cangiano through his education and experience such qualification may be permitted. *Frazier*, 387 F.3d at 1261. Admittedly, the standard for admissibility based on an expert's qualifications is not as stringent as it could be. *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 578 (N.D. Fla. 2009), *aff'd sub nom. Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183 (11th Cir. 2010). However, while an expert's qualifications to offer opinions may be based on a combination of his "'knowledge, skill, experience, training, or education[,]'" he "must be *at least minimally qualified* in his field." *Id.* (quoting Fed. R. Evid. 702) (emphasis added).

But being an expert in general, does not make one an expert for *everything*. "Assuming an expert is qualified to testify, the expert may testify only about matters within the scope of his or her expertise." *Cordoves v. Miami-Dade Cty.*, 104 F. Supp. 3d 1350, 1358 (S.D. Fla. 2015) (citing *City of Tuscaloosa v. Harcors Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). Opinions and testimony by experts with no or limited and dated experience in the field they are purporting to testify about should be excluded. *See Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 943 (11th Cir. 2015) (unpublished) (upholding exclusion of "limited and dated" experience because there was no sufficiently established "nexus" between the experience and the opinions offered); *Cordoves*, 104 F. Supp. 3d at 1358 ("[E]xpert testimony regarding matters outside of the witness's expertise is inadmissible, even if the expert is qualified to testify about other matters."); *Jackson v. United States*, 5:18-CV-53-OC-PRL, 2020 WL 1665960, at *3–4 (M.D. Fla. Apr. 3, 2020) (determining that a medical internist was not qualified to opine on a deviation from

standard care and whether surgical intervention was warranted because he had "limited experience"); *Davis on Behalf of J.D.D. v. Carroll*, 329 F.R.D. 435, 440–41 (M.D. Fla. 2018) (excluding a purported expert from testifying about compliance with certain statutes and rules because the expert lacked "relevant" experience); *Sanchez-Knutson v. Ford Motor Co.*, 181 F. Supp. 3d 988, 993–94 (S.D. Fla. 2016) (excluding expert testimony that is outside of the purported expert's area of expertise); *Pleasant Valley Biofuels, LLC v. Sanchez-Medina*, No. 13-23046-CIV, 2014 WL 2855062, at *4 (S.D. Fla. June 23, 2014) (time in an industry may give a witness a generalized understanding, but that understanding does "not endow[] him with a sufficient body of specialized knowledge to assist the trier of fact in understanding the evidence or issues of this case relating to the precise contours of [a regulated-entity's] duties…or its performance of those duties.").

There is little doubt that Mr. Cangiano has the credentials to be qualified as an expert in some case,[3] but he does not have the credentials necessary to be qualified as an expert in this case.[4] *See Cordoves*, 104 F. Supp. 3d at 1358. Mr. Cangiano has "nearly 48 years of regulatory and consulting experience." Cangiano Report 2. His Report states that he has "been employed as an expert…and his areas of expertise include NASDAQ, listed, and Over the Counter ('OTC') markets and the rules and laws that govern trading in those markets" as well as other areas on which he has testified. Cangiano Report 2–3. Defendants do not challenge Mr. Cangiano's education or, to an extent, his lengthy experience. Rather, Defendants challenge Mr. Cangiano's Report, opinions, and testimony based on

---

[3] At best, Mr. Cangiano is qualified to testify about so-called "pump-and-dump" schemes, *see* Cangiano Report 2-3, 5-6, but such testimony should be excluded because it is speculative and not helpful to the trier of fact. *See infra* II.

[4] Of note, most of the experience on which Mr. Cangiano purports to rely on is in a role as a regulator, not in or working with a regulated industry. While this may seem like a distinction without a difference, Mr. Cangiano's view of the industry standard is a regulator's view of the industry standard (from a position of power and control), not the actual industry standard adopted and used by regulated-entities.

5

the scope of his expertise and that the scope of his expertise is not relevant to the "task at hand." *Daubert*, 509 U.S. at 597.

A.   **Mr. Cangiano Lacks the Experience Necessary to Testify About How Transfer Agents Function, Their Role in Transactions, or Legal Requirements Governing those Transactions**

Mr. Cangiano has no expertise concerning transfer agents and has no basis to offer *any* opinions about transfer agent practice or liability. Indeed, he readily admitted that he has no experience at all in the transfer agent industry. He has never worked for or with transfer agents, nor has he been qualified as an expert in transfer agents in any other case. *See* Cangiano Report 2–3 (discussing work experience but not showing any work for or with a transfer agent); Cangiano Dep. 56:2–12 (never supervised examinations of transfer agents), 65:22–66:5 (never worked for a transfer agent), 72:10–73:2 (testifying expert but not involving transfer agent), 76:5–15 (same), 77:1–12 (same), 78:20–22 (same), 84:9–13 ("Q… And you have never been accepted as an expert witness concerning transfer agents, have you? A That's right."). Moreover, Mr. Cangiano's regulatory experience did not involve transfer agents, as NASD did not regulate that industry. Cangiano Dep. 35:4–8. Therefore, his experience at NASD never touched on transfer agent rules or their common industry practices. Cangiano Dep: 50:1–11, 56:1–19.

Mr. Cangiano's lack of expertise shows in his report. The Report's entire understanding and discussion of the role and obligations of transfer agents is predominately derived from a rule the SEC proposed in 2015—after the allegations in the Complaint occurred—and that the Commission never adopted. Cangiano Report 14–16; Cangiano Dep. 219:14–221:9, 225:21–226:8, Ex. 244, *available at* *Transfer Agent Regulations*, SEC Release No. 34-7643 (proposed Dec. 22, 2015) (2015 Proposed Rule). And Mr. Cangiano agreed that his opinions about a transfer agent's obligations to review the validity of documents sent to it was not based on an obligation imposed by a "defined rule or statute," but, in

6

part, was based on the proposed transfer agent rule that had never been adopted. Cangiano Dep. 201:10–25; 203:17–204:4, 223:12–224:22, 225:21–25, 226:9–12. This fact raises two obvious deficiencies in his Report that stem directly from Mr. Cangiano's lack of relevant experience: (1) at no time does he offer or opine on what the role or requirements were for a transfer agent during the relevant timeframe, roughly December 2009 until July 2014; and (2) his opinion does not provide any unique or expert understanding but instead only provides what SEC's unenforceable proposed position at some point in time was.[5]

It is also unclear from what sources the Cangiano Report's opinions relating to Deposit Trust Company ("DTC") eligibility derive, as Mr. Cangiano cites none. Cangiano Report 13–14 (citing no source for statements). But it is clear that he lacks any experience with and understanding of the role or obligations of a transfer agent in the process. Cangiano Report 2–4 (discussing work experience but not showing any work completing or reviewing DTC eligibility applications); Cangiano Dep. 51:8–11, 56:2–19 (from 1986 until 1999 none of the exams he supervised at NASD arose out of examinations of transfer agents), 66:7–10 (never submitted documents related to a DTC application), 192:9–193:3 (only statements in DTC attestation relate to Office of Foreign Asset Control, which is not at issue here), 203:18–204:4 (assuming an obligation in securities laws that does not exist). Mr. Cangiano should not, therefore, be opining about industry practice concerning DTC attestations submitted by transfer agents.

Because Mr. Cangiano lacks any experience with transfer agents, including DTC eligibility applications, matters relating to transfer agents fall outside the scope of his expertise, which is thus

---

[5] Only "properly promulgated, substantive agency regulations have the "force and effect of law." *Chrysler Corp. v. Brown*, 441 U.S. 281, 295 (1979); *see also Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96–97 (2015) (discussing procedures for rulemaking under the Administrative Procedure Act).

not relevant to this matter. *See Daubert*, 509 U.S. at 597; *Cordoves*, 104 F. Supp. 3d at 1358. He also provided no information about his qualifications—whether by education or experience—related to transfer agents, that establish he has the minimal qualifications necessary to provide testimony and opinions in this matter. *See Hendrix*, 255 F.R.D. at 578. Mr. Cangiano lacks both the minimal qualifications necessary and the relevant experience to be qualified as an expert in how transfer agents function, their role in the DTC eligibility process, their role in transactions, or the legal requirements governing those transactions. Because he is unqualified to provide an opinion on transfer agents, portions of the Cangiano Report, as well as the testimony he intends to proffer at trial should be excluded. *See, e.g.*, Cangiano Report 1, 7, 9–10, 13–14, 14–16, 23–24, 24–29, 29–31 (identifying sections of the Cangiano Report that discuss or offer conclusions and opinions about transfer agents).

### B.  Mr. Cangiano Lacks the Experience Necessary to Testify About Defendants' Processes Related to Form 211 Applications and Compliance with Rule 15c2-11

Mr. Cangiano also lacks the minimum qualifications necessary to proffer testimony and opinions relating to the Financial Industry Regulatory Authority's (FINRA) Form 211 Application process and the industry standards governing Form 211 applications. Mr. Cangiano spent the vast majority of his career working for the National Association of Securities Dealers, Inc. (NASD), the precursor to FINRA.[6] However, while this experience appears facially relevant to this case, it is not. *See* Cangiano Dep. 39:17–40:22 (stating that he has "a degree of familiarity with practically everything" he did in his roles at NASD); *but see Payne*, 606 F. App'x at 943 ("limited and dated" experience must have a sufficient nexus to the opinions proffered); *Jackson*, 2020 WL 1665960, at *3–4 (excluding testimony because purported expert had "limited experience"); *Pleasant Valley Biofuels*, 2014 WL

---

[6] NASD merged into FINRA, but prior to that NASD was "the self-regulatory organization for the over-the-counter market." Cangiano Dep. 30:13–31:1.

2855062, at *4 (excluding purported expert witness with "dated and sparse" experience). That was so even though NASD employed thousands of people, in all areas of the market. Cangiano Dep. 37:9–38:5. Mr. Cangiano cannot be an expert in *everything* simply because of his tenure at a regulator.

First, Mr. Cangiano's direct experience with Rule 211 is both limited and dated. As a staff examiner he examined "five or six" NASD members for compliance with Rule 211 prior to 1975. Cangiano Dep. 29:25–30:10. From 1975-1981 he supervised examinations, where he generally did not personally review any broker-dealer files. Cangiano Dep. 44:1–12. He supervised an additional 10-15 NASD members for compliance with Rule 211. Cangiano Dep. 44:19–45:11, 45:22–46:2. From 1984 to 1986 he did not supervise or conduct any field examinations. Cangiano Dep. 49:20–51:2. Then from 1986 to 1998 he managed "hundreds" of simultaneous examinations, but did not conduct fieldwork, and only supervised compliance with "[m]aybe 10 to 20" investigations concerning compliance with Rule 211, and only then when an investigator had found a problem. Cangiano Dep. 52:12, 53:1–11, 53:17–54:3, 54:20–25. It is quite telling that Mr. Cangiano only encountered Rule 211 compliance as few as 25 times over the span 23 years. And in most of those cases, his experience was from a distance, having been alerted to a problem by a field examiner. This does not support a basis for him to opine about how *typical* broker-dealers behave, and what compliance should look like.

Moreover, Mr. Cangiano's experience is out of date, with his last direct experience coming in 1998—*22 years ago*. Indeed, much of his experience concerns a different version of the rule. The version of Rule 15c2-11 that Mr. Cangiano would have examined compliance with in the 1970s and 1980s was significantly amended in 1991, *see* Cangiano Dep. 119:21–120:6. It is compliance with the 1991 amended Rule 15c2-11 that is at issue in this case.[7] The 1991 amendment changed the applicable

---

[7] Between 1991 and today, the Commission has proposed additional amendments to Rule 15c2-11, but the 1991 amended rule remains operative. *See Publ'n or Submission of Quotations Without Specified*

standard for broker-dealers regulated by the Rule. *See* Cangiano Dep. 119:21–120:6; *see generally Initiation or Resumption of Quotations Without Specified Info.*, 56 Fed. Reg. 19148 (Apr. 25, 1991) (to be codified at 17 C.F.R. pt. 240); 17 C.F.R. § 240.15c2-11 (1984). Thus, not only is Mr. Cangiano's experience regarding compliance with Rule 15c2-11 prior to 1991 dated,[8] it is also irrelevant here because the Rule at issue—and that he has opined or intends to opine on—is substantially different from the Rule he has experience with. *See, e.g., Davis on Behalf of J.D.D.*, 329 F.R.D. at 440–41 (excluding a purported expert from testifying about compliance with certain statutes and rules because the expert lacked "relevant" experience).

Even Mr. Cangiano's experience since 1991 is dated. After all, the SEC's EDGAR system was not even implemented until "right around" the "end" of his tenure at NASD. Cangiano Dep. 56:21–57:4. Prior to 1998 the public would not have been able to acquire public filings related to Form 211 applications on the internet. Cangiano Dep. 58:20–59:1. But Mr. Cangiano readily testified that "in those days" when he was examining firms for compliance with Rule 15c2-211 there was a "paperwork crisis" "in the industry," including "faulty recordkeeping" for the Rule. Cangiano Dep. 29:2–17, 46:11–20. Of course, the widespread availability of EDGAR presumably changed that situation, and the market conditions are hardly the same today as they were in 1998. In short, Mr. Cangiano is no expert in what the market looks like *now*.

---

*Information*, 64 Fed. Reg. 11124 (proposed Mar. 8, 1999) (1999 Proposed Rule); *see also Publ'n or Submission of Quotations Without Specified Info.*, 84 Fed. Reg. 58206 (proposed Oct. 30, 2019) (2019 Proposed Rule).

[8] "Scant and dated" experience is typically "a matter for cross-examination." *Hendrix*, 255 F.R.D. at 585 (not excluding outdated experience with plastics). But where, as here, the dated nature of the experience is equivalent to having no relevant experience at all, the witness's expertise is inadmissible. *See Cordoves*, 104 F. Supp. at 1358.

SEC may argue that, from 1986 until December 1998, Mr. Cangiano worked as the "Senior Vice President of Market Regulation for NASD"[9] and that experience is sufficient to allow him to testify. *See* Cangiano Report 3; Cangiano Dep. Ex. 227 (attached as Exhibit 4). However, this experience is also not sufficient to meet the admissibility standard because that role did not provide any experience that would qualify him as an expert in this case. During that time, Mr. Cangiano only oversaw field examinations, and out of the hundreds of such examinations he only supervised ten to twenty that involved compliance with Rule 15c2-11, but was unable to recall if he actually reviewed any applications submitted to NASD regarding Rule 15c2-11 compliance. *See* Cangiano Dep.53:1–11 (only oversaw field examinations but never conducted examinations), 52:6–54:3 (out of hundreds of examinations from 1986 to 1998 he maybe only supervised 10 to 20 examinations that involved compliance with Rule 15c2-11), 55:19–25 (states he "probably" would have reviewed an application submitted to NASD for compliance with Rule 15c2-11 but cannot recall).

His lack of relevant experience in this field shows in his discussion, testimony, and opinions related to the standard for compliance with Rule 15c2-11 in terms of SEC's non-binding guidance[10] and proposed rules. *See* Cangiano Report 1, 10-13, 16-23, 29-31 (discussing and applying SEC "red flags" as industry standard); *see also* Cangiano Dep. 130:8–11 (text of Rule 15c2-11 does not include term "red flag"); *but see* Cangiano Dep. 133:14–134:12 (suggesting that SEC "red flags" require

---

[9] From January 1999 until February 2001, Mr. Cangiano was "Senior Vice President, Regulatory Technology" for NASD and focused on "business support and development of NASD regulatory technology." Cangiano Dep. Ex. 227 (attached as Exhibit 4). This is also irrelevant experience that could hardly confer the mantel of "expert" on Mr. Cangiano.

[10] Guidance documents lack force of law and are non-binding. *See Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) ("[I]nterpretations contained in policy statements, agency manuals, and enforcement guidelines, all … lack the force of law[.]"); *Gen. Elec. Co. v. EPA*, 290 F.3d 377, 385 (D.C. Cir. 2002) (holding that a guidance document imposing binding requirements but not promulgated in compliance with the requirements of the APA must be vacated).

compliance by stating that "[i]t's a little more than guidance when the SEC says these are red flags and you better look at them…even though they are not chapter and verse verbatim rule."). After all, much of SEC's guidance on Rule 15c2-11 was promulgated *after* he left his position at NASD. *See Publ'n or Submission of Quotations Without Specified Information*, 64 Fed. Reg. 11145–53 (Mar. 8, 1999) (1999 Guidance).

Perhaps most glaringly, Mr. Cangiano never worked for the self-regulatory authority overseeing compliance with Rule 15c2-11 because it did not *exist* when he gained his experience. Mr. Cangiano never worked for FINRA, never reviewed any FINRA Form 211 applications, never submitted any FINRA Form 211 applications, never consulted with any issuer applying for FINRA clearance, nor testified as an expert in FINRA's Form 211 process. Cangiano Dep. 33:12–14 (never worked for FINRA), 66:2–5 (never submitted Form 211 application), 68:7–10 (never reviewed a FINRA Form 211), 72:17–25 (testifying expert but not involving Form 211 application process), 77:1–9 (same), 77:17–78:6 (same), 82:25–83:19 (same), 80:20–81:25 (same, but in a FINRA arbitration hearing), 84:3–8 ("Q Now, Mr. Cangiano, you have never been accepted as an expert witness related to Form 211 application process, have you? A I have not. Specifically 211? No."). Therefore, Mr. Cangiano has no relevant experience regarding how *FINRA* conducts its Form 211 application review process, or what *FINRA* examiners look for or consider important in reviewing and clearing Form 211 applications.[11]

---

[11] Indeed, the best evidence for what FINRA and its examiners consider important can and has been gathered from several of the actual FINRA examiners who reviewed some of the Form 211 applications related to issuers that form the basis of the SEC's allegations. In addition to being irrelevant because he lacks the requisite experience, Mr. Cangiano's Report, testimony, and opinions provide nothing that the FINRA examiners themselves—who reviewed the applications at issue—could testify to.

12

Mr. Cangiano's generalized managerial experience at a predecessor organization, operating under a different version of Rule 15c2-11 than is at issue here, and coupled with his misunderstanding of what the law actually requires, is not the kind of experience that can qualify a witness as an expert. *See Pleasant Valley Biofuels*, 2014 WL 2855062, at *4 (generalized industry experience is not enough to qualify as an expert); *see also Daubert*, 509 U.S. at 597 (testimony must be "relevant to the task at hand"); *Cordoves*, 104 F. Supp. 3d at 1358 (experience must be "relevant"). Because he is unqualified to provide an opinion on these fields, portions of the Cangiano Report, as well as the testimony he intends to proffer at trial should be excluded. *See, e.g.*, Cangiano Report 1, 10–13, 16–23, 29–31.

## II.    MR. CANGIANO'S TESTIMONY IS NOT RELIABLE

Assuming this Court finds that Mr. Cangiano is minimally qualified to proffer testimony and opinions in this case—it should not—his testimony should be excluded because it is not reliable.

"[T]hat an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable *any* conceivable opinion the expert may express." *Frazier*, 387 F.3d at 1261 (emphasis in original). This is because an expert's qualifications do not guarantee the reliability of his testimony, and "the *reliability* criterion remains a discrete, independent, and important requirement for admissibility." *Id.* (emphasis in original); *see also Hendrix*, 255 F.R.D. at 606 (there may be cases where there is a "clear 'overlap' between an expert's qualifications and the reliability of his testimony").

Thus, under the second consideration—reliability—the expert "'must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1261 (quoting Advisory Committee Notes to the 2000 Amendment to Rule 702) (emphasis in original). In fulfilling its gatekeeping function, it is not enough for a trial court to simply "'tak[e] the expert's word for it'"

because "[i]f admissibility could be established by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." *Id.* (internal citations omitted); *see also Joiner*, 522 U.S. at 146 ("But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *Hughes v. Kia Motors Corp.*, No. 1:11-CV-02733-JOF, 2013 WL 12099352, at *4 (N.D. Ga. Jan. 29, 2013) (excluding *ipse dixit* expert testimony), *aff'd*, 766 F.3d 1317 (11th Cir. 2014).

Whether "non-scientific, experience-based testimony" is reliable is determined under "[t]he same criteria… to assess the reliability of a scientific opinion." *Frazier*, 387 F.3d at 1262 (citing *Kumho Tire*, 526 U.S. at 152). To the extent practicable, the trial court should evaluate the reliability of an expert's opinion by considering several non-exhaustive factors:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Frazier*, 387 F.3d at 1262 (quoting *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340–41 (11th Cir. 2003)) (additional citations omitted). Where, as here, the SEC's purported expert is seeking to provide non-scientific, experience-based testimony the *Frazier/Daubert* factors may aid the reliability determination, but "other questions may be more useful." *Id.* The burden of "explain[ing] how [an expert's] experience led to the conclusion he reached, why that experience was a sufficient basis for the opinion, and just how that experience was reliably applied to the facts of the case" remains on the party offering the testimony. *Id.* at 1265.

This is one of those cases where there is clear overlap between Mr. Cangiano's qualifications and the reliability of his testimony. *See Hendrix*, 255 F.R.D. at 606. As discussed above, Mr. Cangiano

14

is unqualified to offer any opinions in this case. Thus, he cannot explain *how* the experience he does not have, leads to the conclusions and opinions he somehow makes. *See Frazier*, 387 F.3d at 1261. He also cannot identify how his experience is a sufficient basis for his opinions because it is not. *See id.* Nor can he explain how he applied the experience he does not have reliably to the facts. *See id.*

It is no surprise then that Mr. Cangiano's Report, opinions, and testimony often revert to his *ipse dixit* and speculation, because they cannot be based on his nonexistent relevant experience. *See Joiner*, 522 U.S. at 146; *Daubert*, 509 U.S. at 590 (In Rule 702, "the word 'knowledge' connotes more than subjective belief or unsupported speculation."). Such unreliable statements should be excluded. *See Rink*, 400 F.3d at 1291 (court's gatekeeping function "ensure[s] that speculative, unreliable expert testimony does not reach the jury" (citation omitted)).

Much of Mr. Cangiano's Report, opinion, and testimony is *ipse dixit* and effectively boils down to: (1) I am an expert because I spent many years as a regulator, (2) as an expert, the industry standard is whatever the SEC (or other regulatory entities) thinks it can investigate and enforce under its rules, proposed rules, and guidance, and (3) the defendants did not follow this industry standard. There is no analysis about how or why SEC's proposed rules or non-binding guidance—which are not the law—can form an industry standard that effectively binds the industry for fear of SEC enforcement. *See* Cangiano Dep. 133:14–134:12 (suggesting that SEC "red flags" require compliance by stating that "[i]t's a little more than guidance when the SEC says these are red flags and you better look at them…even though they are not chapter and verse verbatim rule."). This is not a reliable opinion. At best, it is merely SEC's enforcement objectives disguised as an expert opinion. Either way such *ipse dixit* should be excluded.

Likewise, Mr. Cangiano offers unreliable speculative statements and opinions that are based on nothing more than conjecture. *See, e.g.*, Cangiano Report 16 (relying on the speculative testimony

15

of a non-party). For example, in his conclusion, he speculates, but provides no evidence, that the defendants' actions put the investing public at risk *if* the sales of the companies resulted in indeterminate future schemes. *See* Cangiano Report 1, 8, 29–31. Of course, there is no suggestion, much less evidence, that such actions occurred or will occur. Such speculative testimony should be excluded.

III.   **MR. CANGIANO'S TESTIMONY IS NOT HELPFUL TO THE TRIER OF FACT**

Even if a court determines that an expert is qualified to testify and that his opinion is reliable, the court still must then consider whether the expert's opinion is helpful. *Hendrix*, 255 F.R.D. at 579. Under this third consideration—helpfulness—a court must exclude expert testimony if it does not "assist[] the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Rink*, 400 F.3d at 1292 (citation omitted). Unhelpful expert testimony should be excluded because "there is a risk the trier of fact will give the expert testimony undue weight on account of its special status." *Hendrix*, 255 F.R.D. at 579 (citing *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1111 (11th Cir. 2005)).

A.   **Mr. Cangiano's Testimony and Opinions Are Unhelpful Because the Trier of Fact Is Capable of Determining Issues in the Case Without the Assistance of His Testimony or Opinions**

While this case may look facially complicated, it is not. An average lay person is fully capable of understanding the facts and circumstances necessary to make a determination in this case, *i.e.*, that some of the defendants were under an obligation to gather and retain certain information from issuers that they then provided to FINRA in relation to Form 211 applications, and that for some issuers, after receiving appropriate documents and requests regarding those issuers, some defendants conducted ministerial tasks to complete the transfer of shares for shareholders of those issuers.

"Expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262. But "[w]hen the trier of fact is 'entirely capable of determining' issues in the case 'without any technical assistance from ... experts,' expert testimony is unhelpful and must be excluded from the evidence." *Hendrix*, 255 F.R.D. at 579 (quoting *City of Tuscaloosa*, 158 F.3d at 565).

Nothing in Mr. Cangiano's Report, opinions, or testimony "concerns matters that are beyond the understanding of the average lay person" nor do they provide the sort of "technical assistance" necessary to be considered helpful because they do not apply "technical" or "specialized" expertise in such a way that they would assist the trier of fact in making any material determinations in this case. *See Frazier*, 387 F.3d at 1262; *Hendrix*, 255 F.R.D. at 579. As such, Mr. Cangiano's Report, opinions, and testimony should be excluded because they are unhelpful.

### B.   Mr. Cangiano's Testimony and Opinions Will Not Help the Trier of Fact Because They Offer Nothing More than What SEC's Lawyers Can Argue in Closing Argument

As noted above, the "industry standards" Mr. Cangiano purports to apply stem from either proposed SEC rules or non-binding SEC guidance, both of which the SEC now seeks to enforce against the defendants with the aid of Mr. Cangiano's Report, opinions, and testimony. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262–63 (citing *Weinstein's Federal Evidence* § 702.03[2] [a]); *see also Cook*, 402 F.3d at 1111; *Salinero v. Johnson & Johnson*, No. 1:18-CV-23643-UU, 2019 WL 7753453, at *18 (S.D. Fla. Sept. 5, 2019) ("[P]arroting documents or other testimony does nothing to assist the trier of fact." (citing *Frazier*, 387 F.3d at 1262–63)), *reh'g denied*, No. 1:18-CV-23643-UU, 2019 WL 7753439 (S.D. Fla. Oct. 25, 2019).

Parroting documents and other testimony, Mr. Cangiano's Report, opinions, and testimony is the exact type of analysis that SEC can and is likely to make in its closing arguments. Mr. Cangiano offers no unique analysis or argument that SEC cannot provide the trier of fact on its own. To be sure, having Mr. Cangiano say "the SEC is correct" makes SEC's burden of persuasion easier, but also highlights the problem with permitting his testimony—it runs the risk that the jury will give his "testimony undue weight on account of its special status." *Hendrix*, 255 F.R.D. at 579 (citation omitted). This is especially problematic, where, as here, his opinions operate as a mechanism to convert non-binding guidance and proposed rules into purportedly binding legal standards.[12] Because Mr. Cangiano's Report, opinions, and testimony offer nothing more than what SEC's lawyers can argue, they should be excluded. *See, e.g.*, Cangiano Report 29–31 (and analysis in support thereof).

### C.   Insofar as Mr. Cangiano's Testimony and Opinions Constitute Legal Opinions, His Testimony and Opinions Are Not Helpful to the Trier of Fact

Portions of Mr. Cangiano's Report, opinions, and testimony are impermissible legal opinions and they should be excluded. Similarly, an expert's legal opinion in not helpful and should be excluded. While Rule 704(a) permits an expert in civil cases to offer an opinion that "embraces an ultimate issue," he "'may not testify to the legal implications of conduct'" or 'tell the jury what result to reach.'" *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1128 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 225 (2018); *see also Montgomery v. Aetna Casualty & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir. 2014) ("[T]he

---

[12] One practical impact of this is that it allows SEC to make law through enforcement actions that it cannot through regular rulemaking processes. *See, e.g.*, *Promoting the Rule of Law Through Transparency and Fairness in Civil Administrative Enforcement and Adjudication*, Exec. Order No. 13892 § 3, 84 Fed. Reg. 55239 (Oct. 9, 2019) ("Guidance documents may not be used to impose new standards of conduct on persons outside the executive branch except as expressly authorized by law or as expressly incorporated into a contract. When an agency takes an administrative enforcement action, engages in adjudication, or otherwise makes a determination that has legal consequence for a person, it must establish a violation of law by applying statutes or regulations."). Defendants intend to fully brief this issue in their Motion for Summary Judgment which is due on August 21, 2020.

court must be the jury's only source of law."). That is because "questions of law are not subject to expert testimony." *Commodores Entm't Corp.*, 879 F.3d. at 1128–29. "The existence…of a causal connection between any damages and the defendant's conduct, are quintessentially ultimate issues to be decided by the jury." *FNB Bank v. Park Nat. Corp.*, 996 F. Supp. 2d 1187, 1191 (S.D. Ala. 2014). And "the district court must take 'adequate steps to protect against the danger that [an] expert's opinion would be accepted as a legal conclusion.'" *Commodores Entm't Corp.*, 879 F.3d. at 1129 (quoting *United States v. Herring*, 955 F.2d 703, 709 (11th Cir. 1992)).

Several of Mr. Cangiano's opinions constitute legal conclusions that should be excluded. For example, he states his "opinion" that "[t]he defendants were a critical and necessary part of the alleged fraud" and that the defendants were "a 'link in the chain'" of potentially manipulative schemes. Cangiano Report 1, 13, 15, 29. But, these supposedly expert opinions are in fact legal conclusions that the defendants' actions had a causal connection to other potentially manipulative schemes in violation of the securities laws. *Cf. FNB Bank*, 996 F. Supp. 2d at 1191. Likewise, Mr. Cangiano's "opinion" about the industry standards defendants should have followed is also a legal conclusion. As discussed above, Mr. Cangiano relies on SEC's non-binding guidance and proposed rules to form his "industry standard" and his opinions operate as a mechanism to convert non-binding guidance and proposed rules into purportedly binding legal standards. Indeed, Mr. Cangiano provided opinions about a transfer agent's legal obligations to review the validity of documents sent to it, even though he also agreed such an obligation was not set out in any "defined rule or statute." Cangiano Dep. 201:10–25; 203:17–204:4, 223:12–224:22, 225:21–25, 226:9–12. It is the court's responsibility to say what the law is, not an expert witness couching a legal conclusion as his own opinion. *See Montgomery*, 898 F.2d at 1541. The determination of whether defendants are liable under law is for the trier of fact to decide.

19

## CONCLUSION

Mr. Cangiano is not qualified to testify in this matter. Defendants' position is not that Mr. Cangiano is not a qualified expert witness in something, but that he is simply not a qualified expert witness in relation to the material facts and circumstances of this case. He lacks any experience that would provide him sufficient understanding of the rules regulating broker-dealers and transfer agents and the way those industries operate involving the discrete time period at issue in this case. Further, even if Mr. Cangiano were qualified—he is not—his Report, opinions, and testimony are unreliable and will not help the trier of fact. Mr. Cangiano's Report, testimony, and opinions should be excluded, in whole or in part, under Rule 702 and *Daubert*.

Dated: August 14, 2020                              Respectfully Submitted,

*/s/ Kara Rollins*
Kara Rollins
Litigation Counsel
Caleb Kruckenberg
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. N.W., Suite 450
Washington, D.C., 20036
Kara.Rollins@ncla.legal
(202) 908-6203
Counsel for Defendants
Appearing *Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 14, 2020, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system which sent notification of such filing to all counsel of record.

Respectfully,

<u>/s/ Kara Rollins</u>
Kara Rollins
Litigation Counsel
Caleb Kruckenberg
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. N.W., Suite 450
Washington, D.C., 20036
Kara.Rollins@ncla.legal
(202) 908-6203
Counsel for Defendants
Appearing *Pro Hac Vice*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(G)</u>

On August 13, 2020 Defendants' counsel conferred with counsel for Plaintiff. Plaintiff indicated that it is opposed to this motion.

Respectfully,

<u>/s/ Kara Rollins</u>
Kara Rollins
Litigation Counsel
Caleb Kruckenberg
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. N.W., Suite 450
Washington, D.C., 20036
Kara.Rollins@ncla.legal
(202) 908-6203
Counsel for Defendants
Appearing *Pro Hac Vice*
