UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES SECURITIES
& EXCHANGE COMMISSION,

    Plaintiff,

v.                  Case No. 8:19-cv-448-T-33CPT

SPARTAN SECURITIES GROUP, LTD,
ISLAND CAPITAL MANAGEMENT,
CARL DILLEY, MICAH ELDRED,
and DAVID LOPEZ,

    Defendants.
_____/

**ORDER**

    Before this Court is Plaintiff Securities and Exchange Commission's Motion to Exclude the Testimony of Defendant Island Capital Management LLC's Proposed Expert Mark A. Harmon (Doc. # 100), filed on August 14, 2020. Defendants Carl E. Dilley, Micah J. Eldred, Island Capital Management, David D. Lopez, and Spartan Securities Group, LTD responded in opposition on September 14, 2020. (Doc. # 112). The Securities and Exchange Commission filed a reply in further support of its Motion on September 28, 2020. (Doc. # 116). The Motion is granted in part as set forth below.

**I.   Background**

    The Securities and Exchange Commission (SEC) initiated this action on February 20, 2019, against Spartan Securities,

Island Capital, Dilley, Eldred, and Lopez (collectively, "Defendants"). (Doc. # 1).

Spartan Securities — a broker-dealer — and Island Capital — a transfer agent that does business as Island Stock Transfer — are allegedly a one-stop shop to issuers of microcap securities.[1] (Id. at ¶¶ 2, 13-17). At all relevant times, Dilley, Eldred, and Lopez were principals of Spartan Securities. (Id.). Additionally, Island Capital's president was Dilley, its CEO was Eldred, and its chief compliance officer was Lopez. (Id.). Lopez also served as Spartan Securities' chief compliance officer. (Id.).

In the complaint, the SEC accuses Defendants of engaging in two separate microcap fraud schemes and creating nineteen undisclosed blank check companies[2] in violation of the Securities Act of 1933 (Securities Act) and the Securities Exchange Act of 1934 (Exchange Act). (Id. at ¶ 3). Specifically, the SEC alleges that: (i) Spartan Securities violated Section 15(c)(2) and Rule 15c2-11 of the Exchange

---

[1] Microcap securities have low share prices, scarce analyst coverage, and are traded over the counter rather than on a national exchange. These securities are regulated by the Financial Industry Regulatory Authority (FINRA) and certain steps must be taken before they can be sold publicly. Specifically, before a broker-dealer can publicly quote the price of and make a market for a microcap security, the broker-dealer must satisfy Rule 15c2-11 of the Securities Exchange Act of 1934, which requires a Form 211 application be submitted to FINRA. (Doc. # 1 at ¶ 7).

[2] A blank check company is a company that either has no specific business plan or purpose or has indicated its business plan is to engage in a merger. 17 C.F.R. § 230.419(a)(2).

Act (Count 1), and Dilley, Eldred, and Lopez aided and abetted those violations (Count 2); (ii) Spartan Securities, Island Capital, Dilley, and Eldred violated — and aided and abetted violations of — Section 17(a) of the Securities Act (Counts 3-4, 8-10); (iii) Spartan Securities, Island Capital, Dilley, and Eldred violated — and aided and abetted violations of — Section 10(b) and Rule 10b-5 of the Exchange Act (Counts 5-7, 11-13); and (iv) Spartan Securities, Island Capital, and Dilley violated Sections 5(a) and 5(c) of the Securities Act (Count 14).

During discovery, Island Capital retained Mark A. Harmon to provide an opinion as to whether

> [Island Capital] acted reasonably and generally in accordance with accepted practices and procedures of transfer agents and in fulfillment of its legal obligations, pursuant to UCC 8-401 and 17 C.F.R. § 240.17Ad-2, in connection with its issuance of shares and registration of transfer of shares in response to requests made to it by or on behalf of the issuers and registered shareholders of those shares.

(Doc. # 100-1 at 1).

In his expert report, Mr. Harmon concludes:

> It is my opinion to a reasonable degree of certainty, on the basis of and consistent with my experience over the course of 30 years advising transfer agents and issuers in connection with stock transfer transactions, Uniform Commercial Code Article 8 issues, and compliance with federal securities laws, rules and regulations, that [Island Capital] acted in accordance with generally

> accepted practices and procedures of transfer
> agents and in fulfillment of its legal obligations,
> pursuant to UCC 8-401 and 17 C.F.R. § 240.17Ad-2,
> in connection with the issuance and transfer of
> securities in response to requests made in good
> order.

(Id. at 6).

Now, the SEC moves to exclude Mr. Harmon's expert testimony. (Doc. # 100). The SEC argues that Mr. Harmon's testimony should be excluded because (1) he improperly opines on which laws should govern this case and whether Island Capital complied with those laws; (2) he did not consider relevant facts; (3) his opinions will confuse the jury; and (4) he is unqualified to proffer an opinion. (Id.). Defendants responded in opposition on September 14, 2020. (Doc. # 112). The SEC replied on September 28, 2020. (Doc. # 116). The Motion is ripe for review.

II.  **Discussion**

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by
> knowledge, skill, experience, training, or
> education may testify in the form of an opinion or
> otherwise if: (a) the expert's scientific,
> technical, or other specialized knowledge will help
> the trier of fact to understand the evidence or to
> determine a fact in issue; (b) the testimony is
> based on sufficient facts or data; (c) the
> testimony is the product of reliable principles and
> methods; and (d) the expert has reliably applied
> the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Implementing Rule 702, <u>Daubert v. Merrell Dow Pharms.,</u> <u>Inc.</u>, 509 U.S. 579 (1993), requires district courts to ensure that any and all scientific testimony or evidence admitted is both relevant and reliable. <u>See</u> <u>Id.</u> at 589–90. The <u>Daubert</u> analysis also applies to non-scientific expert testimony. <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 147 (1999). District courts must conduct this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" <u>Rink v.</u> <u>Cheminova, Inc.</u>, 400 F.3d 1286, 1291 (11th Cir. 2005).

The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'" <u>Hendrix v. Evenflo Co.</u>, 609 F.3d 1183, 1194 (11th Cir. 2010). The district court must assess whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in <u>Daubert</u>; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

<u>Id.</u> The proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the

testimony satisfies each of these requirements. Id. The Court will address each aspect of the three-part inquiry below.

### 1.   **Qualifications**

The first question under Daubert is whether the proposed expert witness is qualified to testify competently regarding the matters he intends to address. City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 563 (11th Cir. 1998). An expert may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" Clena Invs., Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 661 (S.D. Fla. 2012) (quoting Jack v. Glaxo Wellcome, Inc., 239 F. Supp. 2d 1308, 1314-16 (N.D. Ga. 2002)).

"This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." Id. (citations and internal quotation marks omitted). The Court is mindful that its "gatekeeper role under Daubert 'is not intended to supplant the adversary system or the role of the jury.'" Maiz v. Virani, 253 F.3d 641, 666

(11th Cir. 2001) (quoting Allison v. McGhan, 184 F.3d 1300, 1311 (11th Cir. 1999)).

The SEC argues that Mr. Harmon is not qualified to offer an opinion in this case because he is a business litigator who lacks any "specialized training" and only spends approximately 40% of his day working for transfer clients. (Doc. # 100 at 16). The SEC stresses that Harmon has never served as a regulator or in an oversight role, never worked in the financial or securities industry, and never published articles in any academic journals. (Id.). Furthermore, the SEC argues that this case includes "significant overlap of broker-dealer activities" and that a broker-dealer's conduct is the "gravamen" of the instant offense, yet Harmon admits he is unfamiliar with broker-dealer obligations and does not represent broker-dealers. (Id.).

Defendants respond that Mr. Harmon has been involved with and worked for transfer agents for over thirty years, "helping them to understand and navigate state and federal regulations affecting their industry and how those regulations changed over time." (Doc. # 112 at 11). Mr. Harmon is also a member of the Securities Transfer Association — a trade association serving the transfer agent industry — and serves on its legal committee. (Id. at 10).

The Court agrees with Defendants that Mr. Harmon is qualified to opine on the "generally accepted standards, practices, and procedures of the transfer agent industry." (Id. at 11). Mr. Harmon's thirty years of experience working with transfer agents in the regulatory field are enough to satisfy the "minimally qualified" standard under Daubert. See Carithers v. Mid-Continent Cas. Co., No. 3:16-cv-988-J-32MCR, 2019 WL 3206921, at *5 (M.D. Fla. July 16, 2019) (finding that an insurance lawyer who had spent twenty-five years providing legal advice to insurance companies was qualified to opine whether an insurer's actions complied with "industry standards and customs, as well as general information about the insurance industry").

The Court recognizes the SEC's concerns on the limits of Mr. Harmon's experience (Doc. # 100 at 16), and notes that Mr. Harmon, by his own admission, does not represent broker-dealers. (Doc. # 100-2 at 10). Therefore, Defendants have not shown Mr. Harmon to be qualified to opine on broker-dealer norms, or on the generally accepted industry practices of individuals who simultaneously own broker-dealer and transfer agent companies. But the fact that Mr. Harmon is unfamiliar with broker-dealers does not disqualify him from opining on the generally accepted industry practices of transfer agents.

To the extent the SEC disagrees with Mr. Harmon's qualifications on this topic, cross-examination will provide a sufficient opportunity to challenge Mr. Harmon's credibility and familiarity with transfer agents. <u>See</u> <u>Daubert</u>, 509 U.S. at 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

### 2.   <u>Reliability</u>

The SEC also contests the reliability of Mr. Harmon's testimony, arguing he ignored "relevant facts." Federal Rule of Evidence 702(b) requires an expert's testimony to be based on "sufficient facts or data." Fed. R. Evid. 702(b). Furthermore, experts relying on experience must explain "<u>how</u> that experience is reliably applied to the facts.'" <u>Frazier</u>, 387 F.3d at 1261 (citations omitted).

When an expert testimony's factual basis is called into question, "the Court's inquiry focuses not on whether the expert is correct, but whether the proponent of expert testimony has established by a preponderance of the evidence that the testimony is reliable in the context of the methodologies or techniques applied within the appropriate field." <u>In re Polypropylene Carpet Antitrust Litig.</u>, 93 F.

Supp. 2d 1348, 1352–53 (N.D. Ga. 2000). Therefore, it is not the role of the Court to determine whether Mr. Harmon came to the correct conclusion, only whether Defendants have established his testimony to be reliable.

The SEC argues that Mr. Harmon's opinion lacks an adequate factual basis because he "ignored any allegations of fraudulent conduct in this case, making his opinions useless, confusing, and unreliable." (Doc. # 100 at 12). According to the SEC, Mr. Harmon "assumed that the documents that were produced to [Island Capital] were authentic," without taking into account "considerable evidence related to [] Defendants' knowledge [of fraud]." (Id. at 12-13).

Defendants respond that Mr. Harmon is "thoroughly familiar with the regulatory requirements necessary to effectuate a transfer, including the required documents." (Doc. # 112 at 13). To form his opinion, he examined all issuance documents, transfer request documents, and attestation forms he deemed relevant based on his "knowledge and experience related to the requirements of the UCC and generally accepted practices and procedures in the transfer agency industry." (Id. at 15-16).

The Court agrees with Defendants that Mr. Harmon's list of reviewed documents establishes an adequate factual basis

for his opinion. Mr. Harmon methodically explains the industry practices underlying his analysis, describing how the transfer forms he examined included "proper presentments," such as "medallion signature guarantees" indicating the shares "were not all made by the same guarantor and were from recognized institutions". (Id. at 15). Mr. Harmon adequately shows how, based on his experience in the transfer agent field, these presentments led him to believe that "[Island Capital] acted in accordance with generally accepted practices and procedures of transfer agents." (Doc. # 100-1 at 3).

Additionally, as Defendants explain, the SEC's cited case law is distinguishable from the present situation. (Doc. # 112 at 17). In both cases cited by the SEC, the district courts identified relevant material the expert failed to examine in forming his opinion. USA v. Rushing, 388 F.3d 1153, 1156-57 (8th Cir. 2004) (Hepatitis B expert formed his opinion without data on the relevant person's level of infectiousness, failed to take into account scientific research on female-to-male transmission rates and the differences in disease progression between men and women, and operated on assumptions contrary to established facts in the case); USA v. Masferrer, 367 F. Supp. 2d 1365 (S.D. Fla. 2005)

(transactions expert failed to take into account the fundamentals of the disputed loans or borrowers, whether the loans were repaid, whether reserves were required on the loans, whether any payments were affected by a moratorium, or the relevant bank's portfolio). Here, in contrast, Defendants argue that Mr. Harmon did not overlook any relevant documents because he examined all the transfer documents "that an agent like [Island Capital] would be expected to consult prior to recording a transfer." (Doc. # 112 at 17).

The Court agrees. Mr. Harmon's opinion focuses on general industry practices, and how transfer agents make decisions. The Court is satisfied that an expert with thirty years of experience could form such an opinion after looking at said forms and consulting all documents a transfer agent would usually consult.

To the extent the SEC argues that Mr. Harmon's opinion is incomplete or biased, cross-examination will provide ample opportunity to highlight any alleged inadequacies. See Hurst v. United States, 882 F.2d 306, 311 (8th Cir. 1989) ("Any weaknesses in the factual underpinnings of [the expert's] opinion go to the weight and credibility of his testimony, not to its admissibility.").

3. <u>**Assistance to Trier of Fact**</u>

Expert testimony must also assist the trier of fact. Fed. R. Evid. 702. "[T]he court must 'ensure that the proposed expert testimony is "relevant to the task at hand," . . . i.e., that it logically advances a material aspect of the proposing party's case.'" <u>Allison</u>, 184 F.3d at 1312 (citation omitted). So, while "[t]he 'basic standard of relevance . . . is a liberal one,'. . .[,] if an expert opinion does not have a 'valid scientific connection to the pertinent inquiry[,]' it should be excluded because there is no 'fit.'" <u>Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.</u>, 582 F.3d 1227, 1232 (11th Cir. 2009) (citations omitted).

Furthermore, testimony is not helpful if it "merely tell[s] the jury what result to reach." <u>Montgomery v. Aetna Cas. & Sur. Co.</u>, 898 F.2d 1537, 1541 (11th Cir. 1990). "An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). But "testifying experts may not offer legal conclusions." <u>Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.</u>, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005). Only the Court may instruct the jury on relevant legal standards. <u>See</u> <u>Hibbett Patient Care, LLC v. Pharmacists Mut. Ins. Co.</u>, No. CV 16-0231-WS-C, 2017 WL 2062955, at *2 (S.D. Ala. May 12, 2017) ("After all,

'[e]ach courtroom comes equipped with a "legal expert," called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards.'" (internal citations omitted)). Lastly, "where an expert opinion has a tendency to confuse the trier of fact, it may not satisfy the helpfulness prong." Clena Investments, 280 F.R.D. at 664 (citing Frazier, 387 F.3d at 1258).

The SEC argues that Mr. Harmon's testimony should be excluded because he improperly opines on which law should govern Island Capital's conduct and whether Island Capital complied with those laws. (Doc. # 100 at 7).

Defendants respond that Mr. Harmon's testimony only provides background and

> seeks to clarify and explain the generally accepted practices and procedures of transfer agents, including the regulatory and legal considerations transfer agents – including [Island Capital] – must make when recording others' sale or transfers of securities.

(Doc. # 112 at 19-20). Defendants continue that the ultimate issue in the case is whether Island Capital

> effectuated both the bulk issuance and transfer of the Mirman/Rose Company securities without restriction despite knowing (or recklessly not knowing in the presence of numerous red flags) that the securities were in the hands of affiliates and therefore restricted.

(<u>Id.</u>). Therefore, according to Defendants, Mr. Harmon's testimony does not constitute a legal opinion because it does not tell the jury what results to reach as to that particular question. (<u>Id.</u>).

The Court disagrees and finds that several of Mr. Harmon's statements are improper legal opinions. First, Mr. Harmon states:

> [Island Capital] **did not have any basis for refusing to issue these Shares** which had been approved for issuance by the Commission and were accompanied by documents authorizing and substantiating the issuance. Thus, [Island Capital] **acted reasonably** in issuing the Shares as free-trading.

(Doc. # 100-1 at 4) (emphasis added). This is a legal opinion for two reasons. First, whether Island Capital had a basis for its actions, and whether it acted reasonably, are two of the very issues a jury will decide should this case go to trial. <u>See</u> <u>Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp., N.V.</u>, 14 F. Supp. 2d 391, 404 (S.D.N.Y. 1998) ("Whether a party acted with objective reasonableness is a quintessential common law jury question."). By concluding that Island Capital complied with all relevant regulatory and statutory schemes, and thus acted "reasonably," Mr. Harmon "merely tell[s] the jury what result to reach" in the case.

Montgomery, 898 F.2d at 1541. Such testimony is not helpful to the trier of fact. Id.

Second, while it is "often difficult to determine whether a legal conclusion is implicated in [expert] testimony," courts have held that the "best resolution of this type of problem is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." Torres v. Cty. of Oakland, 758 F.2d 147, 150 (6th Cir. 1985). If they do, exclusion is appropriate. Id.

Accordingly, courts have excluded expert testimony that opined on whether a defendant was "at fault," Higgs v. Costa Crociere S.p.A. Co., No. 15-60280-CIV, 2016 WL 4370012, at *7 (S.D. Fla. Jan. 12, 2016), whether conduct was "unlawful," United States v. Baskes, 649 F.2d 471, 478 (7th Cir. 1980) (excluding expert testimony that conduct was "unlawful" because "terms that demand an understanding of the nature and scope of the criminal law" may be properly excluded), whether a defendant was the "cause" of an accident, Owen v. Kerr-McGee Corp., 698 F.2d 236, 239-40 (5th Cir. 1983) (trial court properly excluded testimony on "cause" of the accident when there was no dispute as to the factual "cause" of the accident but only the legal "cause" of the accident), whether a

16

defendant had a "fiduciary" relationship to the plaintiff, Christiansen v. National Savings and Trust Co., 683 F.2d 520, 529 (D.C. Cir. 1982), whether a railroad crossing was "extra hazardous," Stoler v. Penn Cent. Transp. Co., 583 F.2d 896, 898-99 (6th Cir. 1978), and whether a warning was "inadequate" and that the product was therefore "unreasonably dangerous", Strong v. E.I. DuPont de Nemours Co., 667 F.2d 682, 685-86 (8th Cir. 1981).

Here, exclusion is likewise proper because "reasonably" has a "specialized meaning in the law and in lay use the term has a distinctly less precise meaning." Torres, 758 F.2d 147 at 150-51 (excluding testimony that the plaintiff had been "discriminated against" because the term "discrimination" had a specialized meaning in the law). The term "reasonably" carries special legal weight and implies that Island Capital has met a specific legal standard. Cf. United States v. Hearst, 563 F.2d 1331, 1351 (9th Cir. 1977) (testimony is not objectionable as containing a legal conclusion where the "average layman would understand those terms and ascribe to them essentially the same meaning intended"). More importantly, it implies that "reasonableness" is the correct legal standard to apply in the first place. See Torres, 758 F.2d at 150 ("The problem with testimony containing a legal

17

conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury."). This "invade[s] the province of the court to determine the applicable law and to instruct the jury as to that law." Id. Accordingly, Mr. Harmon's statement that Island Capital acted "reasonably," and had "no basis" to refuse to register the shares, is excluded as an improper legal opinion.

Second, Mr. Harmon claims:

[t]ransfer agents do not have investigatory powers nor do the laws and regulations governing their conduct provide the framework for transfer agents to perform non-ministerial functions . . . To the contrary, **state laws and federal regulations restrict a transfer agent's ability to examine critically the facts and circumstances underlying facially acceptable supporting documentation.**

(Doc. # 100-1 at 4) (emphasis added). He also states:

Each of the Requests to [Island Capital] was made by an appropriate person, whose indorsement or instruction was genuine according to a medallion signature guarantee, which transfer agents are **obligated to accept** as reasonable assurance that the indorsement or instruction provided is genuine and authorized.

(Id. at 5) (emphasis added). The SEC claims these are improper legal conclusions because they imply that Island Capital's "hands were tied, [and] it was prohibited from conducting due diligence." (Doc. # 100 at 9).

The Court agrees that Mr. Harmon's statement improperly interprets transfer agents' obligations and requirements under state and federal law. Expert witnesses "are prohibited from testifying as to questions of law regarding the interpretation of a statute, the meaning of terms in a statute, or the legality of conduct." Dahlgren v. Muldrow, No. 1:06-cv-00065-MP-AK, 2008 WL 186641, at *5 (N.D. Fla. Jan. 18, 2008). Instead, "[t]he determination of which law applies and what the law means is for the Court to decide." Id.

In other words, an entity's legal obligations under federal law are "a matter for instructions from the trial court and not properly a subject for testimony by an expert witness." See United States v. Gay, 576 F.2d 1134, 1137 (5th Cir. 1978) (finding that an expert's testimony concerning the legal requirements under a tax statute should have been excluded); Jones v. Midland Funding, LLC, 616 F. Supp. 2d 224, 227 (D. Conn. 2009) ("[A]n expert should not be permitted to express an opinion that is merely an interpretation of federal statutes or regulations, as that is the sole province of the Court."). Therefore, Mr. Harmon may not opine on Island Capital's legal requirements or obligations under federal and state securities law.

Lastly, in his overall conclusion, Mr. Harmon states:

> [Island Capital] acted in accordance with generally accepted practices and procedures of transfer agents and **in fulfillment of its legal obligations, pursuant to UCC 8-401 and 17 C.F.R. § 240.17Ad-2,** in connection with the issuance and transfer of securities in response to requests made in good order.

(Doc. # 100-1 at 6) (emphasis added). True, this statement does not tell the jury how to rule on the ultimate issue of whether Island Capital effectuated unrestricted transfers. But it operates as a legal conclusion that Island Capital complied with other federal laws. An expert "may not testify to the legal implications of conduct; the court must be the jury's only source of law." Montgomery, 898 F.2d at 1541. Therefore, Mr. Harmon may not testify whether Island Capital fulfilled its legal obligations under the UCC or 17 C.F.R. § 240.17Ad-2.

In sum, Mr. Harmon may not opine on the reasonableness of Island Capital's conduct, Island Capital's legal obligations under federal law, or Island Capital's compliance with federal law. Notwithstanding these exclusions, Mr. Harmon may provide testimony on the generally accepted industry practices and procedures surrounding transfer agents. Marx & Co. v. Diners' Club Inc., 550 F.2d 505, 509

(2d Cir. 1977) ("Testimony concerning the ordinary practices of those engaged in the securities business is admissible under the same theory as testimony concerning the ordinary practices of physicians or concerning other trade customs: to enable the jury to evaluate the conduct of the parties against the standards of ordinary practice in the industry."). Such testimony may include general background information on the relevant statutory and regulatory schemes. See R.W. v. Bd. of Regents of the Univ. Sys. of Georgia, 114 F. Supp. 3d 1260, 1278 (N.D. Ga. 2015) ("In discussing the decision-making process of student affairs professionals, Mr. Ebbeling is allowed to provide general background information on the [Americans with Disabilities Act], [Rehabilitation Act], and Department of Education Office of Civil Rights . . . standards applicable to colleges and universities.").

Furthermore, such testimony may also include the decision-making process transfer agents generally follow, and the kind of regulatory and legal considerations transfer agents usually take into account when evaluating transfers. See R.W., 114 F. Supp. 3d at 1278 (allowing testimony on the "sort of issues the student affairs profession must identify and address in ensuring their risk management policies are compliant with [Department of Education] standards"). Such

testimony will be helpful to a jury that is likely unfamiliar with transfer agents and securities laws.

Should Mr. Harmon's testimony approach a legal conclusion, such evidence can be excluded through proper objections at trial. But the Court will not prohibit Mr. Harmon from providing helpful testimony on the generally accepted industry practices of transfer agents. Nor will the Court prohibit Mr. Harmon from mentioning securities statutes and regulations to put that testimony in context.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Securities and Exchange Commission's Motion to Exclude the Testimony of Defendant Island Capital Management LLC's Proposed Expert Mark A. Harmon (Doc. # 100) is **GRANTED IN PART.**

(2)   Mr. Harmon may not opine on (a) whether Island Capital acted "reasonably," (b) Island Capital's legal obligations under securities laws, and (c) whether Island Capital acted in fulfillment of its legal obligations under federal and state securities laws.

(3)   Mr. Harmon may provide testimony on the generally accepted practices and procedures of transfer agents,

including the legal and regulatory factors transfer

agents usually make when deciding to register shares.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this

<u>30th</u> day of November, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE