UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES SECURITIES
& EXCHANGE COMMISSION,

    Plaintiff,

v.                          Case No. 8:19-cv-448-T-33CPT

SPARTAN SECURITIES GROUP, LTD,
ISLAND CAPITAL MANAGEMENT,
CARL DILLEY, MICAH ELDRED,
and DAVID LOPEZ,

    Defendants.
_____/

**ORDER**

Before this Court is Defendants Carl E. Dilley, Micah J. Eldred, Island Capital Management, David D. Lopez, and Spartan Securities Group, LTD's Motion to Exclude or Limit the Expert Testimony of Plaintiff Securities and Exchange Commission's Proposed Expert James M. Cangiano (Doc. # 101), filed on August 14, 2020. The Securities and Exchange Commission responded in opposition on September 14, 2020. (Doc. # 114). Defendants filed a reply on September 28, 2020. (Doc. # 118). The Motion is denied for the reasons set forth herein.

## I.   Background

The Securities and Exchange Commission (SEC) initiated this action against Spartan Securities, Island Capital,

1

Dilley, Eldred, and Lopez (collectively, "Defendants") on February 20, 2019. (Doc. # 1). Spartan Securities, a broker-dealer, and Island Capital, a transfer agent, are both owned by Connect X Capital Markets LLC, whose shareholders included Dilley, Eldred, and Lopez. (Id. at ¶¶ 13-17). Dilley, Eldred, and Lopez are also registered principals of Spartan Securities and high-ranking officers in Island Capital. (Id.). The SEC accuses Defendants of collectively perpetuating two separate microcap fraud schemes in violation of the Securities Act of 1933 (Securities Act) and the Securities Exchange Act of 1934 (Exchange Act). (Id. at ¶¶ 3, 11).

The SEC claims Defendants helped make public the shares of nineteen "blank check" or "shell" companies. (Id. at ¶¶ 3, 6). Defendants allegedly schemed to defraud the public by passing off these shell companies as legitimate small businesses with independent management and shareholders. (Id. at ¶ 4). In reality, the management and shareholders were mere nominees, who always intended to sell all the securities in bulk for their own private benefit. (Id.). Crucial to this scheme was the false designation of each company as "free-trading" with the ability to be sold immediately on the public market. (Id. at ¶¶ 3-4).

To obtain this designation, Spartan Securities allegedly filed false Form 211 applications with the Financial Industry Regulatory Authority (FINRA), by which the companies' shares became publicly quoted.[1] (Id. at ¶¶ 7-8). After obtaining Form 211 clearance, Spartan Securities and Island Capital prepared false applications with the Depository Trust Company (DTC) by which the securities became "DTC eligible" for electronic clearance, and thus more valuable. (Id. at ¶ 10). Lastly, Island Capital effectuated the bulk issuance and transfer of several of the securities without restriction, despite numerous "red flags" that the securities were in fact in the hands of affiliates and therefore restricted. (Id.).

The SEC claims in its complaint that by engaging in this conduct, (i) Spartan Securities violated Section 15(c)(2) and Rule 15c2-11 of the Exchange Act (Count 1), and Dilley, Eldred, and Lopez aided and abetted those violations (Count 2); (ii) Spartan Securities, Island Capital, Dilley, and Eldred violated — and aided and abetted violations of — Section 17(a) of the Securities Act (Counts 3-4, 8-10); (iii) Spartan Securities, Island Capital, Dilley, and Eldred

---

[1] Before microcap securities can be sold publicly, FINRA requires a broker-dealer to satisfy Rule 15c2-11 of the Exchange Act, which requires a Form 211 application be submitted to FINRA. (Doc. # 1 at ¶ 7).

violated — and aided and abetted violations of — Section 10(b) and Rule 10b-5 of the Exchange Act (Counts 5-7, 11-13); and (iv) Spartan Securities, Island Capital, and Dilley violated Sections 5(a) and 5(c) of the Securities Act (Count 14).

During discovery, the SEC retained James M. Cangiano as an expert witness. Mr. Cangiano has over forty years of experience in the microcap securities industry, both as a National Association of Securities Dealers (NASD) regulator and as a consultant. Based on this experience, the SEC asked Mr. Cangiano to provide an opinion on:

> [1] The characteristics of "shell factories" and how the companies that are sold are sometimes employed in schemes commonly referred to as "pump and dump" and other schemes;
> [2] whether red flags were present and whether those red flags would be easily recognized by industry professionals as they relate to compliance with SEC Rule 15c2-11 and other rules;
> [3] whether the defendants' activities carried out by [Island Capital] were customary practice in the transfer agent space and comporting with industry standards;
> [4] whether the defendants' actions were indicative of their essential participation in these activities, and;
> [5] the effect of the defendants' actions in the marketplace and on the investing public.

(Doc. # 101-3 at 3).

In his expert report, Mr. Cangiano concludes:

> [Spartan Securities] and [Island Capital] were "links in a chain" that permitted the shells to be sold thereby putting the investing public at risk if the outcome of the sale resulted in a pump and

4

> dump or other manipulative scheme. Market
> professionals rely on the integrity of published
> quotations in the marketplace and the industry's
> clearance and settlement systems could be
> compromised by virtue of the misrepresentations of
> the defendants and others.

(Id. at 30).

Now, Defendants move to exclude Mr. Cangiano's expert testimony. (Doc. # 101). Defendants argue that Mr. Cangiano's testimony should be excluded because (1) Mr. Cangiano is unqualified to testify in this case; (2) Mr. Cangiano's testimony is not reliable; and (3) Mr. Cangiano's testimony is not helpful to the trier of fact. (Id.). The SEC has responded (Doc. # 114), and Defendants replied. (Doc. # 118). The Motion is now ripe for review.

## II.   **Discussion**

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by
> knowledge, skill, experience, training, or
> education may testify in the form of an opinion or
> otherwise if: (a) the expert's scientific,
> technical, or other specialized knowledge will help
> the trier of fact to understand the evidence or to
> determine a fact in issue; (b) the testimony is
> based on sufficient facts or data; (c) the
> testimony is the product of reliable principles and
> methods; and (d) the expert has reliably applied
> the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Implementing Rule 702, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), requires district courts to ensure

that any and all scientific testimony or evidence admitted is both relevant and reliable. See Id. at 589-90. The Daubert analysis also applies to non-scientific expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). District courts must conduct this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005).

The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'" Hendrix v. Evenflo Co., 609 F.3d 1183, 1194 (11th Cir. 2010). The district court must assess whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. The proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each of these requirements. Id. The Court will address each aspect of the three-part inquiry below.

1.   **Qualifications**

The first question under Daubert is whether the proposed expert witness is qualified to testify competently regarding the matters he intends to address. City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 563 (11th Cir. 1998). An expert may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" Clena Invs., Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 661 (S.D. Fla. 2012) (quoting Jack v. Glaxo Wellcome, Inc., 239 F. Supp. 2d 1308, 1314–16 (N.D. Ga. 2002)).

"This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." Id. (citations and internal quotation marks omitted). The Court is mindful that its "gatekeeper role under Daubert 'is not intended to supplant the adversary system or the role of the jury.'" Maiz v. Virani, 253 F.3d 641, 666 (11th Cir. 2001) (quoting Allison v. McGhan, 184 F.3d 1300, 1311 (11th Cir. 1999)).

### i.   **Transfer agent experience**

Defendants first argue that Mr. Cangiano has "no expertise concerning transfer agents and has no basis to offer any opinions about transfer agent practice or liability." (Doc. # 101 at 10). Defendants point out that Mr. Cangiano has never worked for or with transfer agents and never been qualified as an expert regarding transfer agents for another case. (Id.). Furthermore, Defendants label Mr. Cangiano's regulatory experience at NASD as inapplicable because NASD does not regulate transfer agents. (Id.).

The SEC responds that Mr. Cangiano "need not have worked for a transfer agent to explain the transfer agent's overall role in the process and its ability to assist in the cleaning of the shell companies." (Doc. # 114 at 12-13). The SEC continues that Mr. Cangiano's time at NASD and as a consultant familiarized him with the transfer agents' overall role in the microcap market, thus qualifying him to opine on that subject. (Id. at 13).

The Court agrees with the SEC that Mr. Cangiano is qualified to testify on "the role of transfer agents and their function in bringing securities to market." (Id. at 12). Between his time at NASD as a regulator and his time as a consultant, Mr. Cangiano has spent over four decades working

in the Over the Counter (OTC) securities industry.[2] As NASD District Examiner in New York City, Mr. Cangiano was "personally involved in both 'investigatory and management of hundreds of fraud and manipulation cases.'" (Id. at 9). As District Director in Kansas City, he managed approximately one hundred field examinations. (Id.). As NASD Senior Vice President of Market Regulation, Mr. Cangiano was the "senior executive in charge of policing the OTC securities market and the NASDAQ Stock Market, including establishing surveillance and examination policies and procedures in the area of small cap and microcap fraud." (Id. at 8-9). In this role, Mr. Cangiano oversaw hundreds of fraud investigations. (Id. at 10).

While none of these investigations involved direct field examinations of transfer agents, Mr. Cangiano explains that if a broker dealer application "involved a fraud of some type, there could be a transfer agent element to it, particularly when we are looking for . . . an unregistered distribution." (Doc. # 101-2 at 16). The Court therefore disagrees with Defendants that Mr. Cangiano's experience at NASD is wholly inapplicable to the instant action.

---

[2] Microcap securities are traded "Over the Counter" rather than on a national exchange. (Doc. # 1 at ¶ 7).

Furthermore, Mr. Cangiano points to two specific cases he consulted on where "fraudsters actually owned their own transfer agent and in order to facilitate the sale of these companies . . . they used their own dedicated transfer agent to clean up the stock and get it saleable." (Id. at 22). Therefore, the Court also disagrees with Defendants' characterization that Mr. Cangiano has "no" experience whatsoever with transfer agents. Rather, Mr. Cangiano's time as a NASD regulator and consultant exposed him to fraud cases where transfer agents were used to clean securities and get them to market, precisely the conduct the SEC accuses in this case. (Id. at 16, 22).

This kind of relevant experience in the OTC industry satisfies the "minimally qualified" standard under Daubert. See Hendrix, 255 F.R.D. at 578 (an expert's "qualification to offer opinion at trial may be based on any combination of 'knowledge, skill, experience, training, or education'; he need not be a leading authority in the field") (citing Leathers v. Pfizer, Inc., 233 F.R.D. 687, 692 (N.D. Ga. 2006)). Mr. Cangiano may therefore rely on his experience to testify on the overall role of transfer agents in the microcap market, and how entities generally use transfer agents to clean stocks. To the extent Defendants argue that Mr.

Cangiano's understanding of transfer agents is incomplete because he never conducted a direct examination of a transfer agent, or never worked for a transfer agent, cross-examination will provide an adequate opportunity to highlight these alleged deficiencies. See Daubert, 509 U.S. at 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

### ii.   Rule 15c2-11 and Form 211 Experience

Defendants also argue that Mr. Cangiano's experience with Rule 15c2-11 and Form 211 Applications is limited and outdated. (Doc. # 101 at 12). Defendants point out that Mr. Cangiano never worked for FINRA (the authority that oversaw Rule 15c2-11 compliance during the relevant timeframe), only for the predecessor agency NASD, which operated under a different version of Rule 15c2-11. (Id. at 12-13). Furthermore, Mr. Cangiano's last direct experience overseeing Rule 15c2-11 compliance was twenty-two years ago. Since 1998, he has only served as manager or a consultant, roles that did not involve actually reviewing Form 211 applications. (Id. at 13-15). According to Defendants, "generalized managerial experience at a predecessor organization, operating under a

different version of Rule 15c2-11 than is at issue here," does not qualify Mr. Cangiano as an expert on Rule 15c2-11 or Form 211. (Id. at 17).

The SEC responds that Mr. Cangiano's experience is not limited because his role as a manager involved overseeing the entire Rule 15c2-11 Department, the precise rule at issue in this case. (Doc. # 114 at 10). Furthermore, it is not outdated because the Form 211 process has remained "largely the same from [when Mr. Cangiano worked at NASD] until the relevant period here 2009-2014." (Id. at 12). To the extent the industry has changed, the SEC argues that after Mr. Cangiano left NASD, his role as consultant kept him abreast of any developments. (Id. at 11).

The Court agrees with the SEC that Mr. Cangiano's extensive experience with Rule 15c2-11 compliance and Form 211 qualifies him to testify on those topics in this case. While at NASD, Mr. Cangiano's role ranged from investigator up to Vice President. He directly examined, supervised, or managed at least twenty NASD members for compliance with Rule 15c2-11 specifically. (Id. at 9-10). For several years, the entire Rule 15c2-11 department reported to Mr. Cangiano. (Id. at 10).

Defendants claim this managerial role meant Mr. Cangiano only encountered Form 211 "from a distance, having been alerted to a problem by a field examiner," but Defendants fail to cite any case law showing that managerial experience is insufficient to qualify an expert on a topic. (Doc. # 101 at 13). On the contrary, the Court finds that such experience easily satisfies the "minimally qualified" standard under Daubert. See Kirksey v. Schindler Elevator Corp., No. CV 15-0115-WS-N, 2016 WL 5213928, at *4 (S.D. Ala. Sept. 21, 2016) (finding qualified an elevator expert with thirty-three years of experience, twenty of which at the senior management level). Furthermore, this experience is not rendered irrelevant by Mr. Cangiano's shift to a consulting role. See Harris v. MVT Serv., Inc., 2007 WL 12 7622720, *1 (S.D. Miss. Oct. 24, 2007) ("[R]etirement . . . does not negate expertise and knowledge gained through years of education and experience.").

Nor is the Court convinced that Mr. Cangiano's experience is rendered irrelevant simply because he worked for a predecessor entity, operating under a different version of the same rule. Mr. Cangiano specifically testifies that despite the change in name from NASD to FINRA, and amendments to Rule 15c2-11, the Form 211 process "really [hasn't] changed

that much from when I was dealing with it." (Doc. # 101-2 19-20). The Court is therefore satisfied that Mr. Cangiano's forty-eight years a direct investigator, manager, and consultant in the OTC market qualify him to opine on those subjects.

Accordingly, any arguments that Mr. Cangiano's testimony is limited and outdated go to the weight of his testimony, not its admissibility. See Hangarter v. Provident Life and Accident Ins. Co., 373 F.3d 998, 1017 n.14 (9th Cir. 2004) ("The factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination."); Feliciano v. City of Miami Beach, 844 F. Supp. 2d 1258, 1262 (S.D. Fla. 2012) ("[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility."). Defendants may address any perceived limitations of Mr. Cangiano's experience, and any changes in the Form 211 process that have occurred since Mr. Cangiano worked at NASD, in cross-examination.

## 2. **Reliability**

Defendants also contest the reliability of Mr. Cangiano's testimony. Experts relying on experience must

explain "how that experience is reliably applied to the
facts.'" United States v. Frazier, 387 F.3d 1244, 1261 (11th
Cir. 2004) (citations omitted). Defendants argue that since
Mr. Cangiano lacks the necessary experience to offer an
opinion in this case, he cannot explain how this "nonexistent
relevant experience" led to his conclusions. (Doc. # 101 at
19). Instead his testimony necessarily relies on "ipse dixit
and speculation." (Id.).

The SEC responds that far from Mr. Cangiano asking the
Court to "take his word for it," he identifies "numerous
sources for the standards of conduct that are the norm in the
microcap securities industry." (Doc. # 114 at 14). The SEC
continues that these sources, combined with Mr. Cangiano's
years of experience in the relevant industry, provided an
adequate factual basis for his conclusions. (Id. at 15).

The SEC has adequately shown the reliability of Mr.
Cangiano's testimony. As stated previously, Mr. Cangiano's
forty-eight years of experience in the microcap securities
market qualify him to testify in this case. Mr. Cangiano
carefully documents how he relied on this experience — as
well as several SEC and FINRA rules, regulations, and
guidelines — to conclude that Defendants were a "one-stop
shop" for microcap securities, that Defendants ignored

numerous red flags, that Defendants filed false forms to make the shells more valuable, etc. (Doc. # 101-3 at 16-17, 21-23, 27). Mr. Cangiano cites numerous portions of the record, including forms filled out by Defendants, emails between Defendants, and depositions taken before the SEC, upon which he based his opinion. (Id.). The Court therefore agrees that Mr. Cangiano adequately shows how he applied his experience to the relevant facts to form his conclusion. Frazier, 387 F.3d at 1261 (citations omitted).

To the extent Defendants argue that Mr. Cangiano's testimony is biased because he relies on SEC and FINRA-promulgated sources, or incomplete because his experience at NASD is limited and outdated, Defendants may raise those issues in cross-examination. See Hurst v. United States, 882 F.2d 306, 311 (8th Cir. 1989) ("Any weaknesses in the factual underpinnings of [the expert's] opinion go to the weight and credibility of his testimony, not to its admissibility."); Rosenfeld v. Oceania Cruises, Inc., 654 F.3d 1190, 1193 (11th Cir. 2011) ("[I]n most cases, objections to the inadequacies of [expert evidence] are more appropriately considered an objection going to the weight of the evidence rather than its admissibility." (internal quotation marks omitted)).

3.    __Assistance to Trier of Fact__

Lastly, Defendants argue Mr. Cangiano's testimony will not be helpful to the jury. Expert testimony must "assist[] the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." <u>Rink</u>, 400 F.3d at 1292 (citation omitted). "When the trier of fact is 'entirely capable of determining' issues in the case 'without any technical assistance from . . . experts,' expert testimony is unhelpful and must be excluded from the evidence." <u>Hendrix</u>, 255 F.R.D. at 579 (citation omitted).

Furthermore, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." <u>Frazier</u>, 387 F.3d at 1262–63 (citation omitted).

Lastly, testimony is not helpful if it "merely tell[s] the jury what result to reach." <u>Montgomery v. Aetna Cas. & Sur. Co.</u>, 898 F.2d 1537, 1541 (11th Cir. 1990). "An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). But "testifying experts may not offer legal conclusions." <u>Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.</u>, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005). Only the Court may instruct the jury on relevant

legal standards. See Hibbett Patient Care, LLC v. Pharmacists Mut. Ins. Co., No. CV 16-0231-WS-C, 2017 WL 2062955, at *2 (S.D. Ala. May 12, 2017) ("After all, '[e]ach courtroom comes equipped with a "legal expert," called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards.'" (internal citations omitted)).

### i.   Testimony is not technical or specialized

Defendants move to exclude Mr. Cangiano's testimony because his opinion does not concern matters that are "beyond the understanding of the average lay person." (Doc. # 101 at 21). Defendants argue that the average lay person is fully capable of understanding the facts and circumstances of this case, and that Mr. Cangiano's testimony does not provide the sort of "technical assistance" necessary to be helpful to the jury. (Id. at 20-21). Defendants also argue that Mr. Cangiano's testimony is no more than what the SEC can argue in closing arguments. (Id.). According to Defendants, Mr. Cangiano simply parrots documents, he does not offer any unique analysis or argument that the SEC cannot provide on its own. (Id. at 22).

The SEC responds that "[o]utside of industry insiders and regulators, the microcap industry is little understood and is not in the common knowledge of lay people." (Doc. #

114 at 16). Furthermore, Mr. Cangiano's testimony delves into complex topics like Form 211, compliance with Rule 15c2-11, and the roles of broker-dealers and transfer agents in the OTC market, and is far from a "simple" argument that the SEC could make in closing. (Id. at 16-17).

The Court agrees with the SEC that Mr. Cangiano's testimony is both admissible and helpful to the fact-finder. Microcap securities are part of a highly specialized field that is outside the general knowledge of most lay individuals. Mr. Cangiano's testimony offers specialized insight into this field, and provides important background on industry standards, customs, and regulations. Such testimony is both admissible and helpful to a jury that has likely never encountered microcap securities. See United States v. Bilzerian, 926 F.2d 1285, 1294-95 (2nd Cir. 1991) ("Particularly in complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts."); Highland Capital Management, L.P., v. Schneider, 551 F. Supp. 2d 173, 182 (S.D.N.Y. 2008) (holding that an expert "may testify as to the customs and practices of the industry" because such testimony was "relevant to this case and may prove helpful to the jury").

### ii.   __Improper legal conclusions__

Defendants also argue that portions of Mr. Cangiano's testimony should be excluded as improper legal conclusions. (Doc. # 101 at 23). Specifically, Defendants move to exclude Mr. Cangiano's opinion that Defendants were "a critical and necessary part of the alleged fraud," his opinion that Defendants were a "link in the chain" of alleged schemes, and his opinion on the industry standards Defendants should have followed. (Id.).

The SEC responds that Mr. Cangiano's testimony focuses on the customs, standards, and practices of the microcap industry. (Doc. # 114 at 19). While Mr. Cangiano mentions SEC guidance and proposed rules in his opinion, he does so to (1) provide the sources for his opinion, and (2) show how such guidance is generally used by members of the industry. (Id.). At no point does Mr. Cangiano offer a legal interpretation of securities regulations or offer a legal conclusion that Defendants violated securities law.

The Court agrees with the SEC that Mr. Cangiano does not proffer legal conclusions in his report. Quite the opposite, he cautions several times that he has no legal opinion on whether Defendants violated federal securities law. (Doc. # 101-3 at 9, 21, 55). Mr. Cangiano's testimony is properly

limited to the customs, practices, and standards of the microcap securities industry. Such "[t]estimony concerning the ordinary practices of those engaged in the securities business is admissible under the same theory as testimony concerning the ordinary practices of physicians or concerning other trade customs: to enable the jury to evaluate the conduct of the parties against the standards of ordinary practice in the industry." Marx & Co. v. Diners' Club Inc., 550 F.2d 505, 509 (2d Cir. 1977). The Court will not prohibit Mr. Cangiano from offering helpful testimony on the customs, practices, standards, and regulations of the microcap security industry.

Furthermore, Mr. Cangiano's references to SEC and FINRA-promulgated guidance are not legal opinions. The Court agrees with the SEC that Mr. Cangiano properly references these regulations to provide context to the jury and explain the sources he relied on in formulating his opinion. See Bilzerian, 926 F.2d at 1294-95 (upholding admission of an expert testimony regarding requirements of Schedule 13D required to be filed with the Commission, finding the testimony may be helpful to a jury). The Court will not exclude testimony that merely references the guidance Mr. Cangiano relied on in forming his opinions. Should Mr.

Cangiano's testimony approach a legal conclusion, or a legal interpretation of this guidance, such testimony can be excluded through proper objections at trial.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

Defendants Carl E. Dilley, Micah J. Eldred, Island Capital Management, David D. Lopez, and Spartan Securities Group, LTD's Motion to Exclude the Expert Testimony of Plaintiff Securities and Exchange Commission's Proposed Expert James M. Cangiano (Doc. # 101) is **DENIED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 30th day of November, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE