UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES SECURITIES
& EXCHANGE COMMISSION,

    Plaintiff,

v.                       Case No. 8:19-cv-448-VMC-CPT

SPARTAN SECURITIES
GROUP, LTD, ISLAND CAPITAL
MANAGEMENT, CARL DILLEY,
MICAH ELDRED, and DAVID LOPEZ,

    Defendants.

_____/

**ORDER**

    This matter comes before the Court pursuant to Plaintiff Securities and Exchange Commission's (SEC) Omnibus Motion in Limine (Doc. # 123) and Defendants' Omnibus Motion in Limine (Doc. # 124), both filed on November 6, 2020. Both sides responded on November 20, 2020. (Doc. ## 128, 131). For the reasons that follow, the SEC's Motion is granted in part and denied in part and Defendants' Motion is denied without prejudice.

## I.  **Background**

    The SEC initiated this action against Defendants on February 20, 2019. (Doc. # 1). In its fourteen-count

complaint, the SEC accuses Defendants of engaging in two separate micro-cap fraud schemes in violation of the Securities Act of 1933 (Securities Act) and the Securities Exchange Act of 1934 (Exchange Act). Specifically, the SEC alleges that Defendants violated — and aided and abetted violations of — Section 15(c)(2) and Rule 15c2-11 of the Exchange Act (Counts 1 and 2), Section 17(a) of the Securities Act (Counts 3-4, 8-10), Section 10(b) and Rule 10b-5 of the Exchange Act (Counts 5-7, 11-13), and Sections 5(a) and 5(c) of the Securities Act (Count 14). (Id.).

The Court denied the parties' cross-motions for summary judgment on December 28, 2020. (Doc. # 135). Now, both sides move to exclude the introduction of various evidence and arguments at trial. (Doc. ## 123, 124). All parties have responded (Doc. ## 128, 131) and the Motions are ripe for review.

## II. __Legal Standard__

"A motion in limine presents a pretrial issue of admissibility of evidence that is likely to arise at trial, and as such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial." In re Seroquel Prods. Liab. Litig., Nos. 6:06-md-1769-ACC-DAB, 6:07-cv-15733-ACC-DAB, 2009 WL 260989, at *1

(M.D. Fla. Feb. 4, 2009). "The real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably [a]ffect the fairness of the trial." Id. (internal quotation omitted). "A court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds." Id. (internal quotation omitted).

"A motion in limine is not the proper vehicle to resolve substantive issues, to test issues of law, or to address or narrow the issues to be tried." LSQ Funding Grp. v. EDS Field Servs., 879 F. Supp. 2d 1320, 1337 (M.D. Fla. 2012)(internal citation omitted). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial." In re Seroquel, 2009 WL 260989, at *1 (internal quotations omitted). "Instead, denial of the motion means the court cannot determine whether the evidence in question should be excluded outside the trial context." Id. "The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine." Id.

The district court has broad discretion to determine the admissibility of evidence, and the appellate court will not

disturb this Court's judgment absent a clear abuse of discretion. <u>United States v. McLean</u>, 138 F.3d 1398, 1403 (11th Cir. 1998); <u>see</u> <u>also</u> <u>United States v. Jernigan</u>, 341 F.3d 1273, 1285 (11th Cir. 2003)("Inherent in this standard is the firm recognition that there are difficult evidentiary rulings that turn on matters uniquely within the purview of the district court, which has first-hand access to documentary evidence and is physically proximate to testifying witnesses and the jury.").

**III. <u>Analysis</u>**

> **A.   <u>The SEC's Omnibus Motion in Limine</u>**

The SEC seeks exclusion of eight categories of evidence. (Doc. # 123). The Court addresses each in turn.

> > **1.   <u>Mark Harmon's Testimony on "Irrelevant Topics"</u>**

First, the SEC seeks to exclude as irrelevant and misleading Mark Harmon's testimony on, and counsel's arguments related to,

1. [T]he application of UCC 8-401 and 17 C.F.R. § 240.17Ad, or other laws not charged in this case;
2. [C]ompliance with various other state and federal regulations which purportedly restrict a transfer agent's ability to examine critically the facts and circumstances underlying documentation;
3. [T]he fact that transfer agents purportedly perform only ministerial functions and lack investigatory powers.

(Doc. # 123 at 2-4).

Defendants respond that such testimony is relevant insofar as it will guide the jury's understanding of the securities industry and help contextualize the alleged violations at issue in this case. (Doc. # 128 at 3-4).

The Court addressed these issues in detail on November 30, 2020, when it ruled on the SEC's motion to exclude the expert testimony of Mark Harmon. (Doc. # 133). For the same reason the Court granted that motion in part, it grants the instant Motion to the extent that witnesses, including expert witness Mark Harmon, "may not opine on the reasonableness of [Defendants'] conduct, [Defendants'] legal obligations under federal law, or [Defendants'] compliance with federal law." (Id. at 20-21).

However, at this time the Court will not exclude evidence or arguments on the "general background [of] relevant statutory and regulatory schemes," "the decision-making process transfer agents generally follow," and the "kind of regulatory and legal considerations transfer agents usually take into account when evaluating transfers." (Id.). The Court agrees with Defendants that such evidence could bear on the reasonableness of Defendants' actions and help contextualize Harmon's testimony. That portion of the Motion

is denied without prejudice and the SEC may make more specific objections as Harmon's testimony develops at trial.

## 2. **"References to Charging Decisions"**

Next, the SEC seeks to exclude as irrelevant any reference to the SEC's "exercise of discretion to charge, or not to charge, entities and individuals involved in or related to the Commission's investigation and this subsequent litigation." (Doc. # 123 at 5).

Defendants respond that they "do not intend to make any [such] arguments." (Doc. # 128 at 5). Instead, Defendants "intend to argue a related but separate issue that tangentially relates to charging decisions — that examiners for [the] SEC and [the] Financial Industry Regulatory Authority ('FINRA') reviewed many of the documents and materials [the] SEC is likely to rely on at trial and those examiners did not find evidence of the fraud [the] SEC now alleges." (Id.).

The Court agrees with Defendants that evidence of prior investigations — and regulatory agencies' subsequent decision to charge or not charge Defendants in the wake of those investigations — could go to the issue of scienter. Specifically, the fact that FINRA and the SEC previously investigated Defendants, but chose not to pursue an

enforcement action, could support Defendants' contention that they were justifiably unaware of any fraud occurring, and thus their actions were not severely reckless. At this juncture, the Court cannot determine whether the probative value of such evidence is outweighed by the risk of undue prejudice or misleading the jury. Accordingly, the Court denies this section of the SEC's Motion without prejudice. The SEC may re-raise its objections at trial.

### 3. <u>Testimony on Defendants' Intent and State of Mind</u>

Third, the SEC seeks to exclude any reference to the subjective beliefs of witnesses about the Defendants' intent, arguing that "[o]pinions about someone else's mental state cannot be 'rationally based on the witness's perception,' as required by Rule 701(a)." (Doc. # 123 at 5-6).

Defendants respond that witnesses "should be permitted to testify about their perceptions of conversations they may or may not have had with others that relate to the issues of this case," as this "goes to whether the Defendants acted with a conscious disregard for known legal obligations." (Doc. # 128 at 7).

Pursuant to Federal Rule of Evidence 701, lay witness testimony may only be admitted if the court determines that

"the opinion is 'rationally based on' the witness's own perceptions" and the opinion "will be 'helpful' to a clear understanding of the witness's testimony or the determination of a fact issue." United States v. Rea, 958 F.2d 1206, 1215 (2d Cir. 1992) (citing Fed. R. Evid. 701; Fed. R. Evid. 704(a)). "The rational-basis requirement 'is the familiar requirement of first-hand knowledge or observation.'" Id. (citing Fed. R. Evid. 701, Advisory Committee Note on 1972 Proposed Rules).

The Court agrees with the SEC that witness testimony about another's internal beliefs is inherently speculative. Therefore, in line with Rule 701, the Court grants the Motion to the extent that witnesses may not speculate as to Defendants' internal beliefs, nor make conjectures about other information outside the witness's first-hand knowledge.

However, as noted by Defendants, Rule 701 permits a witness to testify about *their own* perceptions of conversations. See United States v. Rivera, 780 F.3d 1084, 1094 (11th Cir. 2015) (noting that "opinion testimony must be based on 'firsthand knowledge or observation'," but "[w]here a witness's testimony is based upon her 'perceptions of the conversations[,] . . . the accuracy of those perceptions [is] a question for the jury'" (citing United States v. Davis, 787

F.2d 1501, 1505 (11th Cir. 1986))). The Court agrees that a witness's perception of conversations with Defendants could bear on scienter and the reasonableness of Defendants' actions. Therefore, to the extent it seeks to impose a blanket prohibition on witnesses testifying about their conversations with Defendants, the SEC's Motion is denied without prejudice. Should witness testimony veer into speculation or conjecture, the SEC may object at trial.

### 4. Evidence Regarding Investor Reliance, Statements to Investing Public, and Loss Causation

The SEC next seeks to exclude any evidence showing that: (1) Defendants believed their conduct would not harm investors; (2) misrepresentations and false statements were not made to the investing public; (3) investors did not rely on the misrepresentations and omissions at issue; and (4) investors have not suffered, and will not suffer, any losses as a result of Defendants' actions. (Doc. # 123 at 6). The SEC argues that these topics are irrelevant, misleading, and prejudicial because they are not elements in a securities fraud action, therefore they are "no defense" to the charges in this case. (Id.).

As for the first category, Defendants respond that this evidence will not be introduced, therefore the SEC's concerns

are "misplaced." (Doc. # 128 at 7-8) (explaining that "[a]t no time have Defendants put forth evidence or argument that they believed their conduct would not harm investors because it is their sincere belief that their conduct did not violate the securities laws at all"). Since Defendants do not appear to oppose this portion of the Motion, it is granted. Defendants may not introduce evidence at trial that they believed their conduct would not harm investors.

Defendants respond that the other types of evidence are all relevant to proving the SEC's case. (Doc. # 128 at 7-8). Although Defendants' characterization of the SEC's burden is incorrect, (Doc. # 135 at 30-31) (citing SEC v. Radius Capital Corp., 653 F. App'x 744, 751 (11th Cir. 2016)), the Court nonetheless agrees that at this juncture, it is improper to exclude such broad swathes of evidence from trial.

The SEC's sweeping Motion seeks to exclude generalized categories of evidence without elaborating on which witnesses will potentially proffer this testimony, which documents could conceivably contain this information, or the context in which the SEC anticipates this information coming up. The Court may exclude evidence in limine "only when evidence is clearly inadmissible on all potential grounds." USAA Gen. Indem. Co. v. Snow, No. 8:19-cv-944-VMC-TGW, 2020 WL 4432429,

at *2 (M.D. Fla. July 31, 2020) (internal citation omitted).
Here, depending on how trial unfolds, the evidence
contemplated by the Motion may very well go to the elements
of the SEC's cause of action, or at least the remedies
question of which penalty tier applies. For example, certain
penalties only apply if the violation(s) "resulted in
substantial losses or created a significant risk of
substantial losses to other persons." 15 U.S.C. §§
77t(d)(2)(B), (C); 78u(3)(B)(ii), (iii). Whether or not
misrepresentations were made to the investing public, and
whether investors relied on these misrepresentations and
subsequently suffered losses, could certainly go to this
question. The Court therefore agrees with Defendants that
granting the Motion in whole, and indiscriminately excluding
all requested evidence, could hamstring Defendants' arguments
and prevent them from forming a valid defense.

Accordingly, this portion of the SEC's Motion is denied
without prejudice. As these categories of evidence arise in-
context at trial, the SEC may raise mores specific objections.

### 5. FINRA's Clearance of Form 211 Applications and the SEC's Acceptance of S-1 Registration Filings

Fifth, the SEC seeks to prevent Defendants from arguing
that FINRA's clearance of Forms 211 and the SEC's acceptance

of S-1 Registration Filings is indicative of due diligence. (Doc. # 123 at 9-10). The SEC claims that such arguments are misleading and incorrect, and Defendants should not be allowed to argue something that is contrary to the plain language of the filings. (Id.).

In response, Defendants repeat their argument from Section III(A)(2) that the SEC "misstates or misunderstands" why Defendants wish to introduce this evidence at trial. (Doc. # 128 at 9). Defendants stress that they intend to bring in evidence of prior investigations, examinations, and filings to show that they had a "reasonable basis" for the accuracy of their information, and the information is relevant in this context (Id.).

For the same reasons expounded in Section III(A)(2) the Court agrees that evidence regarding FINRA's clearance of Forms 211 and the SEC's acceptance of Registration Filings could bear on whether Spartan had a reasonable basis to believe its information was accurate, and whether the Defendants accused of aiding and abetting acted with severe recklessness. And in a vacuum, the Court is unable to weigh the probative value of this evidence against its potential prejudice. Accordingly, the Motion is denied without

prejudice as to this kind of evidence. If appropriate, the SEC may object to the introduction of this evidence at trial.

## 6. "Impression of SEC and Unrelated SEC Matters"

The SEC also seeks to exclude as irrelevant any evidence of or arguments about:

> [1] Any other SEC cases or investigations that are unrelated to the issuers at issue here; [2] The adequacy of the SEC's regulatory oversight; [3] The SEC's enforcement priorities; [4] The SEC's decision to bring or not to bring this case or any other case . . .; [5] The SEC's reasons for bringing this case (e.g., no arguments that suggest any ulterior motive); [6] The SEC's charging decisions in this case, or the resources that the SEC has devoted to this case as opposed to other possible enforcement priorities; and [7] The size and resources available to the SEC, the Government, FINRA, or other regulatory body.

(Doc. # 123 at 11).

Defendants again respond that the "adequacy of [the] SEC's regulatory oversight, [the] SEC's charging decisions in this case, or the size and resources available to [the] SEC, the Government, and FINRA, or other regulatory body" all relate to whether Defendants complied with the "reasonable basis" standard under Rule 15c2-11. (Doc. # 128 at 11).

This section of the SEC's Motion, and Defendants' response, is substantively similar to the arguments raised in Sections III(A)(2) and III(A)(5), therefore the Court comes to the same conclusion. Evidence regarding prior

investigations of Defendants, the results of those investigations, and the resources used to conduct those investigations could all potentially go to the issue of reasonableness and Defendants' scienter. The Motion is therefore denied without prejudice as to this evidence. The SEC is free to raise more specific objections as the evidence is introduced at trial.

### 7. Michael Daniels' Affidavit

Next, the SEC seeks to exclude as inadmissible hearsay an affidavit by Michael Daniels. (Doc. # 123 at 12). Alternatively, the SEC argues that this affidavit should be excluded because Daniels refused to be deposed on two separate occasions. (Id.).

Defendants respond that they "agree that Mr. Daniels's affidavit constitutes hearsay under Fed. R. Evid. 801(c), 802, and do not intend to use the affidavit as such." (Doc. # 128 at 11). However, they continue that the affidavit may be admissible for other purposes, therefore it should not be excluded at this time. (Id.).

Because Defendants concede the affidavit is hearsay, the Motion is granted to the extent that Defendants may not introduce the affidavit for the truth of the matter asserted. However, as noted by Defendants, under Rule 801(d)(1)(B)(i),

a prior consistent statement may be allowed to rebut a charge that the declarant fabricated the statement, or to rehabilitate credibility when a witness's credibility is attacked on other grounds. As the affidavit could conceivably come in under this rule, this section of the Motion is denied without prejudice. Should circumstances warrant, the SEC may object to the affidavit's introduction at trial.

### 8.   Age of Conduct

Finally, citing the Court's order on Defendants' motion to dismiss, the SEC moves to exclude any argument suggesting that the age of Defendants' conduct absolves Defendants of liability. (Doc. # 123 at 13).

Defendants' only response is that they properly raised the statute of limitations issue in their motion for summary judgment, which the Court had yet to rule on at the time the Motions were filed. (Doc. # 128 at 14). However, the Court has now denied Defendants' motion for summary judgment and rejected that argument. (Doc. # 135 at 15-16). Since the Court has definitively ruled that the relief sought by the SEC is not barred by the statute of limitations, this portion of the SEC's Motion is granted. Defendants may not argue that the age of their conduct absolves Defendants of liability for their actions.

**B.   Defendants' Omnibus Motion in Limine**

Defendants seek to exclude six categories of evidence. (Doc. # 124). The Court addresses each in turn.

### 1.   Reference to "Pump-and-Dump Schemes"

Defendants move to exclude any reference to "pump-and-dump schemes," arguing that they are not accused of participating in or facilitating such schemes, therefore the term is irrelevant and misleads the jury. (Doc. # 124 at 6).

The SEC acknowledges that "this action is not centered around a pump-and-dump scheme," and explains that it "has no intention of presenting a tutorial on pump-and-dumps." (Doc. # 131 at 7). However, the SEC contends that "some evidence or mention of pump-and-dumps may be necessary to explain the overall context of micro-cap manipulation schemes, the red-flags presented by the use of shell companies, and the purpose behind FINRA and SEC rules, applications and exams that apply to broker-dealers in this action." (Id.).

The Court agrees with the SEC that it would be premature to exclude all evidence regarding pump-and-dump schemes. The complaint alleges that Defendants' actions aided and abetted third parties' fraud that included at least one pump-and-dump scheme. (Doc. # 1 at ¶ 94). Furthermore, as noted by the SEC, pump-and-dump schemes are common fixtures of micro-cap fraud

schemes, therefore reference to such schemes may be relevant to understanding the industry as a whole. Outside the context of trial, the Court cannot be sure the prejudicial nature of evidence on pump-and-dump schemes outweighs its probative value. Accordingly, the Motion is denied without prejudice. Defendants may re-raise their objections at trial.

### 2.    Use of the Term "Shell Factory"

Defendants also seek to exclude the term "shell factory" from the trial. Defendants argue that the SEC "made-up" this term to sensationalize certain targets, therefore it is unfairly prejudicial to use the term to describe Defendants. (Doc. # 124 at 7-8). Defendants also argue that the term is misleading, as it refers to schemes run by non-parties Michael Daniels, Diane Harrison, Alvin Mirman, and Sheldon Rose, none of whom are on trial in this case. (Id. at 8).

The SEC responds that "use of the adjective 'shell' is part of the widely recognized lexicon in the investment, regulatory and legal industries to describe companies that have no or nominal business operations or non-cash assets for an extended period of time." (Doc. # 131 at 4). Furthermore, according to the SEC, the concept of a "shell factory" is central to their complaint because the "repeated turning of a blind eye and outright assistance given by the Defendants

in an assembly line fashion is specifically what is on trial here." (Id. at 5-6).

The Court agrees that Defendants have failed to show how the term "shell factory" is so unfairly prejudicial as to warrant exclusion from trial. As explained in detail in the SEC's response (Id. at 4-5), the concept of a "shell" is widely recognized in the securities industry, and the term is well-defined by both the SEC and other government agencies. See, e.g., *Potential Money Laundering Risks Related to Shell Companies*, Fin. Crime Enf't Network (Nov. 9, 2006), https://www.fincen.gov/resources/statutes-regulations/ guidance/potential%20money-laundering-risks-related-shell- companies; *Dormant Shell Companies – How to Protect Your Portfolio from Fraud*, U.S. Sec. and Exch. Comm'n (Oct. 30, 2014), https://www.sec.gov/oiea/investor-alerts-bulletins/ dormantshell.html.

Furthermore, the core of the SEC's complaint is that Defendants aided and abetted Rose, Mirman, Harrison, and Daniels by facilitating the creation of such shells in a factory-like fashion. (Doc. # 1 at ¶¶ 8, 26-35, 100-122). The Court fails to see how using the commonplace adjective "shell" to modify "factory" unfairly prejudices Defendants. On the contrary, the idea of a "shell factory" is at the heart of

this case, and the Court agrees that prohibiting the SEC from referencing the term would preclude the SEC from arguing its theory of the case.

Accordingly, the Court denies the Motion to the extent it seeks to exclude the term "shell factory" from trial.

### 3. Actions by Mirman or Rose Unrelated to the Companies at Issue

Third, Defendants seek to exclude as irrelevant, unfairly prejudicial, and misleading any reference to other shell companies not specifically named in the complaint. (Doc. # 124 at 8).

The SEC responds that it "does not intend to introduce specific evidence regarding companies not listed in the Complaint," but reference to such companies "may be included in testimony by third parties, or in documents relating to other actions against Rose, Mirman, Daniels or Harrison." (Doc. # 131 at 8-9). Per the SEC, these references "may be important to putting events and evidence in context or to understanding the prior experiences between the witness and Defendants or for impeachment." (Id.).

The Court agrees that evidence regarding other companies may be relevant in the sense that it contextualizes events, witnesses, and Defendants' alleged actions in this case.

(Id.). Before trial, it is impossible to know whether the prejudicial nature of this evidence outweighs its probative value. Accordingly, this part of Defendants' Motion is denied without prejudice.

### 4. <u>Enforcement Actions Concerning Third Parties</u>

Fourth, Defendants seek to exclude as irrelevant, unfairly prejudicial, and misleading any reference to enforcement actions against third parties like Daniels, Harrison, Mirman, and Rose. (Doc. # 124 at 10).

Similar to its response in Section III(B)(3), the SEC argues that the securities actions against these four individuals concern the same companies at issue in this case. (Doc. # 131 at 11-12). Therefore, according to the SEC, the actions are highly relevant and necessary to provide background on the fraud alleged here, as well as assess biases and the credibility of various witnesses. (Id.).

For the same reasons discussed in Section III(B)(3), this section of the Motion is denied without prejudice. Defendants ask this Court to exclude any reference to enforcement actions that involve the very companies at issue here. These enforcement actions are almost certainly relevant to the SEC's cause of action, and Defendants fail to persuade

the Court the probative value of the evidence is outweighed by prejudice to Defendants.

### 5. <u>Prior Disciplinary Actions Taken Against Defendants</u>

Next, Defendants seek to exclude as irrelevant and unfairly prejudicial any reference to prior disciplinary actions taken by FINRA and NASDAQ against Defendants. (Doc. # 124 at 11).

The SEC responds that such evidence is "highly probative of Defendants' knowledge of their own regulatory shortcomings, and their prior knowledge of regulatory issues and red flags that they should have been alert to." (Doc. # 131 at 13).

The Court agrees with the SEC that evidence of previous disciplinary actions taken against Defendants is potentially admissible. If FINRA and/or NASDAQ previously put Defendants on notice of potential fraud (or actual fraud), then that evidence could support a finding that Spartan lacked a reasonable basis for believing its information was accurate and that other Defendants were severely reckless by ignoring similar activity. The Court will not exclude this kind of potentially relevant evidence outside the context of trial.

Defendants may re-raise their objections should the situation call for it.

### 6. <u>**Non-Binding Guidances**</u>

Finally, Defendants argue that reference to non-binding SEC guidances should be prohibited at trial, claiming that such evidence will confuse and mislead the jury about what law governs the case. (Doc. # 124 at 12).

The SEC acknowledges that it is not charging Defendants with violating non-binding guidances, but nonetheless contends that these guidances are still "relevant and probative to establishing [Defendants] knew what was required of them by Section 15(c)(2) and Rule 15c2-11 and that they failed to conform with the requisite standard of care." (Doc. # 131 at 17).

The Court agrees with the SEC that evidence of the non-binding guidances could go to the reasonableness of Defendants' actions, and provide the jury with background on industry customs, norms, and standards of care. Defendants fail to show how the probative value of these guidances is outweighed by any prejudice to them. Therefore, at this time this request is denied without prejudice.

Accordingly, it is now

**ORDERED, ADJUDGED, and DECREED:**

(1) Plaintiff Securities and Exchange Commission's Omnibus Motion in Limine (Doc. # 123) is **GRANTED** in part and **DENIED** in part as set forth herein.

(2) Defendants' Omnibus Motion in Limine (Doc. # 124) is **DENIED** without prejudice.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 26th day of May, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE