# Joint Proposed Jury Instructions

## Table of Contents

1.1  General Preliminary Instruction [AGREED]................................................................2

1.4 Jury Questions [AGREED]..............................................................................................11

2.1 Stipulations [AGREED].................................................................................................13

2.2 Use of Depositions [AGREED].....................................................................................14

2.5 Judicial Notice [AGREED]............................................................................................15

2.6 Use of Interrogatories [AGREED] ...............................................................................16

Use of Charts, Summaries, etc. [AGREED] .....................................................................17

2.7 In-Trial Instructions on News Coverage [AGREED]................................................18

2.8 Civil Allen Charge [AGREED] .....................................................................................19

3.1 Introduction [AGREED] ...............................................................................................21

3.2.2 Duty to Follow Instructions - Corporate Party Involved [AGREED]...........22

3.2.3 Duty to Follow Instructions - Government Entity or Agency
Involved [AGREED]..........................................................................................................23

3.3 Consideration of Direct and Circumstantial Evidence; Argument of Counsel;
Comments by the Court [AGREED].................................................................................24

3.4 Credibility of Witnesses [AGREED]...........................................................................25

3.5.1 Impeachment of Witnesses because of Inconsistent Statements [AGREED] 26

3.6.1 Expert Witness [AGREED].........................................................................................27

3.7.1 Responsibility for Proof - Plaintiff's Claims – Preponderance of the
Evidence [CONTESTED]...................................................................................................28

3.9 Election of Foreperson Explanation of Verdict Form[s] [AGREED] ...............30

Section 15(c)(2) and Rule 15c2-11 [CONTESTED]..............................................................32

Aiding and abetting Section 15(c)(2) and Rule 15c2-11 [CONTESTED].............43

Sections 17(a)(1) and (3) [CONTESTED] ........................................................................50

Aiding and abetting Section 17(a)(1), (2), and (3) [CONTESTED] ......................65

Rule 10b-5(a), (b), and (c) [CONTESTED] ......................................................................72

Aiding and abetting Rule 10b-5(a), (b), and (c) [CONTESTED] ..........................89

Sections 5(a) & 5(c) [CONTESTED]...................................................................................105

Instruction Concerning the Use of "Guidance" Documents [CONTESTED].......114

**1.1 General Preliminary Instruction**

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors.  These are preliminary instructions.  I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts.  It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom.  Evidence comes in many forms.  It can be testimony about what someone saw, heard, or smelled.  It can be an exhibit or a photograph.  It can be someone's opinion.

Some evidence may prove a fact indirectly.  Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas.  This may be indirect evidence that it rained, even though the witness didn't personally see it rain.  Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect.  You may choose to believe or disbelieve either kind.  Your job is to give each piece of evidence whatever weight you think it deserves.

What is not evidence:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence.  In their opening statements and closing arguments, the lawyers will discuss the case.  Their remarks may help you follow each side's arguments and presentation of evidence.  But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence.  Only the witnesses' answers are evidence.  Don't decide that something is true just because a lawyer's question suggests that it is.  For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?"  That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence.  When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if [he/she] thinks the rules of evidence don't permit it.  If I overrule the objection, then the witness may answer the question or the court may receive the exhibit.  If I sustain the objection, then the witness cannot answer

the question, and the court cannot receive the exhibit.  When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it.  That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose.  When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

Credibility of witnesses:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, part of it, or none of it.  When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

- the witness's memory;

- the witness's manner while testifying;

- any interest the witness has in the outcome of the case;

- any bias or prejudice the witness may have;

- any other evidence that contradicts the witness's testimony;

- the reasonableness of the witness's testimony in light of all the evidence; and

· any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

<u>Description of the case</u>:

This is a civil case.  To help you follow the evidence, I'll summarize the parties' positions.

The Plaintiff, Securities and Exchange Commission, known as the SEC, claims Spartan Securities Group, Ltd., Island Capital Management, LLC, Carl E. Dilley, Micah J. Eldred, and David D. Lopez violated the securities laws by playing important roles in two separate fraud schemes from approximately December 2009 through August 2014.  The schemes depended on the participation of Defendants, industry gatekeepers, who assisted by taking critical and active steps necessary to advance the fraudulent schemes.  The SEC alleges that Spartan, a registered broker-dealer, and Island, a registered transfer agent (along with their owners and principals, Dilley, Eldred and Lopez), served as a one-stop shop for microcap securities that furthered fraudulent schemes to make public the shares of nineteen undisclosed blank check companies.

Spartan, Island, Dilley, Eldred, and Lopez deny those claims and contend that they not only had no knowledge of any potential wrongdoing by other parties, and diligently gathered necessary materials to ensure that they complied with their

regulatory obligations and reasonably relied on representations made my issuers and their representatives. Trained securities regulators reviewed Spartan's documents and information and confirmed its compliance with Spartan's legal obligations. Spartan and its employees had no role in any underlying misconduct and did not take any efforts to advance any fraudulent schemes. No harm to any consumer was caused by them nor did they benefit from the underlying wrongdoing. Instead, Spartan and its employees were deliberately misled by others, who actively concealed their wrongdoing from both the defendants and the SEC. Lopez further denies that he ever acted as a principal for Spartan related to any of the charges. Island, as a transfer agent faithfully recorded transfers of securities that were all properly registered or exempt from registration consistent with industry practice and its obligations to holders of securities.

Burden of proof:

The SEC has the burden of proving its case by what the law calls a "preponderance of the evidence." That means the SEC must prove that, in light of all the evidence, what it claims is more likely true than not. So, if you could put the evidence favoring the SEC and the evidence favoring Spartan, Island, Dilley, Eldred, and Lopez on opposite sides of balancing scales, the SEC needs to make the scales tip to its side. If the SEC fails to meet this burden, you must find in favor of Spartan, Island, Dilley, Eldred, and Lopez.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them.  After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

On certain issues, called "affirmative defenses," Spartan, Island, Dilley, Eldred, and Lopez have the burden of proving the elements of a defense by a preponderance of the evidence.  I'll instruct you on the facts Spartan, Island, Dilley, Eldred, and Lopez must prove for any affirmative defense.  After considering all the evidence, if you decide that Spartan, Island, Dilley, Eldred, and Lopez have successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

<u>Conduct of the jury</u>:

While serving on the jury, you may not talk with anyone about anything related to the case.  You may tell people that you're a juror and give them information about when you must be in court.  But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations.  You want to make sure you've heard everything – all the evidence,

the lawyers' closing arguments, and my instructions on the law – before you begin deliberating.  You should keep an open mind until the end of the trial.  Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means.  This includes e-mails, text messages, phone calls, and the Internet, including social-networking websites and apps such as Facebook, Instagram, Snapchat, YouTube, and Twitter.  You may not use any similar technology of social media, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law.  Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case.  The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it.  It's very important that you understand why these rules exist and why they're so important.  You must base your decision only on the testimony and other evidence presented in the courtroom.  It is

not fair to the parties if you base your decision in any way on information you acquire outside the courtroom.  For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source.  Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

Taking notes:

If you wish, you may take notes to help you remember what the witnesses said.  If you do take notes, please don't share them with anyone until you go to the jury room to decide the case.  Don't let note-taking distract you from carefully listening to and observing the witnesses.  When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony.  Your notes are there only to help your memory.  They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:

Let's walk through the trial.  First, each side may make an opening statement, but they don't have to.  Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, the SEC will present its witnesses and ask them questions.  After the SEC questions the witness, Spartan, Island, Dilley, Eldred, and Lopez may ask the witness questions – this is called "cross-examining" the witness.  Then Spartan, Island, Dilley, Eldred, and Lopez will present their witnesses, and the SEC may cross-examine them.  You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

You'll then go to the jury room to deliberate.

**Eleventh Circuit Pattern Instruction, Agreed.**

### 1.4 Jury Questions

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning.  Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions.  If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence.  Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case.  If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness.  I may modify the form or phrasing of a question so that it's allowed under the evidence rules.  Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

· First, you must submit all questions in writing.  Please don't ask any questions aloud.

· Second, the court can't re-call witnesses to the stand for additional juror questions.  If you have a question for a particular witness, you must submit it when I ask.

· Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness.  You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

**Eleventh Circuit Pattern Instruction, Agreed.**

**2.1 Stipulations**

Sometimes the parties have agreed that certain facts are true.  This agreement is called a stipulation.  You must treat these facts as proved for this case.  **The parties have stipulated to the following facts:**

**[FILL IN WITH UNDISPUTED FACTS]**

**Eleventh Circuit Pattern Instruction, Agreed.**

**2.2 Use of Depositions**

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions.  A court reporter is present and records the questions and answers.

The depositions of Carl Dilley, taken on July 20, 2020; David Lopez, taken on July 27, 2020; Micah Eldred, taken on July 17, 2020, and the sworn testimony of Carl Dilley, taken on October 17, 2017; David Lopez, taken on October 18, 2017 and May 9, 2018; and Micah Eldred, taken on October 17, 2017 have been presented to you by reading the transcript.  Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

**Eleventh Circuit Pattern Instruction, Agreed.**

**2.5 Judicial Notice [If Needed or Applicable]**

The rules of evidence allow me to accept facts that no one can reasonably dispute.  The law calls this "judicial notice."  I've accepted [state the fact that the court has judicially noticed] as proved even though no one introduced evidence to prove it.  You must accept it as true for this case.

**Eleventh Circuit Pattern Instruction, Agreed.**

**2.6 Use of Interrogatories [If Needed or Applicable]**

[You'll now hear/You've heard] answers that [name of party] gave in response to written questions the other side submitted.  The questions are called "interrogatories."  Before the trial, [name of party] gave the answers in writing while under oath.

You must consider [name of party]'s answers to as though [name of party] gave the answers on the witness stand.

**Eleventh Circuit Pattern Instruction, Agreed.**

**Use of Charts, Summaries, etc. [If Needed or Applicable]**

Certain exhibits in the form of charts, summaries, calculations and the like have been received in evidence.  Such exhibits are received in evidence where voluminous writings, documents, and records are involved.  These exhibits are available for your assistance and convenience in considering the evidence.  But that does not mean you must accept any chart, summary, or calculation.  As with any other evidence, you must decide for yourself whether to rely upon them.

**Agreed.**

## 2.7 In-Trial Instructions on News Coverage [If Needed or Applicable]

Reports about this trial may appear in the media.  The reporters may not have heard all the testimony as you have, may be getting information from people who are not under oath and subject to cross-examination, may emphasize an unimportant point, or may simply be wrong.

You must not read, listen to, or watch anything about this trial. It would violate your oath as a juror to decide this case on anything other than the evidence presented at trial and on your own common sense. You must decide this case exclusively on the evidence you receive here in court.

**Eleventh Circuit Pattern Instruction, Agreed.**

**2.8 Civil *Allen* Charge [If Needed or Applicable]**

Members of the jury:

I'm going to ask you to continue your deliberations to reach a verdict. Please consider the following comments.

This is an important case. The trial has been expensive in terms of time, effort, money, and emotional strain to both the plaintiff and the defendant. If you fail to agree on a verdict, the case remains open and may have to be tried again. A second trial would be costly to both sides, and there's no reason to believe either side can try it again better or more exhaustively than they have tried it before you.

Any future jury would be selected in the same manner and from the same source as you. There's no reason to believe that the case could ever be submitted to a jury of people more conscientious, more impartial, or more competent to decide it – or that either side could produce more or clearer evidence.

It's your duty to consult with one another and to deliberate with a view to reaching an agreement – if you can do it without violating your individual judgment. You must not give up your honest beliefs about the evidence's weight or effect solely because of other jurors' opinions or just to return a verdict. You must each decide the case for yourself – but only after you consider the evidence with your fellow jurors.

You shouldn't hesitate to reexamine your own views and change your opinion if you become convinced it's wrong.  To bring your minds to a unanimous result, you must openly and frankly examine the questions submitted to you with proper regard for the opinions of others and with a willingness to reexamine your own views.

If a substantial majority of you is for a verdict for one party, each of you who holds a different position ought to consider whether your position is reasonable.  It may not be reasonable since it makes so little impression on the minds of your fellow jurors – who bear the same responsibility, serve under the same oath, and have heard the same evidence.

You may conduct your deliberations as you choose, but I suggest that you now carefully reexamine and reconsider all the evidence in light of the court's instructions on the law.  You may take all the time that you need.

I remind you that in your deliberations, you are to consider the court's instructions as a whole.  You shouldn't single out any part of any instructions including this one, and ignore others.

You may now return to the jury room and continue your deliberations.

**Eleventh Circuit Pattern Instruction, Agreed.**

**3.1 Introduction**

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

## CASE NO. 19-CV-00448-VMC-CPT

**SECURITIES AND EXCHANGE COMMISSION,**

          **Plaintiff,**

**v.**

**SPARTAN SECURITIES GROUP, LTD., et al.,**

          **Defendants.**

_____/

<u>COURT'S INSTRUCTIONS TO THE JURY</u>

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

**Eleventh Circuit Pattern Instruction, Agreed.**

### 3.2.2 The Duty to Follow Instructions – Corporate Party Involved

Your decision must be based only on the evidence presented here.  You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole.  You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way.  A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice.  When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

**Eleventh Circuit Pattern Instruction, Agreed.**

### 3.2.3 The Duty to Follow Instructions – Government Entity or Agency Involved

Your decision must be based only on the evidence presented here.  You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole.  You must not single out or disregard any of the instructions on the law.

The fact that a governmental entity or agency is involved as a party must not affect your decision in any way.  A governmental agency and all other persons stand equal before the law and must be dealt with as equals in a court of justice.  When a governmental agency is involved, of course, it may act only through people as its employees; and, in general, a governmental agency is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the governmental agency.

**Eleventh Circuit Pattern Instruction, Agreed.**

### 3.3 Consideration of Direct and Circumstantial Evidence;
### Argument of Counsel; Comments by the Court

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

**Eleventh Circuit Pattern Instruction, Agreed.**

**3.4 Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

**Eleventh Circuit Pattern Instruction, Agreed.**

### 3.5.1 Impeachment of Witnesses Because of Inconsistent Statements

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact.  And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it.  People naturally tend to forget some things or remember them inaccurately.  So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception.  The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

**Eleventh Circuit Pattern Instruction, Agreed.**

### 3.6.1 Expert Witness

When scientific, technical, or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

**Eleventh Circuit Pattern Instruction, Agreed.**

### 3.7.1 Responsibility for Proof – Plaintiff's Claims– Preponderance of the Evidence

In this case it is the responsibility of the SEC to prove every essential part of its claims by a "preponderance of the evidence."   This is sometimes called the "burden of proof" or the "burden of persuasion."  A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the SEC's claims are more likely true than not true.  **Those of you who have been jurors in a criminal case may have heard of the term "proof beyond a reasonable doubt." That requirement does not apply to a civil case.  You should therefore put it out of your mind.**

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the SEC.

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the SEC's claims by a preponderance of the evidence, you should find for Spartan, Island, Dilley, Eldred, or Lopez as to that claim.

**Eleventh Circuit Pattern Instruction, Plaintiff Proposed.**

**For Plaintiff's Proposed Addition,** *Ocean View Towers Association, Inc. v. QBE Insurance Corp.*, **No. 0:11-cv-60447-RNS (S.D. Fla. Jan. 3, 2012) (D.E. 85, at 131:23-132:3).**

**Defendants' Objection:**

Defendants object to Plaintiff's proposed addition. This is a civil enforcement case, and there is no basis for the plaintiff to discuss the rules applicable to a criminal case. Raising a different burden of proof only to draw a distinction with the burden here would confuse the jury.

**3.9 Election of Foreperson Explanation of Verdict Form**

When you get to the jury room, choose one of your members to act as foreperson.  The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room.  When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it.  Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer.  The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom.  Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response.  But I caution you not to tell me how many jurors have voted one way or the other at that time.  That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

**Eleventh Circuit Pattern Instruction, Agreed.**

**The Commission's Claims**

In this case, the SEC brings fourteen (14) claims, or counts. Count I is brought under Section 15(c)(2) and Rule 15c2-11 of the Exchange Act against Spartan. Count II is brought against Dilley, Eldred, and Lopez for aiding and abetting Spartan's violations of Section 15(c)(2) and Rule 15c2-11 of the Exchange Act. Counts III and IV are brought under Sections 17(a)(1) and 17(a)(3), respectively, of the Securities Act of 1933 against Spartan, Island, Dilley, and Eldred. Counts V, VI, and VII are brought under Section 10(b) of the Exchange Act and Exchange Act Rules 10b-5(a), 10b-5(b), and 10b-5(c) against Spartan, Island, Dilley, and Eldred. Counts VIII, IX, and X are brought against Spartan, Island, Dilley, and Eldred for aiding and abetting violations of  Section 17(a)(1), (2), and (3) of the Securities Act of 1933 by Alvin Mirman ("Mirman"), Sheldon Rose ("Rose"), Michael Daniels ("Daniels"), Andy Fan ("Fan"), or Diane Harrison ("Harrison").  Counts XI, XII, and XIII are brought against Spartan, Island, Dilley, and Eldred for aiding and abetting violations of Section 10(b) and Rule 10b-5(a), (b), and (c) of the Exchange Act by Mirman, Rose, Daniels, Fan, or Harrison.  Count XIV is brought against Spartan, Island, and Dilley under Sections 5(a) and 5(c) of the Securities Act of 1933.

If you find the SEC has proved one or more of its claims against one or more of the Defendants, I alone will determine the remedy or remedies to impose at a later date.

**Section 15(c)(2) and Rule 15c2-11 of the Securities and Exchange Act of 1934**

In **<u>Count I</u>**, the SEC claims that Spartan violated Section 15(c)(2) and Rule 15c2-11 of the Securities and Exchange Act of 1934.  The Exchange Act is a federal statute that allows the SEC to enact rules and regulations prohibiting certain conduct in the purchase or sale of securities.

Section 15(c)(2)(A) of the Exchange Act prohibits broker-dealers from inducing or attempting to induce the purchase or sale of any security by means of any fraudulent, deceptive, or manipulative act or practice, or making any fictitious quotation.  Section 15(c)(2)(D) authorizes the SEC to ". . . by rules and regulations define, and prescribe means reasonably designed to prevent, such acts or practices as are fraudulent, deceptive, or manipulative and such quotations as are fictitious."

Pursuant to this authorization, the SEC adopted Rule 15c2-11, which requires broker-dealers to not only review specified information about an issuer but also to have a reasonable basis under the circumstances for believing that certain issuer information is accurate in all material respects and that its source is reliable prior to initiating quotations for securities in a quotation medium other than a national securities exchange such as the over the counter ("OTC") market.  Specifically, Rule 15c2-11 requires broker-dealers, before initiating a quoted market in an issuer's security, to obtain the documents and information required by paragraph (a) (referred to as "paragraph (a) information"), such as the issuer's Form S-1 registration

statement or any periodic reports, as applicable.  The broker-dealer must then review that information, plus "any other material information (including adverse information) regarding the issuer" in its knowledge or possession, as required by paragraph (b).  The broker-dealer must review the required information "in the context of all other information about the issuer in its knowledge or possession." Finally, the broker-dealer must have a reasonable basis under the circumstances for believing that the paragraph (a) information is accurate in all material respects and that its source is reliable.  In determining whether Spartan had a reasonable basis for believing that the required information was accurate in all material respects and came from a reliable source, you can consider whether the broker-dealer was aware of any "red flags," such as material inconsistencies between the information in the Forms S-1 registration statement and any other information in the broker-dealer's knowledge or possession and what steps it took to address those inconsistencies.

To prove a claim under Section 15(c)(2) and Rule 15c2-11 of the Securities and Exchange Act of 1934, the SEC must prove each of the following facts by a preponderance of the evidence:

(i) Spartan was a broker or dealer and (ii) published a quotation for a security or, directly or indirectly, submitted a quotation for publication, in any quotation medium (iii) without having a reasonable basis under the circumstances for believing that the paragraph (a) information was accurate in all material respects and that the sources

of that information were reliable after reviewing such information together with any other documents and information required by paragraph (b), including any adverse information.

To determine whether Spartan violated Section 15(c)(2) and Rule 15c2-11, you must determine whether any one or more of its employees or agents committed a violation while acting within the scope of his employment. This includes Carl E. Dilley, Micah J. Eldred, and David D. Lopez as principals of Spartan.

**There is no Eleventh Circuit pattern instruction.**

**Section 15(c)(2) of the Exchange Act, 15 U.S.C. 78o(c)(2) and Rule 15c2-11, 17 C.F.R. 240.15c2-11;  Securities Exchange Act Release No. 34-29094, 1991 WL 292186 (April 17, 1991) (the "1991 Adopting Release"); Publication or Submission of Quotations Without Specified Information, Exch. Act Rel. No. 41110, 64 FR 11124, 11149 (Mar. 8, 1999); Plaintiff proposed.**

**Defendants' Objections**

**1. Plaintiff's discussion of "red flags" is misleading and without legal basis. Defendants specifically object to the following proposed language:**

"In determining whether Spartan had a reasonable basis for believing that the required information was accurate in all material respects and came from a reliable source, you can consider whether the broker-dealer was aware of any "red flags," such as material inconsistencies between the information in the Forms S-1 registration statement and any other information in the broker-dealer's knowledge or possession and what steps it took to address those inconsistencies." This language is not found in the language of the underlying statute, rule or any relevant case law.

Indeed, Rule 15c2-11 does not use the term "red flag," nor does it speak at all of any purported duty to dispel. *See* 17 C.F.R. § 240.15c2-11.  The term "red flag" without statutory basis is prejudicial. SEC's proposed language seems to be from Commission "guidance" advising regulated entities about things they "may wish" to consider in applying the rule. *See id.* (Preliminary Note). But the Commission has never suggested that this "guidance" imposes any legal obligation on regulated entities, and has, instead, specifically advised the public that its "guidance" would "not appear in the Code of Federal Regulations." *Publ'n or Submission of Quotations Without Specified Information*, SEC Release No. 34-41110, 64 FR 11124, 11145 (proposed Mar. 8, 1999). The Commission has recognized what Plaintiff has not, guidance documents lack force of law and are non-binding. *See Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) ("[I]nterpretations contained in policy statements, agency manuals, and enforcement guidelines, all … lack the force of law[.]"). It would be improper to present Commission guidance as imposing a legal obligation onto Defendants.

Additionally, Plaintiff's discussion of specific examples of what it considers to be "red flags," is prejudicial. SEC guidance does not discuss "material inconsistencies between the information in the Forms S-1 registration statement," yet Plaintiff's theory in this case seems to revolve around its belief that such

inconsistencies existed and prompted further action by Defendants. It is prejudicial to instruct the jury that Plaintiff's theory of the case is the law, when it is not.

**2. Defendants object to Plaintiff's misleading instruction concerning an essential element of the alleged violation. Defendants specifically object to the following language:**

"To determine whether Spartan violated Section 15(c)(2) and Rule 15c2-11, you must determine whether any one or more of its employees or agents committed a violation while acting within the scope of his employment.  This includes Carl E. Dilley, Micah J. Eldred, and David D. Lopez as principals of Spartan."

Rule 15c2-11 provides that "it shall be unlawful for a broker or dealer" to violate the other elements of the rule. 17 C.F.R. § 240.15c2-11(a). Whether a defendant was a "broker or dealer" is an essential element of the charged violation that must be decided by a jury. Plaintiff, however, proposes to instruct the jury that Defendants Dilley, Eldred and Lopez were "include[d]" in this definition. That instruction improperly instructs the jury to find an element of the charge without evidence.

**DEFENDANTS' PROPOSED INSTRUCTIONS**

The Securities and Exchange Commission, also known as the SEC, asserts a claim under Rule 15c2-11 of the Securities Exchange Act of 1934.

Rule 15c2-11 requires a broker or dealer of securities to acquire specific information before it may publish any quotation for a security in a quotation medium.

To succeed on its claim that Spartan violated Rule 15c2-11 the SEC must prove each of the following three elements by a preponderance of the evidence:

1. The defendant was a broker or dealer;

2. The defendant directly or indirectly submitted or published a quotation for a security in a quotation medium; and

3. The defendant either:

a. Failed to have in its records specified information concerning the security; or

b. Based upon a review of the documents and specified information in its records, such broker or dealer lacked a reasonable basis under the circumstances for believing that:

(1) The documents and information were accurate in all material respects; and

(2) The sources of the documents and information were reliable.[1]

[It is not disputed that the defendants had the specified information concerning the security in its records]. [The "specified information" required by the rule is:

---

[1] 17 C.F.R. § 240.15c2-11(a).

1. A copy of the issuer's prospectus if the issuer has filed a registration statement with the SEC, unless the registration statement became effective less than 90 days prior to the publication in a quotation medium;

2. Any required annual reports of the issuer filed with the SEC;

3. The name of the issuer and any predecessors during the past five years;

4. The address(es) of the issuer's principal executive office and of its principal place of business;

5. The state of incorporation or registration of the issuer and of each of its predecessors (if any) during the past five years;

6. The title, class, and ticker symbol (if assigned) of the security;

7. The par or stated value of the security;

8. The number of shares or total amount of the securities outstanding as of the end of the issuer's most recent fiscal year;

9. The name and address of the transfer agent;

10. A description of the issuer's business;

11. A description of products or services offered by the issuer;

12. A description and extent of the issuer's facilities;

13. The name and title of all company insiders;

14. The issuer's most recent balance sheet (as of a date less than 16 months before the publication or submission of the quotation) and profit and loss and

retained earnings statements (for the 12 months preceding the date of the most recent balance sheet);

15. Similar financial information for such part of the two preceding fiscal years as the issuer or its predecessors has been in existence;

16. Whether the broker or dealer or any associated person of the broker or dealer is affiliated, directly or indirectly, with the issuer;

17. Whether the quotation is being published or submitted on behalf of any other broker or dealer and, if so, the name of such broker or dealer; and

18. Whether the quotation is being submitted or published, directly or indirectly, by or on behalf of the issuer or a company insider and, if so, the name of such person and the basis for any exemption under the federal securities laws for any sales of such securities on behalf of such person.][2]

For documents gathered by the broker-dealer, if such information is made available to others upon request pursuant to this paragraph, such delivery, unless otherwise represented, shall not constitute a representation by such broker or dealer that such information is accurate, but shall constitute a representation that the broker or dealer has a reasonable basis under the circumstances for believing the information is accurate in all material respects, and that the information was obtained

---

[2] 17 C.F.R. § 240.15c2-11(b).

from sources which the broker or dealer has a reasonable basis for believing are reliable.[3]

The obligations established by this rule do not require a broker or dealer to conduct any independent 'due diligence' investigation concerning the issuer or its business operations and financial condition such as the investigation expected to be conducted by an underwriter.[4]

A broker or dealer also need not have any relationship with the issuer of the security. The Rule does not demand that the market-maker develop such a relationship in order to obtain information about the issuer.[5]

Information may be provided to a broker or dealer by the issuer of the securities or its agents, including its officers and directors, attorney, or accountant would normally satisfy the Rule's requirements regarding reliability of the information's source.[6]

---

[3] 17 C.F.R. § 240.15c2-11(b)(5)(ii).

[4] *Publ'n or Submission of Quotations Without Specified Info.*, S.E.C. Release No. 87115, 2019 WL 4738051, at *68 (Sept. 25, 2019).

[5] *Initiation or Resumption of Quotations Without Specified Info.*, SEC Release No. 29094, 1991 WL 292186, at *6 (Apr. 17, 1991).

[6] Id. at *4.

Because documents filed with the SEC are subject to liability provisions, a broker-dealer generally can reach a reasonable belief as to the accuracy of information contained in these documents.[7]

**Plaintiff's Response to Defendants' Objection and Proposed Instruction**

Defendants' proposed instruction contorts the requirements of the Rule and attempts to infuse language from a recent amendment to the Rule, which has no application to this case. Defendants rely upon guidance for a proposed rule change from 2019, several years *after* the actions in this case, and thus entirely irrelevant to this case.

Additionally, on one hand, the Defendants complain that any mention of SEC guidance is inappropriate as "non-binding" authority, while on the other hand, they cite bits and pieces of the very same SEC guidance in their own proposed instruction. Throughout Defendants' proposed instruction they cherry-pick language from the 1991 Adopting Release, and others, without capturing the complete text and thus misrepresent the requirements of the Rule. As just one example, Defendants propose to include the following paraphrased language from the 1991 Adopting Release: "[i]nformation may be provided to a broker or dealer by the issuer of the securities or its agents, including its officers and directors, attorney, or accountant would

---

[7] *Publ'n or Submission of Quotations Without Specified Information*, SEC Release No. 34-41110, 64 FR 11124, 11148 (March 8, 1999).

normally satisfy the Rule's requirement regarding reliability of the information's source", but remarkably omit the preceding text which goes to the crux of this case *"In the absence of any 'red flag' (i.e., information that under the circumstances reasonably indicates that the source is unreliable)."* In any event, this language is not relevant to this case as the undisclosed control people were neither officers, directors, attorneys, nor accountants for the issuers.

**Aided and abetted Spartan's violations of Section 15(c)(2) and Rule 15c2-11 of the Exchange Act.**

In **Count II**, the SEC claims that Carl E. Dilley, Micah J. Eldred, and David D. Lopez aided and abetted Spartan's violations of Section 15(c)(2) and Rule 15c2-11 of the Exchange Act.

Dilley, Eldred, and Lopez may be liable for these violations – even if they personally did not commit the violations – if you find that they aided and abetted someone else (such as Spartan) who committed the violations.

To prove this claim, the SEC must prove each of the following facts by a preponderance of the evidence:

First, you must find that, Spartan s violated Section 15(c)(2) and Rule 15c2-11 of the Exchange Act;

Second, you must find that Dilley, Eldred, and Lopez were aware that they were part of an overall activity that was improper; and

Third, you must find that Dilley, Eldred, and Lopez knowingly and substantially assisted Spartan's violations of Section 15(c)(2) and Rule 15c2-11 of the Exchange Act.

The first element requires the SEC to prove that Spartan violated Section 15(c)(2) and Rule 15c2-11 of the Exchange Act.  The SEC's allegations in this count

are identical to its allegations against Spartan in Count I.  Therefore, your decision on Count I as to Spartan will determine your decision as to Spartan in this Count.

The second element requires the SEC to prove that Dilley, Eldred, and Lopez were aware that they were part of an overall activity that was improper.  To prove awareness, the SEC must prove that Dilley, Eldred, and Lopez knew or were severely reckless in not knowing that they were part of an overall improper activity.

For the purposes of this Count, the term "knowingly" means that Dilley, Eldred, and Lopez acted with the intent to participate in an overall improper activity.  A person does not act knowingly if he acted inadvertently, carelessly, or by mistake.

For the purposes of this Count, to act with "severe recklessness" means to engage in conduct that involves an extreme departure from the standard of ordinary care.  A person acts with reckless disregard if it is obvious that an ordinary person under the circumstances would have realized that he was participating in an overall improper activity.  This can be shown by red flags, suspicious events creating reasons for doubt, or a danger so obvious that the person must have been aware of the danger of violations.

The SEC may prove any of the Defendants acted knowingly or recklessly by proving, by a preponderance of the evidence, that a Defendant deliberately closed his eyes to what would otherwise have been obvious to him.  No one can avoid liability under the securities laws by deliberately ignoring what is obvious.  If a

Defendant has his suspicion aroused but then deliberately omits to make further inquiries, because he wishes to remain in ignorance, he is deemed to have knowledge.  You may infer knowledge of the existence of a fact if a Defendant (1) subjectively believed that there is a high probability that a fact exists and (2) took deliberate actions to avoid learning that fact.  If you find by a preponderance of the evidence that a Defendant intentionally avoided knowledge or enlightenment, you may find that Defendant acted knowingly or recklessly.

As to the third element, the term "substantial assistance" means that, when based upon all of the circumstances surrounding the conduct in question, Dilley, Eldred, and Lopez's actions were a substantial causal factor in bringing about Spartan's violations of Section 15(c)(2) and Rule 15c2-11 need not have known the specific violations that those persons intended to commit.  It is sufficient if Dilley, Eldred, and Lopez were aware that one of a number of violations would probably be committed, and one of those violations was in fact committed.

**There is no Eleventh Circuit pattern instruction.**

***SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 800, 803-804 (11th Cir. 2015); *SEC v. Goble*, 682 F.3d 934, 947 (11th Cir. 2012); *Howard v. SEC*, 376 F.3d 1136, 1143 (D.C. Cir. 2004); *SEC v. City of Miami*, Case No. 13-22600-CIV-Altonaga, Court's Instructions to the Jury, DE 238, September 13, 2016, Plaintiff proposed.**

**Defendants' Objection:**

Defendants do not object to the basics of Plaintiff's proposed instructions. However, Defendants object to additional proposed instructions that editorialize on the elements of the offense.

### 1. Defendants object to the following proposed language:

"A person acts with reckless disregard if it is obvious that an ordinary person under the circumstances would have realized that he was participating in an overall improper activity.   This can be shown by red flags, suspicious events creating reasons for doubt, or a danger so obvious that the person must have been aware of the danger of violations."

This instruction is not found in any statute or rule. Instead, it constitutes an argument concerning Plaintiff's theory of liability—i.e. the presence of "red flags." As discussed above, "red flags" are not a legal concept that has any relevance to Rule 15c2-11. It is prejudicial and has a tendency to inflame the jury. To the extent that Plaintiff wishes to argue that factors should have demonstrated knowledge on the part of Defendants it may so argue to the jury. It would be improper, however, for this Court to instruct the jury to consider Plaintiff's theory of liability in this instruction.

Plaintiff's reliance on *Howard v. SEC*, 376 F.3d 1136, 1143 (D.C. Cir. 2004) does not support its instruction. *Howard* set the relevant legal standard on appeal for

the D.C. Circuit for severe recklessness, or, as the Court put it, "extreme recklessness." However, the Eleventh Circuit pattern instruction appropriately follows *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 800, 803-804 (11th Cir. 2015), which is binding precedent in this jurisdiction. There is no need to revise the Eleventh Circuit's statement of the law in favor of out-of-circuit descriptions that are not applicable here.

Finally, Plaintiff's reference to *SEC v. City of Miami*, Case No. 13-22600-CIV-Altonaga, Court's Instructions to the Jury, DE 238, September 13, 2016, does not support its proposed instructions. While the district court in that case did instruct the jury with an expanded version of the severe recklessness standard, that does not mean that this Court *should*, or has any reason to, depart from the pattern jury instructions.

### 2. Defendants object to the following proposed language:

"The SEC may prove any of the Defendants acted knowingly or recklessly by proving, by a preponderance of the evidence, that a Defendant deliberately closed his eyes to what would otherwise have been obvious to him.  No one can avoid liability under the securities laws by deliberately ignoring what is obvious.  If a Defendant has his suspicion aroused but then deliberately omits to make further inquiries, because he wishes to remain in ignorance, he is deemed to have knowledge.  You may infer knowledge of the existence of a fact if a Defendant (1)

subjectively believed that there is a high probability that a fact exists and (2) took deliberate actions to avoid learning that fact.  If you find by a preponderance of the evidence that a Defendant intentionally avoided knowledge or enlightenment, you may find that Defendant acted knowingly or recklessly." This so called "ostrich instruction" is to be sparingly used and only under proper proof.[8]

Plaintiff has not supported this proposed instruction with any statute, rule or case law that suggests that this instruction should be applicable to the facts at issue here. There is no suggestion that any Defendant "deliberately closed his eyes" to any fact at issue. There is therefore no basis to include this instruction. However, the instruction would be confusing to the jury if included, as it provides irrelevant and confusing explanation of the relevant scienter requirement.

Further Plaintiff's reference to *SEC v. City of Miami*, Case No. 13-22600-CIV-Altonaga, Court's Instructions to the Jury, DE 238, September 13, 2016, does not support its proposed instructions. In that case a different district court gave a modified aiding and abetting instruction but did not include Plaintiff's proposed deliberate ignorance instruction.

---

[8] *See United States v. Lee*, 966 F.3d 310, 323-326 (5th Cir. 2020) (warning of overuse of instruction in criminal context).

### 3. Defendants object to the following proposed language:

"[Defendants] need not have known the specific violations that those persons intended to commit.  It is sufficient if Dilley, Eldred, and Lopez were aware that one of a number of violations would probably be committed, and one of those violations was in fact committed."

Plaintiff has not supported this proposed instruction with any statute, rule or case law. Additionally, there is no need for Plaintiff to provide additional explanation for what is not encompassed by the required elements of the charged violation. Instead, the element's language is clear, and a jury would only be confused by Plaintiff's proposed addition.

**Sections 17(a)(1) and 17(a)(3) of the Securities Act of 1933**

In **Counts III and Count IV**, the SEC claims that Spartan, Island, Dilley, and Eldred violated Sections 17(a)(1) and 17(a)(3), respectively, of the Securities Act of 1933.  The Securities Act is a federal statute prohibiting certain conduct in the offer or sale of securities.  Section 17(a)(1) makes it unlawful for a person to employ any device, scheme, or artifice to defraud in connection with the offer or sale of any security.  Section 17(a)(3) makes it unlawful for a person, in connection with the offer or sale of a security, to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

A "security" is an investment in a commercial, financial, or other business enterprise with the expectation that profits or other gain will be produced by others.  Some common types of securities are stocks, bonds, debentures, warrants, and investment contracts.  [The stock of the companies at issue in this case are securities.]

**1.  Section 17(a)(1)**

To prove a claim under Section 17(a)(1) of the Securities Act, the SEC must prove each of the following facts by a preponderance of the evidence:

First, you must find that Spartan, Island, Dilley, or Eldred used an instrumentality of interstate commerce in connection with the offer to sell or sale of a security.

Second, you must find that Spartan, Island, Dilley, or Eldred used a device, scheme, or artifice to defraud someone in connection with the offer to sell or sale of a security.

And third, you must find that Spartan, Island, Dilley, or Eldred acted knowingly or with severe recklessness.

Now I'll provide you with some additional instructions to help you as you consider the facts the SEC must prove.

For the first element – that an instrumentality of interstate commerce was used in connection with the offer to sell or sale of a security – you must use these definitions:

"Instrumentality of interstate commerce" means the use of the mails, telephone, Internet, or some other form of electronic communication, an interstate delivery system such as Federal Express or UPS or a facility of a national securities exchange such as the New York Stock Exchange or NASDAQ or an inter-dealer electronic-quotation-and-trading system in the over-the-counter securities market. It's not necessary that the facility of a national securities exchange was the means by which Spartan, Island, Dilley, or Eldred used a device, scheme, or artifice to defraud someone.  It's only necessary that the facility was used in some phase of the transaction.

The terms "sale" or "sell" mean the transfer of a security for value.  This includes the contract for sale for value or any other disposition for value of a security or interest in a security.  An "offer," "offer to sell," or "offer for sale" means attempting to dispose of a security or an interest in a security for value by inviting buyers.

For the second element, the SEC must prove that Spartan, Island, Dilley, or Eldred used a device, scheme, or artifice to defraud in the offer to sell or sale of a security.  The SEC does not need to identify any particular offer to sell or sale of securities by a specific person, including Spartan, Island, Dilley, or Eldred.  Rather, it's enough if the SEC proves that the device, scheme, or artifice to defraud Spartan, Island, Dilley, or Eldred used or employed involved, or touched in any way, the offer to sell or sale of securities.

A "scheme" is a design or plan formed to accomplish some purpose.  A "device," when used in an unfavorable sense, is a "trick" or "fraud."  Put another way, the term "device, scheme, or artifice to defraud" would refer to any plan or course of action that involves (1) false or fraudulent pretenses, (2) untrue statements of material facts, (3) omissions of material facts, or (4) representations, promises, and patterns of conduct calculated to deceive.

A "misrepresentation" is a statement that is not true.  An "omission" is the failure to state facts that would be necessary to make the statements made by the Defendants not misleading to the Plaintiff.

A misstatement or omission of fact is "material" if there is a substantial likelihood that a reasonable investor would attach importance to the misrepresented or omitted fact in determining his course of action.  Put another way, there must be a substantial likelihood that a reasonable investor would view the misstated or omitted fact's disclosure as significantly altering the total mix of available information.  A minor or trivial detail is not a "material fact."

For the third element, the SEC must prove that Spartan, Island, Dilley, or Eldred acted knowingly or with severe recklessness.  The term "knowingly" means that Spartan, Island, Dilley, or Eldred acted with an intent to deceive, manipulate, or defraud.  But Spartan, Island, Dilley, or Eldred didn't act knowingly if they acted inadvertently, carelessly, or by mistake.

To act with "severe recklessness" means to engage in conduct that involves an extreme departure from the standard of ordinary care.  A person acts with reckless disregard if it's obvious that an ordinary person under the circumstances would have realized the danger and taken care to avoid the harm likely to follow.

**The SEC may prove any of the Defendants acted knowingly or recklessly by proving, by a preponderance of the evidence, that a Defendant deliberately**

**closed his eyes to what would otherwise have been obvious to him. No one can avoid liability under the securities laws by deliberately ignoring what is obvious. If a Defendant has his suspicion aroused but then deliberately omits to make further inquiries, because he wishes to remain in ignorance, he is deemed to have knowledge. You may infer knowledge of the existence of a fact if a Defendant (1) subjectively believed that there is a high probability that a fact exists and (2) took deliberate actions to avoid learning that fact. If you find by a preponderance of the evidence that a Defendant intentionally avoided knowledge or enlightenment, you may find that Defendant acted knowingly or recklessly.**

### 2. Section 17(a)(3)

To prove a claim under Section 17(a)(3), the SEC must prove each of the following facts by a preponderance of the evidence:

First, you must find that Spartan, Island, Dilley, or Eldred used an instrumentality of interstate commerce in connection with the offer to sell or sale of the security.

Second, you must find that Spartan, Island, Dilley, or Eldred engaged in a transaction, practice, or course of business, in connection with the offer to sell or sale of a security, that operated or would operate as a fraud or deceit upon a purchaser; and

Third, you must find that Spartan, Island, Dilley, or Eldred acted negligently.

Now I will provide you with some additional instructions to help you as you consider the facts the SEC must prove.

To prove its claim under Section 17(a)(3), the SEC must prove the Spartan, Island, Dilley, or Eldred engaged in any act, practice, or course of business, in connection with the offer to sell or sale of a security, that operated or would operate as a fraud or deceit upon the purchaser. The SEC does not need to identify any particular offer to sell or sale of securities by a specific person, including Spartan, Island, Dilley, or Eldred. Rather, it is enough if the SEC proves that the act, practice, or course of business that Spartan, Island, Dilley, or Eldred engaged in, involved, or touched in any way, the offer to sell or sale of securities.

A "fraud or deceit" means a lie or a trick. A fraud or deceit doesn't have to relate to an investment's quality or actually result in the purchase or sale of any security. It is not necessary that Spartan, Island, Dilley, or Eldred, who were allegedly involved in the fraud or deceit, sold or purchased securities personally if the fraudulent or deceitful conduct defrauded some person.

The term "would" in the phrase "would operate as a fraud or deceit" means that the act, practice, or course of business had the capacity to defraud a purchaser or seller. It's not necessary that the act, practice, or course of business actually defrauded someone.

For the third element as to Section 17(a)(3), the SEC must prove Spartan, Island, Dilley, or Eldred were negligent in in engaging in the act, practice, or course of business.  "Negligence" is the failure to exercise the due diligence, care, or competence that a reasonable person would when making representations or engaging in an act, practice, or course of business.  Ask yourself: Would a reasonable person have omitted or made the statements or engaged in the act, practice, or course of business?

**Eleventh Circuit Pattern Instruction for 17(a)(1), for Plaintiff's Proposed Addition *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 800, 803-804 (11th Cir. 2015).**

**There is no Eleventh Circuit pattern instruction for 17(a)(3); Plaintiff proposed; Securities Act Section 17(a)(3), 15 U.S.C. § 77q(a)(3); *SEC v. City of Miami*, Case No. 13-22600-CIV-Altonaga, Court's Instructions to the Jury, DE 238, September 13, 2016; and *SEC v. Levin*, Case No. 12-CV-21297-UU, Court's Instructions to Jury, DE 295, April 2, 2015.**

**Defendants' Objections:**

**1. Instruction for 17(a)(1)**

Defendants do not object to the use of the pattern jury instructions for Section 17(a)(1). Defendants do, however, object to Plaintiff's addition of the sentence, "The stock of the companies at issue in this case are securities." The Plaintiff must prove that there were unregistered transfers of securities and this language directs the jury to find one of those elements.

Defendants also object to Plaintiff's omission from the pattern instructions. The pattern instructions provide: "The SEC has alleged that the scheme or device [name of defendant] employed [describe the alleged scheme or device]." This instruction serves an obvious purpose of requiring the plaintiff to identify its theory of liability. Plaintiff has omitted this language, however, which would allow Plaintiff's theory of liability to shift throughout the trial. Moreover, without these specific allegations the jury can reach a verdict without unanimously agreeing about what conduct occurred.

Indeed, while Plaintiff references to *SEC v. City of Miami*, Case No. 13-22600-CIV-Altonaga, Court's Instructions to the Jury, DE 238, September 13, 2016, throughout its proposed instructions, those instructions are instructive for Plaintiff's omissions here. In that case the Court plainly instructed the jury as to what Plaintiff's theory was, and, more specifically, "the misrepresentations alleged by the SEC" in an itemized list, and a description of the "scheme or device to defraud" used by the defendants in that case. *See SEC v. City of Miami*, Case No. 13-22600-CIV-Altonaga, Court's Instructions to the Jury, DE 238, at 6.

Defendants also object to the proposed additions concerning deliberate ignorance. Plaintiff has not supported this proposed instruction with any statute, rule or case law. Plaintiff's reference to *SEC v. City of Miami*, Case No. 13-22600-CIV-Altonaga, Court's Instructions to the Jury, DE 238, September 13, 2016, does not

support its proposed instructions. In that case a different district court gave a modified aiding and abetting instruction but did not include Plaintiff's proposed deliberate ignorance instruction. In addition, there is no suggestion that any Defendant "deliberately closed his eyes" to any fact at issue. There is therefore no basis to include this instruction. However, the instruction would be confusing to the jury if included, as it provides irrelevant and confusing explanation of the relevant scienter requirement.

## 2. Instructions for 17(a)(3)

**Defendants object to Plaintiff's proposed instructions for Section 17(a)(3).** First, Plaintiffs have omitted an essential element of the offense. The Eleventh Circuit has held that "to show that the defendants violated section 17(a)(2) or *17(a)(3)*, the SEC [must] show (1) m*aterial misrepresentations or materially misleading omissions*, (2) in the offer or sale of securities, (3) made with negligence."[9] Indeed, this Court noted these essential elements of the alleged violation in its Order on the cross-motions to dismiss. *See* ECF no. 135 at 26 ("In contrast, claims under Section 17(a)(3) do not require a showing of scienter. Instead,

---

[9] *S.E.C. v. Merch. Capital, LLC*, 483 F.3d 747, 766 (11th Cir. 2007) (emphasis added); *see also S.E.C. v. Morgan Keegan & Co.*, 678 F.3d 1233, 1244 (11th Cir. 2012) ("[T]o establish a violation of § 17(a)(2) or 17(a)(3), the SEC must show (1) a material misrepresentation or materially misleading omission, (2) in the offer or sale of a security, (3) made with negligence.").

the SEC must allege: "(1) material misrepresentations or materially misleading omissions, (2) in the offer or sale of securities, (3) made with negligence."). Plaintiff has omitted this essential requirement that the statements be material. If this Court were to submit Plaintiff's proposed instruction, then any verdict would be tainted by reversible error.[10]

Plaintiff's reliance on *Malouf v. SEC*, 933 F.3d 1248, 1260 (10th Cir. 2019) is misplaced. Indeed, *Malouf*, which is not binding on this Court and cannot overrule the Eleventh Circuit, *never* held that Section 17(a)(3) lacks a materiality element. On the contrary, the Court sustained a violation of Section 17(a)(3) because the defendant "had failed to correct material misstatements, violating" "the Securities Act of 1933 § 17(a)(1) *and (3)*." *Id.* at 1259 (emphasis added). Materiality *is an essential element* of the alleged violation, and Plaintiff's attempts to avoid the law with its proposed instruction would create reversible error.   Indeed,   while Plaintiff references to *SEC v. City of Miami*, Case No. 13-22600-CIV-Altonaga, Court's Instructions to the Jury, DE 238, September 13, 2016, throughout its proposed instructions, those instructions are instructive for Plaintiff's omissions here. In that case the court instructed the jury that the defendant must make "directly or indirectly made one or more misrepresentations of material fact or omissions of

---

[10] *See Pate v. Seaboard R.R.*, 819 F.2d 1074, 1083 (11th Cir. 1987).

material fact in the offer to sell or sale of a security" or engage in a "fraud or deceit upon a purchaser" before they could find a Section 17(a)(3) violation. *See SEC v. City of Miami*, Case No. 13-22600-CIV-Altonaga, Court's Instructions to the Jury, DE 238, at 8-9.

**Defendants also object to the following language:**

"A 'fraud or deceit' means a lie or a trick. A fraud or deceit doesn't have to relate to an investment's quality or actually result in the purchase or sale of any security. It is not necessary that Spartan, Island, Dilley, or Eldred, who were allegedly involved in the fraud or deceit, sold or purchased securities personally if the fraudulent or deceitful conduct defrauded some person.

The term 'would' in the phrase 'would operate as a fraud or deceit' means that the act, practice, or course of business had the capacity to defraud a purchaser or seller. It's not necessary that the act, practice, or course of business actually defrauded someone."

Plaintiff has not submitted any statutory or regulations justifying inclusion of these statements concerning the scope of Section 17(a)(3). Instead, these statements appear to be arguments concerning how Plaintiff wishes the jury to apply the relevant elements of the offense. These statements would bias the jury because they appear to instruct the jurors to find elements of the offense on a lower showing than is required by the statutory scheme.

Plaintiff's reference to *SEC v. City of Miami*, Case No. 13-22600-CIV-Altonaga, Court's Instructions to the Jury, DE 238, September 13, 2016, does not support its proposed instructions. While the district court in that case did instruct the jury with an expanded instruction, that does not mean that this Court *should*, or has any reason to, depart from the pattern jury instructions.

**DEFENDANTS' PROPOSED INSTRUCTION FOR 17(a)(3)**

To prove a claim under Section 17(a)(3) of the Securities Act, the SEC must prove each of the following facts by a preponderance of the evidence:

First, you must find that Spartan, Island, Dilley, or Eldred used an instrumentality of interstate commerce in connection with the offer to sell or sale of a security.

Second, you must find that Spartan, Island, Dilley, or Eldred engaged in a transaction, practice, or course of business, in connection with the offer to sell or sale of a security, that operated or would operate as a fraud or deceit upon a purchaser;

Third, that Spartan, Island, Dilley, or Eldred made materially misleading statements or material omissions in connection with the offer to sell or sale of a security; and

Fourth you must find that Spartan, Island, Dilley, or Eldred acted negligently.

Now I'll provide you with some additional instructions to help you as you consider the facts the SEC must prove.

For the first element – that an instrumentality of interstate commerce was used in connection with the offer to sell or sale of a security – you must use these definitions:

"Instrumentality of interstate commerce" means the use of the mails, telephone, Internet, or some other form of electronic communication, an interstate delivery system such as Federal Express or UPS or a facility of a national securities exchange such as the New York Stock Exchange or NASDAQ or an inter-dealer electronic-quotation-and-trading system in the over-the-counter securities market. It's not necessary that the facility of a national securities exchange was the means by which Spartan, Island, Dilley, or Eldred used a device, scheme, or artifice to defraud someone. It's only necessary that the facility was used in some phase of the transaction.

The terms "sale" or "sell" mean the transfer of a security for value. This includes the contract for sale for value or any other disposition for value of a security or interest in a security. An "offer," "offer to sell," or "offer for sale" means attempting to dispose of a security or an interest in a security for value by inviting buyers.

For the second element, the SEC must prove that Spartan, Island, Dilley, or Eldred engaged in any act, practice, or course of business, in connection with the offer to sell or sale of a security, that operated or would operate as a fraud or deceit upon the purchaser. A "fraud or deceit" means a lie or a trick. The term "would" in the phrase "would operate as a fraud or deceit" means that the act, practice, or course of business had the capacity to defraud a purchaser or seller.

The SEC has alleged that the practice or course of business [name of defendant] employed [describe the alleged scheme or device].

For the third element, the SEC must prove that Spartan, Island, Dilley or Eldred actions involved material misrepresentations or omissions. A "misrepresentation" is a statement that is not true. An "omission" is the failure to state facts that would be necessary to make the statements made by the Defendants not misleading to the Plaintiff.

A misstatement or omission of fact is "material" if there is a substantial likelihood that a reasonable investor would attach importance to the misrepresented or omitted fact in determining his course of action. Put another way, there must be a substantial likelihood that a reasonable investor would view the misstated or omitted fact's disclosure as significantly altering the total mix of available information. A minor or trivial detail is not a "material fact."

For the third element, the SEC must prove that Spartan, Island, Dilley or Eldred was negligent in engaging in an act, practice, or course of business involving materially false or misleading statements or omissions in connection with the offer to sell or sale of a security. "Negligence" is the failure to exercise the due diligence, care, or competence that a reasonable person would when making representations, or failing to disclose facts, in the proxy solicitation. Ask yourself: Would a reasonable person have engaged in the act, practice or course of business?

**Plaintiff's Objection and Response to Defendants' Proposed Instruction**

Plaintiff has supported its proposed instructions with case law or cited to previously approved instructions.  Regarding Defendants' objection to the Section 17(a)(3) instructions, the SEC does not need to prove "material misrepresentations or materially misleading omissions."  *Malouf v. SEC*, 933 F.3d 1248, 1260 (10th Cir. 2019)(applying ruling in *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019) to Section 17(a)(3)).  Defendants' objection ignores this recent case law.

In **Counts VIII, IX, and X**, the SEC asserts that Spartan, Island, Dilley, and Eldred aided and abetted violations of Section 17(a)(1), (2), and (3) of the Securities Act of 1933 by Alvin Mirman ("Mirman"), Sheldon Rose ("Rose"), Michael Daniels ("Daniels"), Andy Fan ("Fan") or Diane Harrison ("Harrison").  Spartan, Island, Dilley, and Eldred may be liable for these violations – even if they personally did not commit the violations – if you find that they aided and abetted someone else who committed the violations.  To prove this claim, the SEC must prove each of the following facts by a preponderance of the evidence:

First, you must find that Mirman, Rose, Daniels, Fan, or Harrison violated Section 17(a)(1), (2), and (3) of the Securities Act;

Second, you must find that Spartan, Island, Dilley, or Eldred were aware that they were part of an overall activity that was improper; and

Third, you must find that Spartan, Island, Dilley, or Eldred knowingly and substantially assisted Mirman, Rose, Daniels, Fan, or Harrison's violations of Section 17(a)(1), (2), and (3) of the Securities Act.

You should use the instructions and definitions on aiding and abetting that I gave you in Count II and knowingly that I gave you in Count III.

To determine whether Mirman, Rose, Daniels, Fan, or Harrison violated Section 17(a)(1), you should use the elements and definitions I gave you in Count III.

To determine whether Mirman, Rose, Daniels, Fan, or Harrison violated Section 17(a)(2), you should use the following instructions: Section 17(a)(2) makes it unlawful for a person to obtain money or property using any untrue statement of a material fact or by omitting any material fact necessary to make statements, in light of the circumstances under which they were made, not misleading in connection with the offer to sell or sale of a security. The SEC must prove that Mirman, Rose, Daniels, Fan, or Harrison made a misrepresentation of material fact or an omission of material fact. The SEC must also prove that Mirman, Rose, Daniels, Fan, or Harrison were negligent in making the representation or omission. The same definitions of the terms "misrepresentation," "omission," and "material" that I gave you in Count III apply here. The same definition of the term "negligent" that I gave you in Count IV applies here. To find for the SEC, you need only find that Mirman, Rose, Daniels, Fan, or Harrison obtained money or property by means of any one of the misrepresentations or omissions. You need not find that Mirman, Rose, Daniels, Fan, or Harrison obtained money or property by means of all of the misrepresentations or omissions.

To determine whether Mirman, Rose, Daniels, Fan, or Harrison violated Section 17(a)(3), you should use the elements I gave you in Count IV.

**There is no Eleventh Circuit pattern instruction.**
*SEC v. Big Apple Consulting USA, Inc.*, **783 F.3d 786, 800 (11**[th] **Cir. 2015);** *SEC v. Goble*, **682 F.3d 934, 947 (11**[th] **Cir. 2012) ;** *SEC v. City of Miami*, **Case No. 13-**

**22600-CIV-Altonaga, Court's Instructions to the Jury, DE 238, September 13, 2016, Plaintiff proposed.**

**Defendant's Objection:**

Defendants first object to Plaintiff's omission of the specific misstatements or schemes it alleges were committed by Mirman, Rose, Harrison, Daniels or Fan from the instructions to the jury. While Plaintiff references to *SEC v. City of Miami*, Case No. 13-22600-CIV-Altonaga, Court's Instructions to the Jury, DE 238, September 13, 2016, throughout its proposed instructions, those instructions are instructive for Plaintiff's omissions here. In that case the Court instructed the jury as to what Plaintiff's theory was, and, more specifically, "the misrepresentations alleged by the SEC" in an itemized list, and a description of the "scheme or device to defraud" used by the defendants in that case, and then for the relevant aiding and abetting count, referenced the facts set out in the primary counts. *See SEC v. City of Miami*, Case No. 13-22600-CIV-Altonaga, Court's Instructions to the Jury, DE 238, at 6, 12.

**Defendant's object to the following language:**

"To determine whether Mirman, Rose, Daniels, Fan, or Harrison violated Section 17(a)(2), you should use the following instructions: Section 17(a)(2) makes it unlawful for a person to obtain money or property using any untrue statement of a material fact or by omitting any material fact necessary to make statements, in light

of the circumstances under which they were made, not misleading in connection with the offer to sell or sale of a security.  The SEC must prove that Mirman, Rose, Daniels, Fan, or Harrison made a misrepresentation of material fact or an omission of material fact.  The SEC must also prove that Mirman, Rose, Daniels, Fan, or Harrison were negligent in making the representation or omission.  The same definitions of the terms "misrepresentation," "omission," and "material" that I gave you in Count III apply here.  The same definition of the term "negligent" that I gave you in Count IV applies here.  To find for the SEC, you need only find that Mirman, Rose, Daniels, Fan, or Harrison obtained money or property by means of any one of the misrepresentations or omissions.  You need not find that Mirman, Rose, Daniels, Fan, or Harrison obtained money or property by means of all of the misrepresentations or omissions."

First, this is an abbreviation of the relevant pattern instructions for the underlying violations of Section 17(a)(2) that the SEC must prove. Defendants request the full pattern instruction be given, which is as follows:

"To prove a claim under Securities Act § 17(a)(2), the SEC must prove each of the following facts by a preponderance of the evidence:

First, you must find that Mirman, Rose, Daniels, Fan, or Harrison used an instrumentality of interstate commerce in connection with the offer to sell or sale of a security.

Second, you must find that Mirman, Rose, Daniels, Fan, or Harrison directly or indirectly made one or more misrepresentations of material fact or omissions of material fact in the offer to sell or sale of a security.

And third, you must find that Mirman, Rose, Daniels, Fan, or Harrison was negligent in making the representation.

Now I'll provide you with some additional instructions to help you as you consider the facts the SEC must prove. For the first element – that an instrumentality of interstate commerce was used in connection with the offer to sell or sale of a security – you must use these definitions:

'Instrumentality of interstate commerce' means the use of the mails, telephone, Internet, or some other form of electronic communication, or an interstate delivery system such as Federal Express or UPS , or a facility of a national securities exchange such as the New York Stock Exchange or NASDAQ or an inter-dealer electronic-quotation-and-trading system in the over-the counter-securities market. It's not necessary that the misrepresentation or omission of material fact actually was transmitted using an instrumentality of interstate commerce. It is enough if the interstate-commerce instrumentality was used in some phase of the transaction.

The terms 'sale' or 'sell' mean the transfer of a security for value. This includes the transfer of a contract of sale for value or any other disposition for value of a security or interest in a security. An 'offer,' 'offer to sell,' or 'offer for sale'

means attempting to dispose of a security or an interest in a security for value by inviting buyers.

For the second element, the SEC must prove that someone made a misrepresentation of material fact or an omission of material fact.

The SEC claims that Mirman, Rose, Daniels, Fan, or Harrison is responsible for the following misrepresentations of fact [or omissions]: [Describe the alleged misrepresentations or omissions claimed to have been fraudulently made.]

A 'misrepresentation' is a statement that is not true. An 'omission' is the failure to state facts that would be necessary to make the statements made by the Defendants not misleading to the SEC. A misstatement or omission of fact is 'material' if there is a substantial likelihood that a reasonable investor would attach importance to the misrepresented or omitted fact in determining his course of action. Put another way, there must be a substantial likelihood that a reasonable investor would view the misstated or omitted fact's disclosure as significantly altering the total mix of available information. A minor or trivial detail is not a 'material fact.'

If Mirman, Rose, Daniels, Fan, or Harrison have made false or inaccurate statements regarding material facts before, such as statements made in reports they filed with the Securities Exchange Commission, information they sent to investors, or statements they made in press releases, they have a duty to correct those

statements if it is discovered later that those statements weren't true when made and they remain material to a shareholder's investment decision.

For the third element, the SEC must prove that Mirman, Rose, Daniels, Fan, or Harrison was negligent in making materially false or misleading statements or omissions in connection with the offer to sell or sale of a security. 'Negligence' is the failure to exercise the due diligence, care, or competence that a reasonable person would when making representations, or failing to disclose facts, in the proxy solicitation. Ask yourself: Would a reasonable person have omitted or made the statements?"

Second, Defendants object to Plaintiff's proposed statements that "To find for the SEC, you need only find that Mirman, Rose, Daniels, Fan, or Harrison obtained money or property by means of any one of the misrepresentations or omissions.  You need not find that Mirman, Rose, Daniels, Fan, or Harrison obtained money or property by means of all of the misrepresentations or omissions." These statements are improper editorializing about Plaintiff's theory of liability. Plaintiff's reference to *SEC v. City of Miami*, Case No. 13-22600-CIV-Altonaga, Court's Instructions to the Jury, DE 238, September 13, 2016, does not support its proposed instructions. While the district court in that case did instruct the jury with an expanded instruction, that does not mean that this Court *should*, or has any reason to, depart from the pattern jury instructions.

**Section 10(b) of the Exchange Act and Exchange Act Rules 10b-5(a), 10b-5(b), and 10b-5(c)**

In **<u>Counts V, VI, and VII</u>**, the SEC claims that Spartan, Island, Dilley, and Eldred violated Section 10(b) of the Exchange Act and Exchange Act Rules 10b-5(a), 10b-5(b), and 10b-5(c). Rule 10b-5(a) makes it unlawful for a person to employ any device, scheme, or artifice to defraud someone else in connection with the purchase or sale of any security. Rule 10b-5(b) makes it unlawful for a person to commit a fraud in connection with the purchase or sale of a security. Rule 10b-5(c) makes it unlawful for a person to engage in any practice or course of dealing that would operate as a fraud in connection with the purchase or sale of any security.

The stock of the companies at issue in this case are securities.

The SEC may bring a civil action for a violation of Rule 10b-5(a), (b), and (c). To prove a claim under Rule 10b-5(a), (b), and (c), the SEC must prove each of the following facts by a preponderance of the evidence:

First, you must find that Spartan, Island, Dilley, or Eldred used an instrumentality of interstate commerce in connection with the purchase or sale of a security.

Second, you must find that Spartan, Island, Dilley, or Eldred used a device, scheme, or artifice to defraud someone in connection with the purchase or sale of a security; or made a misrepresentation of a material fact, or omitted a material fact,

in connection with the purchase or sale of a security; or engaged in an act, practice, or course of business in connection with the purchase or sale of a security that operated or would operate as a fraud or deceit on any person.

Third, you must find that Spartan, Island, Dilley, or Eldred acted knowingly or with severe recklessness.

For the second element, the SEC alleges that Spartan, Island, Dilley, and Eldred violated three portions of Rule 10b-5.  **It is not necessary that the SEC prove that Spartan, Island, Dilley, and Eldred violated all three portions of the Rule.**  I will now discuss the requirements of each portion of the Rule separately.

### 1)  Rule 10b-5(a)

To prove its claim under Rule 10b-5(a), the SEC must prove that Spartan, Island, Dilley, or Eldred used a device, scheme, or artifice to defraud in connection with the purchase or sale of a security.  The SEC does not need to identify any particular purchase or sale of securities by a specific person, including Spartan, Island, Dilley, and Eldred.  Rather, it's enough if the SEC proves that the device, scheme, or artifice to defraud used by Spartan, Island, Dilley, or Eldred involved, or touched in any way, the purchase or sale of securities.

### 2)  Rule 10b-5(b)

To prove its claim under Rule 10b-5(b), the SEC must prove that Spartan, Island, Dilley, or Eldred either made an untrue statement of material fact or omitted

a material fact, either of which would tend to mislead the prospective buyer or seller of a security.

The terms "misrepresentation," "omission," "material," mean the same thing as I previously explained in Counts III and IV.

The SEC does not need to identify any particular purchase or sale of securities by a specific person, including Spartan, Island, Dilley, or Eldred.  Rather, it's enough if the SEC proves that the misrepresentation or omission involved or touched any purchase or sale of a security in any way.

### 3) Rule 10b-5(c)

To prove its claim under Rule 10b-5(c), the SEC must prove that Spartan, Island, Dilley, or Eldred engaged in an act, practice, or course of business – in connection with the purchase or sale of a security – that operated or would operate as a fraud or deceit on any person.  The SEC does not need to identify any particular purchase or sale of securities by a specific person, including Spartan, Island, Dilley, or Eldred.  Rather, it's enough if the SEC proves that the act, practice, or course of business that Spartan, Island, Dilley, or Eldred engaged in involved, or touched in any way, the purchase or sale of securities.

A "fraud or deceit" means a lie or a trick.  A fraud or deceit doesn't have to relate to an investment's quality or actually result in the purchase or sale of any security.  It's not necessary that Spartan, Island, Dilley, or Eldred, who was allegedly

involved in the fraud or deceit, sold or purchased securities personally if the fraudulent or deceitful conduct defrauded some person.

The term "would" in the phrase "would operate as a fraud or deceit" means that the act, practice, or course of business had the capacity to defraud a purchaser or seller. It's not necessary that the act, practice, or course of business actually defrauded someone.

For the third element, the SEC must prove that Spartan, Island, Dilley, or Eldred acted knowingly or with severe recklessness which I've defined in Count III.

**Eleventh Circuit Pattern Instruction, altered to combine Rule 10b-5(a) – (c), Plaintiff proposed;** *SEC v. City of Miami***, Case No. 13-22600-CIV-Altonaga, Court's Instructions to the Jury, DE 238, September 13, 2016;** *SEC v. Levin***, Case No. 12-CV-21297-UU, Court's Instructions to Jury, DE 295, April 2, 2015.**

**Defendants' Objections**

Defendants object to a composite instruction for three distinct counts that each have independent elements that must be proven by Plaintiff. Combining these instructions improperly suggests that Plaintiff need not prove the elements of each to obtain a verdict on each count. Indeed, Plaintiff even proposes to instruct the jury that "It is not necessary that the SEC prove that Spartan, Island, Dilley, and Eldred violated all three portions of the Rule." But, of course, Plaintiff *must* prove its case against each defendant, and, for each count, it must prove each element. And while the court in *SEC v. City of Miami*, Case No. 13-22600-CIV-Altonaga, Court's

Instructions to the Jury, DE 238, September 13, 2016, appears to have given this instruction, it *also provided additional explanation* that likely cured the error Plaintiff is attempting to build into the instructions here. In that case the court instructed the jury: "For the second element, the SEC alleges that the City and Mr. Boudreaux violated three portions of Rule 10b-5. It is not necessary that the SEC prove that either Defendant violated all three portions of the Rule. *However, you must be unanimous as to which portion of the Rule, if any, each Defendant violated*." *SEC v. City of Miami*, DE 238 at 11 (emphasis added). In the end, this instruction suggests wrongly that the jury need not find all essential elements before finding a violation, and it should not be given.

Defendants again object to Plaintiff's omission of the specific misstatements or schemes it alleges were committed by Defendants from the instructions to the jury. While Plaintiff references to *SEC v. City of Miami*, Case No. 13-22600-CIV-Altonaga, Court's Instructions to the Jury, DE 238, September 13, 2016, throughout its proposed instructions, those instructions are instructive for Plaintiff's omissions here. In that case the Court instructed the jury as to what Plaintiff's theory was, and, more specifically, "the misrepresentations alleged by the SEC" in an itemized list, and a description of the "scheme or device to defraud" used by the defendants in that case. *See SEC v. City of Miami*, Case No. 13-22600-CIV-Altonaga, Court's Instructions to the Jury, DE 238, at 6, 12. Without these specific allegations the jury

can reach a verdict without unanimously agreeing about what conduct occurred. Plaintiff can also shift its theory of the case throughout the trial.

Defendants also object to Plaintiff's addition of the sentence, "The stock of the companies at issue in this case are securities." The Plaintiff must prove that there were unregistered transfers of securities and this language directs the jury to find one of those elements.

Moreover, there is no reason at all to depart from the pattern instructions. The Eleventh Circuit has already provided pattern instructions for all three claims, and Defendants request that this Court follow normal practice and use those instructions.

**DEFENDANTS PROPOSED INSTRUCTIONS**

### 1. Rule 10b-5(a)

The SEC asserts a claim under the Securities Act of 1934. The Securities Exchange Act is a federal statute that allows the SEC to enact rules and regulations prohibiting certain conduct in the purchase or sale of securities. Rule 10b-5(a) makes it unlawful for a person to employ any device, scheme, or artifice to defraud someone else in connection with the purchase or sale of any security.

A "security" is an investment in a commercial, financial, or other business enterprise with the expectation that profits or other gain will be produced by others.

The SEC may bring a civil action for the violation of Rule 10b-5(a).

To prove a claim under Rule 10b-5(a), the SEC must prove each of the following facts by a preponderance of the evidence:

First, you must find that Spartan, Island, Dilley, or Eldred used an instrumentality of interstate commerce in connection with the purchase or sale of a security.

Second, you must find that Spartan, Island, Dilley, or Eldred used a device, scheme, or artifice to defraud someone in connection with the purchase or sale of a security.

And third, you must find that Spartan, Island, Dilley, or Eldred acted knowingly or with severe recklessness.

Now I'll provide you with some additional instructions to help you as you consider the facts the SEC must prove.

For the first element – that an instrumentality of interstate commerce was used in connection with the purchase or sale of a security – you must use these definitions: "Instrumentality of interstate commerce" means the use of the mails, telephone, Internet, or some other form of electronic communication, or an interstate delivery system such as Federal Express or UPS , or a facility of a national securities exchange such as the New York Stock Exchange or NASDAQ, or an inter-dealer electronic-quotation-and-trading system in the over-the-counter securities market. It's not necessary that the facility of a national securities exchange was the means

by which the defendants used a device, scheme, or artifice to defraud someone. It's only necessary that the facility was used in some phase of the transaction.

For the second element, the SEC must prove that Spartan, Island, Dilley or Eldred used a device, scheme, or artifice to defraud in connection with the purchase or sale of a security. The SEC does not need to identify any particular purchase or sale of securities by a specific person, including Spartan, Island, Dilley or Eldred. Rather, it's enough if the SEC proves that the device, scheme, or artifice to defraud used by Spartan, Island, Dilley or Eldred involved, or touched in any way, the purchase or sale of securities.

The SEC claims that the scheme or device [name of defendant] employed was [describe the alleged scheme or device].

A "scheme" is a design or plan formed to accomplish some purpose. A "device," when used in an unfavorable sense, is a "trick" or "fraud." Put another way, the term "device, scheme, or artifice to defraud" would refer to any plan or course of action that involves: (1) false or fraudulent pretenses, (2) untrue statements of material facts, (3) omissions of material facts, or (4) representations, promises, and patterns of conduct calculated to deceive.

A misstatement or omission of fact is "material" if there is a substantial likelihood that a reasonable investor would attach importance to the misrepresented or omitted fact in determining his course of action. Put another way, there must be a

substantial likelihood that a reasonable investor would view the misstated or omitted fact's disclosure as significantly altering the total mix of available information. A minor or trivial detail is not a "material fact."

**"For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker."[11]**

For the third element, the SEC must prove that Spartan, Island, Dilley or Eldred acted knowingly or with severe recklessness. The term "knowingly" means that Spartan, Island, Dilley or Eldred acted with an intent to deceive, manipulate, or defraud. But Spartan, Island, Dilley or Eldred didn't act knowingly if they acted inadvertently, carelessly, or by mistake. To act with "severe recklessness" means to engage in conduct that involves an extreme departure from the standard of ordinary care. A person acts with reckless disregard if it's obvious that an ordinary person under the circumstances would have realized the danger and taken care to avoid the harm likely to follow.

---

[11] This language is added to the pattern jury instructions. It is a direct quote from the Supreme Court in *Janus Capital Grp., Inc. v. First Derivatives Traders*, 564 U.S. 135, 142 (2011).

**Eleventh Circuit Pattern Instruction 6.1 Securities Exchange Act 15 USC § 78j(b) – Rule 10b-5(a) –17 C.F.R. §§ 240.10b-5(a) – Device, Scheme, or Artifice to Defraud (modified)**

**2. 10b-5(b)**

Rule 10b-5(b) makes it unlawful for a person to commit a fraud in connection with the purchase or sale of a security.

A "security" is an investment in a commercial, financial, or other business enterprise with the expectation that profits or other gain will be produced by others.

The SEC may bring a civil action for the violation of Rule 10b-5(b).

To prove a claim under Rule 10b-5(b), the SEC must prove each of the following facts by a preponderance of the evidence:

First, you must find that Spartan, Island, Dilley or Eldred used an instrumentality of interstate commerce in connection with the purchase or sale of a security.

Second, you must find that Spartan, Island, Dilley or Eldred made a misrepresentation of a material fact, or omitted a material fact, in connection with the purchase or sale of a security.

And third, you must find that Spartan, Island, Dilley or Eldred acted knowingly or with severe recklessness.

Now I'll provide you with some additional instructions to help you as you consider the facts the SEC must prove.

For the first element – that an instrumentality of interstate commerce was used in connection with the purchase or sale of a security – you must use these definitions:

"Instrumentality of interstate commerce" means the use of the mails, telephone, Internet, or some other form of electronic communication, or an interstate delivery system such as Federal Express or UPS, or a facility of a national securities exchange such as the New York Stock Exchange or NASDAQ, or an inter-dealer electronic-quotation-and-trading system in the over-the-counter securities market. It's not necessary that the misrepresentation or omission of material fact was transmitted using an instrumentality of interstate-commerce. It is enough if the interstate-commerce instrumentality was used in some phase of the transaction.

For the second element, the SEC must prove that Spartan, Island, Dilley or Eldred either made an untrue statement of material fact or omitted a material fact, either of which would tend to mislead the prospective buyer or seller of a security.

A "misrepresentation" is a statement that is not true. An "omission" is the failure to state facts that would be necessary to make the statements made by Spartan, Island, Dilley or Eldred not misleading to the SEC.

A misrepresentation or omission of fact is "material" if there is a substantial likelihood that a reasonable investor would attach importance to the misrepresented

or omitted fact in determining his course of action. Put another way, there must be a substantial likelihood that a reasonable investor would view the misstated or omitted fact's disclosure as significantly altering the total mix of available information. A minor or trivial detail is not a "material fact."

**"For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker."[12]**

The SEC does not need to identify any particular purchase or sale of securities by a specific person, including Spartan, Island, Dilley or Eldred. Rather, it's enough if the SEC proves that the misrepresentation or omission involved or touched any purchase or sale of a security in any way.

The SEC claims that [name of defendant] made the following misrepresentations or omissions: [Describe the specific statements or omissions claimed to have been fraudulently made.]

For the second element, the SEC must first prove that Spartan, Island, Dilley or Eldred made one or more of the alleged misrepresentations of fact or omitted facts

---

[12] This language is added to the pattern jury instructions. It is a direct quote from the Supreme Court in *Janus Capital Grp., Inc. v. First Derivatives Traders*, 564 U.S. 135, 142 (2011).

that would be necessary to prevent other statements made by Spartan, Island, Dilley or Eldred from being misleading to the SEC. And second, that the misrepresentation or omission involved "material" facts.

For the third element, the SEC must prove that Spartan, Island, Dilley or Eldred made the alleged misrepresentations or omissions knowingly, or with severe recklessness. The term "knowingly" means that Spartan, Island, Dilley or Eldred acted with an intent to deceive, manipulate, or defraud. But Spartan, Island, Dilley or Eldred didn't act knowingly if they acted inadvertently, carelessly, or by mistake.

To act with "severe recklessness" means to engage in conduct that involves an extreme departure from the standard of ordinary care. A person acts with reckless disregard if it's obvious that an ordinary person under the circumstances would have realized the danger and taken care to avoid the harm likely to follow.

As an example, Spartan, Island, Dilley or Eldred acted "knowingly" or with severe recklessness if they stated material facts that they knew were false or stated untrue facts with reckless disregard for their truth or falsity or didn't disclose material facts that they knew or was severely reckless in not knowing, and knew or was severely reckless in not knowing that disclosing those facts was necessary to avoid making their other statements misleading.

**Eleventh Circuit Pattern Jury Instructions 6.2 Securities Exchange Act – 15 U.S.C. § 78j(b) – Rule 10b-5(b) – 17 C.F.R. § 240.10b-5(b) – Misrepresentation or Omission of Material Facts (modified)**

### 3. 10b-5(c)

Rule 10b-5(c) makes it unlawful for a person to engage in any practice or course of dealing that would operate as a fraud in connection with the purchase or sale of any security.

A "security" is an investment in a commercial, financial, or other business enterprise with the expectation that profits or other gain will be produced by others.

The SEC may bring a civil action because of the Rule 10b-5(c) violation claimed.

To prove a claim under Rule 10b-5(c), the SEC must prove each of the following facts by a preponderance of the evidence:

First, you must find that Spartan, Island, Dilley or Eldred used an "instrumentality of interstate commerce" in connection with the purchase or sale of a security.

Second, you must find that Spartan, Island, Dilley or Eldred engaged in an act, practice, or course of business – in connection with the purchase or sale of a security – that operated or would operate as a fraud or deceit on any person.

And third, you must find that Spartan, Island, Dilley or Eldred acted knowingly or with severe recklessness.

Now I'll provide you with some additional instructions to help you as you consider the facts the SEC must prove.

"Instrumentality of interstate commerce" means the use of the mails, telephone, Internet, or some other form of electronic communication, or an interstate delivery system such as Federal Express or UPS, or a facility of a national securities exchange such as the New York Stock Exchange or NASDAQ or an inter-dealer electronic-quotation-and-trading system in the over-the-counter securities market. It's not necessary that the facility of a national securities exchange was the means by which the defendant[s] used a device, scheme, or artifice to defraud someone. It's only necessary that the facility was used in some phase of the transaction.

For the second element, the SEC must prove that Spartan, Island, Dilley or Eldred engaged in any act, practice, or course of business, in connection with the purchase or sale of a security, that operated or would operate as a fraud or deceit on any person. The SEC does not need to identify any particular purchase or sale of securities by a specific person, including Spartan, Island, Dilley or Eldred. Rather, it's enough if the SEC proves that the act, practice, or course of business that Spartan, Island, Dilley or Eldred engaged in involved, or touched in any way, the purchase or sale of securities.

The SEC claims that the act, practice, or course of business Spartan, Island, Dilley or Eldred engaged in [describe the alleged act, practice, or course of business.

A "fraud or deceit" means a lie or a trick. A fraud or deceit doesn't have to relate to an investment's quality or actually result in the purchase or sale of any security. It's not necessary that Spartan, Island, Dilley or Eldred, who was allegedly involved in the fraud or deceit, sold or purchased securities personally if the fraudulent or deceitful conduct defrauded some person.

The term "would" in the phrase "would operate as a fraud or deceit" means that the act, practice, or course of business had the capacity to defraud a purchaser or seller. It's not necessary that the act, practice, or course of business actually defrauded someone.

**"For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker."[13]**

For the third element, the SEC must prove that Spartan, Island, Dilley or Eldred acted knowingly or with severe recklessness. The term "knowingly" means that Spartan, Island, Dilley or Eldred acted with an intent to deceive, manipulate, or

---

[13] This language is added to the pattern jury instructions. It is a direct quote from the Supreme Court in *Janus Capital Grp., Inc. v. First Derivatives Traders*, 564 U.S. 135, 142 (2011).

defraud. But Spartan, Island, Dilley or Eldred didn't act knowingly if they acted inadvertently, carelessly, or by mistake.

To act with "severe recklessness" means to engage in conduct that involves an extreme departure from the standard of ordinary care. A person acts with reckless disregard if it's obvious that an ordinary person under the circumstances would have realized the danger and taken care to avoid the harm likely to follow.

**Eleventh Circuit Pattern Jury Instructions 6.4 Securities Exchange Act – 15 USC § 78j(b) – Rule 10b-5(c) –17 C.F.R. § 240.10b-5(c) – Fraudulent Practice or Course of Dealing (modified)**

**Plaintiff's Response to Defendants' Objection and Proposed Instruction**

The SEC proposed its instruction in order to streamline the language and reduce redundancy, especially where, as here, there are common elements. Streamlined instructions have been approved by other courts as noted in the SEC's proposed instruction.   Separating the counts unnecessarily lengthens the jury instructions and risks confusing the jury.

In **Counts XI, XII, XIII**, the SEC asserts that Spartan, Island, Dilley, and Eldred aided and abetted violations of Section 10(b) and Rule 10b-5(a), (b), and (c) of the Exchange Act by Mirman, Rose, Daniels, Fan, or Harrison.  Spartan, Island, Dilley and Eldred may be liable for these violations – even if they personally did not commit the violations – if you find that they aided and abetted someone else who committed the violations.  To prove this claim, the SEC must prove each of the following facts by a preponderance of the evidence:

First, you must find that Mirman, Rose, Daniels, Fan, or Harrison violated Section 10(b) and Rule 10b-5(a), (b), and (c) of the Exchange Act;

Second, you must find that Spartan, Island, Dilley, or Eldred were aware that they were part of an overall activity that was improper; and

Third, you must find that Spartan, Island, Dilley, or Eldred knowingly and substantially assisted Mirman, Rose, Daniels, or Harrison's violations of Section 10(b) and Rule 10b-5(a), (b), and (c) of the Exchange Act.

You should use the instructions and definitions on aiding and abetting that I gave you in Count II and knowingly that I gave you in Count III.

**There is no Eleventh Circuit pattern instruction.**
*SEC v. Big Apple Consulting USA, Inc.*, **783 F.3d 786, 800 (11th Cir. 2015);** *SEC v. Goble*, **682 F.3d 934, 947 (11th Cir. 2012), Plaintiff Proposed.**

**Defendants' Objection:**

Defendants object to combining these three distinct counts into a single count. To do so suggests to the jury that should decide these counts jointly, when each presents a distinct burden on Plaintiff. Defendants propose substantially similar instructions that properly separate the distinct counts.

Additionally, Defendants object to the omission of the underlying elements of the primary violations. Defendants propose incorporation of the instructions given for the primary violations.

Defendants also object to Plaintiff's omission of the specific misstatements or schemes it alleges were committed by Mirman, Rose, Harrison, Daniels or Fan from the instructions to the jury. While Plaintiff references to *SEC v. City of Miami*, Case No. 13-22600-CIV-Altonaga, Court's Instructions to the Jury, DE 238, September 13, 2016, throughout its proposed instructions, those instructions are instructive for Plaintiff's omissions here. In that case the Court instructed the jury as to what Plaintiff's theory was, and, more specifically, "the misrepresentations alleged by the SEC" in an itemized list, and a description of the "scheme or device to defraud" used by the defendants in that case, and then for the relevant aiding and abetting count, referenced the facts set out in the primary counts. *See SEC v. City of Miami*, Case No. 13-22600-CIV-Altonaga, Court's Instructions to the Jury, DE 238, at 6, 12.

Defendants' proposed instructions are as follows:

### 1. 10b-5(a)

In **<u>Count XI</u>**, the SEC asserts that Spartan, Island, Dilley, and Eldred aided and abetted violations of Section 10(b) and Rule 10b-5(a) of the Exchange Act by Mirman, Rose, Daniels, Fan, or Harrison. Spartan, Island, Dilley and Eldred may be liable for these violations – even if they personally did not commit the violations – if you find that they aided and abetted someone else who committed the violations. To prove this claim, the SEC must prove each of the following facts by a preponderance of the evidence:

First, you must find that Mirman, Rose, Daniels, Fan, or Harrison violated Section 10(b) and Rule 10b-5(a) of the Exchange Act;

Second, you must find that Spartan, Island, Dilley, or Eldred were aware that they were part of an overall activity that was improper; and

Third, you must find that Spartan, Island, Dilley, or Eldred knowingly and substantially assisted Mirman, Rose, Daniels, or Harrison's violations of Section 10(b) and Rule 10b-5(a) of the Exchange Act.

You should use the instructions and definitions on aiding and abetting that I gave you in Count II and knowingly that I gave you in Count III.

To find that Mirman, Rose, Daniels, Fan, or Harrison violated Rule 10b-5(a) the SEC must prove each of the following facts by a preponderance of the evidence:

First, you must find that Mirman, Rose, Daniels, Fan, or Harrison used an instrumentality of interstate commerce in connection with the purchase or sale of a security.

Second, you must find that Mirman, Rose, Daniels, Fan, or Harrison used a device, scheme, or artifice to defraud someone in connection with the purchase or sale of a security.

And third, you must find that Mirman, Rose, Daniels, Fan, or Harrison acted knowingly or with severe recklessness.

Now I'll provide you with some additional instructions to help you as you consider the facts the SEC must prove.

For the first element – that an instrumentality of interstate commerce was used in connection with the purchase or sale of a security – you must use these definitions: "Instrumentality of interstate commerce" means the use of the mails, telephone, Internet, or some other form of electronic communication, or an interstate delivery system such as Federal Express or UPS, or a facility of a national securities exchange such as the New York Stock Exchange or NASDAQ or an inter-dealer electronic-quotation-and-trading system in the over-the-counter securities market. It's not necessary that the facility of a national securities exchange was the means by which the defendants used a device, scheme, or artifice to defraud someone. It's only necessary that the facility was used in some phase of the transaction.

For the second element, the SEC must prove that Mirman, Rose, Daniels, Fan, or Harrison used a device, scheme, or artifice to defraud in connection with the purchase or sale of a security. The SEC does not need to identify any particular purchase or sale of securities by a specific person, including Mirman, Rose, Daniels, Fan, or Harrison. Rather, it's enough if the SEC proves that the device, scheme, or artifice to defraud used by Mirman, Rose, Daniels, Fan, or Harrison involved, or touched in any way, the purchase or sale of securities.

The SEC claims that the scheme or device [name of primary violator] employed was [describe the alleged scheme or device].

A "scheme" is a design or plan formed to accomplish some purpose. A "device," when used in an unfavorable sense, is a "trick" or "fraud." Put another way, the term "device, scheme, or artifice to defraud" would refer to any plan or course of action that involves: (1) false or fraudulent pretences, (2) untrue statements of material facts, (3) omissions of material facts, or (4) representations, promises, and patterns of conduct calculated to deceive.

A misstatement or omission of fact is "material" if there is a substantial likelihood that a reasonable investor would attach importance to the misrepresented or omitted fact in determining his course of action. Put another way, there must be a substantial likelihood that a reasonable investor would view the misstated or omitted

fact's disclosure as significantly altering the total mix of available information. A minor or trivial detail is not a "material fact."

**"For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker."[14]**

For the third element, the SEC must prove that Mirman, Rose, Daniels, Fan, or Harrison acted knowingly or with severe recklessness. The term "knowingly" means that Mirman, Rose, Daniels, Fan, or Harrison acted with an intent to deceive, manipulate, or defraud. But Mirman, Rose, Daniels, Fan, or Harrison didn't act knowingly if they acted inadvertently, carelessly, or by mistake. To act with "severe recklessness" means to engage in conduct that involves an extreme departure from the standard of ordinary care. A person acts with reckless disregard if it's obvious that an ordinary person under the circumstances would have realized the danger and taken care to avoid the harm likely to follow.

**Eleventh Circuit Pattern Instruction 6.1 Securities Exchange Act 15 USC § 78j(b) – Rule 10b-5(a) –17 C.F.R. §§ 240.10b-5(a) – Device, Scheme, or Artifice to Defraud (modified)**

---

[14] This language is added to the pattern jury instructions. It is a direct quote from the Supreme Court in *Janus Capital Grp., Inc. v. First Derivatives Traders*, 564 U.S. 135, 142 (2011).

**2. 10b-5(b)**

In __Count XII__, the SEC asserts that Spartan, Island, Dilley, and Eldred aided and abetted violations of Section 10(b) and Rule 10b-5(b) of the Exchange Act by Mirman, Rose, Daniels, Fan, or Harrison. Spartan, Island, Dilley and Eldred may be liable for these violations – even if they personally did not commit the violations – if you find that they aided and abetted someone else who committed the violations. To prove this claim, the SEC must prove each of the following facts by a preponderance of the evidence:

First, you must find that Mirman, Rose, Daniels, Fan, or Harrison violated Section 10(b) and Rule 10b-5(a) of the Exchange Act;

Second, you must find that Spartan, Island, Dilley, or Eldred were aware that they were part of an overall activity that was improper; and

Third, you must find that Spartan, Island, Dilley, or Eldred knowingly and substantially assisted Mirman, Rose, Daniels, or Harrison's violations of Section 10(b) and Rule 10b-5(b) of the Exchange Act.

You should use the instructions and definitions on aiding and abetting that I gave you in Count II and knowingly that I gave you in Count III.

To find that Mirman, Rose, Daniels, Fan, or Harrison violated Rule 10b-5(b) the SEC must prove each of the following facts by a preponderance of the evidence:

First, you must find that Mirman, Rose, Daniels, Fan, or Harrison used an instrumentality of interstate commerce in connection with the purchase or sale of a security.

Second, you must find that Mirman, Rose, Daniels, Fan, or Harrison made a misrepresentation of a material fact, or omitted a material fact, in connection with the purchase or sale of a security.

And third, you must find that Mirman, Rose, Daniels, Fan, or Harrison acted knowingly or with severe recklessness.

Now I'll provide you with some additional instructions to help you as you consider the facts the SEC must prove.

For the first element – that an instrumentality of interstate commerce was used in connection with the purchase or sale of a security – you must use these definitions:

"Instrumentality of interstate commerce" means the use of the mails, telephone, Internet, or some other form of electronic communication, or an interstate delivery system such as Federal Express or UPS, or a facility of a national securities exchange such as the New York Stock Exchange or NASDAQ, or an inter-dealer electronic-quotation-and-trading system in the over-the-counter securities market. It's not necessary that the misrepresentation or omission of material fact was transmitted using an instrumentality of interstate-commerce. It is enough if the interstate-commerce instrumentality was used in some phase of the transaction.

For the second element, the SEC must prove that Mirman, Rose, Daniels, Fan, or Harrison either made an untrue statement of material fact or omitted a material fact, either of which would tend to mislead the prospective buyer or seller of a security.

A "misrepresentation" is a statement that is not true. An "omission" is the failure to state facts that would be necessary to make the statements made by Mirman, Rose, Daniels, Fan, or Harrison not misleading to the SEC.

A misrepresentation or omission of fact is "material" if there is a substantial likelihood that a reasonable investor would attach importance to the misrepresented or omitted fact in determining his course of action. Put another way, there must be a substantial likelihood that a reasonable investor would view the misstated or omitted fact's disclosure as significantly altering the total mix of available information. A minor or trivial detail is not a "material fact."

**"For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker."[15]**

---

[15] This language is added to the pattern jury instructions. It is a direct quote from the Supreme Court in *Janus Capital Grp., Inc. v. First Derivatives Traders*, 564 U.S. 135, 142 (2011).

The SEC does not need to identify any particular purchase or sale of securities by a specific person, including Mirman, Rose, Daniels, Fan, or Harrison. Rather, it's enough if the SEC proves that the misrepresentation or omission involved or touched any purchase or sale of a security in any way.

The SEC claims that [name of primary violator] made the following misrepresentations or omissions: [Describe the specific statements or omissions claimed to have been fraudulently made.]

For the second element, the SEC must first prove that Mirman, Rose, Daniels, Fan, or Harrison made one or more of the alleged misrepresentations of fact or omitted facts that would be necessary to prevent other statements made by Mirman, Rose, Daniels, Fan, or Harrison from being misleading to the SEC. And second, that the misrepresentation or omission involved "material" facts.

For the third element, the SEC must prove that Mirman, Rose, Daniels, Fan, or Harrison made the alleged misrepresentations or omissions knowingly, or with severe recklessness. The term "knowingly" means that Mirman, Rose, Daniels, Fan, or Harrison acted with an intent to deceive, manipulate, or defraud. But Mirman, Rose, Daniels, Fan, or Harrison didn't act knowingly if they acted inadvertently, carelessly, or by mistake.

To act with "severe recklessness" means to engage in conduct that involves an extreme departure from the standard of ordinary care. A person acts with reckless

disregard if it's obvious that an ordinary person under the circumstances would have realized the danger and taken care to avoid the harm likely to follow.

As an example, Mirman, Rose, Daniels, Fan, or Harrison acted "knowingly" or with severe recklessness if they stated material facts that they knew were false or stated untrue facts with reckless disregard for their truth or falsity or didn't disclose material facts that they knew or was severely reckless in not knowing, and knew or was severely reckless in not knowing that disclosing those facts was necessary to avoid making their other statements misleading.

**Eleventh Circuit Pattern Jury Instructions 6.2 Securities Exchange Act – 15 U.S.C. § 78j(b) – Rule 10b-5(b) – 17 C.F.R. § 240.10b-5(b) – Misrepresentation or Omission of Material Facts (modified)**

**3. 10b-5(c)**

In **<u>Count XIII</u>**, the SEC asserts that Spartan, Island, Dilley, and Eldred aided and abetted violations of Section 10(b) and Rule 10b-5(c) of the Exchange Act by Mirman, Rose, Daniels, Fan, or Harrison. Spartan, Island, Dilley and Eldred may be liable for these violations – even if they personally did not commit the violations – if you find that they aided and abetted someone else who committed the violations. To prove this claim, the SEC must prove each of the following facts by a preponderance of the evidence:

First, you must find that Mirman, Rose, Daniels, Fan, or Harrison violated Section 10(b) and Rule 10b-5(c) of the Exchange Act;

Second, you must find that Spartan, Island, Dilley, or Eldred were aware that they were part of an overall activity that was improper; and

Third, you must find that Spartan, Island, Dilley, or Eldred knowingly and substantially assisted Mirman, Rose, Daniels, or Harrison's violations of Section 10(b) and Rule 10b-5(c) of the Exchange Act.

You should use the instructions and definitions on aiding and abetting that I gave you in Count II and knowingly that I gave you in Count III.

To find that Mirman, Rose, Daniels, Fan, or Harrison violated Rule 10b-5(c) the SEC must prove each of the following facts by a preponderance of the evidence:

First, you must find that Mirman, Rose, Daniels, Fan, or Harrison used an "instrumentality of interstate commerce" in connection with the purchase or sale of a security.

Second, you must find that Mirman, Rose, Daniels, Fan, or Harrison engaged in an act, practice, or course of business – in connection with the purchase or sale of a security – that operated or would operate as a fraud or deceit on any person.

And third, you must find that Mirman, Rose, Daniels, Fan, or Harrison acted knowingly or with severe recklessness.

Now I'll provide you with some additional instructions to help you as you consider the facts the SEC must prove.

"Instrumentality of interstate commerce" means the use of the mails, telephone, Internet, or some other form of electronic communication, or an interstate delivery system such as Federal Express or UPS, or a facility of a national securities exchange such as the New York Stock Exchange or NASDAQ or an inter-dealer electronic-quotation-and-trading system in the over-the-counter securities market. It's not necessary that the facility of a national securities exchange was the means by which the defendants used a device, scheme, or artifice to defraud someone. It's only necessary that the facility was used in some phase of the transaction.

For the second element, the SEC must prove that Mirman, Rose, Daniels, Fan, or Harrison engaged in any act, practice, or course of business, in connection with the purchase or sale of a security, that operated or would operate as a fraud or deceit on any person. The SEC does not need to identify any particular purchase or sale of securities by a specific person, including Mirman, Rose, Daniels, Fan, or Harrison, it's enough if the SEC proves that the act, practice, or course of business that Mirman, Rose, Daniels, Fan, or Harrison engaged in involved, or touched in any way, the purchase or sale of securities.

The SEC claims that the act, practice, or course of business Mirman, Rose, Daniels, Fan, or Harrison engaged in [describe the alleged act, practice, or course of business.

A "fraud or deceit" means a lie or a trick. A fraud or deceit doesn't have to relate to an investment's quality or actually result in the purchase or sale of any security. It's not necessary that Mirman, Rose, Daniels, Fan, or Harrison, who was allegedly involved in the fraud or deceit, sold or purchased securities personally if the fraudulent or deceitful conduct defrauded some person.

The term "would" in the phrase "would operate as a fraud or deceit" means that the act, practice, or course of business had the capacity to defraud a purchaser or seller. It's not necessary that the act, practice, or course of business actually defrauded someone.

**"For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker."[16]**

For the third element, the SEC must prove that Mirman, Rose, Daniels, Fan, or Harrison acted knowingly or with severe recklessness. The term "knowingly" means that Mirman, Rose, Daniels, Fan, or Harrison acted with an intent to deceive,

---

[16] This language is added to the pattern jury instructions. It is a direct quote from the Supreme Court in *Janus Capital Grp., Inc. v. First Derivatives Traders*, 564 U.S. 135, 142 (2011).

manipulate, or defraud. But Mirman, Rose, Daniels, Fan, or Harrison didn't act knowingly if they acted inadvertently, carelessly, or by mistake.

To act with "severe recklessness" means to engage in conduct that involves an extreme departure from the standard of ordinary care. A person acts with reckless disregard if it's obvious that an ordinary person under the circumstances would have realized the danger and taken care to avoid the harm likely to follow.

**Eleventh Circuit Pattern Jury Instructions 6.4 Securities Exchange Act – 15 USC § 78j(b) – Rule 10b-5(c) –17 C.F.R. § 240.10b-5(c) – Fraudulent Practice or Course of Dealing (modified)**

**Plaintiff's Response to Defendants' Objection and Proposed Instruction**

The SEC proposed its instruction in order to streamline the language and reduce redundancy, especially where, as here, there are common elements. Streamlined instructions have been approved by other courts as noted in the SEC's proposed instruction. Separating the counts unnecessarily lengthens the jury instructions and risks confusing the jury.

**Sections 5(a) and 5(c) of the Securities Act of 1933**

In **Count XIV**, the SEC claims that Spartan, Island, and Dilley violated Sections 5(a) and 5(c) of the Securities Act of 1933, which require the offer or sale of certain securities to be registered.  Registering securities ensures that companies file essential facts with the SEC, which then makes these facts public.  It's unlawful, without an exemption from the Securities Act's registration requirements, for any person to use an instrumentality of interstate commerce to buy or sell, offer to buy or sell, or transport or deliver after sale, an unregistered security.

The SEC claims that the sales of the securities in this case violated the registration requirements.  Spartan, Island, and Dilley deny that these sales violated these requirements.  They also claim that even if the sales were unregistered, they did not violate Section 5 because two exemptions from the registration requirement were applicable.

To succeed on its claim that Spartan, Island, or Dilley violated Securities Act Sections 5(a) and 5(c), the SEC must prove each of the following three elements by a preponderance of the evidence:

First, you must find that Spartan, Island, or Dilley directly or indirectly sold, or offered to sell, securities.

Second, you must find that Spartan, Island, or Dilley used an instrument of transportation or communication in interstate commerce in connection with the offer to sell or sale of securities.

And third, you must find that a registration statement for the securities was not in effect.

[The stock of the companies at issue in this case are securities.]

The terms "sale" or "sell" mean the transfer of a security for value. This includes contracts for the sale for value or any other disposition for value of a security or interest in a security. An "offer," "offer to sell," or "offer for sale" means attempting to dispose of a security or an interest in a security for value by inviting buyers.

To "directly or indirectly" sell securities means Spartan, Island, or Dilley was a necessary participant, or substantial factor, in the sale or offer to sell that the SEC claims is in violation of Securities Act Section 5.

Spartan, Island, or Dilley may be a "necessary participant" or "substantial factor" in the sale of securities if, for example, they employ or direct others to sell or offer to sell securities, or plans the process by which unregistered securities are offered or sold.

To satisfy this element, the SEC isn't required to show that Spartan, Island, or Dilley had direct contact with any of the investors who were offered or purchased the securities at issue.

[In this case, the securities transactions at issue were not registered.]

"Instrument of transportation or communication in interstate commerce" means the use of the mails, telephone, Internet, or some other form of electronic communication, or an interstate delivery system such as Federal Express or UPS, or an inter-dealer electronic-quotation-and-trading system in the over-the-counter securities market.

A person who sells unregistered securities violates Sections 5(a) and 5(c) regardless of whether the violation was committed knowingly, intentionally, recklessly, or negligently.  Spartan, Island, or Dilley's good-faith belief that the sale or offer to sell was legal, and their reliance on the advice of counsel, aren't defenses to a violation of Sections 5(a) and 5(c).

If you find that the SEC has proved these three elements by a preponderance of the evidence, the burden shifts to Spartan, Island, and Dilley to prove, by a preponderance of the evidence, that the offer to sell or sale of the securities were exempt from the Securities Act's registration requirements.

If you find that the SEC has proved one or more of its claims against Spartan, Island, Dilley, or Eldred, I alone will determine the remedy or remedies to impose at a later date.

**Eleventh Circuit Pattern Instruction, Plaintiff proposed.** There is no genuine question that the stock at issue here are securities. There is also no genuine question that the Forms S-1 did not cover the sales of shares from the "friends and family" shareholders to the shell buyers. The registration requirements of Section 5 apply to transactions, not to securities as a whole. The "registration of a security is transaction-specific." *SEC v. Cavanagh*, 155 F.3d 129, 133 (2d Cir. 1998). "When a registration statement is filed, it is that specific offering of securities that is registered; the securities themselves are not considered registered for all times and all purposes." *SEC v. Caledonian Bank Ltd.*, 145 F. Supp. 3d 290, 306 (S.D.N.Y. 2015) (citing *Cavanagh*, 155 F.3d at 133 (registration statement covering issuance to management did not cover reoffering of shares to other persons)). "If a later offering occurs, the securities sold in that offering must either be 'registered, exempt, or illegal.'" *Id.* (quoting T. Hazen, 1 *Law of Securities Regulation* § 4.1). Thus, even if the initial purported sales to friends and family were registered pursuant to the Forms S-1, any subsequent transactions would separately have to satisfy Section 5.

**Defendant's Objection**

The defendants agree that this Court should use the Eleventh Circuit Pattern Instructions. However, they object to Plaintiff's addition of the sentence, "The stock of the companies at issue in this case are securities." The Plaintiff must prove that there were unregistered transfers of securities and this language directs the jury to find one of those elements.

Defendants also object to Plaintiff's failure to identify which transfers it believes were unregistered. This case involves a large number of transfers made by 19 different issuers. Each transfer was unique. Plaintiff, however, has acted like all of the transfers are unified, and can be viewed together. Plaintiff has not identified *which* transfers it believes to be unlawful, and why. Without specifically identifying the relevant transfers Plaintiff has invited confusion, and the jury could improperly find a violation with unanimity about the factual underpinning of a specific transfer.

Defendants next object to the inclusion of the statement "In this case, the securities transactions at issue were not registered." This is not correct. Plaintiff has not identified specific transfers it believed were unregistered or otherwise violated Section 5. Many of the transfers made by relevant issuers were registered in effective S-1 registration statements. It is for the jury to determine which transfers were registered, and, for those unregistered transfers, whether an exemption applied.

Defendants also request instructions concerning relevant exemptions from registration. The pattern jury instructions contemplate the need for instructions on exemptions, but do not provide pattern instructions. However, the notes to the pattern instructions provide relevant guidance, which has been incorporated into Defendants' proposed instructions.

Furthermore, while not every exemption applies to every transfer at issue in this case, Plaintiff has not separated transfers in its instructions. Some transfers were exempt under Section 4(a)(1) while others, involving affiliates of the issuers, were exempt under Section 4(a)(2). There is a sufficient factual basis for either exemption for distinct transfers at issue in this case.

## PROPOSED ADDITION TO JURY INSTRUCTION

In this case there is a dispute over whether the securities were registered. Many of the securities at issue were registered in registration statements filed with the SEC. For each transfer alleged by the SEC, the SEC must prove by a preponderance of the evidence that the securities were not listed in those registration statements.

If you find that the SEC has proved these three elements by a preponderance of the evidence, the burden shifts to Spartan, Island, or Dilley to prove by a preponderance of the evidence that the offer or sale of the securities at issue were exempt from the Securities Act's registration requirements.

Spartan, Island, and Dilley have argued that the transfers were exempt from registration for two separate reasons.

First, Spartan, Island, and Dilley have argued that the transfers were not made by an issuer, underwriter, or dealer.[17]

An "issuer" is any "person who issues or proposes to issue any security."[18]

An "underwriter" is "any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security."[19]

A person is not an underwriter if they do not have an intent at the time of acquisition to make a further distribution of the shares.[20]

Whether a party's "receipt of the unregistered shares was made 'with a view to' distribution focuses on their investment intent at the time of acquisition not on any later transactions.

If the recipient of the shares holds the shares for at least a two-year period then this negates the inference that the security holder obtained the shares with a view to distribute, and thus that the transaction was not from an underwriter.[21]

---

[17] 15 U.S.C. § 77d(a)(1).
[18] 15 U.S.C. § 77b(a)(4).
[19] 15 U.S.C. § 77b(a)(11).
[20] *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 807 (11th Cir. 2015).
[21] *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 807 (11th Cir. 2015).

A "dealer" is "any person who engages either for all or part of his time, directly or indirectly, as agent, broker, or principal, in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person.[22]

If Spartan, Island, or Dilley prove by a preponderance of the evidence that the transfer was not made by an issuer, underwriter, or dealer then the transfer is exempt from registration and you must issue a verdict for Spartan, Island, or Dilley.

Alternatively, Spartan, Island, and Dilley have argued that the transfers were exempt "private placement" transactions by an issuer not involving a public offering.[23]

A "non-public offering" is an offering to those who are shown to be able to fend for themselves. The focus of inquiry should be on the need of the offerees for the protections afforded by registration.[24]

If the shares came to rest with persons who had access to information that would typically be found in a registration statement then there is no public offering.[25]

You should also consider the following factors in determining whether an offering is a private placement:

---

[22] 15 U.S.C. § 77b(a)(12).
[23] 15 U.S.C. § 77d(2).
[24] *SEC v. Ralston Purina Co.*, 346 U.S. 119, 125 (1953).
[25] *Ackerberg v. Johnson*, 892 F.2d 1328, 1336 (8th Cir. 1989).

(1) the number of offerees and their relationship to the issuer;

(2) the number of units offered;

(3) the size of the offering; and

(4) the manner of the offering.[26]

If Spartan, Island, or Dilley prove by a preponderance of the evidence that the transfer was not involving a public offering then the transfer is exempt from registration and you must issue a verdict for Spartan, Island, or Dilley.

**Plaintiff's Objection and Response to Defendants' Proposed Instruction**

The Commission objects to Plaintiff's proposed additional instruction.  The exemption under Securities Act § 4(a)(1), 15 U.S.C. § 77d(a)(1), is inapplicable to the sales from the "friends and family" shareholders to the shell buyers because those buyers were underwriters.   Section 4(a)(1) exemptions from the registration requirement "transactions by any person other than an issuer, underwriter, or dealer. An underwriter is defined to include "any person who has purchased from an issuer [including, "in an addition to an issuer, any person directly or indirectly controlling the issuer"] with a view to . . . the distribution of any security."   Here, the Commission anticipates that defendants will not proffer sufficient evidence to enable a reasonable jury to find that the elements of the exemption are met, and therefore the instruction should not be given.  The shell buyers purchased from sellers who

---

[26] *Doran v. Petroleum Management Corp.*, 545 F.2d 893, 900 (5th Cir.1977).

directly or indirectly controlled the issuer, and the shell buyers purchased with a view to distribution, as opposed to having the intent to hold the shares of the shell companies as an investment. *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 807 (11th Cir. 2015) ("'view to' distribution focuses on [buyer's] investment intent at the time of acquisition").

The exemption under Securities Act § 4(a)(2), 15 U.S.C. § 77d(a)(2), is also inapplicable to the sales to the shell buyers. By its terms, that exemption applies only to "transactions by an issuer not involving any public offering." Here, the sales are not by an "issuer," defined as "any person who issues or proposed to issue any security." Securities Act § 2(a)(4), 15 U.S.C. § 77b(a)(4); *see SEC v. Murphy*, 626 F.2d 633, 642 (9th Cir. 1980) ("In a corporate offering, the issuer generally is the company whose stock is sold."); *Gleason v. Markel American Insurance Company*, No. 4:17-cv-00163, 2018 WL 538324, *6 (Jan. 24, 2018) (sellers of previously issued securities not "issuers" within the meaning of § 2(a)(4)). The § 4(a)(2) exemption is therefore inapplicable as a matter of law.

# INSTRUCTION CONCERNING THE USE OF "GUIDANCE" DOCUMENTS

Agencies may use guidance and similar documents to educate regulated parties through plain-language restatements of existing legal requirements or provide non-binding advice on technical issues through examples or practices to guide the application or interpretation of statutes and regulations. But guidance may not be used as a substitute for laws and may not be used to impose new requirements on persons or entities. Nor does guidance create binding standards by which regulators can determine compliance with existing regulatory or statutory requirements.

Guidance documents can only bind agencies and their employees. Guidance documents have no legally binding effect on the general public or regulated persons or entities.

Guidance documents should not be used for the purpose of coercing persons or entities outside the federal government into taking any action or refraining from taking any action beyond what is required by the terms of the applicable statute or regulation.

To the extent guidance documents set out voluntary standards (e.g., recommended practices), compliance with those standards is voluntary and noncompliance should not, in itself, result in any enforcement action.[27]

**Plaintiff's Objection to Defendants' Proposed "Guidance" Instruction**

Defendants' proposed instruction is unnecessary, unsupported, inaccurate, highly prejudicial, and will serve to only confuse the Jury. The Commission does not charge the Defendants with violating any purported "guidance" documents. The Commission also does not seek to "bind" the Defendants or "coerce" the Defendants as set forth in their proposed instruction.

Instead, as noted by the Court at DE 158, p. 22, such documents "could go to the reasonableness of Defendants' actions, and provide the jury with background on industry customs, norms, and standards of care." The Defendants fail to add this context to their proposed instruction.

The Defendants have further failed to explain how the DOJ memo they cite as support for their proposed instruction has any application to this case brought by the

---

[27] The language set out in this proposed instruction is comprised mostly of direct quotations from Memorandum from Attorney General Jefferson B. Sessions III, *Prohibition on Improper Guidance Documents*, at 1-2 (Nov. 16, 2017), *available at* https://www.justice.gov/opa/press-release/file/1012271/download. The Supreme Court has also held that agency guidance has no independent legal effect. *See Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) ("[I]nterpretations contained in policy statements, agency manuals, and enforcement guidelines, all … lack the force of law[.]").

Commission.  *See* Memo at 3 ("This memorandum is an internal [DOJ] policy directed at [DOJ] components and employees.  As such, it is not intended to, does not, and may not be relied upon to, create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal.").  Even assuming *arguendo* that the DOJ memo could be applied to this case, the 1991 Adopting Release relevant to this case was in fact issued contemporaneously with the Rule and as part of a notice-and-comment rulemaking process as addressed in the DOJ memo.