**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.                                                                    Case No. 8:19-cv-448-VMC-CPT

SPARTAN SECURITIES GROUP, LTD,
ISLAND CAPITAL MANAGEMENT,
CARL DILLEY, MICAH ELDRED, and
DAVID LOPEZ,

      Defendants.

_____/

## COURT'S INSTRUCTIONS TO THE JURY

## INSTRUCTION 1

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called

deliberations.

1

**INSTRUCTION 2**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it — even if you do not agree with the law — and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

## INSTRUCTION 3

Your decision must be based only on the evidence presented here.  You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole.  You must not single out or disregard any of the instructions on the law.

The fact that a governmental entity or agency is involved as a party must not affect your decision in any way.  A governmental agency and all other persons stand equal before the law and must be dealt with as equals in a court of justice.  When a governmental agency is involved, of course, it may act only through people as its employees; and, in general, a governmental agency is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the governmental agency.

# INSTRUCTION 4

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

## INSTRUCTION 5

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

(1)   Did the witness impress you as one who was telling the truth?

(2)   Did the witness have any particular reason not to tell the truth?

(3)   Did the witness have a personal interest in the outcome of the case?

(4)   Did the witness seem to have a good memory?

(5)   Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

(6)   Did the witness appear to understand the questions clearly and answer them directly?

(7)   Did the witness's testimony differ from other testimony or other evidence?

## INSTRUCTION 6

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

## INSTRUCTION 7

It is proper for a lawyer to meet with any witness in preparation for trial.

## INSTRUCTION 8

When scientific, technical, or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion.  As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

## INSTRUCTION 9

During the trial, you were presented a deposition by a video or by reading the transcript. A deposition is a witness's sworn testimony that is taken before the trial.  During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions.  A court reporter is present and records the questions and answers.

The depositions of Carl Dilley, taken on July 20, 2020; David Lopez, taken on July 27, 2020; Micah Eldred, taken on July 17, 2020, and the sworn testimony of Carl Dilley, taken on October 17, 2017; David Lopez, taken on October 18, 2017 and May 9, 2018; and Micah Eldred, taken on October 17, 2017 have been presented to you by reading the transcript.  Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

Do not place any significance on the behavior or tone of voice of any person who read the questions or answers.

## INSTRUCTION 10

Sometimes the parties have agreed that certain facts are true.  This agreement is called a stipulation.  You must treat these facts as proved for this case.  The parties have stipulated to the following facts:

1. During the time relevant to this case, Spartan Securities Group, LTD ("Spartan") was registered with the SEC as a broker-dealer and Island Capital Management LLC ("Island") was registered with the SEC as a transfer agent.

2. Spartan and Island share certain office space, computer systems, officers, and employees.

3. Carl Dilley was a registered principal of Spartan and the President of Island.

4. Micah Eldred was a registered principal of Spartan and the Chief Executive Officer of Island.

5. In 2007, Alvin Mirman consented to being barred by FINRA from association with any FINRA member.

6. In 2016, both Alvin Mirman and Sheldon Rose pled guilty to criminal charges of conspiracy to commit securities fraud in connection with their respective participation in fraudulent schemes. Mirman pled guilty to conspiracy to commit securities fraud concerning 10 companies at issue in this case. Rose pled guilty to conspiracy to commit securities fraud concerning 14 companies at issue in this case.

7. In 2018, the SEC brought suit against Michael Daniels and Diane Harrison, husband and wife, alleging they manufactured and made misrepresentations related to at least five undisclosed blank check companies at issue in this case.  As a result of the SEC

action, Daniels and Harrison consented to a Judgment but neither admitted nor denied the SEC's allegations.

8. In 2018, the SEC entered, by consent, a cease-and-desist order, officer and director bar and penny stock bar against Andy Fan, and ordered him to pay a civil money penalty of $140,000. Fan consented to the order but neither admitted nor denied the factual assertions made by the SEC. The SEC's action related to Fan's conduct with respect to certain of the companies at issue in this case.

9. Spartan's written procedures list a number of red flags, including if Spartan "receives substantially similar offering documents from different issuers with" the same attorney, officers, directors, and/or shareholders because "[i]t is not uncommon for the same individuals to be involved in multiple microcap frauds."

10. Spartan's written policies (which incorporates verbatim SEC Release No. 34-41110, 1999 WL 95487) expressly state: "If [Spartan] realizes after reviewing the information for several issuers that the same individuals are involved with these entities, [Spartan] should make further inquiries to determine whether it has a reasonable basis to believe that the issuer information is accurate." Another red flag is the "transfer of shares by control persons, as gifts, to third persons in order to help create a public market."

11. Spartan would gather a series of documents for Form 211 applications. Spartan gathered what it deemed to be appropriate information, and prepared a Form 211 application related to the issuer. A registered representative would compile the documents, review them, and sign the 211 application.

12. Mirman and/or Rose recruited a sole officer, director, employee, and majority shareholder (the "sole officer") to act as CEO in name only for 14 companies at issue in this case. Mirman and/or Rose also prepared false and misleading registration statements (the "Forms S-1") and subsequent SEC filings which falsely depicted the issuers as actively pursuing a variety of business plans, when the only plan from the onset was for the company to be sold as public vehicles.

13. The Forms S-1 were effective for Kids Germ, Obscene Jeans, On the Move, Rainbow Coral, First Titan, Neutra, Aristocrat, First Social, Global Group, E-Waste Corp., First independence, Envoy Group, Changing Technologies, and First Xeris.

14. The Forms S-1 for the companies had similar disclosures including number of shares issued, offering sizes, capitalization structures, assets, and operating budgets.

15. Spartan filed Forms 211 applications with FINRA to initiate quotations in the common stock of the following 19 companies:  Kids Germ, Obscene Jeans, On the Move, Rainbow Coral, First Titan, Neutra, Aristocrat, First Social, Global, E-Waste, First Independence, Changing Tech, First Xeris, Envoy Group, Dinello, Court Document, Wallbeds, Top to Bottom, and PurpleReal.

16. Dilley signed the Forms 211 for 15 companies at issue in this case. Eldred signed the Forms 211 for 4 companies at issue in this case.

17. After submission of the Forms 211, FINRA examiners requested information from Spartan in deficiency letters for the companies at issue. FINRA examiners were trained to look for SEC "red flags." FINRA examiners could seek additional information

concerning the application in a deficiency letter. Broker-dealers were expected to respond to deficiency letters.

18. Spartan's computer network maintains a specific Form 211 file folder organized by issuer.  Spartan had registration statements and shareholder lists for issuers in its files.

19. Daniels and Harrison have been friends with Eldred for at least 10 years.  Harrison and Eldred's wife had each been the sole officer of an issuer that was later acquired. Eldred was aware that Daniels and Harrison, through Daniels's law practice, were active in the reverse merger business and had consummated a number of reverse mergers prior for clients who wanted to enter the public market.

20. Mirman and Rose forwarded documents involved with the Form 211 process as requested by Spartan.  Diane Harrison and her husband, Michael Daniels, requested Spartan file Form 211 applications for five issuers—Dinello, Court, Quality Wallbeds, Top to Bottom, and PurpleReal.

21. FINRA examiners reviewed all the Form 211 applications for the 19 issuers. FINRA issued comment letters for each but cleared for quotation all the issuers except PurpleReal. The SEC obtained a stop order against PurpleReal.

22. After an issuer was cleared for quotation, Spartan acted as the exclusive market-maker for the issuer for 30 days.

23. Each Daniels/Harrison Company had an overlapping shareholder roster (up to 26 of 29 of the same shareholders).

24. Island served as the transfer agent for the following 16 companies: Kids Germ, Obscene Jeans, On the Move, Rainbow Coral, First Titan, Neutra, Aristocrat, First

Social, Global, E-Waste, First Independence, Changing Tech, Dinello, Court Document, Wallbeds, and Top to Bottom.

25. According to Island's policies and procedures, all transfer records and shareholder lists are the "highly confidential" property of the issuer, and "shall not be given to unauthorized parties under any circumstances." Moreover, Island's policies and procedures stated that "[s]hareholders may inquire about shares they own personally, but may not be provided with information concerning any other shareholder."

26. Island's policies and procedures provided that shares without restrictive legend "can NOT be issued in the name of an insider". Island Stock Transfer training materials reiterated that "Insiders ALWAYS have restricted stock" (emphasis in original).

27. DTC held stock certificates in trust for eligible issuers to facilitate easier transfers of securities.

28. In 2012, SEC examiners conducted an on-site examination of Spartan. SEC examined Island during the same period as Spartan. Examiners requested records for Aristocrat, First Titan and Neutra.

## **INSTRUCTION 11**

Certain exhibits in the form of charts, summaries, calculations and the like have been received in evidence.  Such exhibits are received in evidence where voluminous writings, documents, and records are involved.  These exhibits are available for your assistance and convenience in considering the evidence.  But that does not mean you must accept any chart, summary, or calculation.  As with any other evidence, you must decide for yourself whether to rely upon them.

## INSTRUCTION 12

In this case it is the responsibility of the SEC to prove every essential part of its claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the SEC's claims are more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the SEC.

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the SEC's claims by a preponderance of the evidence, you should find for Spartan, Island, Dilley, Eldred, or Lopez as to that claim.

## INSTRUCTION 13

In this case, the SEC brings fourteen (14) claims, or counts.  Count I is brought under Section 15(c)(2) and Rule 15c2-11 of the Exchange Act against Spartan.  Count II is brought against Dilley, Eldred, and Lopez for aiding and abetting Spartan's violations of Section 15(c)(2) and Rule 15c2-11 of the Exchange Act.  Counts III and IV are brought under Sections 17(a)(1) and 17(a)(3), respectively, of the Securities Act of 1933 against Spartan, Island, Dilley, and Eldred.  Counts V, VI, and VII are brought under Section 10(b) of the Exchange Act and Exchange Act Rules 10b-5(a), 10b-5(b), and 10b-5(c) against Spartan, Island, Dilley, and Eldred.  Counts VIII, IX, and X are brought against Spartan, Island, Dilley, and Eldred for aiding and abetting violations of  Section 17(a)(1), (2), and (3) of the Securities Act of 1933 by Alvin Mirman ("Mirman"), Sheldon Rose ("Rose"), Michael Daniels ("Daniels"), Andy Fan ("Fan"), or Diane Harrison ("Harrison").  Counts XI, XII, and XIII are brought against Spartan, Island, Dilley, and Eldred for aiding and abetting violations of Section 10(b) and Rule 10b-5(a), (b), and (c) of the Exchange Act by Mirman, Rose, Daniels, Fan, or Harrison.  Count XIV is brought against Spartan, Island, and Dilley under Sections 5(a) and 5(c) of the Securities Act of 1933.

If you find the SEC has proved one or more of its claims against one or more of the Defendants, I alone will determine the remedy or remedies to impose at a later date.

## **INSTRUCTION 14**

In Count I, the SEC claims that Spartan violated Section 15(c)(2) and Rule 15c2-11 of the Securities and Exchange Act of 1934.

The Exchange Act is a federal statute that allows the SEC to enact rules and regulations prohibiting certain conduct in the purchase or sale of securities.

Section 15(c)(2)(A) of the Exchange Act prohibits broker-dealers from inducing or attempting to induce the purchase or sale of any security by means of any fraudulent, deceptive, or manipulative act or practice, or making any fictitious quotation.

Rule 15c2-11, requires broker-dealers, before initiating a quoted market in an issuer's security, to obtain specific documents and information about the issuer. Spartan acquired the relevant documents and information about the issuer.

This information must be reviewed together with any other material information (including adverse information) regarding the issuer which came to Spartan's knowledge or possession before the publication or submission of the quotation.

To prove a claim under Section 15(c)(2) and Rule 15c2-11 of the Securities and Exchange Act of 1934, the SEC must prove each of the following facts by a preponderance of the evidence:

(i)     Spartan was a broker or dealer; and

(ii)    Spartan published a quotation for a security or, directly or indirectly, submitted a quotation for publication, in any quotation medium; and

(iii)   Based upon a review of the documents and information specified in the rule, including any adverse information in its possession, Spartan lacked a reasonable basis under the circumstances for believing that:

> i.  The documents and information specified in the rule were accurate in all material respects, and

ii.  The sources of the documents and information specified in the rule were reliable.

In general, a corporation is responsible under the law for the acts and statements of its

employees that are made within the scope of their duties as employees of the company.

.

## **INSTRUCTION 15**

In Count II, the SEC claims that Carl E. Dilley, Micah J. Eldred, and David D. Lopez aided and abetted Spartan's violations of Section 15(c)(2) and Rule 15c2-11 of the Exchange Act.

Dilley, Eldred, and Lopez may be liable for these violations – even if they personally did not commit the violations – if you find that they aided and abetted someone else (such as Spartan) who committed the violations.

To prove this claim, the SEC must prove each of the following facts by a preponderance of the evidence:

First, you must find that, Spartan violated Section 15(c)(2) and Rule 15c2-11 of the Exchange Act;

Second, you must find that Dilley, Eldred, and Lopez were aware that they were part of an overall activity that was improper; and

Third, you must find that Dilley, Eldred, and Lopez knowingly and substantially assisted Spartan's violations of Section 15(c)(2) and Rule 15c2-11 of the Exchange Act.

The first element requires the SEC to prove that Spartan violated Section 15(c)(2) and Rule 15c2-11 of the Exchange Act.  The SEC's allegations in this count are identical to its allegations against Spartan in Count I.  Therefore, your decision on Count I as to Spartan will determine your decision as to Spartan in this Count.

The second element requires the SEC to prove that Dilley, Eldred, and Lopez were aware that they were part of an overall activity that was improper.  To prove awareness, the SEC must prove that Dilley, Eldred, and Lopez knew or were severely reckless in not knowing that they were part of an overall improper activity.

For the purposes of this Count, the term "knowingly" means that Dilley, Eldred, and Lopez acted with the intent to participate in an overall improper activity.  A person does not act knowingly if he acted inadvertently, carelessly, or by mistake.

For the purposes of this Count, to act with "severe recklessness" means to engage in conduct that involves an extreme departure from the standard of ordinary care.  A person acts with reckless disregard if it is obvious that an ordinary person under the circumstances would have realized that he was participating in an overall improper activity.

The SEC may prove any of the Defendants acted knowingly or severely recklessly by proving, by a preponderance of the evidence, that a Defendant deliberately closed his eyes to what would otherwise have been obvious to him.  No one can avoid liability under the securities laws by deliberately ignoring what is obvious. If a Defendant has his suspicion aroused but then deliberately omits to make further inquiries, because he wishes to remain in ignorance, he is deemed to have knowledge.  You may infer knowledge of the existence of a fact if a Defendant (1) subjectively believed that there is a high probability that a fact exists and (2) took deliberate actions to avoid learning that fact.  If you find by a preponderance of the evidence that a Defendant intentionally avoided knowledge or enlightenment, you may find that Defendant acted knowingly or severely recklessly.

As to the third element, the term "substantial assistance" means that, when based upon all of the circumstances surrounding the conduct in question, Dilley, Eldred, and Lopez's actions were a substantial causal factor in bringing about Spartan's violations of Section 15(c)(2) and Rule 15c2-11.

## INSTRUCTION 16

In Count III, the SEC claims that Spartan, Island, Dilley, and Eldred violated Section 17(a)(1) of the Securities Act of 1933.

The Securities Act is a federal statute prohibiting certain conduct in the offer or sale of securities. Section 17(a)(1) makes it unlawful for a person to employ any device, scheme, or artifice to defraud in connection with the offer or sale of any security.

A "security" is an investment in a commercial, financial, or other business enterprise with the expectation that profits or other gain will be produced by others. Some common types of securities are stocks, bonds, debentures, warrants, and investment contracts.

To prove a claim under Section 17(a)(1) of the Securities Act, the SEC must prove each of the following facts by a preponderance of the evidence:

First, you must find that Spartan, Island, Dilley, or Eldred used an instrumentality of interstate commerce in connection with the offer to sell or sale of a security.

Second, you must find that Spartan, Island, Dilley, or Eldred used a device, scheme, or artifice to defraud someone in connection with the offer to sell or sale of a security.

And third, you must find that Spartan, Island, Dilley, or Eldred acted knowingly or with severe recklessness.

Now I'll provide you with some additional instructions to help you as you consider the facts the SEC must prove.

For the first element – that an instrumentality of interstate commerce was used in connection with the offer to sell or sale of a security – you must use these definitions:

"Instrumentality of interstate commerce" means the use of the mails, telephone, Internet, or some other form of electronic communication, an interstate delivery system such as Federal Express or UPS or a facility of a national securities exchange such as the New York Stock Exchange or NASDAQ or an inter-dealer electronic-quotation-and-trading system in the over-the-counter securities market.  It's not necessary that the facility of a national securities exchange was the means by which Spartan, Island, Dilley, or Eldred used a device, scheme, or artifice to defraud someone.  It's only necessary that the facility was used in some phase of the transaction.

The terms "sale" or "sell" mean the transfer of a security for value.  This includes the contract for sale for value or any other disposition for value of a security or interest in a security.  An "offer," "offer to sell," or "offer for sale" means attempting to dispose of a security or an interest in a security for value by inviting buyers.

For the second element, the SEC must prove that Spartan, Island, Dilley, or Eldred used a device, scheme, or artifice to defraud in the offer to sell or sale of a security.  The SEC does not need to identify any particular offer to sell or sale of securities by a specific person, including Spartan, Island, Dilley, or Eldred.  Rather, it's enough if the SEC proves that the device, scheme, or artifice to defraud Spartan, Island, Dilley, or Eldred used or employed involved, or touched in any way, the offer to sell or sale of securities.

The SEC has alleged that Spartan, Island, Dilley, or Eldred violated Section 17(a) of the Securities Act when Dilley schemed with Mirman and Rose, and Eldred schemed with Daniels, Fan and Harrison, to defraud the public that the Mirman/Rose Companies and Daniels/Harrison/Fan Companies were operating businesses with independent management and shareholders, rather than undisclosed "blank check" or "shell" companies for sale.  The SEC

contends that in furtherance of the Mirman/Rose scheme, Spartan and Dilley signed and submitted false Form 211 applications to FINRA; Spartan, Island and Dilley contributed to false DTC applications; Dilley found potential shell buyers; Dilley and Island signed an escrow agreement and false attestation letters for shell buyers; and Dilley and Island effectuated the bulk transfer of the entire deceptive public float of Mirman/Rose Companies to shell buyers. The SEC alleges that Spartan and Eldred similarly schemed with Daniels, Harrison, and Fan by filing false Forms 211 with FINRA, all in support of the manufacture of undisclosed blank check companies – one of which Eldred expressly proposed to acquire himself while its Form 211 was pending.

The SEC claims that Spartan Securities and Island Stock Transfer provided various services which were critical to the Mirman/Rose and Daniels/Harrison/Fan shell factories, including filing a Form 211 application with FINRA to demonstrate compliance with Rule 15c2-11. Finally, the SEC contends that Spartan, Dilley and Eldred Securities also had information that undermined any reasonable basis that the information required by Rule 15c2-11 was materially accurate and from a reliable source.

A "scheme" is a design or plan formed to accomplish some purpose. A "device," when used in an unfavorable sense, is a "trick" or "fraud." Put another way, the term "device, scheme, or artifice to defraud" would refer to any plan or course of action that involves (1) false or fraudulent pretenses, (2) untrue statements of material facts, (3) omissions of material facts, or (4) representations, promises, and patterns of conduct calculated to deceive.

A "misrepresentation" is a statement that is not true.  An "omission" is the failure to state facts that would be necessary to make the statements made by the Defendants not misleading to the Plaintiff.

A misstatement or omission of fact is "material" if there is a substantial likelihood that a reasonable investor would attach importance to the misrepresented or omitted fact in determining his course of action.  Put another way, there must be a substantial likelihood that a reasonable investor would view the misstated or omitted fact's disclosure as significantly altering the total mix of available information.  A minor or trivial detail is not a "material fact."

For the third element, the SEC must prove that Spartan, Island, Dilley, or Eldred acted knowingly or with severe recklessness.  The term "knowingly" means that Spartan, Island, Dilley, or Eldred acted with an intent to deceive, manipulate, or defraud.  But Spartan, Island, Dilley, or Eldred didn't act knowingly if they acted inadvertently, carelessly, or by mistake.

To act with "severe recklessness" means to engage in conduct that involves an extreme departure from the standard of ordinary care.  A person acts with reckless disregard if it's obvious that an ordinary person under the circumstances would have realized the danger and taken care to avoid the harm likely to follow.

The SEC may prove any of the Defendants acted knowingly or severely recklessly by proving, by a preponderance of the evidence, that a Defendant deliberately closed his eyes to what would otherwise have been obvious to him.  No one can avoid liability under the securities laws by deliberately ignoring what is obvious.  If a Defendant has his suspicion aroused but then deliberately omits to make further inquiries, because he wishes to remain in ignorance, he is deemed to have knowledge.  You may infer knowledge of the existence of a fact if a Defendant

(1) subjectively believed that there is a high probability that a fact exists and (2) took deliberate actions to avoid learning that fact.  If you find by a preponderance of the evidence that a Defendant intentionally avoided knowledge or enlightenment, you may find that Defendant acted knowingly or severely recklessly.

If you find that the SEC has proved one or more of its claims against Defendants, I alone will determine the remedy or remedies to be imposed later.

## **INSTRUCTION 17**

In Count IV, the SEC claims that Spartan, Island, Dilley, and Eldred violated Section 17(a)(3) of the Securities Act of 1933.  Section 17(a)(3) makes it unlawful for a person, in connection with the offer or sale of a security, to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

To prove a claim under Section 17(a)(3), the SEC must prove each of the following facts by a preponderance of the evidence:

First, you must find that Spartan, Island, Dilley, or Eldred used an instrumentality of interstate commerce in connection with the offer to sell or sale of the security.

Second, you must find that Spartan, Island, Dilley, or Eldred engaged in a transaction, practice, or course of business, in connection with the offer to sell or sale of a security, that operated or would operate as a fraud or deceit upon a purchaser; and

Third, you must find that Spartan, Island, Dilley, or Eldred acted negligently.      Now  I will provide you with some additional instructions to help you as you consider the facts the SEC must prove.

For the first element, the same definition of the terms "instrumentality of interstate commerce," "sale," "sell," "offer to sell," or "offer for sale" that I gave regarding Count III apply here.

For the second element, the SEC must prove that Spartan, Island, Dilley, or Eldred engaged in any act, practice, or course of business, in connection with the offer to sell or sale of a security, that operated or would operate as a fraud or deceit upon the purchaser.

The SEC does not need to identify any particular offer to sell or sale of securities by a specific person, including Spartan, Island, Dilley, or Eldred.  Rather, it's enough if the SEC proves that the act, practice, or course of business that Spartan, Island, Dilley, or Eldred engaged in involved, or touched in any way, the offer to sell or sale of securities.

A "fraud or deceit" means a lie or a trick.

A fraud or deceit doesn't have to relate to an investment's quality or actually result in the purchase or sale of any security.  It is not necessary that Spartan, Island, Dilley, or Eldred, who were allegedly involved in the fraud or deceit, sold or purchased securities personally if the fraudulent or deceitful conduct defrauded some person.

The term "would" in the phrase "would operate as a fraud or deceit" means that the act, practice, or course of business had the capacity to defraud a purchaser or seller.  It's not necessary that the act, practice, or course of business actually defrauded someone.

The SEC has alleged that Spartan, Island, Dilley, or Eldred violated Section 17(a) of the Securities Act when Dilley schemed with Mirman and Rose, and Eldred schemed with Daniels, Fan and Harrison, to defraud the public that the Mirman/Rose Companies and Daniels/Harrison/Fan Companies were operating businesses with independent management and shareholders, rather than undisclosed "blank check" or "shell" companies for sale.  The SEC contends that in furtherance of the Mirman/Rose scheme, Spartan and Dilley signed and submitted false Form 211 applications to FINRA; Spartan, Island and Dilley contributed to false DTC applications; Dilley found potential shell buyers; Dilley and Island signed an escrow agreement and false attestation letters for shell buyers; and Dilley and Island effectuated the bulk transfer of the entire deceptive public float of Mirman/Rose Companies to shell buyers.  The

SEC alleges that Spartan and Eldred similarly schemed with Daniels, Harrison, and Fan by filing false Forms 211 with FINRA, all in support of the manufacture of undisclosed blank check companies – one of which Eldred expressly proposed to acquire himself while its Form 211 was pending.

The SEC claims that Spartan Securities and Island Stock Transfer provided various services which were critical to the Mirman/Rose and Daniels/Harrison/Fan shell factories, including filing a Form 211 application with FINRA to demonstrate compliance with Rule 15c2-11.  Finally, the SEC contends that Spartan, Dilley and Eldred Securities also had information that undermined any reasonable basis that the information required by Rule 15c2-11 was materially accurate and from a reliable source.

For the third element as to Section 17(a)(3), the SEC must prove Spartan, Island, Dilley, or Eldred were negligent in in engaging in the act, practice, or course of business.  "Negligence" is the failure to exercise the due diligence, care, or competence that a reasonable person would when making representations or engaging in an act, practice, or course of business.  Ask yourself: Would a reasonable person have omitted or made the statements or engaged in the act, practice, or course of business?

## INSTRUCTION 18

In Counts VIII, IX, and X, the SEC asserts that Spartan, Island, Dilley, and Eldred aided and abetted violations of Section 17(a)(1), (2), and (3) of the Securities Act of 1933 by Alvin Mirman ("Mirman"), Sheldon Rose ("Rose"), Michael Daniels ("Daniels"), Andy Fan ("Fan") or Diane Harrison ("Harrison"). Spartan, Island, Dilley, and Eldred may be liable for these violations – even if they personally did not commit the violations – if you find that they aided and abetted someone else who committed the violations. To prove this claim, the SEC must prove each of the following facts by a preponderance of the evidence:

First, you must find that Mirman, Rose, Daniels, Fan, or Harrison violated Section 17(a)(1), (2), or (3) of the Securities Act;

Second, you must find that Spartan, Island, Dilley, or Eldred were aware that they were part of an overall activity that was improper; and

Third, you must find that Spartan, Island, Dilley, or Eldred knowingly and substantially assisted Mirman, Rose, Daniels, Fan, or Harrison's violations of Section 17(a)(1), (2), or (3) of the Securities Act.

You should use the instructions and definitions on aiding and abetting that I gave you regarding Count II and knowingly that I gave you regarding Count III.

To determine whether Mirman, Rose, Daniels, Fan, or Harrison violated Section 17(a)(1), you should use the elements and definitions I gave you regarding Count III.

To determine whether Mirman, Rose, Daniels, Fan, or Harrison violated Section 17(a)(2), you should use the following instructions:

First, you must find that Mirman, Rose, Daniels, Fan, or Harrison used an instrumentality of interstate commerce in connection with the offer to sell or sale of a security.

Second, you must find that Mirman, Rose, Daniels, Fan, or Harrison directly or indirectly made one or more misrepresentations of material fact or omissions of material fact in the offer to sell or sale of a security.

And third, you must find that Mirman, Rose, Daniels, Fan, or Harrison was negligent in making the representation.

Now I'll provide you with some additional instructions to help you as you consider the facts the SEC must prove.

For the first element – that an instrumentality of interstate commerce was used in connection with the offer to sell or sale of a security – you must use these definitions:

"Instrumentality of interstate commerce" means the use of the mails, telephone, Internet, or some other form of electronic communication, an interstate delivery system such as Federal Express or UPS or a facility of a national securities exchange such as the New York Stock Exchange or NASDAQ or an inter-dealer electronic-quotation-and-trading system in the over-the-counter securities market.  It's not necessary that the facility of a national securities exchange was the means by which Spartan, Island, Dilley, or Eldred used a device, scheme, or artifice to defraud someone.  It's only necessary that the facility was used in some phase of the transaction.

The terms "sale" or "sell" mean the transfer of a security for value.  This includes the contract for sale for value or any other disposition for value of a security or interest in a security.  An "offer," "offer to sell," or "offer for sale" means attempting to dispose of a security or an interest in a security for value by inviting buyers.

31

For the second element, the SEC must prove that someone made a misrepresentation of material fact or an omission of material fact.

The SEC claims that Mirman, Rose, Daniels, Fan, or Harrison are responsible for the following misrepresentations of fact or omissions. The SEC allege that Rose and Mirman recruited persons to act as straw CEOs, to fraudulently obtain the effective registration of shell companies with the SEC, through the use of false and fraudulent statements and documents that were submitted to the SEC for this purpose.  The SEC contends that a further purpose of the scheme was to issue unrestricted stock for these companies that could be secretly controlled by them. This was allegedly done so that Rose and Mirman would be in a position to control all or nearly all of the publicly traded shares of the companies, so that when they later sold a shell company, part of the sale would include the undisclosed transfer of the unrestricted free trading shares to the purchaser.  In this way, the purchaser of the shell company would be in a position to engage in fraudulent schemes, such as "pump and dump" stock swindles.

The SEC further alleges that Daniels, Fan, and Harrison manufactured undisclosed blank check companies based on a deceptive public float of purportedly unrestricted shares.  Harrison and her husband, Daniels, allegedly manufactured at least five public companies.  The Form 211s, including the responses to FINRA's deficiency letters, contained misrepresentations with respect to the management, business purpose, and shareholders to give the false appearance of an operating company with a specific business plan (i.e. no plans to seek a merger or acquisition), independent management and an independent shareholder base. The SEC contends that Daniels and Harrison sold their first company to Fan as part of his endeavor to amass a roster of public

32

companies for later reverse mergers with Chinese companies.  Daniels and Fan then allegedly agreed to create three more public vehicles from scratch.

Finally, the SEC claims that Rose and Mirman and Daniels, Fan, and Harrison obtained money or property by means of the above untrue statements of a material fact or omissions to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

A "misrepresentation" is a statement that is not true.  An "omission" is the failure to state facts that would be necessary to make the statements made by the Defendants not misleading to the Plaintiff.

A misstatement or omission of fact is "material" if there is a substantial likelihood that a reasonable investor would attach importance to the misrepresented or omitted fact in determining his course of action.  Put another way, there must be a substantial likelihood that a reasonable investor would view the misstated or omitted fact's disclosure as significantly altering the total mix of available information.  A minor or trivial detail is not a "material fact."

If Mirman, Rose, Daniels, Fan, or Harrison have made false or inaccurate statements regarding material facts before, such as statements made in reports they filed with the Securities Exchange Commission, information they sent to investors, or statements they made in press releases, they have a duty to correct those statements if it is discovered later that those statements weren't true when made and they remain material to a shareholder's investment decision.

For the third element, the SEC must prove that Mirman, Rose, Daniels, Fan, or Harrison was negligent in making materially false or misleading statements or omissions in connection

with the offer to sell or sale of a security. "Negligence" is the failure to exercise the due diligence, care, or competence that a reasonable person would when making representations or engaging in an act, practice, or course of business.  Ask yourself: Would a reasonable person have omitted or made the statements or engaged in the act, practice, or course of business?

To find for the SEC, you need only find that Mirman, Rose, Daniels, Fan, or Harrison obtained money or property by means of any one of the misrepresentations or omissions. You need not find that Mirman, Rose, Daniels, Fan, or Harrison obtained money or property by means of all of the misrepresentations or omissions.

To determine whether Mirman, Rose, Daniels, Fan, or Harrison violated Section 17(a)(3), you should use the elements I gave you regarding Count IV.

## **INSTRUCTION 19**

In Counts V, VI, and VII, the SEC claims that Spartan, Island, Dilley, and Eldred violated Section 10(b) of the Exchange Act and Exchange Act Rules 10b-5(a), 10b-5(b), and 10b-5(c).  Rule 10b-5(a) makes it unlawful for a person to employ any device, scheme, or artifice to defraud someone else in connection with the purchase or sale of any security.  Rule 10b-5(b) makes it unlawful for a person to commit a fraud in connection with the purchase or sale of a security.  Rule 10b-5(c) makes it unlawful for a person to engage in any practice or course of dealing that would operate as a fraud in connection with the purchase or sale of any security.

The SEC may bring a civil action for a violation of Rule 10b-5(a), (b), and (c).  To prove a claim under Rule 10b-5(a), (b), and (c), the SEC must prove each of the following facts by a preponderance of the evidence:

First, you must find that Spartan, Island, Dilley, or Eldred used an instrumentality of interstate commerce in connection with the purchase or sale of a security.

Second, you must find that Spartan, Island, Dilley, or Eldred used a device, scheme, or artifice to defraud someone in connection with the purchase or sale of a security; or made a misrepresentation of a material fact, or omitted a material fact, in connection with the purchase or sale of a security; or engaged in an act, practice, or course of business in connection with the purchase or sale of a security that operated or would operate as a fraud or deceit on any person.

Third, you must find that Spartan, Island, Dilley, or Eldred acted knowingly or with severe recklessness.

For the first element, the terms "instrumentality of interstate commerce," "sale," "sell," "offer to sell," or "offer for sale" mean the same thing as I previously explained for Counts III and IV.

For the second element, the SEC alleges that Spartan, Island, Dilley, and Eldred violated three portions of Rule 10b-5.  It is not necessary that the SEC prove that Spartan, Island, Dilley, and Eldred violated all three portions of the Rule.  However, you must be unanimous as to which portion of the Rule, if any, each Defendant violated. I will now discuss the requirements of each portion of the Rule separately.

### 1) Rule 10b-5(a)

To prove its claim under Rule 10b-5(a), the SEC must prove that Spartan, Island, Dilley, or Eldred used a device, scheme, or artifice to defraud in connection with the purchase or sale of a security.  The SEC does not need to identify any particular purchase or sale of securities by a specific person, including Spartan, Island, Dilley, and Eldred.  Rather, it's enough if the SEC proves that the device, scheme, or artifice to defraud used by Spartan, Island, Dilley, or Eldred involved, or touched in any way, the purchase or sale of securities.

The SEC claims that Spartan, Island, Dilley, or Eldred violated Section 10(b) and Rule 10b-5(a) when Dilley schemed with Mirman and Rose, and Eldred schemed with Daniels, Fan and Harrison, to defraud the public that the Mirman/Rose Companies and Daniels/Harrison/Fan Companies were operating businesses with independent management and shareholders, rather than undisclosed "blank check" or "shell" companies for sale.  The SEC alleges that in furtherance of the Mirman/Rose scheme, Spartan and Dilley signed and submitted false Form 211 applications to FINRA; Spartan, Island and Dilley contributed to false DTC applications; Dilley

36

found potential shell buyers; Dilley and Island signed an escrow agreement and false attestation letters for shell buyers; and Dilley and Island effectuated the bulk transfer of the entire deceptive public float of Mirman/Rose Companies to shell buyers. The SEC further alleges that Spartan and Eldred similarly schemed with Daniels, Harrison, and Fan by filing false Forms 211 with FINRA, all in support of the manufacture of undisclosed blank check companies – one of which Eldred expressly proposed to acquire himself while its Form 211 was pending.

The SEC also alleges that Spartan Securities and Island Stock Transfer provided various services which were critical to the Mirman/Rose and Daniels/Harrison/Fan shell factories, including filing a Form 211 application with FINRA to demonstrate compliance with Rule 15c2-11. Finally, the SEC alleges that Spartan, Dilley and Eldred Securities also had information that undermined any reasonable basis that the information required by Rule 15c2-11 was materially accurate and from a reliable source.

The terms "scheme," "device," "misrepresentation," "omission," and "material" mean the same thing as I previously explained for Counts III and IV.

For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it.

### 2) Rule 10b-5(b)

To prove its claim under Rule 10b-5(b), the SEC must prove that Spartan, Island, Dilley, or Eldred either made an untrue statement of material fact or omitted a material fact, either of which would tend to mislead the prospective buyer or seller of a security.

The terms "misrepresentation," "omission," "material," mean the same thing as I previously explained in the instruction regarding Counts III and IV. For purposes of Rule 10b-5,

37

the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it.

The SEC does not need to identify any particular purchase or sale of securities by a specific person, including Spartan, Island, Dilley, or Eldred.  Rather, it's enough if the SEC proves that the misrepresentation or omission involved or touched any purchase or sale of a security in any way.

The SEC contends that Spartan, Island, Dilley, and Eldred made misrepresentations and omissions to, among others, FINRA, DTC participants, and securities purchasers. The SEC claims that Spartan, Dilley, and/or Eldred made misrepresentations and omissions in the filing of 15c2-11 applications and submissions, including, but not limited to:

- Alvin Mirman and Sheldon Rose's involvement and/or role in the issuers;
- Mirman and Rose's control of the issuers;
- Whether the issuers were shells or blank check companies;
- That the issuers had no consultants;
- The true business purpose of the issuers;
- Communications with CEOs/Presidents of the issuers;
- The relationships and affiliations among shareholders and Mirman and Rose;
- The solicitations of the shareholders;
- The issuers' plans for potential mergers or acquisitions;
- That the issuers' shareholders have control of their shares;
- That Spartan conducted due diligence on the issuers;
- Spartan and Island's relationship with Sheldon Rose and Alvin Mirman, Diane Harrison, Michael Daniels and Andy Fan;
- Michael Daniels, Diane Harrison, and Andy Fan's involvement in the issuers;
- Circumstances surrounding the Form 211 submissions, including the identity of the person for whom the quotation is being submitted;
- That there are no other issuers that the current officers or directors of the issuers have requested a listing quotation on;
- That there was no material information, including adverse information regarding the issuer that the firm is aware of or has in its possession.
- Spartan, Island, and Dilley initiated and provided false information for applications filed with the DTC, including misrepresenting the shell status of issuers.

- Island and Dilley made misrepresentations and omissions regarding the designation of the securities as free trading.
- Island and Dilley made misrepresentation and omissions when effectuating the bulk issuance and transfer of securities, including stock certificates without restrictive legends.

### 3) Rule 10b-5(c)

To prove its claim under Rule 10b-5(c), the SEC must prove that Spartan, Island, Dilley, or Eldred engaged in an act, practice, or course of business – in connection with the purchase or sale of a security – that operated or would operate as a fraud or deceit on any person. The SEC does not need to identify any particular purchase or sale of securities by a specific person, including Spartan, Island, Dilley, or Eldred. Rather, it's enough if the SEC proves that the act, practice, or course of business that Spartan, Island, Dilley, or Eldred engaged in involved, or touched in any way, the purchase or sale of securities.

A "fraud or deceit" means a lie or a trick. A fraud or deceit doesn't have to relate to an investment's quality or actually result in the purchase or sale of any security. It's not necessary that Spartan, Island, Dilley, or Eldred, who was allegedly involved in the fraud or deceit, sold or purchased securities personally if the fraudulent or deceitful conduct defrauded some person.

The term "would" in the phrase "would operate as a fraud or deceit" means that the act, practice, or course of business had the capacity to defraud a purchaser or seller. It's not necessary that the act, practice, or course of business actually defrauded someone.

The SEC claims that Spartan, Island, Dilley, or Eldred violated Section 10(b) and Rule 10b-5(c) when Dilley schemed with Mirman and Rose, and Eldred schemed with Daniels, Fan and Harrison, to defraud the public that the Mirman/Rose Companies and Daniels/Harrison/Fan Companies were operating businesses with independent management and shareholders, rather

than undisclosed "blank check" or "shell" companies for sale.  The SEC alleges that in furtherance of the Mirman/Rose scheme, Spartan and Dilley signed and submitted false Form 211 applications to FINRA; Spartan, Island and Dilley contributed to false DTC applications; Dilley found potential shell buyers; Dilley and Island signed an escrow agreement and false attestation letters for shell buyers; and Dilley and Island effectuated the bulk transfer of the entire deceptive public float of Mirman/Rose Companies to shell buyers. The SEC further alleges that Spartan and Eldred similarly schemed with Daniels, Harrison, and Fan by filing false Forms 211 with FINRA, all in support of the manufacture of undisclosed blank check companies – one of which Eldred expressly proposed to acquire himself while its Form 211 was pending.

The SEC also alleges that Spartan Securities and Island Stock Transfer provided various services which were critical to the Mirman/Rose and Daniels/Harrison/Fan shell factories, including filing a Form 211 application with FINRA to demonstrate compliance with Rule 15c2-11. Finally, the SEC alleges that Spartan, Dilley and Eldred Securities also had information that undermined any reasonable basis that the information required by Rule 15c2-11 was materially accurate and from a reliable source.

For the third element, the SEC must prove that Spartan, Island, Dilley, or Eldred acted knowingly or with severe recklessness which I've defined in the instruction regarding Count III.

## INSTRUCTION 20

In Counts XI, XII, XIII, the SEC asserts that Spartan, Island, Dilley, and Eldred aided and abetted violations of Section 10(b) and Rule 10b-5(a), (b), and (c) of the Exchange Act by Mirman, Rose, Daniels, Fan, or Harrison.   Spartan, Island, Dilley and Eldred may be liable for these violations – even if they personally did not commit the violations – if you find that they aided and abetted someone else who committed the violations.   To prove this claim, the SEC must prove each of the following facts by a preponderance of the evidence:

First, you must find that Mirman, Rose, Daniels, Fan, or Harrison violated Section 10(b) and Rule 10b-5(a), (b), or (c) of the Exchange Act;

Second, you must find that Spartan, Island, Dilley, or Eldred were aware that they were part of an overall activity that was improper; and

Third, you must find that Spartan, Island, Dilley, or Eldred knowingly and substantially assisted Mirman, Rose, Daniels, or Harrison's violations of Section 10(b) and Rule 10b-5(a), (b), or (c) of the Exchange Act.

To determine whether Mirman, Rose, Daniels, Fan, or Harrison violated Section 10(b) and Rule 10b-5, you should use the elements and definitions I gave you for Counts V, VI, and VII.

The SEC alleges that Mirman, Rose, Daniels, Fan, or Harrison engaged in the following conduct. The SEC claims that Rose and Mirman recruited persons to act as straw CEOs, to fraudulently obtain the effective registration of shell companies with the SEC, through the use of false and fraudulent statements and documents that were submitted to the SEC for this purpose. A further purpose of the alleged scheme was to issue unrestricted stock for these companies that could be secretly controlled by them.  This was allegedly done so that Rose and Mirman would

be in a position to control all or nearly all of the publicly traded shares of the companies, so that when they later sold a shell company, part of the sale would include the undisclosed transfer of the unrestricted free trading shares to the purchaser.  In this way, the purchaser of the shell company would be in a position to engage in fraudulent schemes, such as "pump and dump" stock swindles.

The SEC also alleges that Daniels, Fan, and Harrison manufactured undisclosed blank check companies based on a deceptive public float of purportedly unrestricted shares. The SEC claims that Harrison and her husband, Daniels, manufactured at least five public companies.  The Form 211s, including the responses to FINRA's deficiency letters, allegedly contained misrepresentations with respect to the management, business purpose, and shareholders to give the false appearance of an operating company with a specific business plan (i.e. no plans to seek a merger or acquisition), independent management and an independent shareholder base.  The SEC contends that Daniels and Harrison sold their first company to Fan as part of his endeavor to amass a roster of public companies for later reverse mergers with Chinese companies. Finally, the SEC alleges that Daniels and Fan then agreed to create three more public vehicles from scratch.

You should use the instructions and definitions on aiding and abetting that I gave you regarding Count II and knowingly that I gave you regarding Count III.

**INSTRUCTION 21**

In Count XIV, the SEC claims that Spartan, Island, and Dilley violated Sections 5(a) and 5(c) of the Securities Act of 1933, which require the offer or sale of certain securities to be registered.  Registering securities ensures that companies file essential facts with the SEC, which then makes these facts public.  It's unlawful, without an exemption from the Securities Act's registration requirements, for any person to use an instrumentality of interstate commerce to buy or sell, offer to buy or sell, or transport or deliver after sale, an unregistered security.

The SEC claims that the sales of the securities in this case violated the registration requirements.  Specifically, the SEC claims the transfers of stock from the shareholders of On the Move Systems Corp, Rainbow Coral Corp, First Titan Corp, Neutra Corp, Aristocrat Group Corp, First Social Networx, Global Group Enterprises Corp, E-Waste Corp, First Independence Corp, and Changing Technologies, to the stock buyers, violated the registration requirements because those transactions were not included in an effective registration statement.

Spartan, Island, and Dilley deny that these sales violated these requirements.  They also claim that even if the sales were unregistered, they did not violate Section 5 because an exemption from the registration requirement was applicable. The SEC denies that this exemption applies to the relevant stock sales.

To succeed on its claim that Spartan, Island, or Dilley violated Securities Act Sections 5(a) and 5(c), the SEC must prove each of the following three elements by a preponderance of the evidence:

First, you must find that Spartan, Island, or Dilley directly or indirectly sold, or offered to sell, securities.

Second, you must find that Spartan, Island, or Dilley used an instrument of transportation or communication in interstate commerce in connection with the offer to sell or sale of securities.

And third, you must find that a registration statement for the securities was not in effect.

A "security" is an investment in a commercial, financial, or other business enterprise with the expectation that profits or other gain will be produced by others. Some common types of securities are stocks, bonds, debentures, warrants, and investment contracts.

The terms "sale" or "sell" mean the transfer of a security for value.  This includes contracts for the sale for value or any other disposition for value of a security or interest in a security.  An "offer," "offer to sell," or "offer for sale" means attempting to dispose of a security or an interest in a security for value by inviting buyers.

To "directly or indirectly" sell securities means Spartan, Island, or Dilley was a necessary participant, or substantial factor, in the sale or offer to sell that the SEC claims is in violation of Securities Act Section 5.

Spartan, Island, or Dilley may be a "necessary participant" or "substantial factor" in the sale of securities if, for example, they employ or direct others to sell or offer to sell securities, or plans the process by which unregistered securities are offered or sold.

To satisfy this element, the SEC isn't required to show that Spartan, Island, or Dilley had direct contact with any of the investors who were offered or purchased the securities at issue.

"Instrument of transportation or communication in interstate commerce" means the use of the mails, telephone, Internet, or some other form of electronic communication, or an interstate delivery system such as Federal Express or UPS, or an inter-dealer electronic-quotation-and-trading system in the over-the-counter securities market.

In this case there is a dispute over whether the securities were registered. For each transfer alleged to be unregistered by the SEC, the SEC must prove by a preponderance of the evidence that a registration statement for the security was not in effect. It is enough for you to find in the SEC's favor if you find that any of the transfers at issue were not registered.

A person who sells unregistered securities violates Sections 5(a) and 5(c) regardless of whether the violation was committed knowingly, intentionally, recklessly, or negligently. Spartan, Island, or Dilley's good-faith belief that the sale or offer to sell was legal, and their reliance on the advice of counsel, aren't defenses to a violation of Sections 5(a) and 5(c).

If you find that the SEC has proved these three elements by a preponderance of the evidence, the burden shifts to Spartan, Island, and Dilley to prove, by a preponderance of the evidence, that the offer to sell or sale of the securities were exempt from the Securities Act's registration requirements.

Spartan, Island, and Dilley have argued that the transfers were exempt from registration because the purchasers of the securities were not underwriters.

The term "underwriter" means any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking. The issuer is the company whose stock is sold. The term "issuer" includes any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer.

If Spartan, Island, or Dilley prove by a preponderance of the evidence that the transfer was not made by an underwriter then the transfer is exempt from registration and you must issue a verdict for Spartan, Island, or Dilley.

If you find that the SEC has proved one or more of its claims against Spartan, Island, or Dilley, I alone will determine the remedy or remedies to impose at a later date.

## **INSTRUCTION 22**

Agencies may use guidance and other publications to educate regulated parties of existing legal requirements, or provide non-binding advice on technical issues through examples or practices to guide the application or interpretation of statutes and regulations. But interpretations contained in policy statements lack the force of law, and do not impose binding requirements or standards on persons or entities.

## **INSTRUCTION 23**

You've been permitted to take notes during the trial. Most of you – perhaps all of you – have taken advantage of that opportunity. You must use your notes only as a memory aid during deliberations. You must not give your notes priority over your independent recollection of the evidence. And you must not allow yourself to be unduly influenced by the notes of other jurors. I emphasize that notes are not entitled to any greater weight than your memories or impressions about the testimony.

## **INSTRUCTION 24**

Your verdict must be unanimous — in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges — judges of the facts. Your only interest is to seek the truth from the evidence in the case.

## INSTRUCTION 25

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible — either in writing or by talking to you in the courtroom.

Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.