UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
CASE NO. 19-CV-00448-VMC-CPT


SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

SPARTAN SECURITIES GROUP, LTD.,
ISLAND CAPITAL MANAGEMENT LLC,
CARL E. DILLEY,
MICAH J. ELDRED, and
DAVID D. LOPEZ,

      Defendants.

_____/


PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

SECURITIES AND EXCHANGE COMMISSION
Christine Nestor
Alise Johnson
Alice Sum
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone: (305) 982-6300

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................1

II.   MEMORANDUM OF LAW .......................................................1

     A.    Defendants Have Not Met the Requirements to Disregard the Jury's Verdict. .......................................................................1

     B.    The Jury Correctly Held Defendants Liable for Their *Own* Misrepresentations and Omissions Made in the Form 211 Applications. ........................................................................2

     C.    The Misrepresentations and Omissions Were Material. .................6

     D.    Defendants Made Misrepresentations and Omissions "In Connection With" the Purchase or Sale of Securities. ...................12

     E.    Evidence of Misrepresentations and Omissions in DTC Applications .......................................................................18

     F.    Island Made Actionable Misrepresentations and Omissions .........19

III.  CONCLUSION ........................................................................20

## Table of Authorities

**Cases**

*Basic v. Levinson*,
485 U.S. 224 (1988) ........................................................................ 7

*Chadbourne & Parke LLP v. Troice*,
571 U.S. 377 (2014) ...................................................................... 16

*Chaney v. City of Orlando*,
483 F.3d 1221 (11th Cir. 2007) ...................................................... 2

*Cleveland v. Home Shopping Network, Inc.*,
369 F.3d 1189 (11th Cir. 2004) ...................................................... 2

*In re Galectin Therapeutics, Inc. Sec. Litig.*,
843 F.3d 1257 (11th Cir. 2016) ...................................................... 6

*Gonnella v. SEC*,
954 F.3d 536 (2d Cir. 2020) ......................................................... 15

*Graham v. SEC*,
222 F.3d 994 (D.C. Cir. 2000) ......................................................15

*Grippo v. Perazzo*,
357 F.3d 1218 (11th Cir. 2004) .................................................... 14

*Janus Capital Group, Inc. v. First Derivative Traders*,
564 U.S. 135 (2011) ........................................................................ 5

*Lorenzo v. SEC*,
139 S. Ct. 1094 (2019) .................................................................... 8

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
547 U.S. 71 (2006) ............................................................. 14, 15, 16

*National Union Fire Insur. Co. v. All American Freight, Inc.*,
2016 WL 3787638 (S.D. Fla. July 6, 2016) ................................... 2

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
297 F.3d 1182 (11th Cir. 2002) ...................................................... 7

*Pulte Home Corp. v. Osmose Wood Preserving, Inc.*,
  60 F.3d 734 (11th Cir. 1995) ................................................................ 2

*Santa Fe Indus., Inc. v. Green*,
  430 U.S. 462 (1977) ........................................................................... 14

*SEC v. Adler*,
  137 F.3d 1325 (11th Cir.1998) ........................................................ 2, 6

*SEC v. Bank Atlantic Bancorp, Inc.*,
  2013 WL 5588139 (S.D. Fla. Oct. 10, 2013) ...................................... 7

*SEC v. C. Jones & Co.*,
  312 F. Supp. 2d 1375 (D. Colo. 2004) ............................................. 13

*SEC v. Crowe*,
  216 F. Supp. 3d 852 (S.D. Ohio 2016) ....................................... 15, 16

*SEC v. Czarnik*,
  2010 WL 4860678 (S.D.N.Y. Nov. 29, 2010) ............................... 9, 13

*SEC v. Farmer*,
  2015 WL 5838867 (S.D. Tex. Oct. 7, 2015) ....................................... 8

*SEC v. Frohling*,
  851 F.3d 132 (2d Cir. 2016) ........................................................ 10, 15

*SEC v. Goble*,
  682 F.3d 934 (11th Cir. 2012) ..................................... 10, 13, 17, 18

*SEC v. Greenstone Holdings, Inc.*,
  2012 WL 1038570 (S.D.N.Y. Mar. 28, 2012) ............................... 9, 10

*SEC v. Hall*,
  759 Fed. Appx. 877 (11th Cir. 2019) ............................................... 15

*SEC v. Lyttle*,
  538 F.3d 601 (7th Cir. 2008) ............................................................. 3

*SEC v. Mannion*,
  789 F. Supp. 2d 1321 (N.D. Ga. 2011) ........................................... 16

*SEC v. Merchant Capital, LLC*,
  483 F.3d 747, 766 (11th Cir. 2007) ................................................... 7

iii

*SEC v. Morgan Keegan & Co., Inc.,*
678 F.3d 1233 (11th Cir. 2012) ................................................................. 7, 8, 16

*SEC v. Pirate Inv.,*
580 F.3d 233 (4th Cir. 2009) ................................................................. 16

*SEC v. Radius Capital Corp.,*
653 Fed. App'x. 744 (11th Cir. 2016) ................................................ 13, 16, 17

*SEC v. Rana Research,*
8 F.3d 1358 (9th Cir. 1993) ................................................................. 17

*SEC v. Sayid,*
2021 WL 4435303 (2d Cir. Sept. 28, 2021) ................................................ 9, 15

*SEC v. Wolfson,*
539 F.3d 1249 (10th Cir. 2008) ................................................................. 17

*SEC v. Zandford,*
535 U.S. 813 (2002) ................................................................. 14, 16

*Superintendent of Ins. of State of N.Y. v. Bankers Life & Cas. Co.,*
404 U.S. 6 (1971) ................................................................. 8, 14

*Transit Rail LLC v. Marsala,*
2007 WL 2089273 (W.D.N.Y. July 20, 2007) ................................................ 8

*U.S. v. Naftalin,*
441 U.S. 768 (1979) ................................................................. 13, 14, 15,18

*United States v. Gordon,*
710 F.3d 1124 (10th Cir. 2013) ................................................................. 9

*United States v. O'Hagan,*
521 U.S. 642 (1997) ................................................................. 14

*United States v. Weed,*
873 F.3d 68 (1st Cir. 2017) ................................................................. 9, 10, 15, 20

## I.    INTRODUCTION

After a 12-day trial, the jury found Spartan Securities Group, LTD ("Spartan"), Island Capital Management LLC ("Island") and its principals Carl E. Dilley, and Micah J. Eldred (collectively "Defendants") liable for engaging in fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Exchange Act Rule 10b-5(b).  This action falls within the heartland of these antifraud provisions because Defendants enabled the public trading of otherwise worthless microcap securities by unsuspecting investors.  In an effort to erase the jury's verdict, Defendants renew their Motion for Judgment as a Matter of Law ("Renewed Motion"), merely repeating arguments made in previous motions and at trial.  But nothing has changed to disturb the Court's rulings rejecting these arguments.

Defendants' Renewed Motion argues that the misstatements and omissions: 1) made in Form 211 applications are not actionable, 2) were not material, and 3) were not made "in connection with" the purchase or sale of securities.  None of these arguments support setting aside the jury's verdict.  As shown below, Defendants misstate both the standard required to prove a Section 10(b) claim and the evidence presented at trial. Thus, the Court should deny the Renewed Motion as Defendants have identified no fact or legal flaw that warrants the extraordinary relief they seek.

## II.    MEMORANDUM OF LAW

**A.    Defendants Have Not Met the Requirements to Disregard the Jury's Verdict.**

To prevail on a motion under Rule 50(b), "the facts and inferences [of a case must] point so overwhelmingly in favor of the movant that reasonable people could

not arrive at a contrary verdict." *National Union Fire Insur. Co. v. All American Freight, Inc.*, 2016 WL 3787638 *1 (S.D. Fla. July 6, 2016) (citations omitted). After a jury has deliberated and a verdict has been returned, a judgment as a matter of law may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. *Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734, 739 (11th Cir. 1995).

A court should not make credibility determinations or weigh the evidence, as those are solely functions of the jury. *SEC v. Adler*, 137 F.3d 1325, 1340 (11th Cir.1998). Moreover, the question before the district court is whether the evidence is "legally sufficient to find for the party on that issue." *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007) (citing Fed. R. Civ. P.50 (a)(1)); *see also Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192 (11th Cir. 2004) (motion should only be granted "when there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue").

As discussed below, Defendants have not demonstrated compelling facts so overwhelmingly in their favor to justify the extraordinary relief they seek. Instead, they argue that they did not violate the law under a misguided legal theory of what constitutes a violation under Section 10(b) and Rule 10b-5(b).

### B.    The Jury Correctly Held Defendants Liable for Their *Own* Misrepresentations and Omissions Made in the Form 211 Applications.

Defendants wrongfully assert that the SEC is faulting Spartan, Dilley, and Eldred for misstatements made by the issuers. To the contrary, the SEC seeks to hold

Defendants responsible for their *own* misstatements and omissions made in the Form

211 applications and not those made by the issuers.[1]  Although Defendants claim they

merely published representations from the issuer, they ignore their own statements and

attestations regarding among other things, who hired Defendants and why, whether

they were in possession of adverse information about the issuers, and whether the

issuers worked with consultants.  As the Court pointed out in its Order on the Motion

for Summary Judgment (DE 135), "Spartan made several misrepresentations to

FINRA" in Spartan's Form 211 applications:

> For example, Spartan represented to FINRA that "Mirman has no relationship with [the issuer]," when in fact Mirman was the issuer's intermediary. Spartan also represented to FINRA that the issuer's sole officer initiated contact with Spartan or Dilley. But most officers testified that they never communicated with Spartan or Dilley. Similarly, Spartan responded to several FINRA deficiency letters with shareholder charts indicating the sole officer had solicited 29 shareholders as a friend. Yet . . . all but one of the sole officers testified they did not solicit any shareholders and knew virtually none of them. Spartan also responded to a deficiency letter stating that "[t]he individuals" who purchased all of the issuers' shares were "either friends or family" of Harrison or the issuer's treasurer. (Doc. # 108-8 at 26-27). But Spartan had already learned that Daniels and Harrison had paid for all shares, and that "[n]one of the shareholders paid for their own shares." (Doc. # 108-9) . . .
> Lastly, Eldred signed two Forms 211 stating each issuer was pursuing local business operations with no plans for mergers or changes in control. (Doc. ## 107-9; 108-2). One of these forms also stated that there were no past or present undisclosed control persons. (Doc. # 107-9). However, according to one of the sole officers, "the plan for [both] companies at the outset was the same - take them public, and then merge them into one of Fan's companies so that Fan would have public companies in the United States. There was never any plan to continue running the businesses of those [two] companies." (Doc. # 107-11 at ¶¶ 6-7).

(Order on Motion for Summary Judgment DE 135 at 28-29).[2]

---

[1] In any event, "[o]ne doesn't have to be the inventor of a lie to be responsible for knowingly repeating it to a dupe." *SEC v. Lyttle*, 538 F.3d 601, 604 (7th Cir. 2008) (Posner, J.).

[2] Exhibits cited in the Court's Order were admitted at trial as P605, P12, P415, and P541. *See also* trial exhibits JT3, JT7, JT8, JT9, JT10, JT11, JT84, P71, P113, P202, P232, P248, P290, P537, and P621.

The trial testimony further supported the SEC's contention that Spartan, Dilley, and/or Eldred made misrepresentations and omissions, and was consistent with the previous testimony on which the Court based its Order on summary judgment. Specifically, Alvin Mirman testified at trial that Spartan's denial of having any other relationship with him in the 211 application was not true and that Spartan knew he was involved with ten issuers.[3]  Dilley confirmed he knew Mirman was acting as an intermediary for several issuers and that he had gone to lunch with Mirman on three occasions.[4]  Eldred also admitted that at different times he had referred to Mirman as a Spartan client.[5] In addition, the Spartan employee who assisted in completing the 211 applications testified that Defendants knew there was an "informal" relationship between Mirman and the issuers.[6]  Mirman also testified that he reached out to Dilley to request that Spartan prepare the Form 211 applications for ten issuers.[7]

Similarly, the CEOs for three different issuers testified that they never initiated contact with Defendants, never spoke with Defendants, and two testified they had no direct contact with Defendants.[8]  Moreover, although Spartan responded to several FINRA deficiency letters with shareholder charts indicating the sole officer had

---

[3]  Mirman Tr. 7-14-21 p.m., 30:4-14, 32:14-25, and 33:1-4. Mirman also confirmed he was the "intermediary" for several issuers, that he and Sheldon Rose were the "point people" for all communications between Spartan and ten shell companies, and that Spartan never asked the issuers' CEO's to provide information to complete the 211 applications. Mirman Tr. 7-14-21 p.m., 15:1-13.
[4] Dilley Tr. 7-19-21 p.m., 141:13-15 and 7-20-21 a.m., 11:5-8.
[5] Eldred Tr. 7-22-21 p.m., 126:22-25, 127:21-23, and 128:7-25.
[6] Zajonc Tr. 7-22-21 p.m., 47:6:19.
[7] Mirman Tr. 7-14-21 p.m., 23:7-13.
[8] Lindsey Tr. 7-13-21 p.m., 71:6-23, and 73:1-18; Egna Tr. 7-19-21 a.m., 82:21-25, and 83:1-12; Paquette Tr. 7-26-21 p.m., 117:21-25, 118:1-4, and 119:13-21.

solicited 29 shareholders as friends, the issuers' officers testified that they did not solicit any shareholders and knew virtually none of them.[9]

Trial testimony also established Eldred signed Form 211 applications for companies brought public by Diane Harrison, Michael Daniels and Andy Fan, stating each issuer was pursuing business operations with no plans for mergers or changes in control. In fact, the actual business plan from the outset was not to implement the purported business plan but rather to take them public and then merge them into one of Fan's companies.[10] Eldred testified he contemplated using at least one issuer, Court Document Services, but that fact was not disclosed in the 211 form.[11] Eldred also testified that although the 211 forms stated there were no past or present undisclosed control persons, Eldred was informed, but did not disclose, that Fan was involved in "three companies [Fan] is doing registrations on, including the 211 we filed on Court."[12] Defendants ignore this evidence and the Court's findings in their effort to obfuscate what the SEC actually alleged as the Defendants' misrepresentations and omissions. The jury, however, was not confused, and could have rightfully found Defendants liable of securities fraud based on misrepresentations and omissions described above, which were made by Defendants—not others.

Nor does *Janus Capital Group, Inc. v. First Derivative Traders,* 564 U.S. 135, 142 (2011), preclude liability under these facts. Defendants do not dispute that, consistent

---

[9] *See* Egna Tr. 7-19-21 a.m., 86:20-22 and 87:3-11; Lindsey Tr. 7-13-21 p.m. 69:1-25 and 70:2-15.
[10] Donnelly Tr. 7-22-21 p.m., 55:7-18; 59:1-14; 62:5-14, 64:1-23, 66:5-8, 68:15-25, 69:1-19, 73:13-19.
[11] Eldred Tr. 7-26-21 a.m., 63:6-11.
[12] Eldred Tr. 7-26-21 a.m., 61:10-20.

with *Janus*, the jury was properly instructed that "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." DE 249 at 37. Here, the jury reasonably concluded that Defendants possessed such authority.  Further, this Court properly ruled (DE 135 at 27-28) that a maker of a statement cannot escape liability by arguing that the statement was "based on third-party information."  Therefore, Defendants are the makers of the statements made to FINRA during the Form 211 process or DTC eligibility process, despite purportedly relying on Mirman, Rose, and the issuers for the information."[13]

Defendants' arguments to the contrary should be rejected once again.

### C.    The Misrepresentations and Omissions Were Material.

Defendants ask the Court to second-guess the jury's materiality determination, arguing that the misrepresentations "would not have been relevant or important in making an investment decision." Renewed Motion at 14.  Such an evidentiary assessment would require the Court to improperly invade the province of the jury and make credibility determinations, weigh the evidence, or draw inferences from the facts. *Adler*, 137 F.3d at 1340.

More specifically, Defendants claim the misrepresentations in the Form 211 applications are not material because they were not made to the investing public and

---

[13] *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1275 (11th Cir. 2016), is easily distinguished, as it involved articles written by stock promoters a company hired, not statements signed by a company's representatives.

could not have influenced an individual's investment decision.[14] Renewed Motion at 12-17. Defendants raised similar arguments in their motions to dismiss and motion for summary judgment, both of which the Court denied. (DE 44 at 13, DE 135 at 31). "Materiality is considered at least a mixed question of law and fact involving 'assessments peculiarly within the province of the trier of fact.'" *SEC v. Bank Atlantic Bancorp, Inc.*, 2013 WL 5588139, at *12 (S.D. Fla. Oct. 10, 2013) (quoting *SEC v. Merchant Capital, LLC*, 483 F.3d 747, 766 (11th Cir. 2007)). "So '[t]he trier of fact usually decides the issue of materiality.'" *Id.* (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1189 (11th Cir. 2002)). Materiality depends on the significance the reasonable investor would place on the withheld or misrepresented information. *SEC v. Morgan Keegan & Co., Inc.*, 678 F.3d 1233, 1246 (11th Cir. 2012) (citing *Basic v. Levinson*, 485 US 224, 240 (1988)). As the trier of fact, the jury was tasked with determining whether Defendants' misrepresentations and omissions were important to a reasonable investor and therefore material. The jury considered the parties' conflicting views of the evidence, and it reasonably resolved that dispute.

While Defendants downplay the significance of their misrepresentations and omissions in the Form 211 application process, case law establishes that representations regarding a company's management, ownership, business plans and

---

[14] Defendants also argue that the misrepresentations were not material because Mirman and Rose could have found another market-maker to do their swindling. Renewed Motion at 14. That speculation as to what another market-maker might have done had Defendants not committed fraud themselves does not absolve Defendants of liability for their actions.

control persons are material in the context of the Form 211 process. *SEC v. Farmer*, 2015 WL 5838867, at *12 (S.D. Tex. Oct. 7, 2015) (finding misstatements made "through the Form 211 application process" to be the basis, among other things, for Section 10(b) liability); *Transit Rail LLC v. Marsala*, 2007 WL 2089273, at *12-13 (W.D.N.Y. July 20, 2007) (allowing Section 10(b) claim based on material omissions in Form 211 about undisclosed control person).

Case law also dictates that the fact that a statement is made in *private* rather than to the public does not foreclose a statement's materiality. While communicating a misstatement to investors is "a paradigmatic example of securities fraud," "Congress intended to root out all manner of fraud in the securities industry," and it "gave to the Commission the tools to accomplish that job." *Lorenzo v. SEC*, 139 S. Ct. 1094, 1103, 1104 (2019). "[T]he securities laws were designed 'to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits.'" *Id.* at 1103. Section 10(b) and Rule 10b-5 accordingly "capture a wide range of conduct," *id*. at 1101, and "prohibit all fraudulent schemes in connection with the purchase or sale of securities, whether the artifices employed involve a garden type variety of fraud, or present a unique form of deception." *Superintendent of Ins. of State of N.Y. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 10 n.7 (1971).

Because of the securities laws' broad reach, statements need not be publicly disseminated to be material. *SEC v. Morgan Keegan & Co*, 678 F.3d 1233, 1248 (11th Cir. 2012) ("the materiality test requires the court to consider all the information available to the hypothetical reasonable investor, which necessarily includes private

communications.")   Additionally, neither must a statement be made to a specific investor.  *SEC v. Greenstone Holdings, Inc.*, 2012 WL 1038570, at *5 (S.D.N.Y. Mar. 28, 2012). Thus, misstatements "in any phase of the selling transaction can be material if a reasonable investor would have considered the defendant's alleged misrepresentations important, even if the statement is not made directly to the investor." *SEC v. Czarnik*, 2010 WL 4860678, at *5 (S.D.N.Y. Nov. 29, 2010).

Although the materiality inquiry under Section 10(b) often focuses on a reasonable investor (typically the object of deceptive conduct), materiality should be assessed from the standpoint of the person at whom the fraud was directed.  Courts have adopted that framing where, as here, the object of the fraud was to facilitate the public trading of securities.  *See United States v. Weed*, 873 F.3d 68, 73 & n.6 (1st Cir. 2017) (assessing materiality based on "a reasonable transfer agent" because "transfer agents … were the direct recipients" of the misrepresentations); *United States v. Gordon*, 710 F.3d 1124, 1148 n.26 (10th Cir. 2013) ("[I]t is beyond peradventure" that false statements concerning the "factual predicate for Rule 144 certification … had a natural tendency to influence a transfer agent's issuance of nonrestricted certificates"); *SEC v. Sayid*, 2021 WL 4435303 (2d Cir. Sept. 28, 2021) (affirming finding of materiality for misrepresentations to attorney and transfer agent in Rule 144 context).

Accordingly, the materiality of the misrepresentations made to FINRA in the Form 211 applications may be assessed from the standpoint of FINRA.  Defendants agree the Form 211 applications were sent to FINRA and that FINRA's examiner testified that he considered the statements to be important in whether he cleared the

applications. Renewed Motion at 12-13.  This alone supports denial of Defendants'

argument as they seemingly admit their misrepresentations were material to FINRA.

Regardless, the jury could have reasonably concluded that the fraud would have been

material to investors:  courts have had "little difficulty" concluding that a misstatement

enabling the public sale of stock would be material to a purchaser of the issuer's shares.

*Weed*, 873 F.3d at 73-74; *see also SEC v. Greenstone Holdings, Inc.*, 2012 WL 1038570, at

*5 (S.D.N.Y. Mar. 28, 2012), *aff'd SEC v. Frohling*, 851 F.3d 132 (2d Cir. 2016).

Defendants' reliance on *SEC v. Goble*, 682 F.3d 934 (11th Cir. 2012), to support

their materiality argument misses the mark.  *Goble* held that a misrepresentation that

would only influence an individual's choice of broker-dealers cannot form the basis for

§10(b) securities fraud liability. 682 F.3d 944.  The SEC has never alleged that the

misrepresentations or omissions were material to an investor's decision to hire Spartan

as its broker-dealer.  To the contrary, Defendants' misrepresentations and omissions

entirely focus on issues that could influence an investor's decision to purchase or sell

a security.  For example, as set forth in the jury instructions (DE 249 at 38-39), the

SEC alleged Defendants made misrepresentations and omissions regarding whether

the issuers were shells or blank check companies; the true business purpose of the

issuers; and the issuer's plans for potential mergers or acquisitions.  There can be no

question that these areas reasonably factor into whether an investor would purchase

or sell a *security*, and not whether an investor would hire Spartan as a broker-dealer.

Accordingly, *Goble* has no application here.

Despite Defendants' attempt to isolate and minimize their misstatements, if the Court were inclined to assess the evidence, ample evidence supports the jury's materiality determination. For example, FINRA's examiner testified at length regarding the importance of receiving truthful and fulsome information. Regarding disclosure of who hired Spartan to submit the Form 211 applications, FINRA's examiner explained: "if you have certain individuals that get market makers to file 211s for multiple companies, it's because of possible manipulation of the market."[15] It would have been a red flag because "it is unusual to have one individual be behind the reason of a 211 being filled for multiple issuers. That is very, very uncommon."[16]

FINRA's examiner also reaffirmed the importance of accurate disclosure of who introduced Spartan to the issuer. "[W]hen outside parties start requesting for the 211 to be filed, it's usually - - those outside parties are people that are very familiar with the market and usually have ties with selling shares" and these individuals "usually have some background with respect to selling shares or possibly manipulating shares in the market. So we identify those individuals."[17] Further, FINRA's examiner provided unrebutted testimony that knowing that the issuer was introduced by a third-party intermediary (as Defendants claim Rose/Mirman were – yet failed to disclose) could have impacted FINRA's analysis of the Form 211 application.[18]   In fact,

---

[15] Adams Tr. 7-27-21 a.m., 43:6-22.
[16] *Id.* 43:23-44:1.
[17] *Id.* 47:16-48:15 and 48:18-21.
[18] *Id.* 49:10-12 and 53:19–54:10.

"whoever does the introductions is always important" and "intermediaries or anyone involved with the issuer with respect to the process of the 211 or how the business of the issuer is being conducted" should have been disclosed.[19]

Similarly, FINRA's examiner testified that accurate, fulsome information regarding the issuer's plans to conduct a reverse merger was expected.[20]  The evidence established that both Dilley and Eldred were aware of the issuers' intentions to complete reverse mergers.[21] *See also* Ex. P534 (emails between Eldred and Daniels 6 days after Spartan submits the Form 211 application for Court Document Services, discussing Eldred using the company in a reverse merger); Eldred Tr. 7-26-21 a.m., 63-6-11 (Eldred admits contemplating using Court in a reverse merger and not disclosing this information to FINRA.)  These facts alone allow a reasonable jury to conclude that Defendants' omissions and lies in the 211 applications were material.

### D.     Defendants Made Misrepresentations and Omissions "In Connection With" the Purchase or Sale of Securities.

Next, Defendants raise another argument the Court has twice rejected: that the SEC failed to meet the "in connection with" requirement because the false statements

---

[19] *Id.* 49:2-6 and 68:24–69:6. FINRA's examiner testified that even if, as Defendants suggest, Mirman merely shepherded Form 211 applications, that information was important information that "would have affected" his review process and "should have been disclosed." *Id.* 65:1–17; 70:22–16, 72:4-9.
[20] *Id.* 63:18–64:5.
[21] See Ex. P615 (Dilley email and Escrow Agreement for proposed sale of Obscene Jeans); Ex. P527 (emails between Eldred, Daniels, and a lawyer regarding Daniels' interest in selling a shell company); Eldred Tr. 7-26-21 a.m., 44:13-25 "I knew . . . Daniels had . . . reorganized and sold shells and he and his wife's law practice . . . dealt extensively with these types of companies, yes.".

were not made to the public.  First, the Court in denying Defendants' Motion to Dismiss stated, "[a]lthough the information contained in the Form 211 applications and responses to deficiency letters was not filed with the public, that information led to the fraudulent companies' abilities to be eligible for public quotation.  Thus, the statements were made in connection with the offer and sale of securities." DE 44 at 13-14.  Later, when denying Defendants' Motion for Summary Judgment, the Court similarly rejected Defendants' argument.  DE 135 at 30-31.

Defendants' argument is also contrary to established law,[22] including cases in the specific context of Form 211 misstatements to FINRA.  *SEC v. C. Jones & Co.*, 312 F. Supp. 2d 1375, 1381 (D. Colo. 2004) (misstatements in Form 211 were made "in connection with" securities transaction by "enabling a stock to be publicly traded" and are "reasonably calculated to influence the investing public").[23]  Indeed, the phrase "in connection with" must be construed "not technically and restrictively, but flexibly to

---

[22] *U.S. v. Naftalin,* 441 U.S. 768, 772 (1979) ("The statutory language does not require that the victim of the fraud be an investor – only that the fraud occur 'in' an offer or sale"); *Superintendent of State of N.Y. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12 (1971) (false statements need not be made directly to "the ultimate victims."); *SEC v. Radius Capital Corp.*, 653 Fed. App'x. 744, 751 (11th Cir. 2016) ("Misrepresentations themselves need not be explicitly directed at the investing public or occur during the transaction to be 'in connection with the purchase or sale of' . . . any security", and rejecting argument that for liability to attach, the misrepresentations must be disseminated into the public arena); *SEC v. Czarnik*, 2010 WL 4860678, *4 (S.D.N.Y Nov. 29, 2010) (attorney's misstatements "contained in documents disseminated only to the Issuers' transfer agent [but] not made directly to the investing public" were sufficiently linked to securities trading to be actionable under Section 10(b)).

[23] In a later opinion, the *C. Jones* court found against the SEC.  2009 WL 321696 (D. Colo. Feb. 10, 2009).  That decision is distinguishable.  In *C. Jones*, the Form 211 made misrepresentations, but the court found that a careful, reasonable investor had access to the misrepresentations. Here, the 211 forms contained a number of material misrepresentations that were not disclosed elsewhere, including the control, purpose, business plan, and milestones of the issuers.

effectuate its remedial purposes." *SEC v. Zandford*, 535 U.S. 813, 819 (2002) (citation and quotation omitted). Thus, a misrepresentation has been held to be "in connection with the purchase or sale" of a security so long as it "touch[es]," *Bankers Life*, 404 U.S. at 12-13, or "coincide[s]" with, *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006), a securities transaction. To satisfy this element it is not necessary to "identify any particular security purchased." *Grippo v. Perazzo*, 357 F.3d 1218, 1223-24 (11th Cir. 2004). The "in connection with" requirement may be met in the absence of "an actual purchase or sale of securities." *Goble*, 682 F.3d at 946.

Such a broad interpretation is necessary to effectuate the purposes of Section 10(b) of the Exchange Act. Congress intended the phrase "in connection with" to sweep widely enough to achieve "a high standard of business ethics in the securities industry" and to substitute "a philosophy of full disclosure for the philosophy of *caveat emptor*." *Zandford*, 535 U.S. at 819 (citation and quotation omitted). A flexible reading of "in connection with" thus furthers the principal purpose of the securities laws—"to insure honest securities markets and thereby promote investor confidence." *United States v. O'Hagan*, 521 U.S. 642, 658 (1997). It also promotes the closely related purpose of the securities laws to protect investors from fraud. *See Naftalin*, 441 U.S. at 775. Finally, reading the phrase flexibly furthers the full-disclosure regime on which the securities laws are based. *See Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477 (1977).

Despite Defendants' contention, fraud need not be directed at an investor to be actionable under Section 10(b). Similar to the discussion above vis-à-vis materiality, securities fraud directed at investors is the paradigmatic example of conduct that

Section 10(b) prohibits.  Evidence that misstatements were circulated to investors is not the only way to establish the requisite connection.  As the D.C. Circuit has explained, *Naftalin* "forecloses the argument" that a fraud "must have been perpetrated upon an actual or potential investor" to be actionable under Section 10(b).  *Graham v. SEC*, 222 F.3d 994, 1001-02 (D.C. Cir. 2000).  "The requisite showing … is deception 'in connection with the purchase or sale of any security,' not deception of an identifiable purchaser or seller."  *Dabit*, 547 U.S. at 85.

In addition to transfer-agent cases such as *United States v. Weed*, 873 F.3d 68 (1st Cir. 2017), and *SEC v. Frohling*, 851 F.3d 132 (2d Cir. 2016), discussed above, there are ample Section 10(b) cases where the immediate victim of the deception was not an investor.[24]  Likewise in a recent order, the Second Circuit affirmed entry of summary judgment in favor of the SEC and found that fraud that facilitates the public trading of securities—such as lies to a transfer agent in a Rule 144 opinion letter—is actionable under 10(b).  *SEC v. Sayid*, 2021 WL 4435303 (2d Cir. Sept. 28, 2021).

In support of the assertion that the "in connection with" element cannot be met, Defendants cite a number of private actions, which are inapposite because such cases require a showing of investor reliance, thereby presuming an element of disclosure to

---

[24] *See, e.g.*, *Gonnella v. SEC*, 954 F.3d 536, 541, 549 (2d Cir. 2020) (defendant engaged in trading that "violated an internal policy" at the investment bank and financial services company where he worked); *SEC v. Hall*, 759 Fed. Appx. 877, 879-81 & n.6 (11th Cir. 2019) (fraud upon a brokerage firm); *SEC v. Crowe*, 216 F. Supp. 3d 852, 856, 862-68 (S.D. Ohio 2016) (deceptive conduct in connection with a "'pay-to-play scheme' by a financial firm seeking to win business from the state of Ohio").

the investor. Renewed Motion at 5-9, 18.  No such requirement exist in cases brought

by the SEC.  *SEC v. Morgan Keegan & Co.*, 678 F.3d 1233, 1244 (11th Cir. 2012).[25]

Defendants further misstate the elements the SEC *must* establish to include a

dissemination to the public in a medium upon which a reasonable investor would rely.

Renewed Motion at 7.  While certainly the SEC *may* establish the "in connection with"

element by establishing dissemination to the public as stated above, there is no

requirement in statute or otherwise that the SEC *must* prove public dissemination.

Such a rule would be contrary to the flexibly permitted by *Zandford*.[26]  Indeed, a review

of the authority Defendants cite makes clear that public dissemination is merely one

of a number of ways in which the "in connection with" requirement can be met.  *See,*

*e.g.*, *SEC v. Pirate Inv.*, 580 F.3d 233, 244 (4th Cir. 2009) (listing "whether material

---

[25] In *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 392-93 (2014), the Court concluded that the "in connection with" requirement was not satisfied because the alleged misrepresentations did not coincide with the purchase or sale of a "covered security," which in that private action was limited to a security authorized for listing on a national exchange. *Id.* at 380-381 (quoting 15 U.S.C. 78bb(f)(5)(E)).  The Court observed, however, that no such limitation exists in an enforcement action that is brought by the government, reasoning that the authority of the SEC extends to all securities, not just to those traded on national exchanges. *Id.* at 394 (citation omitted).  Moreover, Courts have not construed *Troice* to limit SEC enforcement actions alleging fraud that, as in this case, concerns purchases and sales of instruments that are "securities" under the Exchange Act.  *See SEC v. Radius Capital Corp.*, 653 Fed. Appx. 744, 750-51 (11th Cir. 2016); *Crowe*, 216 F. Supp. 3d at 863-67.

[26] Defendants' citation to *SEC v. Mannion,* 789 F. Supp. 2d 1321 (N.D. Ga. 2011), is misplaced.  The *Mannion* court thought the "requirement of fraud in connection with the purchase or sale of a security was not satisfied by an allegation that plaintiffs were induced fraudulently not to sell their securities," and on that ground dismissed a claim that did not allege that investors purchased or sold securities based on misstatements.  *Id.* at 1331-32. But the court's legal premise was flawed, because the purchaser-seller requirement "of course ha[s] no application in Government enforcement actions brought pursuant to Rule 10b-5."  *Merrill Lynch, Pierce, Fenner & Smith v. Dabit*, 547 U.S. 71, 81 (2006). Further, *Mannion* is inapposite because it is undisputed that Defendants' fraud led to the issuers' eligibility for public trading and in fact the stock of the companies were bought and sold.

misrepresentations were 'disseminated to the public in a medium upon which a reasonable investor would rely'" as one of a non-exhaustive list of "several factors" court find "relevant" to the "in connection with" inquiry in each case); *SEC v. Rana Research*, 8 F.3d 1358, 1362 (9th Cir. 1993) ("*[w]here the fraud alleged involves public dissemination*," "the 'in connection with' requirement is generally met," not that it is the only way it can be met); *SEC v. Wolfson*, 539 F.3d 1249, 1262 (10th Cir. 2008) (same).  Hence, the 11th Circuit's conclusion in *Radius* that misstatements "need not be explicitly directed at the investing public or occur during the transaction to be 'in connection with the purchase or sale of' or 'in the offer or sale of' any security" is correct, and the lack of public dissemination poses no bar.

Here, there is no question that Defendants' fraud facilitated the purchase of instruments that are securities under the Exchange Act.  As the Court properly held, the "in connection with" element is established because, although not filed with the public, the information led to the fraudulent companies' abilities to be eligible for public quotation.  DE 44 at 13-14 and DE 135 at 31.

Defendants also erroneously rely on *Goble*.  In *Goble*, the defendant recorded a fake transaction on the books of his brokerage firm, but that sham transaction "had no effect on the broader securities market and would not impact an investor's decision to purchase a security." 682 F.3d at 946.  In reversing the judgment of liability, the court reasoned that "Section 10(b) was not intended to protect investors from a broker-dealer's inaccurate records or an inadequate reserve fund."  *Id*.  The violations in this case, in contrast, were not mere "internal record[s]."  *Id*. at 943.  Rather, they were the

vehicle by which Defendants created a market for the public purchase and sales of securities.  Moreover, Defendants' fraud is "the type of conduct meant to be forbidden by § 10(b)," *Goble*, 682 F.3d at 946, because it squarely implicates the Exchange Act's core purpose of preventing "abuses in the trading of securities in the 'aftermarket,'" *Naftalin*, 441 U.S. at 777.  By permitting the public sale of the microcap securities in this case, the fraud impacted "the broader securities market" and would have been material to "an investor's decision to purchase" the subject securities."  *Goble*, 682 F.3d at 946.

### E.    Evidence of Misrepresentations and Omissions in DTC Applications

Sufficient evidence supports a finding that Defendants made misrepresentations and omissions to DTC participants, including that the issuers were not shells.  The SEC's expert testified that all of the companies involved in this case were shell companies.[27]  Defendants' role in obtaining DTC eligibility for the shells seriously jeopardized the integrity of the clearance and settlement systems through filing of false information.[28]  Spartan misrepresented the shell status of issuer Kids Germ when communicating with Penson and applying for DTC eligibility.[29]   In deposition designations read at trial, Dilley confirmed that it was important for a company to become DTC eligible because, among other things, it makes the securities transaction

---

[27] Cangiano Tr. 7-28-21 p.m., 107:18-20.
[28] *Id.* 42:15-20.
[29] Ex P691; Cangiano Tr. 7-28-21 a.m., 69:24-70:6.

easier and adds value to the issuer.[30]  Notably, Dilley also confirmed it was important for Penson to know that Kids Germ was not a shell and that being a shell would affect the issuer's DTC eligibility.[31] Further supporting that Defendants misrepresented the shell status of Kids Germ is evidence that the company quickly sold in a reverse merger one month after Defendants requested DTC eligibility.[32]   Similarly, Defendants assisted Obscene Jeans to become DTC eligible while also knowing the company was for sale.[33]  The evidence showed a similar pattern for other issuers.[34]  These facts alone could allow a reasonable jury to find Defendants liable for Section 10(b) fraud.

### F.    Island Made Actionable Misrepresentations and Omissions

Similarly, the jury's verdict against Island is more than sufficiently supported by the trial evidence, which established that Island and Dilley made misrepresentations and omissions regarding the designation of securities as free trading and when effectuating the bulk issuance and transfer of securities, including stock certificates without restrictive legends.

The SEC's expert explained that insiders, control persons, and affiliates should only have restricted stock because these persons would have an information advantage in the market.[35] The evidence demonstrated that Island and Dilley were aware that the shares being deposited were held by affiliates (Rose directing all of the DTC

---

[30] Dilley Tr. 7-20-21 a.m., 32:25-33:8; Dilley Depo Designation Tr. 7-29-21 a.m., 109:4-19; 112:3-4.
[31] Dilley Depo. Designation Tr. 7-29-21 a.m., 110:16-111:1.
[32] *Id.* 111:3-111:8.
[33] *Id.* 111:16–113:18; Ex. P611; Dilley Tr. 7-20-21 a.m., 29:2-8.
[34] *Id.* 115:3-116:5.  Mirman Tr. 7-14-21 a.m., 85:4–86:3.
[35] Cangiano Tr. 7-28-21, 44:25-45:12.

submissions, same friends/family of Rose constantly being the named shareholder, all leading up to the bulk sale/transfer).[36]  Island routinely processed the bulk transfers by signing and transmitting stock certificates without restrictive legend for securities Island knew, or was reckless in not knowing, were in fact restricted.[37]  Moreover, Dilley, on Island's behalf, signed two letters to buyers of two of the blank check companies which misrepresented the restricted nature of the companies' securities.[38]

Island's argument that the statements concerning transfers were not actionable because the jury did not find for the SEC on Count XIV should be rejected.  Whether transfers should have been registered does not preclude a finding that Island and Dilley made misrepresentations or omissions.  Finally, the Court should reject Island's attempt to reframe the import of the timing of the statements and its role as transfer agent; but for Island's actions, despite knowing or being reckless in not knowing that the stock should have been restricted, the bulk issuance and transfer of securities would not have occurred.  As argued above, these statements were material because the objective of the fraud was to facilitate public trading.  *Weed*, 873 F.3d at 73.

### III.  <u>CONCLUSION</u>

The Plaintiff, Securities and Exchange Commission respectfully requests that the Court permit the jury's verdict to stand and deny Defendants' Renewed Motion for Judgment as a Matter of Law.

---

[36] Cangiano Tr. 7-28-21, 23:22-24:25; 28:22-29:4.
[37] *Id.*
[38] Trial Exs. PX704, JT44

Respectfully submitted,

October 4, 2021

By: *s/Christine Nestor*
Christine Nestor
Senior Trial Counsel
Fla. Bar No. 597211
Telephone: (305) 982-6367
Facsimile: (305) 536-4154
E-mail:  nestorc@sec.gov

Alise Johnson
Senior Trial Counsel
Fla. Bar No. 0003270
Telephone: (305) 982-6385
E-mail: johnsonali@sec.gov

Alice Sum
Trial Counsel
Fla. Bar No. 354510
Telephone: (305) 416-6293
Facsimile: (305) 536-4154
sumal@sec.gov

**ATTORNEYS FOR PLAINTIFF**
**SECURITIES AND EXCHANGE**
**COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone: (305) 982-6300

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served

as indicated below on this 4th day of October 2021 upon the following:

Caleb Kruckenberg, Esq.
Kara Rollins, Esq.
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC. 20036
Email: caleb.kruckenberg@ncla.legal
*Counsel for Defendants*
Via CM/ECF

<i>s/Christine Nestor</i>